## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STUTTERING FOUNDATION OF AMERICA )<br>3100 Walnut Grove Road )<br>Suite 603 )<br>Memphis, TN 38111-0749 )<br><br>Plaintiff, )<br><br>-v- )<br><br>LINDA M. SPRINGER )<br>in her official capacity as )<br>Director of the United States Office )<br> of Personnel Management )<br>1900 E Street, N.W. )<br>Washington, D.C. 20415-0001, )<br><br>Defendant. ) | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, by undersigned counsel, respectfully presents this action to declare unlawful and enjoin certain actions of Defendant and others acting under her authority (hereinafter, "Defendant" shall be deemed to include persons acting under her authority) with regard to the issuance of regulations related to the Combined Federal Campaign as it applies to Plaintiff. Specifically, as set forth in the averments below, Defendant acted without authority and arbitrarily to deny the application of Plaintiff, Stuttering Foundation of America, for inclusion as an eligible organization in the 2007 Combined Federal Campaign. The actions by Defendant violate the Administrative Procedure Act ("APA"), 5 U.S.C. secs. 500-706.

### Jurisdiction and Venue

1.      This court has jurisdiction over this action pursuant to 28 U.S.C. sec. 1331
(federal question), 28 U.S.C. sec. 1346 (United States as defendant), 28 U.S.C. sec. 1361 (writ of
mandamus), and 5 U.S.C. secs. 701-706 (APA).

2.      The injunctive and declaratory relief sought herein is authorized in actions arising
under the statutes cited above as well as by 28 U.S.C. sec. 2201 (declaratory relief) and 28
U.S.C. sec. 2202 (injunctive relief).

3.      Venue is proper in this court pursuant to 28 U.S.C. sec. 1391(e) because the
Defendant, in her official capacity, resides in this district and all of the actions and omissions
complained of herein occurred in this district.

### Parties

4.      Plaintiff Stuttering Foundation of America ("SFA") is a non-profit Tennessee
corporation which maintains its principal office at the address listed in the caption. SFA has
been accorded tax-exempt status by the Internal Revenue Service as a charitable organization
within the meaning of Internal Revenue Code ("Code") sec. 501(c)(3) and as a private operating
foundation ("POF") within the meaning of Code sec. 4942(j)(3). SFA is not a public charity
within the meaning of Code sec. 509(a).

Internal Revenue Manual sec. 7.26.6.1(3) provides: "Unlike most private foundations
whose assets consist mainly of investments and whose charitable activities consist mainly of
making grants, operating foundations mainly conduct direct charitable operations."

Internal Revenue Manual sec. 7.26.6.2(2) provides: "A donor generally may deduct a
charitable contribution to an operating foundation to the same extent as contributions to
organizations described in IRC 509(a)(1), (2), or (3), for income tax purposes. See, IRC

2

170(b)(1)(A)(vii), 170(b)(1)(E)(i), 170(e)(1)(B)(ii), 170(e)(3)(A), and 170(e)(5)(C)(i)."

5.      Established in 1947, SFA is dedicated to providing the best and most current information and assistance available for the prevention of stuttering in young children and the most effective treatment available for teenagers and adults who stutter. SFA has helped hundreds of thousands of persons and is recognized as the world's leading organization that helps people who stutter.

6.      Defendant is the director of the Office of Personnel Management (hereinafter referred to as "OPM"), an agency of the executive branch of the government of the United States. *Inter alia*, OPM is charged with interpreting and promulgating regulations (5 C.F.R. Part 950) governing the solicitation of federal civilian employees, postal employees, and uniformed service personnel for contributions (*via* voluntary payroll deductions and otherwise) to charitable organizations. This procedure is referred to as the "Combined Federal Campaign" (hereinafter referred to as "CFC").

### Background

7.      Health and Medical Research Charities of America (hereafter referred to as "HMR") is a tax-exempt, federated group which represents charitable organizations that work to improve health, assist care givers and find cures. HMR organizes and prepares its member charities for effective participation in "workplace" charitable fund drives and other types of fund raising activities. HMR engages in fund drive application assistance, reviews and certifies charitable agency eligibility documentation, disseminates information about its member charities to the workplace-giving public, organizes member participation in fund drive promotional educational events, represents its members before fund drive organizing or regulatory authorities, and transmits contributions and contributors' names and addresses to recipient charities. HMR is

3

an OPM approved national federation eligible to participate in the 2007 CFC on behalf of its member organizations.

8.    SFA is a member in good standing of HMR and authorized HMR to submit its application to OPM to participate in the 2007 CFC as an unaffiliated, national independent charity. SFA has participated in every CFC between 1992 and 2006 and has received significant revenues from the CFC. In 2005, SFA received $38,468.44 and in 2006, SFA received $31,217.05 from the CFC.

9.    The regulations governing the CFC set forth, *inter alia,* criteria to be met by charitable organizations which seek to be included in the "National List" of organizations eligible to participate in the CFC. Organizations must apply (or reapply, as the case may be) each year for inclusion in the CFC on a form developed by OPM. To be included in the CFC, an applicant (in general), must establish that it is a human health and welfare organization which carries out its program activities in 15 or more different states or one foreign country over the three year period immediately preceding the beginning of the CFC campaign year. See, 5 CFR sec. 950.202.

10.    On November 20, 2006, OPM promulgated at 5 CFR Part 950 new regulations governing, *inter alia,* National List eligibility requirements which pertain to the applications of charitable organizations for inclusion in the CFC. Revised section 950.202(b), (the "Regulation"), states that an organization seeking National List eligibility must:

> Certify that it is an organization recognized by the Internal Revenue Service as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. §170(c)(2) *and that the organization is further classified as a public charity under 26 U.S.C. §509(a).* A copy of the letter(s) from the Internal Revenue Service granting tax exempt *and public charity status* must be included in the organization's application. (Emphasis added.)

4

11. The highlighted portion of the Regulation, *viz.*, that organizations seeking National List eligibility must certify they are public charities, was added to the CFC regulations on November 20, 2006. Previously, organizations seeking National List eligibility did not have to be public charities. As noted above, SFA is a charitable organization, being a POF, but is not a public charity.

### Chronology and Summary of Events

12.    On or about January 26, 2007, HMR submitted to OPM the application of SFA to participate in the 2007 CFC as a national unaffiliated independent charity. In its application, SFA described stuttering as a frequently misunderstood condition and noted the prevalence of stuttering among children and the shortage of trained speech pathologists capable of treating children and adults who stutter. To fill this void, SFA stated it provides direct assistance to those who stutter by:

a)    maintaining two web sites which provide assistance, information and resources to a world-wide audience;

b)    maintaining a toll-free telephone hot line and responding to more than 20,000 calls annually;

c)    publishing and distributing 26 books, 28 videotapes, and 17 brochures on stuttering. SFA distributes over 800,000 publications and tapes annually to those who stutter, their families, speech-language pathologists, pediatricians, family physicians, hospitals, schools, clinics, day-care centers, libraries, and others concerned about stuttering;

d)    providing information packets consisting of free brochures, a resource list, and information concerning support groups to adults and to parents of children who stutter;

5

e) co-sponsoring intensive training programs and workshops for speech language pathologists and others annually at the University of Iowa and other universities throughout the United States and elsewhere to improve the training of school-based speech language pathologists and to educate hundreds of speech and language professionals on new techniques of treating and preventing stuttering;

f) sending thousands of press releases annually to newspapers, syndicated columnists, magazine editors, and radio and television stations to educate the public about stuttering; and

g) distributing videotapes, books, and brochures to 63 countries on five continents.

SFA stated in the application that it provides services to persons in more than 15 states and numerous foreign countries.

13. In the cover letter to SFA's application, HMR noted that it was not able to certify that SFA was eligible to participate in the 2007 CFC because SFA "could not comply with the new regulatory language regarding IRS recognition as a public charity, specifically that 'the organization is classified as a public charity under 26 U.S.C. 509(a).' " In its cover letter, HMR noted that SFA is a private operating foundation "and therefore does not fall under 25 [sic] U.S.C. 509(a), although gifts to it remain tax deductible. We found the organization to be otherwise CFC eligible." (See, **Exhibit A**, attached hereto.)

14. Because POFs had not previously been excluded from participation in the CFC pursuant to the regulations governing the CFC in effect prior to November 20, 2006, HMR requested the Director of OPM to consider granting a one year waiver of the public charity requirement to SFA and other similarly situated organizations. This request was not granted.

15.     On or about March 16, 2007, Defendant, acting through Mark W. Lambert,

Acting Director, Office of CFC Operations, denied SFA's application. Mr. Lambert stated SFA

did not certify "that it is recognized by the Internal Revenue Service as tax exempt under 26

U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. §170(c)(2) and that the

organization is further classified as a public charity under 26 U.S.C. §509(a). The Internal

Revenue Service has classified your organization as a private foundation under Section 501(c)(3)

of the Internal Revenue Code." (See **Exhibit B** attached hereto.) The letter from Mr. Lambert

afforded SFA an opportunity to file an appeal with Tricia Hollis, Chief of Staff & Director of

External Affairs of OPM. The letter also stated: "Your appeal need only respond to the

deficiencies described above."

16.     By letter, dated March 22, 2007, SFA, by counsel, appealed the initial denial of

SFA's application to participate in the 2007 CFC. (See **Exhibit C** attached hereto.) The letter

stated the following:

a) POFs such as SFA, unlike private grant-making, non-operating foundations ("PFs"),

actively engage in providing services that further their Code sec. 501(c)(3) purposes in the same

manner as publicly supported Code sec. 501(c)(3) organizations;

b) SFA, unlike a PF, is not subject to the Code sec. 4942 minimum distribution

requirements which require PFs generally to distribute annually five percent (5%) of the fair

market value of their assets not used directly in charitable activities;

c) gifts to SFA and other POFs, unlike gifts to PFs, are subject to the more favorable

charitable contribution tax deductions available for contributions to public charities;

d) exclusion of SFA and other POFs from the 2007 CFC violates section 618 of the

Treasury, Postal Service, and General Government Appropriations Act for 1988 (Public Law No.

7

100-202, 101 Stat. 1329 *et seq.*, the "Act," referred to in the letter as the "1987 Hoyer-Hatfield

Act") which states that the criteria for eligibility of organizations to participate in the CFC

cannot be different from the eligibility criteria that existed in the 1984 CFC regulations;

e) POFs, pursuant to the 1984 CFC regulations, were permitted to participate in the CFC;

and

f) the exclusion of SFA and other POFs from the 2007 CFC, based on the new Regulation

that requires eligible organizations to be public charities, violates section 618 of the Act because

the new Regulation impermissibly restricts the type of Code sec. 501(c)(3) organizations that are

permitted to participate in the CFC.

17.    By letter dated June 28, 2007, (**Exhibit D** hereto) Defendant, through OPM Chief

of Staff and Director of External Affairs Tricia Hollis, sustained the decision to deny SFA's

application. Ms. Hollis stated:

> I am sustaining the decision to deny the application.
>
> Eligibility criteria regulations for CFC national organizations are set forth in 5 CFR §950.202 and 203. These criteria require that each applicant be recognized by the Internal Revenue Service (IRS) as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. §170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. §509(a). The Stuttering Foundation of America currently is classified under 26 U.S.C. 501(c)(3) as a private foundation and, therefore, does not meet the criteria.
>
> This decision is final for administrative purposes for the 2007 CFC...

The letter is the final administrative determination for the 2007 CFC and did not address

SFA's contention in its appeal that the new regulation requiring eligible organizations to be

public charities violates section 618 of the Act.

18.    On or about July 31, 2007, OPM will have completed the 2007 National List of

Participating Agencies to be posted to the OPM web site. Shortly after July 31, 2007, OPM will

distribute to local combined federal campaigns the National List of charitable organizations included in the 2007 CFC. (See, CFC schedule attached hereto as **Exhibit E**.) Upon information and belief, after July 31, 2007, the local combined federal campaigns will commence making available to federal employees via hard copy and the Internet the Charity List that will contain both the National List charities and local charities.

19.    If SFA is not included on the National List, it will suffer irreparable injury, including, but not limited to, being deprived of contributions which it otherwise would have received.

### Cause of Action

(Judicial Review of Agency Action Pursuant to 5 U.S.C. sec. 701, et seq.)

20.    The allegations of paragraphs 1 to 19 are incorporated as though fully set forth here.

21.    Defendant has acted without authority, in an arbitrary and capricious manner, and contrary to law, in promulgating  the Regulation and applying it to SFA, in the following respects:

a.    Section 618(a) of the Act provides as follows:

"None of the funds appropriated by this Act, or any other Act in this *or any fiscal year hereafter*, may be used in preparing, promulgating, or implementing any regulations relating to the Combined Federal Campaign if such regulations are not in conformance with subsection (b)." (Emphasis added.)

Section 618(b)(1)(B) of the Act states that "[a]ny requirements for eligibility to receive contributions through the Combined Federal Campaign shall, to the extent that such requirements relate to any subject matter other than one referred to in subparagraph (A)

9

[concerning CFC eligibility requirements relating to litigation, public-policy advocacy, or attempting to influence legislation] *remain the same as the criteria in the 1984 regulations…*" (Emphasis added.)

      b.     The CFC regulations in effect in 1984 did not restrict CFC eligible organizations solely to Code sec. 501(c)(3) organizations that also were public charities. These regulations only restricted eligibility, *inter alia*, to national organizations that were recognized as Code sec. 501(c)(3) organizations to which contributions were deductible under Code sec. 170.

      Specifically, section 950.405 of Part 950, "Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to Private Voluntary Organizations" of the 1984 CFC regulations states in pertinent part that "to be eligible for approval by the Director for participation in the Combined Federal Campaign, a national voluntary agency must be one: (1) that is a voluntary charitable health and welfare agency as defined in 5 CFR 950.101; (2) that is voluntary and broadly supported by the public, meaning (i) that it is organized as a not-for-profit corporation or association…; (ii) that it is classified as tax-exempt under Section 501(c)(3), and is eligible to receive tax deductible contributions under Section 170 of the Internal Revenue Code…"

      Section 950.101 defines a "voluntary charitable health and welfare agency," in pertinent part, as an organization that is "described in, and qualifying under, 26 U.S.C. 501(c)(3), is not an 'action organization' within the meaning of 26 CFR 1.501(c)(3)-1(3); and is eligible to receive tax-deductible contributions under 26 U.S.C. 170." (See, **Exhibit F** attached hereto.)

      *The 1984 CFC regulations do not require eligible organizations to be public charities.*

      c.     The Regulation, published as part of the final revised CFC regulations on November 20, 2006, for the first time restricts eligible national organizations solely to public

charities. Prior to the issuance of the Regulation, SFA had qualified for the CFC every year between 1992 and 2006 because it had satisfied all of the requirements for CFC National List eligibility set forth in the 1984 CFC regulations which did not require public charity status.

     d.     Promulgation of the Regulation has resulted in the CFC eligibility criteria no longer being *the same as the eligibility criteria set forth in the 1984 CFC regulations* as section 618 of the Act requires. Defendant, therefore, has violated the Act rendering the Regulation void, of no force and effect and unenforceable.

     22.     Defendant's denial of SFA's application based on the unenforceable Regulation, violates the Act and, therefore, was arbitrary, capricious, an abuse of discretion, in violation of existing law, and without statutory authority in violation of the APA, 5 U.S.C. sec. 706.

### Request for Relief

     23.     Wherefore, premises considered, Plaintiff respectfully requests the following relief:

     A.     A temporary restraining order preventing Defendant from excluding SFA from the 2007 CFC pending a hearing on the merits by this court;

     B.     A preliminary injunction, in the nature of mandamus, requiring Defendant to include SFA in the 2007 CFC;

     C.     A permanent injunction, in the nature of mandamus, requiring Defendant to include SFA in the 2007 CFC;

     D.     A declaratory judgment that Defendant's promulgation of 5 CFR sec. 950.202(b) was arbitrary, capricious, an abuse of discretion, a violation of the Act and, therefore, a violation of the APA.

     E.     Such other and further relief and remedies as may be proper and serve the

11

interests of justice; and,

      F.     An award in such monetary amount as may reimburse Plaintiff for the

legal fees and costs incurred by Plaintiff as a result of Defendant's actions and omissions, as set

forth herein.

                                   Respectfully submitted,

                                   MacKenzie Canter, III, (D.C. Bar #936146)

                                   Mark Diskin (D.C. Bar # 334086)

                                   Copilevitz & Canter, LLC
                                   1900 L Street, N.W., Suite 215
                                   Washington, D.C. 20036
                                   (202) 861-0740
                                   (202) 331-9841 (facsimile)
                                   Counsel for Plaintiff

**VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

**July** \_\_\_ **, 2007**.

By: _____

      Jane Fraser

Title:  President

      Stuttering Foundation of America

# Exhibit A





**ealth**
& MEDICAL RESEARCH
CHARITIES OF AMERICA

January 26, 2007

Mr. Mark Lambert
Acting Director
Office of CFC Operations
U.S. Office of Personnel Management
1900 E Street, NW, Room 5450
Washington DC, 20415

Dear Mr. Lambert:

Stuttering Foundation of America has asked us to forward to you its application for participation in the Fall 2007 CFC with the request that your office review it as a national independent charity ("unaffiliated").

Reluctantly, we were unable to certify this organization because it could not comply with the new regulatory language regarding IRS recognition as a public charity, specifically that "the organization is classified as a public charity under 26 U.S.C. 509(a)." This organization is a private operating foundation and therefore does not fall under 25 U.S.C. 509(a), although gifts to it remain tax deductible. We found the organization to be otherwise CFC eligible.

As private operating foundations were not excluded under the previous regulations, we would like to recommend that the Director consider granting a one year waiver to this and other organizations finding themselves in this circumstance. We note that had this organization immediately applied to the IRS for a status change when the final rules were published there would not have been time for the IRS to have acted on its request prior to the deadline for submission of the 2007 CFC application.

Respectfully,

Cindy Schneible
President

Cc: Jane Fraser, Stuttering Foundation of America

# Exhibit B



UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

Office of the
General Counsel

March 16, 2007

Ms. Jane Fraser
President
Stuttering Foundation of America
3100 Walnut Grove Road, Suite 603
Memphis, TN 38111

VIA CERTIFIED MAIL

Dear Ms. Fraser:

We have reviewed your organization's application to participate in the 2007 Combined
Federal Campaign (CFC) as a National/International Independent Organization. We are
denying it because of the following deficiencies:

- You have not certified statements #2 of the application. Each participating CFC
  organization must certify that it is recognized by the Internal Revenue Service as
  tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible
  under 26 U.S.C. §170(c)(2) and that the organization is further classified as a
  public charity under 26 U.S.C. §509(a). The Internal Revenue Service has
  classified your organization as a private foundation under Section 501(c)(3) of
  the Internal Revenue Code.

If, after reviewing the application requirements for the CFC (appearing at 5 CFR Part 950), you
believe an error was made in reviewing your application, you may appeal this denial to Tricia
Hollis, Chief of Staff & Director of External Affairs of the U.S. Office of Personnel
Management. Your appeal need only respond to the deficiencies described above. Your appeal
must be in writing and must be received by OPM within 10 business days from the date you
receive this letter. Appeals should be sent to:

U.S. Office of Personnel Management
ATTN: Curtis Rumbaugh
Office of CFC Operations – Room 5450
1900 E Street, NW
Washington, DC 20415

Because OPM can experience significant delays in mail service associated with irradiating mail,
organizations submitting an appeal are encouraged to use "next day" or "overnight delivery."

The Office of CFC Operations will acknowledge receipt of your appeal. If you do not receive email confirmation that we received the appeal within one week of the date you sent the package, please contact our office at (202) 606-2564.

Thank you for your interest in the CFC.

Sincerely,

*Mark W. Lambert*

Mark W. Lambert
Acting Director
Office of CFC Operations

Cc:    Copilevitz & Canter, LLC

# Exhibit C

# COPILEVITZ & CANTER, LLC

ATTORNEYS AT LAW

SUITE 215
1900 L STREET, N.W.
WASHINGTON, D.C. 20036

(202) 861-0740 • FAX (202) 331-9841
E-MAIL copcandc@aol.com
INTERNET ADDRESS www.exempttaxlaw.com

MACKENZIE CANTER, III
E-MAIL maccanter@aol.com
MEMBER OF DC, VA, MD & MO BARS

March 22, 2007

KANSAS CITY OFFICE
423 W. EIGHTH STREET, SUITE 400
KANSAS CITY, MISSOURI 64105
(816) 472-9000 • FAX (816) 472-5000
E-MAIL cckc@aol.com

<u>VIA FEDERAL EXPRESS</u>

Ms. Tricia Hollis
Chief of Staff & Director of External Affairs
U.S. Office of Personnel Management
c/o Mr. Curtis Rumbaugh
Office of CFC Operations - Room 5450
1900 E St., NW
Washington, DC 20415

Dear Ms. Hollis:

We are attorneys for Stuttering Foundation of America, Inc. ("Foundation"). We are in receipt of the letter, dated March 16, 2007, from the United States Office of Personnel Management ("OPM") wherein Mr. Mark W. Lambert, Acting Director of CFC Operations, denied the application of the Foundation for inclusion in the 2007 Combined Federal Campaign as a National/International Independent Organization.

The stated reason for this denial is the following:

> You have not certified statements #2 of the application. Each participating CFC organization must certify that it is recognized by the Internal Revenue Service as tax exempt under 26 U.S.C 501(c)(3) to which contributions are deductible under 26 U.S.C. §170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. §509(a). The Internal revenue Service has classified your organization as a private foundation under Section 501(c)(3) of the Internal Revenue Code.

As attorneys for the Foundation and on its behalf, we hereby appeal this denial. In support of this appeal, we provide the following reasons why this decision is in error and should be reversed.

*Description of Foundation*

The Foundation is located at 3100 Walnut Grove Road, Suite 603, Memphis, TN 38111-0749. The Foundation is a private operating foundation, classified by the Internal Revenue Service as a tax-exempt charitable organization described in Internal Revenue Code ("IRC") sections 501(c)(3) and 4942(j)(3).

# COPILEVITZ & CANTER, LLC

Ms. Tricia Hollis
March 22, 2007
Page 2 of 4

In 1947, Malcolm Fraser, a young man in Memphis, Tennessee, decided to do what he could to help others who stutter. He knew about this disability from personal, often painful experience. He met with one of the foremost authorities of the day, Dr. Charles Van Riper, to discuss founding a nonprofit charitable organization to help those who stutter.

The organization Fraser founded became today's Stuttering Foundation of America. Its goal was to provide the best and most up-to-date information and help available for the prevention of stuttering in young children and the most effective treatment available for teenagers and adults.

Sixty years later, the Foundation continues to pursue these same goals, although the tools to accomplish them are more varied and widespread. As it did when Malcolm Fraser turned his dream into reality, the Foundation dedicates itself to the contemporary concerns of those who stutter. The Foundation has helped hundreds of thousands of persons and is recognized as the world's leading organization in providing help to those who stutter.

The Foundation, through its agent, Health and Medical Research Charities of America, applied on January 26, 2007 to the CFC for participation as an unaffiliated, national independent charity. This application was denied, as noted above.

Since 1992, the Foundation has participated in the CFC National List. If the Foundation is denied inclusion in the 2007 CFC, it will be a severe blow financially to the Foundation. More importantly, it will deny federal employees the opportunity to learn that help is available.

*Grounds for Appeal*

The Foundation appeals on the basis that the revised requirement, announced in CFC Memorandum 2006-21,[1] which excludes private operating foundations from eligibility for the CFC violates federal law and, hence, is null and void.

I refer specifically to the following requirement: "Every CFC applicant must demonstrate that it is recognized by the Internal Revenue Service (IRS) as tax-exempt under 26 U.S.C. §501(c)(3) to which contributions are tax–deductible pursuant to 26 U.S.C. §170(c)(2) and that the organization is classified as a public charity under 26 U.S.C. §509(a). *Private foundations and units of government are not eligible to participate in the CFC.*" (Emphasis in original.) See, page 4 of CFC Memorandum 2006-21.

Private operating foundations ("POFs"), such as the Foundation, actively engage in providing services that further IRC §501(c)(3) purposes in the same manner as publicly

---

[1] See, "Guidance on 2007 CFC National/International Applications Resulting From Changes to the CFC Regulations" (effective November 20, 2006).

# COPILEVITZ & CANTER, LLC

Ms. Tricia Hollis
March 22, 2007
Page 3 of 4

supported IRC §501(c)(3) organizations. While POFs are not classified under IRC §509(a), they provide charitable services in the same way as do the §509(a) organization.

In contrast, non-operating private foundations ("PFs") normally restrict their activities to making grants to other IRC §501(c)(3) organizations. For example, a POF that is an art museum fulfills its charitable purposes by operating the museum directly to educate the public. A PF, in contrast, would not operate a museum directly but, rather, would make a grant to the museum or other IRC §501(c)(3) organization to enable it to engage in charitable/educational activities.

POFs, unlike PFs, are not subject to the IRC §4942 minimum distribution requirement which requires PFs to distribute generally 5% of the fair market value of their assets not used directly in charitable activities annually.

Gifts to POFs, unlike PFs, are subject to the more favorable tax deductions available for contributions to publicly supported charities. IRC §170(b)(1)(A) (vii) provides that gifts of cash or ordinary income property to POFs are deductible generally up to 50% of the donor's adjusted gross income ("AGI") in the year of the gift while gifts of long term capital gain property such as stock or real estate are deductible generally up to 30% of the donor's AGI. Unused portions of the charitable contribution which remain as a result of these percentage limitations may be carried forward and used in as many as five additional years.

In contrast, gifts of cash or ordinary income property to PFs are limited to 30% of AGI while gifts of long term capital gain property are limited to 20% of the donor's AGI. Additionally, donors who make contributions of long term capital gain property to POFs generally may take charitable contribution deductions equal to the fair market value of the gift while the value of the charitable contribution deduction for similar gifts to PFs generally will be limited to the donor's cost basis in the property.

## Non-Compliance with Hoyer-Hatfield

We believe the exclusion of POFs from the 2007 CFC is directly in conflict with the clear mandate of the 1987 Hoyer-Hatfield Act, Pub. L. 100-202, Sect. 101(m) (title VI, Sec. 618), December 22, 1987, 101 Stat. 1329-390, 1329-423 ("Hoyer-Hatfield").

Not only does the exclusion of POFs from the CFC violate Hoyer-Hatfield for the reason explained below, this exclusion also, in our view, deviates from sound public policy. POFs provide charitable services in the same manner as do publicly supported charities to which they are substantially similar in material respects.

Hoyer-Hatfield forbids OPM to use any federal funds in "in this or any fiscal year hereafter…in preparing, promulgating, or implementing any regulation related to the Combined Federal Campaign if such regulations are not in conformance with subsection (b)…" Part (2)(A)

# COPILEVITZ & CANTER, LLC

Ms. Tricia Hollis
March 22, 2007
Page 4 of 4

of subsection (b) states, in pertinent part: "...[an organization shall] be considered to have national eligibility if such agency or group....demonstrates that it provided services, benefits, or assistance or otherwise conducted program activities in (I) 15 or more states or one foreign country over the 3-year period immediately preceding the start of the year involved..."[2] The Foundation easily meets this requirement, as its 2007 application makes clear.

Hoyer-Hatfield also provides: "(a) None of the funds appropriated by this Act, or any other Act in this or any fiscal year hereafter, may be used in preparing, promulgating, or implementing any regulations relating to the Combined Federal Campaign if such regulations are not in conformance with subsection (b)... (B) Any requirements for eligibility to receive contributions through the Combined Federal Campaign shall, to the extent that such requirements relate to any subject matter other than one referred to in subparagraph (A), remain the same as the criteria in the 1984 regulations, except as otherwise provided in this section."

Private operating foundations were permitted by the 1984 regulations to participate in the CFC. This is entirely consistent with their IRC §501(c)(3) status and, as noted, their comparability to publicly supported charities.

In conclusion, we believe that the exclusion of private operating foundations from the 2007 CFC is in direct conflict with Hoyer-Hatfield. We respectfully submit that the denial of the Foundation's application accordingly is in error and should be reversed.

Failure to reverse this erroneous decision would be arbitrary, unreasonable and capricious within the meaning of the Administrative Procedures Act.

Yours very truly,

MacKenzie Canter, III

c: Stuttering Foundation of America

---

[2] As documented in Attachment A to its application, the Foundation has provided specialist training in the 3-year period to public school-based speech therapists from 46 states and 11 foreign countries. With this specialty training, these speech therapists directly benefit stutterers in those states and countries. In addition, as noted on page 6 of Attachment A, during 2006 the Foundation also provided therapy treatment for children in the United Kingdom through specialists at the Michael Palin Centre in London.

# Exhibit D



UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

Office of the Director

JUN 2 8 2007

Ms. Jane Fraser
President
Stuttering Foundation of America
3100 Walnut Grove Road, Suite 603
Memphis, TN 38111

Dear Ms. Fraser:

Pursuant to the authority delegated by the Director of the U.S. Office of Personnel
Management (OPM), Linda M. Springer, I have completed a review of the appeal of the
Stuttering Foundation of America to participate in the 2007 Combined Federal
Campaign (CFC). I am sustaining the decision to deny the application.

Eligibility criteria regulations for CFC national organizations are set forth at 5 CFR
§950.202 and 203. These criteria require that each applicant be recognized by the
Internal Revenue Service (IRS) as tax exempt under 26 U.S.C. 501(c)(3) to which
contributions are deductible under 26 U.S.C. §170(c)(2) and that the organization is
further classified as a public charity under 26 U.S.C. §509(a). The Stuttering
Foundation of America currently is classified under 26 U.S.C. 501(c)(3) as a private
foundation and, therefore, does not meet the criteria.

This decision is final for administrative purposes for the 2007 CFC. It does not,
however, preclude your organization from applying to participate in future campaigns, at
either the national or local levels.

Sincerely,

Tricia Hollis
Chief of Staff and
Director of External Affairs

Cc: MacKenzie Canter, III, Attorney, Copiletz & Canter, LLC

# Exhibit E

This page can be found on the web at the following url:
http://www.opm.gov/cfc/html/cal2006-2007.asp

# U.S. Office of Personnel Management
Ensuring the Federal Government has an effective civilian workforce

    **Donors**        **Campaigns**        **Charities**

   

Combined Federal Campaign

*Disasters Emergencies*

**Search CFC:**

[ Submit Query ]

- ▫ **Welcome**
- ▫ **Top of the News**
- ▫ **Search Options**
- ▫ **Campaign Contacts**
- ▫ **10 Questions From Donors About Charities**
- ▫ **Accountability**
- ▫ **Regulations and Guidance**
- ▫ **Charity Qualifications and Materials**
- ▫ **Campaign Results, Trends and History**
- ▫ **FAQs**
- ▫ **Glossary**
- ▫ **Archives**
- ▫ **Email CFC**
- ▫ **USA.gov**

## 2006/2007 Calendar of Events

2006-2007 |2005/2006 | 2004/2005 |2003/2004

| Date | Event |
|------|-------|
| September 1 - December 15, 2006 | 2006 Combined Federal Campaign official solicitation period. -- *5 CFR §950.102(a)* |
| September 15, 2006 | Deadline for LFCCs to send copies of the 2006 CFC Audit Guide reports and supporting documentation to OPM. |
| November 28, 2006 | 2007 CFC National/International Application Training |
| December 1, 2006 | 2007 PCFO financial information for payroll disbursements due to OPM. (A form will be sent to PCFOs via email) |
| December 1, 2006 | OPM will begin to accept 2007 |

| | National/International applications |
|---|---|
| December 4, 2006 | 2007 Campaign Training for LFCCs, PCFOs and CFC National/International Federations<br><br>*Training will be held at the OPM offices in Washington, DC. Additional details will be transmitted via email.* |
| December 15, 2006 | OPM transmits PCFO financial information to payroll offices for disbursements to be made during the 2007 pay year. |
| December 15, 2006 | Recommended deadline for LFCC decisions on 2007 campaign mergers and expansions. |
| January 12, 2007 | Recommended deadline for LFCCs to advertise for 2007 PCFO applications via Public Notice. The application period must be open a minimum 21 calendar days, but it is recommended that it remain open for 30 calendar days. -- *5 CFR §950.104(c)* |
| January 31, 2007 | Closing date for National/International applications (Must be received in CFC Office |

| | no later than 5:00pm EST. Late applications will not be considered.) |
|---|---|
| February 15, 2007 | Recommended deadline for 2007 PCFO Applications to the LFCC. |
| March 1, 2007 | Deadline for Submission of Form 1417 (2006 campaign results) to OPM. |
| March 4-7, 2007 | CFC Regional Workshop – Seattle, WA |
| March 12, 2006 | Recommended opening date for 2007 local applications. (Recommended date only - LFCCs may determine the application period dates for their individual campaign- **however, all local application decisions must be completed by the LFCC no later than May 4, 2007.**) |
| March 15, 2007 | Deadline for LFCCs to select a PCFO -- *5 CFR §950.801(a)(3)* |
| March 15, 2007 | Deadline for PCFOs to mail to designated agencies the names and addresses of 2005 donors who wish to receive |

| | acknowledgement of their gift. -- *5 CFR §950.601(c)* |
|---|---|
| March 15, 2007 | Deadline for PCFOs to forward designation or "accounting" letters to designated charities and/or federations. -- *5 CFR §950.601(c)* |
| April 2, 2007 | Deadline for all campaigns to begin disbursement of 2006 campaign funds. -- *5 CFR §950.901(i)(2)* |
| April 10-13, 2007 | CFC Regional Workshop - New Orleans, LA |
| April 16, 2007 | Deadline for 2007 Local application period. Campaigns may set an earlier application deadline. Local organizations should contact their local CFC office for more information. |
| May 1, 2007 | Target date for notice of national/international organization eligibility decisions |
| May 4, 2007 | Deadline for LFCC to notify local organizations of eligibility decisions in writing. -- *5 CFR §950.204(e)* |
| May 22, 2007 | LFCCs begin receiving appeals within seven (7) business days of |

|  |  |
|---|---|
|  | the date of receipt of the initial LFCC decision or fourteen (14) calendar days from the date the decision was mailed, whichever is earlier. |
| June 15, 2007 | Deadline for decisions by LFCC on all local organization appeals. |
| July 31, 2007 | Target date for OPM to complete Local appeals. |
| July 31, 2007 | Target date for completion of 2007 National/International List of Participating Agencies (sent to campaigns via email and posted on OPM website) |
| August 1, 2007 | 2007 CFC Audit Guide reports and supporting documentation must be submitted to the LFCC. |
| September 1 - December 15, 2007 | 2007 Combined Federal Campaign Official Solicitation Period. -- *5 CFR §950.102(a)* |
| September 15, 2007 | Deadline for LFCCs to send copies of the 2007 CFC Audit Guide reports and supporting documentation to OPM. |
| December 1, 2007 | OPM will begin to accept 2008 |

|  | National/International Applications |
|---|---|

**U.S. Office of Personnel Management** 1900 E Street NW, Washington, DC 20415 | (202) 606-1800 📄
| TTY (202) 606-2532

# Exhibit F

§ 930.215                                Title 5—Administrative Personnel

ered by the annual leave to his/her credit. An agency may take action under this paragraph only with the prior approval of the Board.

(c) *Exceptions from procedures.* The procedures in this subpart governing the removal of administrative law judges do not apply in making dismissals requested by OPM under § 5.2 and § 5.4 of this chapter, nor to dismissals made by agencies in the interest of national security.

(5 U.S.C. 7701, et seq.)

[33 FR 12519, Sept. 4, 1968, as amended at 44 FR 48955, Aug. 21, 1979]

§ 930.215  Reduction in force.

(a) *Service date.* The service date for the purpose of reductions in force of administrative law judges reflects the length of Federal Government service.

(b) *Determination of tenure groups.* In determining retention standing in a reduction in force, each agency shall classify its administrative law judges in groups and subgroups according to tenure of employment and veteran preference in the manner prescribed in Part 351 of this chapter. However, as administrative law judges are not given performance ratings, the provisions in Part 351 of this chapter referring to the effect of performance ratings on retention standing are not applicable to administrative law judges.

(c) *Status of administrative law judges who are reached in reduction in force.* (1) OPM, on request of an administrative law judge who has been notified he is to be separated, furloughed, or demoted because of a reduction in force, shall place his name on:

(i) OPM's priority referral list for the grade in which he last served and for all lower grades; and

(ii) The open competitive administrative law judge register, ahead of all other eligibles, for the grade from which he was separated, furloughed, or demoted as an administrative law judge and for all lower grades. When more than one administrative law judge is affected, OPM shall rate the qualifications of the several judges and relative standing at the top of the register is based on these ratings.

(2) An administrative law judge may file a request under paragraph (c)(1)

of this section at any time after the receipt of the reduction-in-force notice but not later than 90 days after the date of separation, furlough, or demotion. He shall file with his request a Standard Form 171 and a copy of the reduction-in-force notice.

(3) When there is no administrative law judge on the agency's reemployment priority list, but there is an administrative law judge who has been placed on the priority referral list (paragraph (c)(1)(i) of this section) or on the top of the open competitive register for priority certification (paragraph (c)(1)(ii) of this section), the agency may fill a vacant administrative law judge position only by selection from the priority referral list or the register, unless it obtains the prior approval of OPM under § 930.203(b), § 930.204, § 930.205, § 930.206, or § 930.207.

(4) Referral, certification, and selection of administrative law judges from the agency's reemployment priority list, OPM's priority referral list, or the open competitive register are made without regard to selective certification procedures applied in original appointment.

(d) *Retention preference regulations.* The reduction-in-force regulations for use in a reduction in force (Part 351 of this chapter), except as modified by this section, apply to reductions in force of administrative law judges.

## PART 950—SOLICITATION OF FEDERAL CIVILIAN AND UNIFORMED SERVICE PERSONNEL FOR CONTRIBUTIONS TO PRIVATE VOLUNTARY ORGANIZATIONS

### Subpart A—Administration and General Provisions

Sec.

950.101  Definitions.
950.103  Summary description of the program.
950.105  Federal policy on civic activity.
950.107  Preventing coercive activity.

### Subpart B—Organization and Functional Responsibilities

950.201  Development of policy and procedures.
950.203  Program administration.

676

**Chapter I—Office of Personnel Management**                    **§ 950.101**

Sec.
950.205  Program coordination.
950.207  Local voluntary agency representatives.
950.209  Local Federal agency heads.
950.211  Local Federal coordinating committees.
950.213  Avoidance of conflicts of interest.

### Subpart C—Campaign Arrangements for Voluntary Agencies

950.301  Types of voluntary agencies.
950.303  Types of fund-raising methods.
950.305  Considerations in making Federal arrangements.
950.307  Definition of terms used in Federal arrangements.
950.309  Federated and overseas campaigns.
950.311  Off-the-job solicitation at places of employment.

### Subpart D—Eligibility Requirements for National Voluntary Agencies

950.401  Purpose.
950.403  General requirements for National Agencies.
950.405  Specific requirements.
950.407  Application requirements.
950.409  Public announcement of recognized agencies and assigned periods.
Appendix A to Subpart D—Source of funds and costs report.
Appendix B to Subpart D—Certificate.

### Subpart E—The Local Combined Federal Campaign

950.501  Authorized local voluntary agencies.
950.503  Participation in Federal campaigns by local affiliated agencies.
950.505  Responsibility of local Federal coordinating committees.
950.507  Local CFC plan.
950.509  Organizing the local campaign: The Principal Combined Fund Organization.
950.511  Basic local CFC ground rules.
950.513  Contributions.
950.515  Dollar goals.
950.517  Suggested giving guides and voluntary giving.
950.519  Central receipt and accounting for contributions.
950.521  Campaign and publicity materials.
950.523  Payroll withholding.
950.525  National coordination and reporting.

AUTHORITY: E.O. No. 12353 (March 23, 1982), 47 FR 12785 (March 25, 1982), 3 CFR, 1982 Comp., p. 139, and E.O. No. 12404 (February 10, 1983), 48 FR 6685 (February 15, 1982).

SOURCE: 48 FR 34914, Aug. 1, 1983, unless otherwise noted.

### Subpart A—Administration and General Provisions

**§ 950.101  Definitions.**

(a)(1) The terms "voluntary agency," "voluntary health and welfare agency," "voluntary charitable agency," and "voluntary charitable health and welfare agency" mean an organization that:

(i) Is organized and operated for the purpose of rendering, or of materially or financially supporting the rendering of, one or more of the following services directly to, and for the direct benefit of, human beings:

(A) Delivery of health care to ill or infirm individuals;

(B) Education and training of personnel for the delivery of health care to ill or infirm individuals;

(C) Health research for the benefit of ill or infirm individuals;

(D) Delivery of education, training, and care to physically and mentally handicapped individuals;

(E) Treatment, care, rehabilitation, and counseling of juvenile delinquents, criminals, released convicts, persons who abuse drugs or alcohol, persons who are victims of intra-family violence or abuse, persons who are otherwise in need of social adjustment and rehabilitation, and the families of such persons;

(F) Relief of victims of crime, war, casualty, famine, natural disasters, and other catastrophes and emergencies;

(G) Neighborhood and community-wide services that directly assist needy, poor, and indigent individuals, including provision of emergency relief and shelter, recreation, transportation, the preparation and delivery of meals, educational opportunities, and job training;

(H) Legal aid services that are provided to needy, poor, and indigent individuals solely because of their inability to afford legal counsel and without a policy or practice of discrimination for or against the kind of cause, claim, or defense of the individual;

(I) Protection of families that, on account of need, poverty, indigence, or emergency, are in long-term or short-term need of family, child care, and maternity services, child and marriage counseling, foster care, and guidance or assistance in the management and maintenance of the home and household;

(J) Relief of needy, poor, and indigent infants and children, and of orphans, including the provision of adoption services;

(K) Relief of needy, poor, and indigent adults and of the elderly;

(L) Assistance, consistent with the mission of the Department of Defense, to members of the armed forces and their families;

(M) Assistance, consistent with the mission of the Federal agency or facility involved, to members of its staff or service who, by reason of geographic isolation, emergency conditions, injury in the line of duty, or other extraordinary circumstances, have exceptional health or welfare needs; or

(N) Lessening of the burdens of government with respect to the provision of any of the foregoing services;

(ii) Meets all eligibility requirements established in this Part; and can show that it met all such requirements for the full fiscal year of the organization for the period immediately preceding the closing date established by the Director for the submission of its application for admission to the Combined Federal Campaign for a particular year;

(iii) Is an organization described in, and qualifying under, 26 U.S.C. 501(c)(3); is not an "action organization" within the meaning of 26 CFR 1.501(c).3)–1(3); and is eligible to receive tax-deductible contributions under 26 U.S.C. 170;

(iv) Does not participate in, or intervene directly or indirectly in, any political campaign on behalf of or in opposition to any candidate for public office, or on behalf of any side or position in a public referendum, initiative, or similar procedure; and

(v) Except as provided in 5 CFR 950.101(a)(4), has articles of organization that do not expressly empower the organization to, and the organization does not, expend more than the proportions set forth in 5 CFR 950.101(a)(2) of its total expenditures on any or all of the following activities:

(A) Activities that are not in furtherance of the purposes set forth in 5 CFR 950.101(a)(1)(i);

(B) Activities (other than activities directly related to the organization's participation in the Combined Federal Campaign) for purposes of influencing legislation or rulemaking at any level of Federal, State, or local government; and

(C) Activities for purposes of litigation (including contributing to the expenses thereof), other than litigation undertaken as a necessary part of the provision of legal aid services as set forth in 5 CFR 950.101(a)(1)(i)(H); provided that the activities described in this paragraph (5 CFR 950.101(a)(1)(v)(C)) shall not include activities to protect the existence of the organization, its tax exempt status, its participation in the Combined Federal Campaign, or its own direct and private interests, as opposed to the interests of the causes or policy goals that it supports.

(2) The maximum level of expenditures permitted by 5 CFR 950.101(a)(1)(v) without disqualifying an organization from participation in the Combined Federal Campaign shall be 15% of the organization's total annual expenditures;

provided that the level of expenditures thus made in the aggregate, on any and all activities identified in 5 CFR 950.101(a)(1)(v) may not, in any one year, exceed the sum of $1,000,000; and provided further that no more than one-fourth of the maximum level of expenditures thus made may be expended in any one year as grass roots expenditures.

(3) For purposes of the preceding paragraph (5 CFR 950.101(a)(2)), the following definitions shall apply:

(i) The term "influencing legislation" shall have the same meaning that it has in 26 U.S.C. 4911(d);

(ii) The term "influencing rulemaking" shall have the same meaning that the term "influencing legislation" in 26 U.S.C. 4911(d) would have if the term "rulemaking" were substituted

678

therein for the term "legislation", and the term "government agency" were substituted therein for the term "legislative body";

(iii) The term "rulemaking" shall have the same meaning that the term "rule making" has in 5 U.S.C. 551(5);

(iv) The term "expenditures" shall mean all money expended or debts incurred by the organization;

(v) The term "total annual expenditures" shall mean all expenditures made by the organization in its fiscal year; and

(vi) The term "grass roots expenditures" shall mean all expenditures made by the organization for the purposes described in 26 U.S.C. 4911(d)(1)(A) and for the purposes that would be described in 26 U.S.C. 4911(d)(1)(A) if the term "rulemaking" were substituted therein for the term "legislation."

(4) An organization that has been notified by the Director that it does not satisfy the requirements of 5 CFR 950.101(a)(1)(v) may nonetheless petition the Director for inclusion in the Combined Federal Campaign. The Director shall, from time to time, announce through the Federal Personnel Manual System or other appropriate instruments the time, place, and manner in which such a petition may be filed. The petition shall set forth specific facts and circumstances in support thereof. The Director shall grant the petition if he determines that the organization's activities described in paragraphs (A), (B), and (C) of 5 CFR 950.101(a)(1)(v), taken as a whole:

(i) Do not significantly exceed the limits described in 5 CFR 950.101(a)(2), taking into account other indices of activity not adequately accounted for by the measurement of expenditures (such as the use of volunteer services or in-kind contributions); and

(ii) Are in direct furtherance of the organization's activities described in 5 CFR 950.101(a)(1)(i). Any such determination by the Director shall be in writing, shall succinctly state the basis for the determination, and shall be available to the public.

(b) Campaign terms:

(1) "Director" shall mean the Director of the United States Office of Personnel Management, or his delegate;

(2) "Employee" shall mean any person employed by the government of the United States of any branch, unit, or instrumentality thereof, including persons in the civil service and in the uniform services;

(3) "Combined Federal Campaign" or "Campaign" or "CFC" shall mean the fund-raising program established and administered by the Director pursuant to Executive Order No. 12353, as amended by Executive Order No. 12404, and any subsidiary units of such program;

(4) "Community" shall mean a community that is defined either by generally recognized geographic bounds or by its relationship to an isolated government installation;

(5) "Direct Contributions" shall mean gifts, in cash or in donated in-kind material, given by individuals and/or other non-governmental sources directly to the spending health and welfare organization.

(6) "Indirect Contributions" shall mean gifts, in cash or in donated in-kind material, given to the spending health and welfare organizations by another health and welfare organization, but not transfers, dues or other funds from affiliated organizations or government, which are not to be considered as public "contributions."

(c) The term "Principal Combined Fund Organization" (or Organization) means the organization in a local Combined Federal Campaign that has been selected and so prescribed in § 950.509 of this Part to manage and administer the local Combined Federal Campaign, subject to the direction and control of the local Federal Coordinating Committee and the Director. All of its Campaign duties shall be conducted under the title "Principal Combined Fund Organization for ———— (local CFC)" and not under the corporate title of the qualifying federation.

**§ 950.103  Summary description of the program.**

(a) *Eligibility of National Voluntary Agencies.* National voluntary agencies apply to the Director each year for on-

§ 950.105

the-job solicitation privileges in the Federal Government. Early each calendar year, the Director issues a list of agencies that have met the prescribed standards as to program objective, eligibility, administrative integrity, and financial responsibility.

(b) *Assigned Campaign Periods.* In the United States, Combined Federal Campaigns are held when set by the Director, usually in the fall; the DOD Overseas Combined Federal Campaign is also usually held during the fall. The solicitation period for a combined Federal Campaign is normally limited to six weeks, but may be extended for good cause by the local Federal Coordinating Committee.

(c) *Combined Federal Campaign.* At locations where there are 200 or more Federal personnel, all campaigns must be consolidated into a single, annual drive, known as the Combined Federal Campaign. The campaign is managed by the organization designated as the Principal Combined Fund Organization, in accord with § 950.509 of this Part, under the supervision of the local Federal Coordinating Committee and the Director. Such campaigns are conducted under administrative arrangements that provide for individual voluntary agency recognition, description of each voluntary agency's services, and allocation of contributions in accordance with specific designations by donors.

(d) *Decentralized Operations.* The federalism principle shall guide Campaign organization. Following designation of a Principal Combined Fund Organization, local representatives of that Organization initiate campaigns in their local community by direct contact with the heads of Federal offices and installations. Each Federal agency conducts its own solicitation among its employees, using campaign materials, supplies, and speakers furnished by or through the Principal Combined Fund Organization, under the direction of the local Federal Coordinating Committee and the Director.

(e) *Solicitation Methods.* Employee solicitations are conducted during duty hours using methods that permit true voluntary giving and reserve to the individual the option of disclosing any gift or keeping it confidential.

(f) *Off-the-Job Solicitation.* Many worthy voluntary agencies do not participate in the on-the-job program because they do not wish to join in its coordinated arrangements or because they cannot meet the requirements for eligibility. Such voluntary agencies may solicit Federal employees at their homes as they do other citizens of the community, or appeal to them through union, veteran, civic, professional, political, legal defense, or other private organizations. In addition, limited arrangements may be made for off-the-job solicitations on military installations and at entrances to Federal buildings.

(g) *Prohibited Discrimination.* The Campaign is a means for promoting true voluntary charity among members of the Federal community. Because of the participation of the Government in organizing and carrying out the Campaign, all kinds of discrimination prohibited by law to the Government must be proscribed in the Campaign. Accordingly, discrimination for or against any individual or group on account of race, color, religion, sex, national origin of citizens, age, handicap, or political affiliation is prohibited in all aspects of management and execution of the Campaign. Nothing herein denies eligibility to any voluntary agency, which is otherwise eligible under this Part to participate in the Campaign, merely because such voluntary agency is organized by, on behalf of, or to serve persons of a particular race, color, religion, sex, national origin, age, or handicap.

§ 950.105  Federal Policy on civic activity.

Federal personnel are encouraged to participate actively in the work of voluntary agencies—as members of policy boards or committees, heads of local campaign units, or volunteer workers—to the extent consistent with Federal agency policy and prudent use of official time. They are encouraged also to devote private time to such volunteer work.

§ 950.107  Preventing coercive activity.

True voluntary giving is basic to Federal fund-raising activities. Actions that do not allow free choices or even

create the appearance that employees do not have a free choice to give or not to give, or to publicize their gifts or to keep them confidential, are contrary to Federal fund-raising policy. The following activities are not in accord with the intent of Federal fund-raising policy and, in the interest of preventing coercive activities in Federal fund-raising, are not permitted in Federal fund-raising campaigns:

(a) Supervisory solicitation of employees supervised;

(b) Setting 100% participation goals;

(c) Providing and using contributor lists for purposes other than the routine collection and forwarding of contributions and installment pledges;

(d) Establishing personal dollar goals and quotas; and

(e) Developing and using lists of noncontributors.

### Subpart B—Organization and Functional Responsibilities

**§ 950.201  Development of policy and procedures.**

(a) *Director, U.S. Office of Personnel Management.* Under Executive Orders No. 12353 (March 23, 1982), Charitable Fund-Raising, and No. 12404 (February 10, 1983), Charitable Fund-Raising, the Director is responsible for establishing charitable fund-raising policies and procedures in the Executive Branch. With the advice of appropriate interested persons and organizations and of the Executive departments and agencies concerned, he makes all basic policy, procedural, and eligibility decisions for the program. The Director may authorize the conduct of demonstration projects in one or more CFC locations to test alternative arrangements differing from those specified in this Part for the conduct of fund-raising activities in Federal agencies.

(b) *Eligibility Committees.* A National Eligibility Committee shall consist of a chairman and such other members selected by the Director as he deems necessary, who shall serve at the pleasure of the Director. Local eligibility shall be determined by the local Federal Coordinating Committees. The National Eligibility Committee is responsible for recommending to the Director:

(1) Eligibility determinations on national federations and national voluntary agencies;

(2) Modification of eligibility standards and requirements as needed; and

(3) Any other matters as requested by the Director.

**§ 950.203  Program administration.**

(a) *Federal Agency Heads.* The head of each Federal executive department and agency is responsible for:

(1) Seeing that voluntary fund-raising within the Federal department or agency is conducted in accordance with the policies and procedures prescribed by this Part;

(2) Designating a top-level representative as Fund-Raising Program Coordinator to work with the Director as necessary in the administration of the fund-raising program with the Federal agency;

(3) Assuring full participation and cooperation in local fund-raising campaigns by all installations of the Federal agency;

(4) Assuring that the policy of voluntary giving and clear employee choice is upheld during the fund-raising campaign; and

(5) Providing a mechanism to look into employee complaints of undue pressure and coercion in Federal fund-raising. Federal agencies shall provide procedures and assign responsibility for the investigation of such complaints. Personnel offices shall be responsible for informing employees of the proper organization channels for pursuing such complaints.

(b) *Fund-Raising Program Coordinators.* The responsibilities of Federal agency Fund-Raising Program Coordinators are to:

(1) Cooperate with the Director, the local Federal Coordinating Committee, and the Principal Combined Fund Organization in the development and operation of the program;

(2) Maintain direct liaison with the Office of the Director in the administration of the program;

(3) Publicize program requirements throughout the Federal department or agency;

§ 950.205

(4) Answer inquiries about the program from officials and employees and from external sources; and

(5) Investigate and arrange for any necessary corrective action on complaints that allege violation of fund-raising program requirements within the Federal agency.

§ 950.205  Program coordination.

The Director coordinates the Federal agencies' administration of the fund-raising program and maintains liaison with voluntary agencies.

§ 950.207  Local voluntary agency representatives.

Federated and national voluntary agencies provide their State and local representatives with policy and procedural guidance on the Federal program. The local representatives are responsible for furnishing educational materials, speakers, and campaign supplies as may be required and appropriate to the Federal program.

§ 950.209  Local Federal agency heads.

The head of the Federal department or agency provides the heads of the local Federal offices and installations with copies of the Federal fund-raising regulations. The local Federal agency heads are responsible for:

(a) Cooperating with representatives of the local Federal Coordinating Committee, the Principal Combined Fund Organization, and local Federal officials in organizing local Federal campaigns;

(b) Undertaking official campaigns within their offices or installations and providing active and vigorous support with equal emphasis for each authorized campaign;

(c) Assuring that personal solicitations on the job are organized and conducted in accordance with the procedures set in these regulations;

(d) Assuring that authorized campaigns are kept within reasonable administrative limits of official time and expense.

§ 950.211  Local Federal coordinating committees.

(a) When there are a number of Federal agency offices and installations in the same local area, some interagency coordination is necessary in order to achieve effective community-wide campaigns and to improve general understanding and compliance with the fund-raising program. The Director assigns the responsibility for local coordination to existing organizations of Federal agency heads whenever possible and to special committees where needed. The local Federal Coordinating Committee is authorized to make all decisions within the provisions and policies established in this Part on all aspects of the local campaign, including eligibility and the supervision of the local community campaign and the Principal Combined Fund Organization. Such decisions may be appealed, however, to the Director.

(b) *Authorized Local Federal Coordinating Committee.* Coordinating responsibility is assigned by the Director to one of the following organizations:

(1) Federal Executive Boards. The boards exist in principal cities of the United States for the purpose of improving interagency coordination. They are composed of local Federal agency heads who have been designated as Board members by the heads of their departments and agencies under Presidential authority.

(2) Federal Executive Associations and Federal Business Associations, self-organized associations of local Federal officials, and the Department of Defense National Policy Coordinating Committee.

(3) Fund-Raising Program Coordinating Committee. These committees are established in communities where there is no Federal Coordinating Committee in existence. Leadership in organizing such a committee is the responsibility of the head of the local Federal installation that has the largest number of civilian and uniformed services personnel. Local Federal agency heads or their designated representatives serve on the committee and determine all organizational arrangements.

(c) *Employee union representation.* In order to ensure employee participation in the planning and conduct of the CFC, employee representatives from the principal employee unions of local Federal installations should be invited to serve in whatever organiza-

tion exercises local coordinating responsibilities.

(d) *Fund-raising responsibilities.* Within the limits of the policies, procedures, and arrangements made nationally, the fund-raising responsibilities of local Federal Coordinating Committees are to:

(1) Facilitate local campaign arrangments. The Federal Coordinating Committee (i) names a high-level chairman for the authorized Federal campaigns, (ii) provides lists of Federal activities and their personnel strength, (iii) cooperates on interagency briefing sessions and kick-off meetings, and (iv) supports appropriate publicity measures needed to assure campaign success.

(2) Administer program requirements. The Coordinating Committee is responsible for organizing the local Combined Federal Campaign, supervising the activities of the Principal Combined Fund Organization, and acting upon any problems relating to a voluntary agency's noncompliance with the policies and procedures of the Federal fund-raising program.

(3) Develop understanding of campaign program policies and procedures and voluntary agency programs. The local Federal Coordinating Committee serves as the central medium for communicating programs, policies and procedures of the Campaign and for understanding the organizations employees are being asked to support and how employees can obtain services they may need from these organizations.

(e) *Principal Combined Fund Organization.* The local Federal Coordinating Committee will supervise a local Principal Combined Fund Organization. The Principal Combined Fund Organization will raise money from Federal employees and administre the local campaign, under the direction of the local Federal Coordinating Committee.

(f) *Communication and Resolution Procedures Through the Director, Office of Personnel Management.* Each local Federal agency head will receive fund-raising directions through his Federal agency channels and will raise questions that pertain to fund-raising activities within his Federal agency by the same means. However, the local Federal Coordinating Committee refers unresolved local fund-raising questions or problems that are common to several Federal agencies directly with the Director. The Director communicates directly with the chairman of the local Federal Coordinating Committee for information about the local fund-raising situation.

(g) *Integrity of local Federal coordinating committee.* A local Federal Coordinating Committee may not serve as a Principal Combined Fund Organization.

(h) *Review of local Federal coordinating committee eligibility decisions.* Local eligibility decisions shall be made by the local Federal Coordinating Committee. Local Committees shall determine whether a voluntary agency has direct, human health and welfare services available to Federal employees in the local campaign solicitation area. Such decisions shall be made at an open meeting of the local Federal Coordinating Committee and upon giving notice to interested parties. Interested parties denied admission to the Campaign may petition the local Federal Coordinating Committee to reconsider its denial of admission. Such petition for reconsideration may be dismissed as untimely unless it is received by the local Federal Coordinating Committee within ten (10) days after the petitioning party has received actural or constructive notice of the decision of which reconsideration is sought. A petition for reconsideration shall be supported by facts justifying reversal of the original decision. If the local Federal Coordinating Committee unanimously refuses to reconsider its decision, or reconsiders its decision and unanimously affirms the denial of admission, then its decision shall be final. If at least one member of the local Federal Coordinating Committee believes that the decision merits further review, or if the local Federal Coordinating Committee, having received a petition for reconsideration, fails to act thereon within ten (10) days of its actual receipt thereof, then the matter may be appealed, pursuant to the provisions of 5 CFR 950.525(e), to the Director, whose decision shall be final.

§ 950.213

**§ 950.213  Avoidance of conflicts of interest.**

Any Federal employee who serves on the Eligibility Committee, a local Federal Coordinating Committee, or as a Federal agency fund-raising program coordinator must not participate in any decision situations where, because of membership on the board or other affiliation with a voluntary agency, there could be or appear to be a conflict of interest.

## Subpart C—Campaign Arrangements for Voluntary Agencies

**§ 950.301  Types of voluntary agencies.**

Voluntary agencies are private, nonprofit, self-governing organizations financed primarily by contributions from the public. Some are national in scope, with a national organization that provides services at localities through State or local chapters or affiliates. Others are primarily local, both in form of organization and extent of services.

**§ 950.303  Types of fund-raising methods.**

(a) The methods used by voluntary agencies in public fund-raising shall be either federated or independent. A national *federated* group shall meet the same eligibility criteria as a national voluntary agency, and have at least 10 local voluntary agency presences in each of at least 300 local combined campaigns. In federated campaigns, local voluntary agency representatives join contractually into a single organization for fund-raising purposes. A local United Way, united fund, community chest, or other local federated group may be considered and supported as a single agency. Local chapters or affiliates of national agencies may form local federations or be admitted as additional participating members of national federated groups.

(b) An *independent* campaign is one conducted by a local unit of a national voluntary agency through its own fund-raising organization, or by a local non-affiliated agency which otherwise meets established eligibility criteria. Voluntary agencies may conduct independent campaigns or participate in a federation.

**§ 950.305  Considerations in making Federal arrangements.**

(a) *On-the-Job Solicitation.* In order to have only one *on-the-job solicitation,* i.e., a Combined Federal Campaign, individual appeals must be combined into a single joint campaign of eligible health and welfare organizations in conformance with the policies and procedures prescribed in this Part.

(b) *Campaign Arrangements Established Nationally.* Basic campaign arrangements are established by the Director. Local Federal agency heads and Coordinating Committees are not authorized to vary from the established arrangements except to the extent that local variations are expressly provided for in this Part.

(c) *Number of Solicitations.* Not more than one on-the-job solicitation will be made in any year at any location on behalf of voluntary agencies, except in the case of an emergency or disaster appeal for which specific prior approval has been granted by the Director.

(d) *Responsible Conduct.* In the event a national voluntary agency fails to adhere to the eligibility requirements or to the policies and procedures of the Federal program, solicitation privileges may be withdrawn by the Director at any time after due notice to the voluntary agency and opportunity for consultation.

**§ 950.307  Definition of terms used in Federal arrangements.**

(a) *Domestic Area.* The 50 United States, and the Commonwealth of Puerto Rico.

(b) *Overseas Area.* All other points in the world where Federal employees or members of the uniformed services are stationed.

(c) *Recognized National Voluntary Agency.* A voluntary agency that has been declared eligible by the Director for participation in campaigns in the Federal establishment.

(d) *National Voluntary Agency "Supported Primarily through United Ways, United Funds, and Community Chests."* A voluntary agency that generally solicits within the Federal establishment as a participating member of United Ways, United Funds, Com-

munity Chests, or other local federated groups that are members in good standing of, or are recognized by, United Way of America.

(e) *Federated Community.* A federated community is a geographical location within the domestic area where a federated fund-raising program exists. In a federated community, recognized national voluntary agencies can join a federated campaign group or participate individually. However, voluntary agencies "supported primarily through United Ways, United Funds, and Community Chests" are authorized to solicit on-the-job in a federated community only as participating members of the local United Way, fund, or chest.

(f) *Local non-affiliated voluntary health and welfare agency.* Local non-affiliated voluntary agencies are voluntary agencies that provide health and welfare services in the local area, and otherwise meet the established eligibility criteria of this Part, other than the national scope of 5 CFR 950.403(c).

**§ 950.309  Federated and overseas campaigns.**

(a) *Authorized Federated Groups.* (1) United Way of America and any local United Way, United Fund, Community Chest, or other local federated group that is a member in good standing of, or is recognized by, United Way of America and that meets the eligibility requirements in these regulations is authorized on-the-job solicitation privileges in its local campaign area on behalf of any of its member voluntary agencies that also meet these requirements. Certifications as to the eligibility requirements on behalf of local United Ways, United Funds, and Community Chests and each member voluntary agency will be made by United Way of America to the Director.

(2) The American Red Cross, the National Health Agencies, the International Service Agencies, the National Service Agencies, and such other federated groups which shall meet the eligibility standards under this Part, as determined by the Director, shall be authorized on-the-job solicitation privileges on behalf of their member voluntary agencies that also meet all requirements of this Part. Certifica-

tion for each subunit that they meet such requirements will be made to the Director.

(3) A member voluntary agency of a federated group need meet only the specific eligibility requirements of § 950.405. Member agencies of federated groups are responsible for furnishing to their respective federated groups adequate evidence of their compliance with all eligibility requirements of this Part, and federated groups are responsible for ensuring that such adequate evidence is properly furnished and, as needed, revised. Failure by a member voluntary agency to meet the requirements will disqualify the federated group that certified such voluntary agency from soliciting contributions, unless after notice to the group of intent to cancel corrective action is taken to the satisfaction of the Director. If appropriate corrective action is not taken, the Director may disqualify the federated group.

(b) *Local Federated Agencies.* To be eligible for participation in the Federal fund-raising program, the local federated group must be broadly representative in its board and committee membership of the community and must be making bona fide efforts to meet community needs. Requirements for participation in a local federated group must be in writing, available to the public, reasonable, and applied fairly and uniformly to all local voluntary agencies requesting participation. Procedures must be provided by the federated group for at least one review of any decision denying participation requested by a local voluntary agency. The review must be conducted by a committee or other body within the federated group that did not participate in the original decision. A written statement of the reasons for denial must be provided to the applicant voluntary agency. Where a local chapter or affiliate of a national voluntary agency is precluded from independent participation in the Federal fund-raising program because the local voluntary agency is not approved for federated participation, such chapter or affiliate may request the Director, after securing a report by the federated group, to determine whether or not

the reasons for its non-approval were "arbitrary and capricious."

(c) *"Causes."* Solicitation for a health or other "cause," e.g., for "Mental Health" or "Heart Disease," without identification of the specific voluntary agency for which the funds are sought, is not authorized. All funds collected from Federal personnel must be allocated only to specific voluntary agencies.

(d) *Designation of Federated Area.* The recognition of a local Federal Coordinating Committee by the Director designates the community served by that Committee as a recognized local campaign site. Two or more authorized local Federal Coordinating Committees are authorized to develop coordinated solicitations best suited to the needs of their localities.

(e) *Overseas Campaign—(1) DoD Overseas Combined Federal Campaign.*

(i) A Combined Federal Campaign is authorized for all Department of Defense activities in the overseas areas during a six-week period in the fall. Voluntary agencies that may participate in the Overseas Combined Federal Campaign will consist of: The American Red Cross; the United Service Organization; those national health agencies recognized for campaigns in the domestic area (the Federal Service Campaign for the National Health Agencies); and those international service agencies recognized for campaigns in the domestic area, and any national or federated voluntary agency recognized for overseas campaigns. Any of these voluntary agencies is eligible to be a Principal Combined Fund Organization.

(ii) Contributors to the DoD Overseas Combined Federal Campaign designate their gifts to one or more of the eligible agencies or the Principal Combined Fund Organization. The Principal Combined Fund Organization for the overseas campaign shall pay the amounts collected directly to the designated voluntary agencies, less "shrinkage" and the processing fee, if any, that is approved in advance of the campaign by the Federal official in the overseas area responsible for the local campaign arrangements.

(2) *Local Voluntary Agency Campaigns.* The heads of overseas offices and installations may, at their discretion, permit the solicitation of their military and civilian personnel for local voluntary agencies. Such campaigns will be conducted in accordance with the basic policies and procedures of the Federal program and at times which do not conflict with the DoD overseas Combined Federal Campaign period. The eligibility standards in Subpart D will be used as guidelines in determining the eligibility of local voluntary agencies. Federal leadership in organizing such campaigns will be assumed by the head of the overseas Federal establishment that has the largest number of Government personnel in the campaign area.

(3) *Optional Participation by Certain Civilian Agencies.* Federal civilian departments and agencies that have traditionally considered their overseas personnel as members of the National Capital Area for fund-raising purposes may continue this practice.

(4) *On-Base Health and Welfare Activities.* On-base morale, welfare and recreational activities may be supported from CFC funds.

§ 950.311  Off-the-job solicitation at places of employment.

Voluntary agencies that are not recognized for the on-the-job program may be authorized off-the-job solicitation privileges at places of Federal employment under such reasonable conditions as may be specified by the local head of the Federal installation involved, provided that such conditions are not inconsistent with this Part. Dual solicitation is not authorized, so this privilege cannot be made available to any voluntary agency that is included in the on-the-job program.

(a) *Family Quarters on Military Installations.* Voluntary agencies may be permitted to solicit at private residences or at similar on-post family public quarters in unrestricted areas of military installations at the discretion of the local commander. However, such solicitation may not be conducted by military or civilian personnel in their official capacity during duty or non-duty hours, nor may such solicita-

tion be conducted as an official command-sponsored project. This restriction is not intended to prohibit or to discourage military and civilian personnel from participating as private citizens in voluntary agency activities during their off-duty hours.

(b) *Public Entrances of Federal Buildings and Installations.* Voluntary agencies that engage in limited or specialized methods of solicitation—for example, the use of "poppies" or other similar tokens by veterans organizations—may be permitted to solicit at entrances or in concourses or lobbies of Federal buildings or installations normally open to the general public. Solicitation privileges will be governed by the rules issued by the General Services Administration pursuant to the Public Buildings Cooperative Use Act of 1976 or later modification, or other applicable Government legal authority.

## Subpart D—Eligibility Requirements for National Voluntary Agencies

**§ 950.401  Purpose.**

These eligibility requirements are established to ensure that:

(a) Only responsible and worthy voluntary agencies are permitted to solicit on the job in Federal installations;

(b) The funds contributed by Federal personnel will be used effectively and for the announced purposes of the soliciting voluntary agencies; and

(c) All recognized national voluntary agencies meet requirements of Executive Order No. 12353 (March 23, 1982) and Executive Order No. 12404 (February 10, 1983).

**§ 950.403  General requirements for National Agencies.**

(a) *Type of Agency.* Only nonprofit, tax-exempt, charitable organizations, supported by voluntary contributions from the general public and providing direct and substantial health and welfare and other appropriate national voluntary services through their national organization, affiliates or representatives are eligible for approval. All such services must be consistent with the policies of the United States Government.

(b) *Integrity of Operations.* Only voluntary agencies having a high degree of integrity and responsibility in the conduct of their affairs will be approved. Funds contributed to such organizations by Federal personnel must be effectively used for the announced purposes of the voluntary agency.

(c) *National Scope.* A national voluntary agency must demonstrate that:

(1) It is organized on a national scale with a national board of directors that represents its constituent parts, and exercises close supervision over the operations and fund-raising policies of any local chapters or affiliates.

(2) It has earned goodwill and acceptability throughout the United States, particularly in cities or communities within which or nearby are Federal offices or installations with large numbers of personnel.

(3) It has national scope, that is, scale, goodwill, and acceptability; this may be demonstrated as follows:

(i) By a voluntary agency's provision of a service in many (c. one quarter) States, or in several foreign countries, or in several parts of one large foreign nation;

(ii) By derivation of contributor support from many parts of the Nation;

(iii) By the extent of public support and the number and the geographical spread of contributors; and

(iv) By the national character of any public campaign, which may be shown by an applicant having at least 200 local chapters, affiliates, or representatives that promote its campaign.

(d) *Type of Campaign.* Approval will be granted only for fund-raising campaigns in support of current operations. Capital fund campaigns are not authorized.

**§ 950.405  Specific requirements.**

(a) *Eligibility.* To be eligible for approval by the Director for participation in the Combined Federal Campaign, a national voluntary agency must be one:

(1) That is a voluntary charitable health and welfare agency as defined in 5 CFR 950.101;

(2) That is voluntary and broadly supported by the public, meaning (i) that it is organized as a not-for-profit

corporation or association under the laws of the United States, a State, a territory, or the District of Columbia; (ii) that it is classified as tax-exempt under Section 501(c)(3), and is eligible to receive tax deductible contributions under Section 170 of the Internal Revenue Code of 1954, as amended; and (iii) that, with the exception of voluntary agencies whose revenues are affected by unusual or emergency circumstances, as determined by the Director, it has received at least 50 percent of its revenues from sources other than the Federal Government or at least 20 percent of its revenues from direct and/or indirect contributions in the year immediately preceding any year in which it seeks to participate in the Combined Federal Campaign (organizations founded within the past three years participating in the CFC before this Part became effective will have three (3) years, and all other organizations in the CFC will have one (1) year to comply with the 50 percent/20 percent requirement);

(3) That is directed by an active board of directors, a majority of whose members serve without compensation; that adopts and employs the *Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations*; that prepares and makes available to the general public an annual financial report prepared in accordance with the *Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations* and is certified, using the form in Appendix B to this Subpart, by an independent certified public accountant; that provides for an annual external audit by an independent certified public accountant;

(4) That can demonstrate to the Director, if its fund-raising and administrative expense is in excess of 25 percent of total support and revenue, that is actual expense for those purposes is reasonable under all the circumstances in its case;

(5) That ensures that its publicity and promotional activities are based upon its actual program and operations, are truthful and nondeceptive, and include all material facts; and

(6) That has a direct and substantial presence in the local campaign community, meaning that Federal employees and their families are able to receive, within a reasonable distance from their duty stations or homes, services that are directly provided by the voluntary agency or that demonstrably depend upon, or derive from, the specific research, educational, support, or similar activities of the particular voluntary agency. Demonstration of direct and substantial presence in the local campaign community, including adequate documentation thereof, shall at all times, and for all purposes, be the burden of the voluntary agency. Such direct and substantial presence shall be determined in light of the totality of the circumstances in each case, including, but not necessarily limited to, consideration of the following factors:

(i) The availability of services, such as examinations, treatments, inoculations, preventative care, counseling, training, scholarship assistance, transportation, feeding, institutionalization, sheltering, and clothing, to persons working and living in the local campaign community.

(ii) The presence within the local campaign community, or within reasonable commuting distance thereof, of a facility at which services are rendered or through which they may be obtained, such as an office, clinic, mobile unit, field agency, or direct provider; or specific demonstrable effects of research, such as personnel or facilities engaged therein or specific local applications thereof.

(iii) The availability to persons working or residing in the local campaign community of communication with the voluntary charitable agency by means of home visits, transportation, or telephone calls, provided by the voluntary agency at no charge to the recipient or beneficiary of the service.

(iv) Awareness within the local Federal community of the existence, activities, and services of the voluntary charitable agency.

*Provided*, that voluntary charitable health and welfare agencies whose services are rendered exclusively or in substantial preponderance overseas, and that meet all the eligibility criteria set forth in this Part except for the

requirement of direct and substantial presence in the local campaign community, shall be eligible to participate in each local solicitation area of the Combine Federal Campaign.

(b) *Fund-Raising Practices.* The voluntary agency's publicity and promotional activities must assure protection against unauthorized use of its contributors lists; must permit no payment of commissions, kickbacks, finder fees, percentages, bonuses, or overrides for fundraising; and must permit no general telephone solicitation of the public.

(c) *Reports—(1) Annual Report.* The voluntary agency must prepare an annual report to the general public that includes a full description of the voluntary agency's activities and accomplishments and the names of chief administrative personnnel.

(2) *Combined Reports.* Voluntary agencies which represent more than one subunit must prepare a combined annual financial report to the general public in accordance with the *Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations.* The combined report shall include all income and expenditures for the national operations and all chapters, committees, affiliates, or satellites.

(3) *Source of Funds and Costs Report.* The voluntary agency must file a special report with the Director that discloses, on a consolidated basis, the agency's (including chapters and affiliates) sources of funds, fund-raising expense, and use of net funds in its most recent fiscal year.

**§ 950.407  Application requirements.**

(a) *Federated Groups.* The American Red Cross, United Ways and local community chests or united funds that are members in good standing of or are recognized by United Way of America, the National Health Agencies, the International Service Agencies, the National Service Agencies, and such other federated groups as shall be recognized under Subpart C, do not need to apply separately as National Agencies. For purposes of this Part, the American Red Cross and its chapters are recognized as operating an accounting and financial system in

substantial compliance with the *Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations* and certification to this effect by local chapters is not required.

(b) *National Agencies.* In order to be considered for solicitation privileges in domestic or overseas campaigns in the Federal service, each national voluntary agency must file an application annually. National voluntary agencies that have already been approved for fund-raising privileges in the Federal service are not required to submit the information requested in paragraphs (f) (2), (3), (4), and (8) of this section, except where there has been a substantial or significant change in these items; for example, a change in purpose of the organization or a decline in chapter coverage or activity. They are required to furnish information in paragraphs (f) (1), (5), (6), (7), (9), (10), (11), and (12) of this section.

(c) *Time and Place of Filing.* Applications must be filed with the Office of the Director, United States Office of Personnel Management, Washington, D.C. 20415. Applicants are urged to file as early as possible in each calendar year. Deadlines by which filings must be made will be announced each year through the Federal Personnel Manual System, CFC memoranda, and other appropriate instruments.

(d) *National Eligibility.* The Director, with the assistance of a National Eligibility Committee of government officials, employee organization leaders, and private citizens, uses the information filed with the agency's application and derived from other responsible sources to make his decision on an agency's eligibility. The National Eligibility Committee shall consider the applications fairly, hold meetings and hearings as appropriate, and make recommendations to the Director. National eligibility shall only give a presumption of local eligibility; voluntary agencies must also meet the requirements of § 950.405(a)(6). Where a local chapter of an eligible national voluntary agency is denied participation in a local campaign, it may appeal to the Director, whose decision shall be final.

(e) *Notice of Decision.* Applicants for national eligibility are to be notified of

the decisions as soon as possible after filing. If dissatisfied with the Director's decision, the applicants may request reconsideration of the decision by the Director. The Director's decision upon reconsideration will be final.

(f) *Form and Content of Application.* Applications shall be filed in the following form and will include the information, documents, and data specified:

(1) Corporate name and fiscal year;

(2) Statement of origin, purpose, and structure of organization, including information to show clearly that the voluntary agency meets each of the general and specific requirements of this Subpart;

(3) A list of chapters, affiliates, or representatives in alphabetical order by State; and under the State, a list of cities with chapter, affiliate, or representative by names and addresses;

(4) Demonstration of the good will and acceptability of the organization throughout the United States;

(5) Outline of the program, particularly the nature of the direct services provided by the voluntary agency and under what subparagraph of section 950.101(a)(1)(i) the application is made, written assurance of compliance with all other requirements of § 950.101(a) and §§ 950.403 through 950.405;

(6) Description of board of director's administrative activity in past year and list of current board members' names, addresses, and businesses or professions;

(7) Certification by an independent certified public accountant of compliance with an acceptable financial system and adoption of the Uniform Standards;

(8) Statement of compliance with all factors in the section on fund-raising practice;

(9) Copy of latest annual report;

(10) Copy of latest financial report prepared in accordance with the *Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations* and certification by an independent certified public accountant that the report was prepared in conformity with the Standards;

(11) Copy of latest external audit by an independent certified public accountant; and

(12) A special report to the Director, consistent with the reporting requirements of the Standards. The report must include the voluntary agency's sources of funds, expenditures by program service, and supporting services with fund-raising and other expenditures listed separately. The report must cover the most recent fiscal year and represent a consolidated statement of national and affiliate income and expenditures. The amount of contributions received from United Ways, united funds or community chests, from Federal service campaigns, and the total from all other sources, especially transfers, dues, or other funds from affiliated organizations, must be separately identified and shown. All entries must be reported in dollar and percent of total contribution. The report must be furnished in accordance with the format shown in the appendix to this Subpart.

(g) The Director shall be authorized to investigate facts and circumstances on issues relating to eligibility raised under this Part.

§ 950.409   Public announcement of recognized agencies and assigned periods.

Early in the calendar year the Director will announce the names of all national voluntary agencies eligible for participation in the Federal fund-raising program for the ensuing campaign year.

APPENDIX A TO SUBPART D—SOURCE OF FUNDS AND COSTS REPORT (FOR THE YEAR ENDING————)

Organization: ————————————————

Public support:
  Received Directly.................................$...........
    Contributions................................... ...........
    Special Events (net of direct benefit costs of $————) ...... ...........
    Legacies and bequests ..................... ...........
    Subtotal............................................ ...........
Received Indirectly:
  Federated campaigns (e.g., United Way)........... ...........
  Federal service campaigns..................... ...........
  Other Contributions ............................. ...........
    Subtotal ........................................ ...........
  Total Support from the Public.................... ...........
Revenue:
  Grants from Federal government agencies (including grants in-kind)........................ ...........

690

| | |
|---|---|
| Grants from state or local government agencies (including Medicaid) | .......... |
| Memberships | .......... |
| Program service fees (including Medicare) | .......... |
| Sales of materials and services to member units (net of direct expenses) | .......... |
| Sales of materials and services to the public (net of direct expenses) | .......... |
| Transfers, dues, etc. from affiliated organizations, etc | .......... |
| Investment income | .......... |
| Gains on investment transactions | .......... |
| Other income | .......... |
| Total revenue | .......... |
| Total public support and revenue | .......... |
| Expenses: | |
| Program services: | |
| (program) | .......... |
| (program) | .......... |
| (program) | .......... |
| (program) | .......... |
| Subtotal | .......... |
| Supporting services: | |
| Management and general | .......... |
| Fund raising | .......... |
| Subtotal | .......... |
| Total expenses | .......... |
| Excess (deficiency) of public support and revenue over expenses | .......... |

APPENDIX B TO SUBPART D—CERTIFICATE

Name of Organization: ————————

I certify that the above-named organization has adopted, and has prepared its financial statements in accordance with the *Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations* (1974 Edition) prepared and published by the National Health Council, Inc., the National Assembly of National Voluntary Health and Organizations, Inc. and the United Way of America.

Signature: ————————————

Address: ————————————

## Subpart E—The Local Combined Federal Campaign

### § 950.501 Authorized local voluntary agencies.

(a) A local voluntary agency shall meet the same criteria as a national voluntary agency, except national scope, and shall be evaluated under the criteria set forth in this Part by the local Federal Coordinating Committee recognized by the Director for that local community.

(b) A local affiliate of an eligible national agency shall be given a presumption of eligibility for admission to the local campaign by the local Federal Coordinating Committee, but it must also meet the local presence criterion of 5 CFR 950.405(a)(6).

(c) Local non-affiliated voluntary health and welfare agencies shall be evaluated separately by the local Federal Coordinating Committee to determine whether they are eligible under this Part.

(d) If a local non-affiliated voluntary agency receives less than $3,000 in designated contributions in a local campaign for a single year, then the local Federal Coordinating Committee may, in its discretion, debar the local non-affiliated voluntary agency from participating in the local campaign for a period not to exceed three (3) years thereafter.

(e) An on-base morale, welfare and recreational activity authorized by a military base commander may be supported from CFC funds.

### § 950.503 Participation in Federal campaigns by local affiliated agencies.

(a) Arrangements shall be established by each local Federal Coordinating Committee to evaluate local voluntary agencies that seek to solicit separately from local federated groups. These procedures shall require eligible local voluntary agencies to preregister with the local Federal Coordinating Committee to participate in the Combined Federal Campaign for that year. An eligibility meeting shall be held to decide which agencies are eligible. Arrangements shall be made by the Central Receipt and Accounting Point to distribute contributions to eligible voluntary agencies, after appropriate adjustments are made for "shrinkage" and approved administrative costs.

(b) *Application Procedures.* In order to be eligible for participation in the Combined Federal Campaign, each local voluntary agency must submit an application for registration in the CFC to the local Federal Coordinating Committee. Applications may be submitted jointly for member agencies in federated groups. The Federal Coordinating Committee is responsible for reviewing and taking action on the applications based on eligibility requirements in this Part, especially those of subpart D. The Local Federal Coordinating Committee may request a qualified screening organization to

*09-1249*
*JOB*

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS | **DEFENDANTS** Linda M. Springer, |
|---|---|
| Stuttering Foundation of America | in her official capacity as Director of the U.S. Office of Personnel Management |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __88888__
(EXCEPT IN U.S. PLAINTIFF CASES)
*88888*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Copilevitz & Canter, LLC
1900 L Street, N.W. Suite 215
Washington, DC 20036

AT

Case: 1:07-cv-01249
Assigned To : Bates, John D.
Assign. Date : 7/11/2007
Description: TRO/PI

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP ...

FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

*①*

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☒ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☒ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil* | | | |
|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

*③*

| □ **G.** *Habeas Corpus/ 2255* | □ **H.** *Employment Discrimination* | □ **I.** *FOIA/PRIVACY ACT* | □ **J.** *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| □ **K.** *Labor/ERISA (non-employment)* | □ **L.** *Other Civil Rights (non-employment)* | □ **M.** *Contract* | □ **N.** *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  □ 2 Removed from State Court  □ 3 Remanded from Appellate Court  □ 4 Reinstated or Reopened  □ 5 Transferred from another district (specify)  □ Multi district Litigation  □ 7 Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Complaint to overturn Administrative Action of Office of Personnel Management
5 U.S.C. sec. 706 – to exclude Plaintiff from 2007 Combined Federal Campaign

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS<br>□   ACTION UNDER F.R.C.P. 23 | **DEMAND $** | Check YES only if demanded in complaint<br>**JURY DEMAND:** □ YES   □ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   □ YES   ☒ NO   If yes, please complete related case form.

DATE 7/11/07   SIGNATURE OF ATTORNEY OF RECORD _No Land M. Carter_ # 936146

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
#### Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.