FILED

JUL 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

)
)
STUTTERING FOUNDATION OF AMERICA )
3100 Walnut Grove Road )
Suite 603 )
Memphis, TN 38111-0749 )
)
)
Plaintiff, )
)
)           Case: 1:07-cv-01249
)           Assigned To : Bates, John D.
-v-        )           Assign. Date : 7/11/2007
)           Description: TRO/PI
)
LINDA M. SPRINGER )
in her official capacity as )
Director of the United States Office )
of Personnel Management )
1900 E Street, N.W. )
Washington, D.C. 20415-0001, )
)
Defendant. )
)
)

## MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Based upon the verified complaint and the Memorandum of Points and Authorities

submitted herewith, plaintiff, Stuttering Foundation of America ("SFA"), respectfully moves the

Court as follows:

1.      To issue a temporary restraining order restraining the exclusion of SFA  from the

2007 Combined Federal Campaign ("CFC") and suspending *pendente lite* the final

administrative determination, dated June 28, 2007, by the Chief of Staff and Director of External

Affairs of the Office of Personnel Management ("Director") denying Plaintiff's application for

inclusion in the 2007 CFC;

*3*

2.      To issue a preliminary injunction (a) suspending the aforesaid final administrative determination and (b) mandating inclusion of SFA in the 2007 CFC, pending final hearing and determination of this cause; and

3.      To issue an order compelling Defendant to show cause before this Court why a temporary restraining order and/or preliminary injunction should not be issued embracing the terms and conditions set forth above.

For the reasons stated in the Complaint and in the attached Memorandum of Points and Authorities, SFA submits Defendant's decision to exclude SFA from the 2007 CFC was arbitrary, capricious, an abuse of discretion, contrary to law and exceeded Defendant's statutory authority. Unless this Court enjoins the denial of SFA's application for inclusion in the 2007 CFC, SFA will be immediately and irreparably harmed, for which injury there exists no adequate remedy at law.

SFA respectfully requests an expedited hearing on this motion.

Respectfully submitted,

MacKenzie Canter, III, (D.C. Bar #936146)

Mark Diskin (D.C. Bar # 334086)
Copilevitz & Canter, LLC
1900 L Street, N.W., Suite 215
Washington, D.C. 20036
(202) 861-0740
(202) 331-9841 (facsimile)
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JUL 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| STUTTERING FOUNDATION OF AMERICA<br>3100 Walnut Grove Road<br>Suite 603<br>Memphis, TN 38111-0749<br><br>         Plaintiff,<br><br>    -v-<br><br>LINDA M. SPRINGER<br>in her official capacity as<br>Director of the United States Office<br>of Personnel Management<br>1900 E Street, N.W.<br>Washington, D.C. 20415-0001,<br><br>        Defendant. | Civil Action No. 07 1249 _____ |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## I. STATEMENT OF FACTS

### A. The Combined Federal Campaign

The Combined Federal Campaign ("CFC") was established by President Kennedy in

1961 as the exclusive means  for federal employees[1] to make charitable contributions at their

places of work. See 5 CFR sec. 950.102 (a); *Planned Parenthood of Metropolitan Washington,*

---

[1] Armed forces personnel and Postal Service employees as well as civil servants participate in the
CFC, which is conducted annually.

*D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988). In 2005, federal employees donated approximately $268.5 million to the 2005 CFC. See OPM News Release, April 21, 2006.

The Director ("Director") of the Office of Personnel Management ("OPM") supervises the CFC. 5 CFR sec. 950.102 (c). The Director renders all final decisions regarding disputes. The Director establishes and maintains an official list of local CFCs and the geographical areas they cover. The Director also designates Local Federal Coordinating Committees ("LFCCs") which conduct and supervise the local CFC in particular communities. See 5 CFR sec. 950.103 (a) and (b); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988).

The LFCCs each year establish a 6 week period during which federal employees may be solicited for charitable contributions. The solicitations may not begin before September 1 and may not extend beyond December 15. Contributions are made *via* payroll deduction, checks, money orders, cash, or electronic means including credit cards. 5 CFR sec. 950.103.

Each year, the Director compiles, *inter alia*, the official list of all charities ("Charity List") eligible to participate both nationally (the "National List") and locally in all CFC campaigns. Each LFCC is required to ensure "that the list of charities determined by the Director to be nationally eligible to participate in all local campaigns is reproduced in the Charity List in accordance with OPM instructions" and that the Charity List and pledge form are produced and distributed in hard copy or electronic format to all eligible federal employees to enable them to identify the charities they wish to support. 5 CFR sec. 950.104(4) and (5) and 950.401(e).

A charitable organization wishing to be included in the CFC applies annually to the Director. An organization seeking inclusion on the National List, *inter alia*, must certify: a) it

provides services, benefits, assistance, or program activities in at least 15 states or a foreign country over the three year period immediately preceding the campaign year involved; and b) it is recognized by the Internal Revenue Service as a tax-exempt organization under section 501(c)(3) of the Internal Revenue Code of 1986 ("Code") to which contributions are deductible. Additionally, beginning for the first time for the 2007 CFC, OPM requires eligible organizations to be public charities described in section 509(a) of the Code. 5 CFR sec. 950.202(b).[2]

The Director is required to issue the National List to all LFCCs each year. As noted in **Exhibit E**,[3] the Director intends to distribute the National List on or about July 31, 2007 *via* e-mail and display on OPM's web site. The web site will contain the names of and information about charities included in the National List.

To the National List included as part of the Charity List, LFCCs are permitted to add local charities, in accord with a local application process. The LFCCs do not have discretion to remove a National List charity from the CFC. The decision by the Director is final as to which charities are admitted to the CFC as National List charities.

Shortly after July 31, 2007, it is anticipated the LFCCs will commence distribution to federal employees of the Charity List in hard copy or electronic format that will contain the names of and information about National List charities. (Local charities, *but not National List charities*, will vary in the LFCCs' Charity List, depending on the region covered by the local federal campaign.)

---

[2] As set forth *infra*, this regulation is at issue in this action.
[3] All exhibits referred to herein are attached to the Complaint filed in this action.

## B. The Stuttering Foundation of America ("SFA") and Its Application for Inclusion in the 2007 CFC

SFA is a non-profit, charitable corporation exempt from federal income tax as an organization described in Code sec. 501(c)(3) and classified as a private operating foundation described in Code sec. 4942(j)(3). SFA was founded in 1947 by Malcolm Fraser, a stutterer, whose desire to help those who stuttered was based on his painful, personal experience. He met with one of the foremost authorities of the day, Dr. Charles Van Riper, to discuss founding an organization to help those who stutter. The organization Fraser established subsequently became SFA.

SFA's mission is to provide the best and latest information concerning the prevention of stuttering in young children and the treatment of stuttering among teenagers and adults. Since its inception sixty (60) years ago, SFA has dedicated itself to the contemporary concerns of those who stutter. It has helped hundreds of thousands of persons with this disability and is recognized as the world's leading stuttering prevention and treatment organization. (Complaint, ¶ 5 and 6)

SFA is a member of The Health and Medical Research Charities of America ("HMR"), a non-profit, tax-exempt organization. HMR is a national federation, approved by OPM to participate in the 2007 CFC on behalf of its member organizations. (Complaint, ¶ 7). See, 5 CFR sec. 950.301 *et seq.*

On or about January 26, 2007, in advance of the 2007 CFC application deadline, SFA submitted its application to participate in the 2007 CFC as a national independent and unaffiliated charity through its agent, HMR. In its cover letter to the application, HMR stated that it was unable to certify SFA as eligible to participate in the 2007 CFC because SFA could not comply with the new requirement that eligible organizations not only be described as Code

4

sec. 501(c)(3) organizations but also be "classified as a public charity under 26 U.S.C. 509(a)." See, **Exhibit A**. HMR noted that SFA is a private operating foundation and not a pubic charity.[4]

Because private operating foundations had not previously been excluded from the CFC, HMR requested the Director of OPM to consider granting a one year waiver of the public charity requirement for SFA. As noted *infra,* this request was not granted. Included with SFA's 2007 CFC application on the required OPM form, was SFA's Attachment A and miscellaneous other attachments that described SFA's services and benefits undertaken throughout the United States and the world.

In its application, SFA described stuttering as a frequently misunderstood condition and noted the prevalence of stuttering among children and the shortage of trained speech pathologists capable of treating children and adults who stutter. To fill this void, SFA provides direct assistance to those who stutter by:

A)      maintaining two web sites which provide assistance, information and resources to a world-wide audience;

B)      maintaining a toll-free telephone hot line and responding to more than 20,000 calls annually;

C)      publishing and distributing 26 books, 28 videotapes, and 17 brochures on stuttering. SFA distributes over 800,000 publications and tapes annually to those who stutter, their families, speech-language pathologists, pediatricians, family physicians, hospitals, schools, clinics, day-care centers, libraries, and other concerned about stuttering;

---

[4] The distinction between public charities and private operating foundations is discussed *infra.*

5

D)    providing information packets consisting of free brochures, a resource list, and information concerning support groups to adults and parents of children who stutter;

E)    co-sponsoring intensive training programs and workshops for speech language pathologists and others annually at the University of Iowa and other universities throughout the United States and elsewhere to improve the training of school-based speech language pathologists and educate hundreds of speech and language professionals on new techniques to treat and prevent stuttering;

F)    sending thousands of press releases annually to newspapers, syndicated columnists, magazine editors, and radio and television stations to educate the public about stuttering; and

G)    distributing videotapes, books, and brochures to 63 countries on five continents.

SFA provides its services to persons in more than 15 states and in at least one foreign country. (Complaint, ¶ 12).

On March 16, 2007, Defendant denied SFA's application to participate in the 2007 CFC because SFA did not certify "that it is recognized by the Internal Revenue Service as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. §170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. §509(a). The Internal Revenue Service has classified your organization as a private foundation under Section 501(c)(3) of the Internal Revenue Code." (See **Exhibit B**.) This was the sole basis for the denial of SFA's application.

SFA appealed this determination on March 22, 2007. (Complaint ¶ 16). SFA contended:

a) that POFs such as SFA, unlike private grant-making, non-operating foundations ("PFs"),

actively engage in providing services that further their Code sec. 501(c)(3) purposes; b) SFA, unlike PFs, is not subject to the requirement generally to distribute annually five percent (5%) of the fair market value of its assets not used directly in charitable activities; c) gifts to SFA and other POFs, unlike PFs, are subject to the more favorable charitable contribution tax deductions available for gifts to public charities; d) the exclusion of SFA and other POFs from the 2007 CFC violates section 618 of the Treasury, Postal Service, and General Government Appropriations Act for 1988 (Public Law No. 100-202, 101 Stat. 1329 et seq., the "Act," referred to in the appeal as the "1987 Hoyer-Hatfield Act"), which states that the criteria for eligibility of organizations to participate in the CFC cannot be different from the eligibility criteria set forth in the 1984 CFC regulations; e) POFs, pursuant to the 1984 CFC regulations, were permitted to participate in the CFC in all years prior to 2007; and f) the exclusion of SFA and other POFs from the 2007 CFC, based on the new regulation governing the CFC that requires eligible organizations to be public charities, violates the Act.

By letter dated June 28, 2007, (**Exhibit D**) Defendant denied SFA's appeal for inclusion in the 2007 CFD, stating, in pertinent part:

> Eligibility criteria regulations for CFC national organizations are set forth in 5 CFR §950.202 and 203. These criteria require that each applicant be recognized by the Internal Revenue Service (IRS) as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. §170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. §509(a). The Stuttering Foundation of America currently is classified under 26 U.S.C. 501(c)(3) as a private foundation and, therefore, does not meet the criteria.

This decision is final for administrative purposes for the 2007 CFC…" [5] (Complaint, ¶ 17).

---

[5] 5 CFR sec. 950.102(c) and 950.205(f) state "[t]he Director's decision is final for administrative purposes."

## II. SFA IS ENTITLED TO INJUNCTIVE RELIEF

### A. Standards For Granting Preliminary Injunctive Relief

SFA is entitled to preliminary injunctive relief if it demonstrates (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable injury if the requested relief is not granted; (iii) no other parties will be harmed if temporary relief is granted; and (iv) issuance of the injunction will serve the public interest. *Washington Metropolitan Area Transit Comm'n v. Holiday Tours*, 559 F. 2d 841, 843 (D.C. Cir. 1977); *Serono Laboratories, Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998); *Ramirez v. U.S. Customs and Border Protection*, 477 F.Supp. 2d 150 (D.D.C. 2007).

SFA is not required to prevail on each of these factors. Under *Holiday Tours*, these factors must be viewed as a continuum, with the presence of more than one factor compensating for less of another. "These factors interrelate on a sliding scale and must be balanced against each other." *Serono Laboratories, Inc. v. Shalala, supra* at 1318. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Cityfed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995). A court may issue an injunction "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.* Thus, preliminary injunctive relief may issue "with either a high probability of success and some injury or vice versa." *Cuomo v. United States Nuclear Regulatory Commission*, 772 F. 2d 972, 974 (D.C. Cir. 1985).

8

## B. There Is A Substantial Likelihood SFA Will Prevail On The Merits

### 1. Scope of Review

In this action, SFA appeals from an informal agency adjudication reviewable under section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. sec. 706.

Pursuant to section 706 of the APA, informal agency action must be set aside "if it fails to meet statutory, procedural or constitutional requirements or if it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...' " 5 U.S.C. sec. 706(2)(A); *Olenhouse v. Commodity Credit Corporation*, 42 F. 3d 1560 (10th Cir. 1994) quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-14 (1971). A reviewing court, in applying the "arbitrary or capricious" standard, asks whether the agency engaged in reasoned decision making. *Clifton Power Corp. v. F.E.R.C.*, 88 F.3d 1258 (D.C. Cir. 1996); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Additionally, pursuant to section 706(2)(C)of the APA, agency action must be set aside if it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." See, e.g., *Comsat Corp. v. F.C.C.*, 114 F.3d 223 (D.C. Cir. 1997) (Federal Communications Commission acted outside the scope of its statutory authority to amend its regulatory fee schedule where fee was not charged pursuant to any rulemaking or change in law.)

### 2. OPM Regulation At Issue/Public Charities/Private Operating Foundations

This case concerns a regulation Defendant promulgated that would prohibit a national organization such as SFA from being eligible to participate in the 2007 CFC because it is a private operating foundation and not a public charity.[6]

---

[6] See discussion of distinction between a "private operating foundation" and a "public charity"

9

On November 20, 2006, OPM published final regulations in the Federal Register (71 Fed. Reg. 67276) in which OPM, *inter alia,* amended section 5 C.F.R. sec. 202(b) to require a national organization applying for inclusion on the National List for the 2007 CFC to certify that "it is an organization recognized by the Internal Revenue Service as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. §170(c)(2) *and that the organization is further classified as a public charity under 26 U.S.C. §509(a).* A copy of the letter(s) from the Internal Revenue Service granting tax exempt and public charity status must be included in the organization's application." (Emphasis added.)

The highlighted text, requiring eligible organizations to be public charities, is new. Prior to the issuance of the final regulations amending 5 C.F.R. sec. 202(b), OPM had required national organizations applying to participate in the CFC, *inter alia,* only to be Code sec. 501(c)(3) organizations. OPM had never previously required eligible applicants to be public charities described in Code sec. 509(a).[7]

As Defendant recognizes, SFA is a Code sec. 501(c)(3) organization but is not a public charity. Rather, SFA is recognized by the Internal Revenue Service as a Code sec. 4942(j)(3)

---

*infra.*

[7] A public charity under Code sec. 509(a) must satisfy one of two "public support" tests: 1) Under Code sec. 509(a)(1), the organization must receive at least one-third (1/3) of its total support from governmental entities, individuals, corporations, other publicly supported organizations, foundations and other members of the general public. If the organization fails to meet this one-third support test, it may still qualify as a public charity if it satisfies an optional ten percent (10%) test set forth in the regulations to Code sec. 170; 2) Under Code sec. 509(a)(2), the organization must receive more than one-third of its support each year from gifts, membership fees and gross receipts from the performance of "exempt functions," provided that *no more* than one-third (1/3) of the organization's support is derived from gross investment income and a certain portion of unrelated business income as defined in Code sec. 511-514.

private operating foundation, a special type of private foundation that is similar to a public charity in many respects.[8]

Private operating foundations ("POFs"), such as SFA, actively engage in providing services that further Code sec. 501(c)(3) purposes in the same manner as public charities. While POFs are not classified as public charities under Code sec. 509(a), they provide charitable services in the same way as do public charities. See, Code sec. 4942(j)(3).

"Private operating foundations have long been recognized as nonpublicly supported organizations that devote most of their earnings and much of their assets directly to the conduct of their own tax-exempt [Code section 501(c)(3)] purposes. This special type of foundation is essentially a cross between a private foundation and a public organization." Bruce R. Hopkins and Jody Blazek, *Private Foundations* (2nd Edition), at 87.

In contrast, non-operating private foundations ("PFs") normally restrict their activities to making grants to other Code sec. 501(c)(3) organizations. For example, a POF that is a science museum fulfills its charitable purposes by operating the museum directly (as would a public

---

[8] As noted, Code sec. 501(c)(3) organizations may be classified as public charities or private foundations. Private foundations, unlike public charities, are subject to numerous restrictions and requirements with respect to their activities and expenditures. For example, unlike public charities, private foundations are subject to a 2% tax on net investment income. If the private foundation donates a sufficient amount of funds to qualified charities during the tax year, the rate may be reduced to 1%. See, Code sec. 4940.

Unlike public charities, private foundations are subject to an excise tax generally if they fail to make qualifying distributions equal to or greater than 5% of the aggregate fair market value of their assets not used directly to carry out exempt purposes. See, Code sec. 4942.

Additionally, a private foundation is subject to excise taxes for: a) acts of self-dealing between the foundation and disqualified persons (Code sec. 4941); b) holdings in businesses in excess of prescribed maximum limits (Code sec. 4943); c) investments that jeopardize its exempt purpose (Code sec. 4944); and d) expenditures for lobbying and other activities to influence elections or legislation and for certain grants to individuals and organizations (Code sec. 4945).

charity) to educate the public. A PF, in contrast, would not operate a museum directly but, rather, would make a grant to the museum or other Code sec. 501(c)(3) organization to enable it to engage in charitable/educational activities.

Congress has recognized the important role played by POFs in providing charitable services by enabling taxpayers to take the same deduction for gifts to POFs as for gifts to public charities. "Donors to private non-operating foundations, as compared with donors to public charities, are generally subject to less generous limits on the deductibility of their contributions...Operating foundations, by contrast, afford their donors the same limits on deductibility of contributions that donors to public charities enjoy..." Penina K. Lieber and Donald R. Levy, *Complete Guide to Nonprofit Organizations*, at 2-97.[9]

### 3. Defendant's Denial of SFA's 2007 CFC Application Was Arbitrary and Capricious or Otherwise Not in Accordance with Law and, Alternatively, Exceeded OPM's Statutory Authority

On December 22, 1987, the Treasury, Postal Service and General Government Appropriations Act for 1988 was signed into law (See, Pub. L. No. 100-202, 101 Stat. 1329 *et. seq.*, the "Act"). In section 618 of the Act, Congress set forth for the first time its criteria

---

[9] Code sec. 170(b)(1)(A) (vii) provides that gifts of cash or ordinary income property to POFs are deductible generally up to 50% of the donor's adjusted gross income ("AGI") in the year of the gift while gifts of long term capital gain property such as stock or real estate are deductible generally up to 30% of the donor's AGI. Unused portions of the charitable contribution which remain as a result of these percentage limitations may be carried forward and used in as many as five additional years.

In contrast, gifts of cash or ordinary income property to PFs are limited to 30% of AGI while gifts of long term capital gain property are limited to 20% of the donor's AGI. Additionally, donors who make contributions of long term capital gain property to POFs generally may take charitable contribution deductions equal to the fair market value of the gift while the value of the charitable contribution deduction for similar gifts to PFs generally will be limited to the donor's cost basis in the property.

Additionally, POFs, unlike PFs, are not subject to the Code sec. 4942 minimum distribution requirement which requires PFs to distribute generally 5% of the fair market value of their assets not used

governing the CFC. See, *Planned Parenthood of Metropolitan Washington, D.C. v. Horner*, 691 F. Supp. 449 (D.D.C. 1988) ("Planned Parenthood"). Section 618(a) states that "[n]one of the funds appropriated by this Act, *or any other Act in this or any fiscal year hereafter*, may be used in preparing, promulgating, or implementing any regulations relating to the Combined Federal Campaign if such regulations are not in conformance with subsection (b)." (Emphasis added.)

Several provisions are set forth in section 618(b) relative to the CFC. Critical to this case is section 618(b)(1)(B) which states: "Any requirements for eligibility to receive contributions through the Combined Federal Campaign shall, to the extent that such requirements relate to any subject matter other than one referred to in subparagraph (A) [concerning CFC eligibility requirements relating to litigation, public-policy advocacy, or attempting to influence legislation], *remain the same as the criteria in the 1984 regulations...*" (Emphasis added).

Section 950.403 of the 1984 regulations governing the CFC, states that only "nonprofit, tax-exempt, charitable organizations, supported by voluntary contributions from the general public and providing direct and substantial health and welfare and other appropriate national voluntary services...are eligible for approval." (See, **Exhibit F**).

Section 950.405 states in pertinent part that to be eligible for approval by the Director for participation in the CFC, a national organization must be "(1) ... a voluntary charitable health and welfare agency as defined in 5 CFR 950.101; (2) that is voluntary and broadly supported by the public, meaning (i) that it is organized as a not-for-profit corporation or association...(ii) that it is classified as tax-exempt under Section 501(c)(3), and is eligible to receive tax deductible contributions under Section 170 of the  Internal Revenue Code..."

---

directly in charitable activities annually.

13

Section 950.101 of the 1984 CFC Regulations defines a "voluntary charitable health and welfare agency," *inter alia,* to include organizations such as SFA which are organized and operated to render or support delivery of services and relief for the needy, the poor, and the indigent and is "an organization described in, and qualifying under, 26 U.S.C. 501(c)(3); is not an 'action organization' within the meaning of 26 CFR 1.501(c)(3)-1(3); and is eligible to receive tax-deductible contributions under 26 U.S.C. 170."

As noted, section 618(b)(1)(B) of the Act states in pertinent part that CFC eligibility criteria must remain the same as set forth in the 1984 CFC regulations. The 1984 regulations do not limit eligible national organizations solely to public charities. POFs, such as SFA, which satisfy the other CFC eligibility requirements set forth in the 1984 regulations, have always been eligible to participate in the CFC as evidenced by the inclusion of SFA in every CFC between 1992 and 2006. (See, Complaint, ¶ 8.) SFA was excluded from the 2007 CFC solely because it is not a public charity.

Defendant has violated section 618 of the Act by issuing final regulations limiting CFC eligibility to public charities. These regulations improperly impose an eligibility requirement *that was not included in the 1984 regulations.* See, *Planned Parenthood,* in which the court ruled that the Act, requiring CFC eligibility to remain the same as set forth in the 1984 CFC regulations, prohibited Defendant from issuing a regulation barring an organization granted national eligibility and any one of its affiliates from dual listing in CFC brochures as potential recipients of contributions. The court granted plaintiff's request for a preliminary injunction barring Defendant from enforcing its "dual listing" regulation.

14

Similarly, because Defendant's new regulation limiting national eligibility to public charities, on its face, violates section 618 because CFC eligibility no longer is the same as set forth in the 1984 regulations, the new regulation is not enforceable. Defendant's decision to exclude SFA from the 2007 CFA, therefore, was arbitrary, capricious and without statutory authority.

SFA submits, therefore, there is a substantial likelihood it will succeed on the merits.

## C.  SFA  Will Suffer Irreparable Injury If Preliminary Injunctive Relief Is Not Granted

On or about July 31, 2007, Defendant will send to the LFCCs *via* e-mail or posting to OPM's web site, the National List of eligible national organizations to be included as part of the Charity List.  See, **Exhibit E**. The issuance date of the National List for the 2007 CFC is imminent.

The Charity List, which includes the National List, identifies participating nationally eligible charities and includes a short description of their  programs and purposes. The Charity List provides essential information relied upon by federal employees in deciding which charities to support through direct contributions and payroll deductions.

Exclusion of SFA from the National List for the 2007 CFC will inflict substantial economic harm and other injuries which cannot be rectified for several reasons. SFA will be deprived of the right to communicate its message to millions of federal employees, who otherwise would not have the opportunity to receive this information, and will be precluded from seeking financial support for its cause during the 2007 CFC.  The CFC is the exclusive means whereby federal employees may be solicited for charitable contributions in the workplace. See, *Planned Parenthood*. Moreover, given the large number of federal employees located in every

15

state and abroad, SFA cannot solicit contributions directly from this same audience without incurring exorbitant costs.

If Defendant is permitted to enforce its improper regulation precluding participation of SFA in the 2007 CFC, SFA will suffer direct economic harm. For example, in 2005, SFA received $38,468.44 and in 2006, SFA received $31,217.05 from the CFC. (See Complaint ¶ 8). SFA will not be able to recover from the government the revenue loss because the CFC is the sole means by which federal employees can be solicited while on the job and the federal government is immune from damages for these types of suits. See, e.g., *Planned Parenthood; Woerner v. United States Small Business Administration*, 739 F. Supp. 641 (D.D.C. 1990). This loss will be irreplaceable.

The losses described herein are real, immediate and irretrievable absent preliminary injunctive relief.

## D. Third Parties Will Not Suffer Harm If Preliminary Injunctive Relief Is Granted

No other parties will suffer harm if the relief requested by SFA is granted. The National List of organizations eligible to participate in the CFC easily can be updated and revised by Defendant to include SFA and distributed to the local LFCCs *via* e-mail and posting to Defendant's web site. Moreover, other eligible charitable organizations participating in the CFC will not be harmed because the 2007 CFC has yet to begin. For these reasons, no harm will occur to other parties if preliminary injunctive relief is granted.

## E. Grant of Preliminary Injunctive Relief Will Serve The Public Interest

The public interest is undoubtedly served by SFA's participation in the CFC. Inclusion of SFA in the 2007 CFC permits millions of federal employees to learn of the organization, to

receive its message, and to make donations to permit the organization to continue to carry out its charitable activities. If the requested preliminary injunctive relief is granted, SFA's participation in the CFC will guarantee that SFA may continue to educate the public concerning the prevention of stuttering in young children and the treatment of stuttering among teenagers and adults

Moreover, "there is a strong public interest in meticulous compliance with law by public officials." *Fund for Animals v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993). In the instant action, the Defendant should not be permitted to deny SFA's application to participate in the 2007 CFC based on a regulation that clearly violates the Act.

Therefore, the public interest will be served by granting the requested preliminary injunctive relief.

### III. CONCLUSION

For the reasons stated herein, SFA respectfully requests this court to order preliminary injunctive relief barring Defendant from enforcing its regulations that prohibit otherwise qualifying organizations that are not public charities from participating in the CFC.

Respectfully submitted,

MacKenzie Canter, III, (D.C. Bar #936146)

Mark Diskin (D.C. Bar # 334086)

Copilevitz & Canter, LLC
1900 L Street, N.W., Suite 215
Washington, D.C. 20036
(202) 861-0740
(202) 331-9841 (facsimile)
Counsel for Plaintiff

17

FILED

JUL 1 1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                       )
                                       )
STUTTERING FOUNDATION OF AMERICA       )
3100 Walnut Grove Road                 )
Suite 603                              )
Memphis, TN 38111-0749                 )
                                       )
         Plaintiff,                    )        Civil Action No. 07 1249
                                       )                         _____
                                       )
      -v-                              )
                                       )
LINDA M. SPRINGER                      )
in her official capacity as            )
Director of the United States Office   )
 of Personnel Management               )
1900 E Street, N.W.                    )
Washington, D.C. 20415-0001,           )
                                       )
         Defendant.                    )
                                       )
                                       )
```

## CERTIFICATE OF COUNSEL PURSUANT TO LCvR 65.1

I, MacKenzie Canter, III, counsel for Plaintiff Stuttering Foundation of America, certify I

notified R. Allan Miller, Esq., Associate General Counsel of the United States Office of

Personnel Management, by telephone at approximately 4 p.m. on July 10, 2007, that the

Complaint and Motion for Temporary Restraining Order and Preliminary Injunction in this

matter would be filed on July 11, 2007. I further advised Mr. Miller that he would be notified of

the time and date set by the Court for a hearing, if any is to be held.

I have delivered to Mr. Miller, U.S. Office of Personnel Management, Room 7353, 1900

E Street, N.W., Washington, D.C. 20415, by messenger, and sent by electronic mail (pdf) with

1

Mr. Miller's permission, a copy of the Complaint and accompanying exhibits, Motion for

Temporary Restraining Order and Preliminary Injunction, Memorandum of Points and

Authorities, and proposed Order in this matter, along with a copy of this certificate.

Respectfully submitted,

MacKenzie Canter, III (D.C. Bar #936146)
Mark Diskin (D.C. Bar #334086)
Copilevitz & Canter, LLC
1900 L Street, N.W., Suite 215
Washington, D.C. 20036
(202) 861-0740
(202) 331-9841 (facsimile)
Counsel for Plaintiff

2