# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

STUTTERING FOUNDATION OF AMERICA,    )
       )
       Plaintiff,     )
       )
       v.     )     No. 07-1249 (JDB)
       )
LINDA M. SPRINGER,    )
     in her official capacity as    )
     Director of the Office of Personnel    )
     Management,    )
       )
       Defendant.     )
_____)

## DEFENDANTS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Linda M. Springer, in her official capacity as Director of the Office of

Personnel Management, respectfully files this consolidated motion for summary judgment and

opposition to plaintiff's motion for summary judgment. In support of this motion, defendant

respectfully refers the Court to the statement of material facts not in dispute and the

memorandum in support of this motion. A proposed Order is also attached

July 18, 2007                          Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


_____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-1249
(202) 514-8780 (facsimile)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

STUTTERING FOUNDATION OF AMERICA,   )
   )
      Plaintiff,   )
   )
      v.   )     No. 07-1249 (JDB)
   )
LINDA M. SPRINGER,   )
   in her official capacity as   )
   Director of the Office of Personnel   )
   Management,   )
   )
      Defendant.   )
_____)

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7(h), defendant Linda M. Springer, in her official capacity as Director of the Office of Personnel Management, submits the following Statement of Material Facts for which there is no genuine dispute.

1. On June 29, 2006, OPM officially proposed "to *clarify* that [organizations participating in the CFC] must be public charities, not private foundations." Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to private Voluntary Organizations – Eligibility and Public Accountability Standards, 71 Fed. Reg. 37003 (proposed June 29, 2006) (to be codified at 5 C.F.R. Part 950). OPM specifically proposed the following clarification for 5 C.F.R. § 950.202(b): "Certify that it is an organization recognized by the Internal Revenue Service as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. 170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. 509(a). A copy of the letter(s) from the Internal Revenue Service

granting tax exempt and public charity status must be included in the organization's application."

71 Fed. Reg. 37009 (proposed June 29, 2006).

2.   Having received and considered seven responses to the notice and comment, six of

which were positive and one of which was neutral, see Exhibit 14 hereto, OPM instituted the

final rule on November 20, 2006.  See  Solicitation of Federal Civilian and Uniformed Service

Personnel for Contributions to Private Voluntary Organizations – Eligibility and Public

Accountability Standards, 71 Fed. Reg. 67276 (adopted Nov. 20, 2006 ) (codified at 5 C.F.R.

Part 950).   As adopted, the clarifying rule states that an entity applying to participate in the CFC

must:  "Certify that it is an organization recognized by the Internal Revenue Service as tax

exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. §

170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. §

509(a). A copy of the letter(s) from the Internal Revenue Service granting tax exempt and public

charity status must be included in the organization's application."  5 C.F.R. § 950.202(b) (2007).

3.   The impetus for the clarifying regulation began with a review of the 1984 CFC

regulations by the Office of CFC Operations ("OCFCO").  Declaration of Mark Lambert ¶¶ 14,

17 ("Lambert Decl.") (attached as Exhibit 12 hereto).  Based upon the review of the regulations,

together with the purpose of the CFC, OCFCO determined that the purpose of the CFC would be

best served by limiting participation in the CFC to public charities, rather than private

foundations.  Lambert Decl. ¶ 17.

4.   Notwithstanding the belief by OCFCO that the CFC should be limited to public

charities based upon these factors, prior to 2006, OPM did not focus on the distinction between

public charities and private foundations.  Lambert Decl. ¶ 14.  Based on the belief of the

OCFCO, and the fact that OCFCO believed that the regulations had not been properly enforced, OCFCO determined that it should issue a clarifying regulation that would limit CFC participation to public charities.  Lambert Decl. ¶ 14.

5.  Because OPM was drafting proposed rule changes to address a different issue with the CFC, see Lambert Decl. ¶¶ 15 & 16, OPM determined that it should include in the proposed regulations a regulation implementing OCFCO's belief and interpretation of the 1984 regulations by clarifying that participation in the CFC was limited to public charities.  Lambert Decl. ¶¶ 16-17.

6.  In doing so, OPM analyzed the 1984 regulations themselves, the policy rationale behind excluding private foundations, and IRS statutes and regulations.  Lambert Decl. ¶¶ 17-18. After reviewing these sources, OPM ultimately proposed the clarification through notice and comment rule-making and adopted the clarifying regulation in November 2006.  See  Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to Private Voluntary Organizations – Eligibility and Public Accountability Standards, 71 Fed. Reg. 67276 (adopted Nov. 20, 2006 ) (codified at 5 C.F.R. Part 950).

7.  On January 26, 2006, Health and Medical Research Charities of America ("HMR") submitted to the Office of CFC Operations ("OCFCO") an application on behalf of the Stuttering Foundation of America ("SFA") for participation as a national independent charity in the 2007 CFC campaign.  See Exhibits 1 & 2 hereto.  See also Compl. ¶ 12.  In the letter accompanying SFA's application, HMR stated that it was "unable to certify this organization [as a federation member] because it could not comply with the new regulatory requirement regarding IRS recognition as a public charity, since it is a private operating foundation and therefore does not

fall under 26 U.S.C. 509(a)." Exhibit 2 hereto; Compl. ¶ 13 & Ex. A to Compl.  Accordingly,

HMR's letter requested a one-year waiver of the new requirement, noting that the organization

would not have had enough time to obtain a private charity designation if it had applied to the

IRS when the final rules were published.  Exhibit 2; Compl. ¶ 14.

8.  After receiving the application and letter submitted to OPM by HMR on plaintiff's

behalf, a review of the application was conducted.  Exhibit 3 hereto.

9.  Based upon this review, OPM determined that plaintiff failed to certify Statement 2 of

the application and sent plaintiff an email on February 5, 2007 requesting that such certification

be completed.  Exhibit 4 hereto.

10.  Plaintiff responded to the email by letter on February 5, 2007 indicating that it could

not certify that it was a public charity.  Exhibit 5 hereto.  OPM also received a letter dated

February 12, 2007 from plaintiff's counsel regarding plaintiff's application for participation in

the CFC.  Exhibit 6 hereto.

11.  On February 12, 2007, OPM conducted another review of plaintiff's application and

denied the application.  Exhibit 7 hereto.  On March 16, 2007, OPM notified plaintiff by letter

that it had denied plaintiff's application to participate in the CFC because SFA did not certify

that it was classified as a public charity pursuant to 26 U.S.C. § 509(a).  Exhibit 8 hereto; Compl.

¶ 15.  The denial letter to SFA, which was signed by the Acting Director, Office of CFC

Operations, advised plaintiff of its appeal rights.  Id.

12.  SFA appealed the denial of its CFC application on March 22, 2007.  Exhibit 9 hereto;

Compl. ¶ 16.  In its appeal, SFA acknowledged that it is a private foundation and not a public

charity pursuant to 26 U.S.C. § 509(a), but argued that it performs similar good-deeds to a public

4

charity and, therefore, should be permitted to participate in the CFC.  Id.  Plaintiff also argued that the requirement that participants be public charities was a new eligibility requirement in violation of the 1987 Hoyer-Hatfield Act.  Id.

13.  After receipt of plaintiff's appeal, OPM's Appeals Panel reviewed plaintiff's documentation and recommended that its appeal be denied.  Exhibit 10 hereto.  This recommendation was adopted by OPM Chief of Staff and Director of External Affairs Tricia Hollis who notified plaintiff of her decision by letter dated June 28, 2007.  Exhibit 11 hereto; Compl. ¶ 17.  This denial was premised on the fact that SFA is not a public charity pursuant to 26 U.S.C. § 509(a).  Id.

14.  Plaintiff filed this action seeking injunctive and declaratory relief, together with a motion for a temporary restraining order on July 11, 2007.  Based upon agreement of the parties, the Court consolidated the TRO/PI with the merits, converted plaintiff's motion for a TRO to a motion for summary judgment and set a briefing schedule.

July 18, 2007                          Respectfully submitted,


                                       _____/s/_____
                                       JEFFREY A. TAYLOR, D.C. Bar # 498610
                                       United States Attorney


                                       _____/s/_____
                                       RUDOLPH CONTRERAS, DC BAR #434122
                                       Assistant United States Attorney


                                       _____/s/_____
                                       JOHN F. HENAULT, D.C. Bar # 472590
                                       Assistant United States Attorney
                                       555 4th Street, N.W.
                                       Washington, DC 20530
                                       (202) 307-1249
                                       (202) 514-8780 (facsimile)

6

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STUTTERING FOUNDATION OF AMERICA,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | No. 07-1249 (JDB) |
| ) | |
| LINDA M. SPRINGER,    ) | |
| in her official capacity as    ) | |
| Director of the Office of Personnel    ) | |
| Management,    ) | |
| ) | |
| Defendant.    ) | |
| _____ ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' CONSOLIDATED**
**MOTION FOR SUMMARY JUDGMENT AND OPPOSITION**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Linda M. Springer, in her official capacity as Director of the United States

Office of Personnel Management, respectfully files this motion for summary judgment.  As

explained in detail below, plaintiff's challenge under the Administrative Procedure Act ("APA")

is without merit.  The specific regulation it challenges, 5 C.F.R. § 950.202(b), which was

clarified and adopted pursuant to notice and comment rulemaking, is an interpretation fully

supported by the 1984 regulations.  Accordingly, pursuant to the deferential standard of review

for APA challenges, this Court should uphold the regulation at issue, deny plaintiff's request for

injunctive and declaratory relied, and grant judgment in defendant's favor.

**BACKGROUND**

**I.    THE COMBINED FEDERAL CAMPAIGN**

The CFC is the nation's largest employer-sponsored charity drive, and it oversees

hundreds of millions of dollars in charitable donations per year.  Inclusion in the CFC is highly

desirable for charitable organizations because of the reputation for accountability and responsibility that is associated with the program and the magnitude of donations that may be obtained through the program.

It has traditionally been Federal Government policy to cooperate with and assist voluntary health and welfare agencies in soliciting funds for worthy causes from Federal personnel.  In 1957, a uniform program was established by Executive Order, to limit the volume of solicitations at the workplace and to insure truly voluntary giving by Federal personnel.  The purpose of the fund-raising program within the Federal service was to establish policies and procedures governing the solicitation of Federal civilian and military personnel for contributions to private charitable and other humanitarian organizations.  The program was originally monitored by the President's Committee on Fund Raising Within the Federal Service.  When the committee was abolished, its responsibilities were assigned to the Chairman of the U.S. Civil Service Commission by Executive Order 10927 of March 18, 1961.

A pilot program of solicitation among four federations of charitable organizations, first known as the Combined Federal Campaign was conducted in 1964.  The pilot was very successful and has evolved over the years to include additional charitable organizations.  The U.S. Office of Personnel Management succeeded the Civil Service Commission in 1978, and took on the responsibilities under the Combined Federal Campaign.  The objectives and eligibility criteria of the Campaign were clarified through Executive Orders 12353 and 12404, issued by President Reagan in 1982 and 1983, and subsequent acts of Congress.

Today, the program encompasses Federations and independent organizations that participate on an international, national or local level.  Federations comprise groups of member

2

organizations with common fund raising goals; the federations provide administrative services, assistance and direction to their member organizations in completing and submitting their applications. Organizations that apply through Federations rely upon the Federation for communications and assistance in meeting the program's application requirements. OPM relies upon Federations to ensure that their member organizations meet the eligibility criteria. OPM regularly audits samples of the applications submitted through Federations, on the basis of selective criteria, for compliance with the regulations. OPM received 2165 applications for the 2007 national campaign. Of these, 1708 applied through Federations and 45 applied as unaffiliated organizations. Declaration of Mark Lambert ¶ 4 ("Lambert Decl.").

The CFC is comprised of approximately 264 local campaigns, each of which is responsible for producing the Charity List of CFC charitable organizations that have been accepted for participation in that local campaign in a given year. The Charity List is ultimately distributed to Federal employees at the workplace. Each Charity List is comprised of three parts. The first part lists national/international organizations and the second part lists international organizations. The first two parts, being national and/or international in scope, are the same for all local campaigns. The third part of the Charity List, which is unique to each local campaign, lists local organizations that participate in that local campaign. Lambert Decl. ¶ 4.

The 2007 CFC campaign season begins on September 1, 2007 and runs through December 15, 2007. Each campaign's Local Federal Coordinating Committee, the group of Federal executives which oversees local campaign administration, determines the actual local solicitation period, which must be within the September 1 through December 15, 2007 time period. Lambert Decl. ¶ 5.

OPM annually distributes, via a CFC Memorandum delivered by email, the national and national/international parts of the Charity List.  OPM also makes this information available via its website at www.opm.gov/cfc.  Each local campaign supplements the first two parts of the Charity List with its local part.  The local campaigns then send out the complete Charity List to be printed.  Not all campaigns print at the same time, as the local appeals process for some local campaigns takes longer than others.  Lambert Decl. ¶¶ 6-7.

Once printed, any change to the Charity List may only be accommodated by reprinting the Charity List, or by amending the Charity List by way of a supplement or insert page.  At present, the overseas campaign is prepared to send its Charity List to print within the next week, but has agreed pursuant to this action, to hold sending the Charity List to the printer until Monday, July 30, 2007.  The local campaigns are in various stages of preparedness, and will generally be ready to send their Charity Lists to print by the end of July or early August, although similar to the overseas campaign, none will be sent prior to July 30, 2007.  Lambert Decl. ¶¶ 8-9 and 11.

The number of copies of the Charity List printed by each of the 264 local campaigns, including the campaign that takes place overseas, and the associated cost of printing, varies with the size of the campaign and time available before the campaign begins.  For 2005, which is the most recent campaign for which OPM has detailed information, an estimated 3.9 million Federal employees were solicited by local campaigns, including approximately 318,000 in the overseas campaign.  In 2006, 5.7% of all CFC funds were pledged in the Overseas CFC ($15,501,237).  Lambert Decl. ¶ 10.

The CFC program, known for its rigorous eligibility and public accountability standards, assures potential Federal donors that any contribution made through the CFC will be made only

4

to financially responsible and accountable organizations that provide real services, and that the money they donate will be used to further the purposes for which it was intended.  Lambert Decl. ¶ 12.

It is OPM's view that public charities receive a level of public scrutiny and oversight that is not present in the case of private foundations, as a result of the inherent interest and demand for accountability on the part of the public that supports public charities.  The fact of having donated causes the public to be a stakeholder and generates interest in the workings of a public charity, including how it spends the funds it receives. Typically, the reason an organization receives broad based contributions from the public is that the public is interested in what the organization is doing.  Lambert Decl. ¶ 13.

Among the eligibility requirements for organizations seeking to participate in the national campaign is a requirement that the organization "certify that it is an organization recognized by the Internal Revenue Service as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. § 170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. § 509(a).  A copy of the letter(s) from the Internal Revenue Service granting tax exempt and public charity status must be included in the organization's application." 5 C.F.R. § 950.202(b).

The application to participate in the CFC must be completed annually, regardless of whether the organization is applying as a national organization like the plaintiff, or as a local organization.  Participation in a prior year does not guarantee participation in any other year.  The application contains a series of certifications and requests for evidence to support certifications to be completed by the certifying official of the organization.  Lambert Decl. ¶ 21.

Guidance with regard to CFC applications is distributed to local campaigns and is widely disseminated.  CFC Memorandum 2006-21 (Nov. 27, 2006), for instance, was made publicly available to organizations, federations and the general public on OPM's Internet website (http://.opm.gov/cfc/).  CFC Memorandum 2006-21 explains that, in accordance with 5 C.F.R. § 950.202(b), private foundations and units of government are not eligible to participate in the CFC.  See CFC Memorandum 2006-21 (available at http://opm.gov/cfc/opmmemos/2006/2006-21.asp and attached hereto as Exhibit 16).

Organizations that are denied eligibility for inclusion on the national list may appeal the decision by submitting a written request for reconsideration within 10 days from the date the organization receives the denial.  See 5 C.F.R. § 950.205.  Requests for reconsideration are limited by regulation to the facts justifying the reversal of the original decision.  Requests for reconsideration may not be used to supplement applications that had missing or outdated documents, and the regulation provides that any such documents submitted with the request for reconsideration will not be considered.  See 5 C.F.R. § 950.205(a).  The Director's (or her designee's) decision is final for administrative purposes.  See 5 C.F.R. § 950.205(f).

## II.    REGULATORY AND STATUTORY SCHEME

### A.    The 2007 Clarifying Regulation

On June 29, 2006, OPM officially proposed "to *clarify* that [organizations participating in the CFC] must be public charities, not private foundations."[1]  Solicitation of Federal Civilian and

---

[1]  Although OPM used notice and comment rule-making for the regulation at issue, the regulation is actually an interpretive rule, meaning that OPM was not required to go through notice and comment rule-making.  See Chemical Waste Mgmt., Inc. v. E.P.A., 869 F.2d 1526, 1534-35 (D.C. Cir. 1989); American Hosp. Ass'n v. Bowen, 834 F.2d 1037, 1045 (D.C. Cir. 1987).  In its proposed rule, OPM acknowledged that "Public Law 100-202 § 101(m) requires

Uniformed Service Personnel for Contributions to Private Voluntary Organizations – Eligibility and Public Accountability Standards, 71 Fed. Reg. 37003 (proposed June 29, 2006) (to be codified at 5 C.F.R. Part 950). OPM specifically proposed the following clarification for 5 C.F.R. § 950.202(b): "Certify that it is an organization recognized by the Internal Revenue Service as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. 170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. 509(a). A copy of the letter(s) from the Internal Revenue Service granting tax exempt and public charity status must be included in the organization's application." 71 Fed. Reg. 37009 (proposed June 29, 2006).

In response to the notice of proposed rulemaking, OPM received a total of seven comments relating to the clarifying regulations for 5 C.F.R. § 950.202(b); six of which were favorable and one of which was neutral. None of the comments received were either negative or asserted that the change was in violation of law, and none of the comments came from plaintiff.

Having received and considered the responses relating to the clarifying regulation, OPM instituted the final rule on November 20, 2006. See Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to Private Voluntary Organizations – Eligibility and Public Accountability Standards, 71 Fed. Reg. 67276 (adopted Nov. 20, 2006 ) (codified at 5

---

OPM to maintain certain eligibility criteria for CFC participation by organizations and federations as well as public accountability standards to those similar to those that were in effect between 1984 and 1987." This statement is an accurate representation of Public Law 100-202 § 101(m) in that Congress did require OPM to maintain certain eligibility criteria, see Pub. L. 100-202 § 101(m)(b)(1)(B), and mandated that public accountability standards remain "similar" to those established between 1984 and 1987, see Pub. L. 100-202 § 101(m)(b)(1)(D). Thus, the statement in the proposed rule is not contrary to the plain language of the 1987 Hoyer-Hatfield Act.

C.F.R. Part 950). As adopted, the clarifying rule states that an entity applying to participate in the CFC must: "Certify that it is an organization recognized by the Internal Revenue Service as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. § 170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. § 509(a). A copy of the letter(s) from the Internal Revenue Service granting tax exempt and public charity status must be included in the organization's application." 5 C.F.R. § 950.202(b) (2007).

The impetus for the clarifying regulation began with a review of the 1984 CFC regulations by the Office of CFC Operations ("OCFCO"). Lambert Decl. ¶¶ 14, 17. Based upon the review of the regulations, together with the purpose of the CFC, OCFCO determined that the purpose of the CFC would be best served by limiting participation in the CFC to public charities, rather than private foundations. Lambert Decl. ¶ 13. Notwithstanding the belief by OCFCO that the CFC should be limited to public charities based upon these factors, prior to 2006, OPM did not focus on the distinction between public charities and private foundations. Lambert Decl. ¶ 14. Based on the belief of the OCFCO, and the fact that OCFCO believed that the regulations had not been properly enforced, OCFCO determined that it should issue a clarifying regulation that would limit CFC participation to public charities. Lambert Decl. ¶ 14.

Because OPM was drafting proposed rule changes to address a different issue with the CFC, see Lambert Decl. ¶¶ 15 & 16, OPM determined that it should include in the proposed regulations a regulation implementing OCFCO's belief and interpretation of the 1984 regulations by clarifying that participation in the CFC was limited to public charities. Lambert Decl. ¶¶ 16-17. In doing so, OPM analyzed the 1984 regulations themselves, the policy rationale behind

excluding private foundations,[2] and IRS statutes and regulations.  Lambert Decl. ¶¶ 17-18.  After

reviewing these sources, OPM ultimately proposed the clarification through notice and comment

rule-making and adopted the clarifying regulation in November 2006.  See  Solicitation of

Federal Civilian and Uniformed Service Personnel for Contributions to Private Voluntary

Organizations – Eligibility and Public Accountability Standards, 71 Fed. Reg. 67276 (adopted

Nov. 20, 2006 ) (codified at 5 C.F.R. Part 950).

**B.    Congressional Action**

On December 22, 1987, 5 U.S.C. § 1101 was amended by Pub.L. 100-202, § 101(m)

[Title VI, § 618], Dec. 22, 1987, 101 Stat. 1329- 390, 101 Stat. 1329-423.  This froze the

eligibility standards at the 1984 regulatory level, and required that any public accountability

standards be similar to those standards established for the 1984-1987 CFCs.[3]  See Pub.L. 100-

202, §§ 101(m)(b)(1)(B) & 101(m)(b)(1)(D).  Regarding the eligibility requirements, the

amendment stated:

> (B) Any requirements for eligibility to receive contributions through the
> Combined Federal Campaign shall, to the extent that such requirements relate to
> any subject matter other than one referred to in subparagraph (A), remain the same
> as the criteria in the 1984 regulations, except as otherwise provided in this section.

---

[2]  As explained in the Lambert Declaration, the policy rationale behind excluding private
foundations is that public charities, because of the funding received from the general public, have
a high degree of public oversight and accountability.  Lambert Decl. ¶¶ 13-18.  Because private
foundations are not subject to the level of public oversight and accountability as public charities,
private foundations are heavily regulated by the IRS.  See 26 U.S.C. §§ 4940-4948.

[3]  The "1984 regulations" are codified at 5 C.F.R. Part 950 (1985) and also located at
Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to Private
Voluntary Organizations, 49 Fed. Reg. 32735 (adopted Aug. 16, 1984).

Thus, this amendment, also known as the "1987 Hoyer-Hatfield Act," effectively froze the eligibility requirements for participating in the CFC at the level envisioned by the regulations in force at the close of 1984. Notably, however, notwithstanding that the Act froze the eligibility requirements, there was no mention that the agency's interpretation of such regulations must or should be frozen.

## II.    PLAINTIFF'S APPLICATION

On January 26, 2006, Health and Medical Research Charities of America ("HMR") submitted to the Office of CFC Operations ("OCFCO") an application on behalf of the SFA for participation as a national independent charity in the 2007 CFC campaign. Compl. ¶ 12. In the application, HMR stated that it was "unable to certify this organization [as a federation member] because it could not comply with the new regulatory requirement regarding IRS recognition as a public charity, since it is a private operating foundation and therefore does not fall under 26 U.S.C. 509(a)." Compl. ¶ 13 & Ex. A to Compl. Accordingly, HMR's letter requested a one-year waiver of the new requirement, noting that the organization would not have had enough time to obtain a private charity designation if it had applied to the IRS when the final rules were published.[4] Compl. ¶ 14.

On March 16, 2007, OPM denied plaintiff's application to participate in the CFC because SFA did not certify that it was classified as a public charity pursuant to 26 U.S.C. § 509(a). Compl. ¶ 15. The denial letter to SFA, which was signed by the Acting Director, Office of CFC Operations, advised plaintiff of its appeal rights. Id.

---

[4] Although plaintiff requested a waiver to apply for public charity status, there is no indication that it could meet the standards for a public charity set by 26 U.S.C. § 509(a).

SFA appealed the denial of its CFC application on March 22, 2007.  Compl. ¶ 16.  In its

appeal, SFA acknowledged that it is a private foundation and not a public charity pursuant to 26

U.S.C. § 509(a), but argued that it performs similar good-deeds to a public charity and, therefore,

should be permitted to participate in the CFC.  Id.  Plaintiff also argued that the requirement that

participants be public charities was a new eligibility requirement in violation of the 1987 Hoyer-

Hatfield Act.  Id.

By letter of June 28, 2007, OPM Chief of Staff and Director of External Affairs Tricia

Hollis sustained the initial decision of OPM and denied plaintiff's appeal.  Compl. ¶ 17.  This

denial was premised on the fact that SFA is not a public charity pursuant to 26 U.S.C. § 509(a).

Id.  Plaintiff filed this action seeking injunctive and declaratory relief, together with a motion for

a temporary restraining order on July 11, 2007.

On July 16, 2007, the parties held a telephonic conference with the Court and agreed that,

pursuant to Federal Rule of Civil Procedure 65(a)(2), plaintiff's motion for a temporary

restraining order and preliminary injunction should be converted into a motion for summary

judgment.  The parties also agreed to a briefing schedule to resolve the merits of this matter.

## LEGAL STANDARDS

### I.    APA STANDARD OF REVIEW

The APA standard of review requires a court to determine if agency action was "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §

706(2)(A).  It also limits review to the administrative record. 5 U.S.C. § 706.  Under the APA,

"[a]rbitrary and capricious review requires the court to 'consider whether the decision was based

on a consideration of the relevant factors and whether there has been a clear error in judgment.'"

McDonnell Douglas Corp. v. Dep't of the Air Force, 215 F. Supp. 2d 200, 204 (D.D.C. 2002) (internal citation omitted). This review is highly deferential and presumes the validity of agency action.  See Kisser v. Cisneros, 14 F.3d 615, 618 (D.C. Cir. 1994);  American Horse Protection Ass'n, Inc. v. Yeutter, 917 F.2d 594, 596 (D.C. Cir. 1990).  The Court must determine whether the agency has articulated a "rational connection between the facts found and the choice made." Bowman Transportation v. Arkansas-Best Freight Sys., 419 U.S. 281, 285 (1974) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)).

The Court may reverse *only* if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment.  Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415-416 (1971); see also Motor Vehicle Mfgs. Ass'n v. State Farm Automobile Ins. Co., 463 U.S. 29, 43 (1983) (a court is not to substitute its judgment for that of the agency).  "[T]he key to the arbitrary and capricious standard is its requirement of reasoned decisionmaking: [the Court] will uphold the [agency's] decision if, but only if, [it] can discern a reasoned path from the facts and considerations before the [agency] to the decision it reached." Neighborhood TV Co. v. FCC, 742 F.2d 629, 639 (D.C. Cir.1984).

## II    OPM'S INTERPRETATION OF ITS REGULATIONS IS ENTITLED TO "SUBSTANTIAL DEFERENCE"

Not only is the agency action entitled to a highly deferential standard, but the Court must confer "substantial deference" upon "an agency's construction of its own regulations."  Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Lyng v. Payne, 476 U.S. 926, 939 (1986); see also American Train Dispatchers Assoc. v. ICC, 54 F.3d 842, 847 (D.C. Cir. 1995); Randolph-Sheppard Vendors of America v. Weinberger, 795 F.2d 90, 111 (D.C. Cir. 1986)

12

("The scope of the statute and the regulations promulgated thereunder should, in the first instance, be one for the agency charged with its administration."). The Court's role is not to ensure that the agency's application of its regulations to the facts is the most natural or logical, the only possible interpretation, or the one that the Court would have adopted in the first instance, but only that it is reasonable and consistent with the regulations. National Trust for Historic Preservation v. Dole, 828 F.2d 776, 782 (D.C. Cir. 1987); Belco Petroleum Corp. v. FERC, 589 F.2d 680, 685 (D.C. Cir. 1978). The agency is entitled to even greater deference in interpreting its regulations than in reading its statutory mandate. Wyoming Outdoor Council v. United States Forest Service, 165 F.3d 43, 52 (D.C. Cir. 1998); Puerto Rico Elec. Auth. v. FERC, 848 F.2d 243, 249 (D.C. Cir. 1988); see also Lyng, 476 U.S. at 939.

Notably, the fact that an agency issues a reinterpretation or clarification of its regulations does *not* render the reinterpretation arbitrary and capricious. National Cable & Telecommunications Ass'n v. Brand X Internet Serv., 545 U.S. 967, 981 (2005). Instead, provided the agency offers an explanation for the change or clarification in policy, and the change or policy is consistent with the regulations, the change or clarification should be afforded the typical deference granted to agency action. Id. As explained by the United States Supreme Court, "An initial agency interpretation is not instantly carved in stone. On the contrary, the agency . . . must consider varying interpretations and the wisdom of its policy on a continuing basis . . ., for example, in response to changed factual circumstances, or a change in administration." Id. (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 863-64 (1984); Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 59 (1983)). In fact, in Chevron, the seminal case on deference to agency

13

interpretation was itself an instance in which the Court deferred to an agency interpretation that was a reversal of agency policy.  Chevron, 467 U.S. at 857-58; National Cable, 545 U.S. at 982.

In sum, OPM's interpretation and application of the 1984 regulations, including its implementation of the 2006 clarifying regulation, must be accepted "unless it is manifestly unreasonable."  Liberty Maritime Corp. v. U.S., 928 F.2d 413, 419 (D.C. Cir.1991) (quoting National Wildlife Federation v. Gorsuch, 693 F.2d 156, 174 (D.C. Cir. 1982)).

## ARGUMENT

I.    **THE CLARIFYING REGULATION IS A PROPER INTERPRETATION OF THE 1984 REGULATIONS AND DOES NOT VIOLATE THE HOYER-HATFIELD ACT**

As explained above, Congress mandated in 1987 that the eligibility requirements were effectively frozen at the 1984 level.  Plaintiff claims that the 2006 clarifying regulation imposed a new eligibility requirement on participation in the CFC and, therefore, that the regulation is a violation of the APA.  When the clarifying regulation is viewed in the context of the 1984 regulations themselves, however, it is clear that plaintiff's claims are misplaced and the agency's interpretation of the 1984 regulations is both appropriate and proper.

The 1984 regulations make clear that "voluntary organizations" were eligible to participate in the CFC.  The regulations, however, define "voluntary organizations" in several different places and, seemingly, in contradictory ways.  However, when the regulations are read in harmony, it is clear that the 1984 regulations authorize only public charities to participate in the CFC.  Thus, SFA, like any private foundation that did not receive its funding *primarily* from contributions from the public, and does not have "broad public support" should not have been authorized to participate in the CFC pursuant to the 1984 regulations.

14

Pursuant to 5 C.F.R. § 950.301 (1985), "Voluntary organizations are private, nonprofit, self-governing organizations financed ***primarily*** by contributions from the public." See 5 C.F.R. § 950.301 (1985). Likewise, pursuant to § 950.405, entities eligible to participate are those that are "broadly supported" by the public. 5 C.F.R. § 950.405 (1985). The plain language of the 1984 regulations contained in §§ 950.301, 950.403 and 950.405 comports with the IRS's definition of a "public charity," ***not*** a private foundation. Section 950.403 restricts participation to tax-exempt charitable organizations "supported by voluntary contributions from the general public." Use of this language infers a broad base of public support, in contrast to funding obtained by private foundations which typically are primarily supported by contributions from individuals, families, corporations or trusts. Similarly, § 950.405 of the 1984 regulations expressly references the tax status of the organization as relevant by its use of the heading "Corporate and Tax Status." 5 C.F.R. § 950.405(a) (1985).

Title 26, section 509 of the U.S. Code defines "private foundations," for tax purposes. See 26 U.S.C. § 509(a). Pursuant to § 509(a), the IRS deems charitable organizations that do not fall into certain exempted categorizes to be "private foundations."[5] See id.; Internal Revenue Service, Private Foundations (available at http://www.irs.gov/charities/charitable/article/0,,id=96114,00.html). The entities included in the exempt categories, and therefore not deemed private foundations are those that "have broad

---

[5] See also "Historical Development and Present Law of the Federal Tax Exemption for Charities and Other Tax-Exempt Organizations," at p.83 dated April 19, 2005, [Joint Committee Print]; JCX-29-05 (available at http://www.house.gov/jct/x-29-05.pdf) ("An organization that does not fit within any of the above categories is a private foundation. In general, private foundations generally are funded from a limited number of sources (e.g., an individual, a family, or a corporation).").

public support," and, therefore, are public charities.[6]  Internal Revenue Service, Private Foundations (available at http://www.irs.gov/charities/charitable/article/0,,id=96114,00.html).

To the extent that any of this regulatory or statutory language is ambiguous, comments from the Committee on Appropriations of the United States Senate make clear that Congress intended the 1984 regulations to *exclude* private foundations.  Specifically, the Committee stated that: "The Committee envisions that Federal workers will be allowed to write in any 501(c)(3) charitable organization that is ***not a private foundation*** and that the list would simply provide to federal workers information on the past year's CFC activities."  49 Fed. Reg. 32735, 32739. Accordingly, Congress fully intended the CFC to be open to public charities, not private foundations such as SFA, and understood that the 1984 regulations precluded private foundations from participating in the CFC.

Based upon the plain language of the 1984 regulations, the Committee Notes contained in the Federal Register, and the IRS's definition of public charities and private foundations, it is clear that the regulations clarifying the 1984 regulations simply explained what was intended all along, namely that the CFC was designed and understood to be limited to public charities in 1984.  Thus, the clarifying regulation was not a new eligibility requirement.  Instead, it is properly a regulation that clarified the eligibility requirements as set forth in the 1984 regulations. In light of the "substantial deference" owed to an agency's interpretation of its own regulations,

---

[6]  Plaintiff does not dispute that its status is that of a "private foundation" and not a "public charity."  See Compl. ¶ 4 ("SFA is not a public charity within the meaning of Code sec. 509(a).").  Although plaintiff attempts to classify itself as a private operating foundation, plaintiff's complaint and motion acknowledge that as a private operating foundation it is classified under 26 U.S.C. § 509(a) as a private foundation, not a public charity.  See Pltf's Motion at 10-11 (acknowledging that a private operating foundation is a private foundation).

and the actual language of the 1984 regulations, the Committee Notes and the IRS's definition of public charities and private foundations militate the conclusion that the clarifying regulation is both appropriate and proper.

Although plaintiff may prefer a different interpretation of the 1984 regulations, a plaintiff is not entitled to its preferred or chosen interpretation. In fact, as explained by the D.C. Circuit, an agency's interpretation does not have to be the most natural or logical interpretation, or the interpretation that the Court would have adopted in the first instance. National Trust for Historic Preservation, 828 F.2d at 782; Belco Petroleum, 589 F.2d at 685. Instead, the agency's interpretation must only be reasonable and consistent with the regulations. National Trust for Historic Preservation, 828 F.2d at 782; Belco Petroleum, 589 F.2d at 685.

## II.    THE FACT THAT PLAINTIFF PREVIOUSLY PARTICIPATED IN THE CFC DOES NOT RENDER OPM'S CLARIFICATION ARBITRARY OR CAPRICIOUS

In its complaint and motion, SFA argues that, because it had participated in the CFC since 1992, the clarifying regulation must be seen as a "change" and not a "clarification or re-interpretation" and, therefore, should be held arbitrary and capricious. Plaintiff's claim fails for several reasons.

As an initial matter, participation in the CFC in one year does **not** mean that the entity will be approved for participation in a subsequent year. See Lambert Decl. ¶ 21. Second, it is clear that the interpretation of the 1984 regulations under which SFA participated in the CFC as a private foundation was subsequently clarified.[7] As explained above, the fact that an agency

---

[7] Notwithstanding that plaintiff alleges that the change in the regulation was arbitrary and capricious, plaintiff should have been precluded from participating in the CFC under the 1984 regulations, had they been interpreted properly. Simply, an agency should not be penalized for

changes or clarifies its interpretation of regulations does not render the change arbitrary or capricious, provided the agency offers an explanation of the change.  National Cable, 545 U.S. at 981-82.  As explained in the declaration of Mark Lambert, see Lambert Decl. ¶¶ 13-18, OPM has done just this.  Specifically, OPM explained that OCFCO believed that the CFC was originally intended to include public charities, not private foundations.  Lambert Decl. ¶ 14.  OPM also explained its view, based in part on the distinctions between treatment of public charities and private foundations in the IRS Code, that OPM believes that public charities receive a level of public scrutiny and oversight not present for private foundations.  Lambert Decl. ¶ 13.  OPM also explained that, while proposing other regulations through notice and comment rulemaking, it reviewed the 1984 regulations, and IRS statutes, regulations and guidance, and determined it should clarify the 1984 regulations to include only private charities in the CFC.  Lambert Decl. ¶¶ 16-18.

        In sum, OPM has provided exactly the sort of explanation of its clarifying regulations that National Cable held appropriate.  Accordingly, the fact that plaintiff was erroneously permitted to participate in the CFC as a private foundation does not render the OPM's interpretation of the 1984 regulations, as clarified in 2006, arbitrary and capricious.  Thus, OPM's interpretation and clarifying regulation should be upheld under the APA.

---

correcting an erroneous prior interpretation of its regulations.  See Alvarado Parkway Institute, Inc. v. Mendez, 789 F.Supp. 1190, 1201 (D.D.C. 1992) (upholding agency action and stating that "[t]his case presents an example of an administrative agency that made a mistake in interpreting and applying its own recently promulgated regulations, acknowledged its mistake, and undertook corrective measures").

### III.    BECAUSE PLAINTIFF IS NOT A PUBLIC CHARITY, IT IS NOT ELIGIBLE TO PARTICIPATE IN THE CFC

As set forth above, the 2006 clarifying regulation is a proper interpretation of the 1984 eligibility requirements for participation in the CFC.  Thus, the only question is whether or not SFA is a public charity.  The analysis of this question is simple, as plaintiff itself acknowledges that " SFA is *not* a public charity within the meaning of Code sec. 509(a)."  Compl. ¶ 4 (emphasis added).  Additionally, although plaintiff attempts to classify itself as a private operating foundation, plaintiff's motion admits that as a private operating foundation it is classified under 26 U.S.C. § 509(a) as a private foundation, not a public charity.  See Pltf's Motion at 10-11 (acknowledging that a private operating foundation is a private foundation).

Notwithstanding that it is not a public charity, plaintiff spends much time in both its complaint and motion for a temporary restraining order asserting that it provides direct assistance to those who stutter and, accordingly, does many of the same things as a public charity.  Although plaintiff may do many good deeds, it cannot escape the requirement that participants in the CFC be public charities.  Therefore, because plaintiff is not a public charity, the action by OPM in enforcing its regulations is neither arbitrary nor capricious, or contrary to law.  Accordingly, this Court should uphold the denial of plaintiff's application to participate in the CFC as a proper exercise of agency authority.  See Neighborhood TV, 742 F.2d at 639 ("The key to the arbitrary and capricious standard is its requirement of reasoned decisionmaking: [the Court] will uphold the [agency's] decision if, but only if, [it] can discern a reasoned path from the facts and considerations before the [agency] to the decision it reached."); Kisser v. Cisneros,

19

14 F.3d 615, 618 (D.C. Cir. 1994) (APA review is highly deferential and presumes the validity of agency action).

**CONCLUSION**

For the foregoing reasons, this Court should uphold the regulation contained at 5 C.F.R. § 950.202(b) as an appropriate and proper interpretation of the 1984 regulations.  Similarly, this Court should hold that OPM was neither arbitrary nor capricious in clarifying the 1984 regulations and precluding plaintiff from participation in the CFC due to its status as a private foundation, not a public charity.  In doing so, this Court should enter judgment in defendant's favor and deny plaintiff's motion.

July 18, 2007                                  Respectfully submitted,


                                     _____/s/_____
                                     JEFFREY A. TAYLOR, D.C. Bar # 498610
                                     United States Attorney


                                     _____/s/_____
                                     RUDOLPH CONTRERAS, DC BAR #434122
                                     Assistant United States Attorney


                                     _____/s/_____
                                     JOHN F. HENAULT, D.C. Bar # 472590
                                     Assistant United States Attorney
                                     555 4th Street, N.W.
                                     Washington, DC 20530
                                     (202) 307-1249
                                     (202) 514-8780 (facsimile)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STUTTERING FOUNDATION OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-1249 (JDB) |
| | ) | |
| LINDA M. SPRINGER, | ) | |
| in her official capacity as | ) | |
| Director of the Office of Personnel | ) | |
| Management, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**<u>ORDER</u>**

This matter comes before the Court on the motions for summary judgment filed by both

parties.  Upon consideration of the appropriate pleadings, applicable law, and the record herein,

it is this _____ day of _____, 2007, hereby,

ORDERED that plaintiff's motion for summary judgment is DENIED.  It is further

ORDERED that defendant's motion for summary judgment is GRANTED.


_____
John D. Bates
United States District Judge

JUN-01 93 02:42  FROM:                                    TO:415 924 7341              PAGE:01

1/31/07

| Mail Signed UAF to:<br>Application Services<br>21 Tamal Vista, #209<br>Corte Madera, CA 94925<br>**For Assistance**<br>Call 415/924-1108 | **2007 Universal Application Form**<br>**For Inclusion in CFC and Corporate Campaigns**<br>**NEW CERTIFICATIONS**<br>➤ Print or type clearly. Application may be rejected if the form is incomplete or illegible.<br>Return Receipt Deadline: 5pm, January 9, 2007 | Email Signed Version:<br>UAF@maguireinc.com<br>or<br>Fax** to: 415/924-7341<br>** Include EIN# on emails<br>and faxes. |

THIS FORM IS REQUIRED DUE TO CHANGES ISSUED ON 11/28/2006 BY CFC REGULATORS AT THE U.S. OFFICE OF PERSONNEL MANAGEMENT. EVEN IF YOUR ORGANIZATION PREVIOUSLY RECEIVED FEDERATION APPROVAL, COMPLETION OF THIS TWO PAGE FORM IS REQUIRED FOR 2007 CFC PARTICIPATION.

**Part I.   Exempt Organization**

Name

**Stuttering Foundation of America**

Street Address (Post Office Box addresses are not accepted and may result in automatic disqualification.)

**3100 Walnut Grove Road, Suite 603**

City or Town, State, and ZIP Code

**Memphis, TN  38111**

Internet Address (URL)

**http://www.stutteringhelp.org**

**Part II.   EIN #** 62-6047678 | Four Digit CFC # (If in past years CFC) **2539**

**Part III.   Contact Person**

Name (salutation, first, last)

**Ms. Jane Fraser**

Phone Number

**901-452-7343**

Title

**President**

Email Address

**jfraser@stutteringhelp.org**

Mailing Address (If different from above address -- All correspondence will be sent here.)

Fax Number

**901/452-3931**

City or Town, State, and ZIP Code

**Part IV.   Federation Petitions**

I hereby petition the federations listed below to accept this organization as a member. If accepted, I hereby appoint these federations to act as this organization's exclusive federated representative, business, and fiscal agent in all charitable fund raising programs or activities organized or conducted in which these federations may participate and present this organization as a member, specifically empowering these federations to receive, account for, and distribute all gifts and pledges made to this organization in these fund raising programs or activities and through their subsequent donation collection periods.

I certify I have the authority to make this petition and appointment, that this organization agrees to abide by the rules, regulations, and bylaws governing these federations or governing any fund raising programs or activities in which this organization participates as a member of these federations, and that the representations made in this application are, to the best of my knowledge, truthful and accurate.

**Health & Medical Research Charities Of America**

_____ (CFC / other campaigns)

• **Independent Charities of America** (corporate / state campaigns)

• **Local Independent Charities of America** (fiscal agent)

**STEP #1 – SIGN HERE    Part V. Certifying Official**

I AM THE DULY APPOINTED REPRESENTATIVE OF THE ABOVE NAMED ORGANIZATION AUTHORIZED TO CERTIFY AND AFFIRM ALL STATEMENTS ENCLOSED IN THIS APPLICATION.

Name

x  JANE FRASER

Title

President

Signature

x

Date

January 3, 2007

62-6047678 *Stuttering Foundation of America*

**Part VI. REQUIRED CERTIFICATIONS:**
Check Mark ✓ for each numbered box below is required and have been completed based on your earlier 2007 UAF submission except 5.) ➡ where a choice of boxes is necessary.

1.) Place a check mark in the **one** appropriate box:

☒ I certify that the organization named in this application provided or conducted real services, benefits, assistance, or program activities in 15 or more different states or one foreign country over the three-year period immediately preceding the start of the campaign application year.

– OR –

☐ I certify that the organization named in this application provided or conducted real services, benefits, assistance, or program activities in a foreign country over the three-year period immediately preceding the start of the campaign application year.

2.) ☐ I certify that the Internal Revenue Service (IRS) recognizes the organization named in this application as tax-exempt under 26 U.S.C. 501(c)(3) to which contributions are tax deductible pursuant to 26 U.S.C. 170(c)(2) and the organization is classified as a public charity under 26 U.S.C. 509(a).

3.) ☒ I certify that the organization named in this application is a human health and welfare organization providing services, benefits, or assistance to, or conducting activities affecting human health and welfare. The services, benefits, assistance, or program activities affecting human health and welfare provided in 2006 are reflected in **ATTACHMENT A.**

4.) ☒ I certify that the organization named in the application accounts for its funds on an accrual basis in accordance with generally accepted accounting principles (GAAP) and has an audit of its fiscal operations completed annually by an independent certified public accountant in accordance with generally accepted auditing standards (GAAS).

**STEP #2 – CHECK ONE BOX HERE**

5.)    Place a check in the *one* appropriate box:

☐ I certify that the organization named in this application prepares and submits to the IRS a complete copy of the organization's IRS Form 990.

– OR –

☒ I certify that the organization named in this application is not required to prepare and submit an IRS Form 990 to the IRS. I have submitted a pro forma Form 990 for CFC purposes.

6) ☒ I certify that the administrative and fundraising rate for the organization named in this application is ___4.8___%.

7) ☒ I certify that an active and responsible governing body, whose members have no material conflict of interest and a majority of which serve without compensation, directs the organization named in this application.

8) ☒ I certify that the organization named in this application prohibits the sale or lease of CFC contributor lists.

9) ☒ I certify that the organization named in this application conducts publicity and promotional activities based upon its actual program and operations, and that these activities are truthful and non-deceptive, include all material facts, and make no exaggerated or misleading claims.

10) ☒ I certify that the organization named in this application effectively uses the funds contributed for its announced purposes.

11) ☒ I certify that the organization named in this application is in compliance with all statutes, Executive orders, and regulations restricting or prohibiting U.S. persons from engaging in transactions and dealings with countries, entities, or individuals subject to economic sanctions administered by the U.S. Department of the Treasury's Office of Foreign Assets Control. The organization named in this application is aware that a list of countries subject to such sanctions, a list of Specially Designated Nationals and Blocked Persons subject to such sanctions, and overviews and guidelines for each such sanctions program can be found at http://www.treas.gov/ofac. Should any change in circumstances pertaining to this certification occur at any time, the organization will notify OPM's Office of CFC Operations immediately.

**STEP #3 – SIGN HERE      PART VII: CERTIFYING OFFICIAL (Must be SAME PERSON who signed on Part V, page 1.)**

*I CERTIFY THAT I HAVE READ ALL THE CERTIFICATIONS SET FORTH IN THIS DOCUMENT AND AFFIRM THEIR ACCURACY. IN ADDITION, BY CHECKING THE BOX NEXT TO THE STATEMENT, I ACKNOWLEDGE AND AGREE TO COMPLY WITH THAT CERTIFICATION.*

1.
Name
x  JANE FRASER                          Title President

Signature
x  *[signature]*                        Date January 3, 2007

Return Receipt Deadline: 5pm, January 9, 2007

**ATTACHMENT A**
**National Organization Universal Application Form 2006**
**for**
**Stuttering Foundation of America**

There are an estimated 3 million people in the United States who stutter. Stuttering, a complex disorder, is devastating to those afflicted by it. Some twenty percent of all children go through a stage of development during which they stutter. In striving to overcome this disability, those who stutter and their families face myriad problems including the following:

(A) Stuttering is a much misunderstood condition surrounded by many myths. Accurate information is badly needed, particularly by parents of young children who have just begun to stutter. Appropriate handling of stuttering in early childhood can effectively prevent the problem from becoming chronic in later years.

(B) There is a great shortage of speech language pathologists (hereinafter referred to as "SLPs") specially trained to treat stuttering. While there are some 100,000 SLPs in the United States, some of whom can provide some help, only a comparatively few are fully qualified to treat stuttering. The SFA resource list has only approximately 800 specialists for the entire country although there are obviously some not known to us. The specialty group for fluency (stuttering) of the American Speech Language Hearing Association (the primary accrediting agency for SLPs) has only 850 members at the present time.

(C) Because of the expense of treatment and the lack of trained specialists, other means of treatment are needed by those who stutter and their families. Self-help materials and practical advice are effective tools in treating the problem. However, as indicated later in this document, SFA is also attempting to expand the availability of SLPs trained to treat stuttering. Nonetheless, self therapy and parent counseling are often the only tools available to help those who stutter.

Stuttering Foundation of America is reaching out to help stutterers directly in many important ways as outlined in the brochure attached (as Attachment A - 1) "Services Provided by the Stuttering Foundation of America." More specifically, SFA programs provide direct help to those who stutter in the following ways:

(1) The Foundation's public information and educational materials regarding prevention and treatment of stuttering reached millions of stutterers and their families in all 50 states in each of the last five years. Our toll-free 800 helpline on stuttering received approximately 20,000 calls during 2005. The SFA Web site, www.stutteringhelp.org is now receiving more than 1,250,000 hits and some months 1,500,000 page hits per month, up from 600,000 last year! A new Web site for Spanish-language readers was started in 2003, www.tartamudez.org and now brings in more than 15,000 page hits a month. Callers receive a packet of free information to help themselves or their child and information about books and videotapes that provide additional information. Web visitors can download the information and even several books free of charge from the site. A small charge is made for shipping the books and tapes to avoid their being treated as "give-away, throw-away" material; but a $2.00 book costs SFA over $1.33 for book rate postage alone.

Attachment A – Stuttering Foundation of America – Page 2

Also available upon request is a resource list for each of the 50 states of SLPs (and 44 foreign countries) who specialize in the treatment and prevention of stuttering. In addition, our published materials have been sent to people in 101 foreign countries this year alone.

(2) One of the goals of programs and publications of the SFA is the prevention of stuttering in young children. Many children have available only such professional help as is present for them in their school system, and many of the SLPs in the public schools are not prepared to treat the child who stutters. Recognizing this problem, SFA has been involved in programs for the past fifteen years to improve the training of school-based SLPs through an annual two-day symposium and several 5 day workshops for them.

To help overcome the shortage of specialists in stuttering, SFA co-sponsors four specialty training programs, one with University of Iowa, one with Boston University, one with University of Washington, and one with Florida State University.

The new DVD, Stuttering: For Kids By Kids, a 12 minute tape for children who stutter to watch, is now offered free online as streaming video. Another DVD, Working Effectively with Preschoolers Who Stutter, trains SLPs working with preschool children on the latest methods. A total of 25 training tapes for professionals are now available at nominal cost. In spring 2005, we made available 5 more DVDs, previously only available as videotapes: one for educators, one for teens, one for adults who stutter, another for preschool parents and another for children as mentioned above. Three of these can be watched free via video streaming at www.stutteringhelp.org.

 (A) At the University of Iowa program (formerly at Northwestern University), some 20 to 25 SLP's from the United States, Canada and many foreign countries spend two full weeks learning treatment methods. Since 1985, over 360 SLPs have received this specialty training. After this training, many have returned home to start in-service training or other workshops for other SLP's, thereby furthering the quality of services available. This two-week program took place at the University of Iowa in June 2003, in June 2005, and again in June 2007.

 (B) With the three other workshop programs, the SLP's spend five full days learning treatment methods. In 2006, SFA received over 200 applications for each of the 20 openings in each program, an indication of the tremendous need for these programs.

(C) In 2005, the Foundation greatly increased the number of exhibits and professional conventions it attended. Carol Ecke, CCC-SLP, took our educational materials to ten states in 2005 and has been able to educate hundreds of therapists at each of these conventions on how to deal with their individual caseloads and how to use our materials in such a way as to maximize therapy results. This new outreach is making a huge impact across the country. Following are some of the states where our impact has been felt: Texas, New York, New Jersey, Louisiana, Indiana, Kansas, Washington State, Montana, California, Illinois.

Attachment A - Stuttering Foundation of America - Page 3

To provide new help for parents of children who stutter, SFA produced the 30-minute videotape Stuttering and the Preschool Child: Help for Families. This tape is now available in Spanish as well and in DVD format with both the English and Spanish versions on the same DVD. This film, along with the tape for adults who stutter, has been sent free of charge to over 6,228 public libraries. All SFA tapes and publications are sent free to any public library of any community when requested by a parent or librarian. For parents who want their own copy, it is sent for a nominal charge. As noted before, the small charge is made for videos/DVDs and books to avoid their being treated as "give-away, throw-away" materials, but the charge is less than the printing or production cost and, in many cases, is even less than the shipping costs. **Now parents can watch the DVD free online at www.stutteringhelp.org, thereby receiving free therapy information on the very same day their concerns surface. As early intervention is crucial, this is an important step towards the prevention of stuttering. Spanish speaking parents can watch the same DVD in Spanish at www.tartamudez.org.**

Altogether, SFA publishes twenty-seven books (including six Spanish translations) and seventeen informational brochures on stuttering (including four in Spanish). Of the twenty-seven books, fifteen are written for the general public giving practical advice on how to prevent, cope with and overcome stuttering. Nine are written for use of speech pathologists in their clinical practice and three are for physicians and allied medical professionals. All books are used in many university training programs both in this country and abroad.

If Your Child Stutters: A Guide for Parents, 7th edition (2006) and Stuttering and Your Child: Questions and Answers, 3rd edition (2005) provide concrete and practical advice to parents on how to prevent stuttering.    Together with the videotapes mentioned above, they provide a wealth of information to the parents.

The foregoing identifies services provided to those who call the SFA 800 hotline for help, those who visit our Web sites, www.stutteringhelp.org and www.tartamudez.org, as well as those who write in response to public service advertisements and news releases. Services are provided annually to all 50 states.

SFA's original Web site, which includes many of the publications, is now receiving over 1,250,000 hits a month and often as many as 1,500,000.    Attachment A-2 provides statistics on the Web site. SFAs newest Web site in Spanish, which features the publications in Spanish, is receiving over 15,000 hits a month as shown on Attachment A-3.

The foregoing describe activities in arranging training for SLPs to improve their ability to treat stuttering. Because of the shortage of SLPs well trained to treat stuttering, increasing that pool of talent directly benefits those who need their services. Each year, SFA is able to enlarge the available pool in many states and countries where little help is available as we train those SLPs who attend our symposia and intensive workshops.

Attachment A - Stuttering Foundation of America - Page 4

Attached are sheets listing the participants for the last three years in the seminars for school based SLPs, the first to see children who stutter, which lists are marked as Attachment A - 4. These three conferences provided training to at least one SLP from each of the following 35 states:

Arizona  Alabama  California  Colorado Dis. of Columbia  Florida  Georgia  Idaho  Illinois Indiana Iowa  Kentucky  Louisiana Michigan  Minnesota  Missouri Montana  North Carolina  North Dakota Nebraska Nevada    New York  Ohio  Oklahoma    Oregon  Pennsylvania     Rhode Island South Carolina    South Dakota Tennessee   Texas     Virginia West Virginia  Wisconsin  Wyoming

The Workshops for Specialists at Iowa University, Boston University, Florida State University and University of Washington provide much more concentrated training to develop specialty skills. The attached lists marked Attachment A - 5 identify participants in these workshops for the last three years as being from the following 35 states and 11 foreign countries:

States:

Arizona  Alaska  Colorado  Connecticut  California  Delaware  Florida  Georgia  Hawaii    Iowa Indiana  Illinois  Kansas  Kentucky    Maine     Massachusetts  Maryland     Missouri  Michigan Mississippi    Nevada    New Jersey  New York  Ohio    Oklahoma    North Carolina  Minnesota Pennsylvania     South Dakota  Texas  Tennessee  Utah    Virginia  Washington     Wyoming

Foreign Countries:

Canada    Japan  Puerto Rico    New Zealand    South Africa     Thailand  Taiwan  Italy  Lebanon Turkey  Russia

There is some overlap among the states and foreign countries served, but combining the two lists shows that these services were provided to 46 different states and eleven different foreign countries.

It should be reemphasized here that providing this training to SLPs is a direct service and benefit to those who stutter in these 46 states and 11 foreign countries.

In order to encourage SLPs to take time off from their work schedules for additional training in treatment of stuttering, SFA has made scholarship grants to the individuals attending the Workshops for Specialists. The scholarship grants cover meals and lodging while attending the workshop as well as the tuition (instructional cost) and travel expenses for those attending the two-week workshop for specialists at University of Iowa.  The cost of each of these scholarships for the various workshops for the years 2004, 2005, and 2006 were as shown on the schedule shown on the following page.

Attachment A - Stuttering Foundation of America - Page 5

Tabulation of cost of individual scholarships:

|  | 2004 | 2005 | 2006 |
|---|---|---|---|
| Two-week workshop at Iowa University: | | | |
| Meals and housing | | $ 619.50 | |
| Tuition (instructional costs) | | 415.00 | |
| Travel (limited to $250 each | | 250.00 | |
| Total Iowa University scholarship | | $1,284.50 | |
| ✓ One-week workshop at University of Washington: | | | |
| Meals and housing | $403.24 | | |
| Tuition (instructional cost) | 360.00 | | |
| Total Western workshop scholarship | $763.24 | | |
| ✓ One-week workshop Florida State University In Tallahassee 2004; Philadelphia 2006 | | | |
| Meals and housing | $208.80 | | $275.94 |
| Tuition (instructional cost) | 350.00 | | 400.00 |
| Total Florida State wksp scholarship | $ 558.80 | | $675.94 |
| ✓ One-week workshop at Boston University: | | | |
| Meals and housing | | $489.70 | |
| Tuition (instructional cost) | | 350.00 | |
| Total Eastern workshop | | $839.70 | |

| Two-day workshops for school based speech language pathologists: | ✓ | ✓ | ✓ |
|---|---|---|---|
| | In Cincinnati | In Minneapolis | In Chicago |
| Tuition (instructional cost) | $230.00 | $300.00 | $322.00 |

As shown on the attached Addendum #1 to Attachment A, applying these scholarship costs to the lists of attendees at the various workshops shows that scholarship awards totaling $127,232 were made in 46 states during the three year period and scholarship awards totaling $15,305.85 were made in 11 different foreign countries during the three year period.

Therapeutic and Educational Materials Provided to Public and SLPs

A major part of the Stuttering Foundation program is the creation and production of therapeutic and educational materials, both in print and in video tapes. They provide help to individuals who stutter and their families as well as to the SLPs who provide treatment for the problem.

Attachment A – Stuttering Foundation of America – Page 6

Included is Self Therapy for the Stutterer (book and videotape) which outlines a program adults and teens can follow on their own to control their stuttering. This seminal book, now in its 10th edition, has helped hundreds of thousands of stutterers since it first appeared in 1972. It has been translated into many foreign languages, from Spanish to German, From Russian to Zulu. Also included are notable publications and videos for parents, grandparents, and caregivers of children who stutter including If Your Child Stutters: A Guide for Parents, now in its 7th edition, and Stuttering and Your Child: Help for Parents. These books and videos have been shown to **prevent** childhood stuttering becoming a chronic lifelong problem. They offer parents and others concrete guidelines to follow to ensure that stuttering will not continue to be a problem. (See Page 3 of this Attachment A for further discussion of these publications and videos.)

These publications and videos have been provided to residents of all 50 states, the District of Columbia, and many foreign countries at their specific request. The attached Addendum #2 to Attachment A tabulates the number of publications and videos provided over the last three full years. Small payments are made for these publications and videos in order to avoid their being treated as "give away - throw away" materials, but the charge is much less than the cost of producing and distributing the materials.

## New foreign activity commenced in 2006:

Although, as noted in the previous page, Stuttering Foundation training courses have benefited people in foreign countries who stutter by training speech pathologists who return to their native lands and by providing publications and videos many of which have been translated into foreign languages, SFA has not been directly involved in providing services outside the continental United States.

During 2006, an affiliation arrangement has been worked out with the Michael Palin Center in London. This center, which accepts referrals from the entire country, is world renowned for its treatment of children who stutter, for research in treatment techniques, and training of speech pathologists from all over Great Britain. The Stuttering Foundation is actively involved in the treatment program at Michael Palin Center through the activities of three speech pathologists beginning July 1, 2006. Since this project has just started, statistics are not available yet on the number of children being directly benefited; but this is will be a major undertaking for the Stuttering Foundation in the future. A total of more than $125,000 will be expended during 2006, and $250-$300,000 in 2007.

# Services Provided by
# The Stuttering Foundation

- Maintains two web sites—www.stutteringhelp.org and www.tartamudez.org—which provide help, information, and resources to a world-wide audience.

- Maintains toll-free hotline—1-800-992-9392—and answers some 24,000 calls a year.

- Publishes 26 books, 28 videotapes and 17 brochures on stuttering. Over 800,000 publications are distributed each year to those who stutter, their families, speech-language pathologists, pediatricians, family physicians, hospitals, schools, clinics, day-care centers, libraries, and others concerned with the problem of stuttering.

- Provides an information packet to parents of children who may have a stuttering problem. The packet includes free brochures and a resource list.

- Provides an information packet for adults and teens who stutter. This includes free brochures, a resource list, and contacts for support groups in their areas.

- Provides a nation-wide resource list for adults who stutter, parents, pediatricians, speech-language pathologists, and all those looking for a speech-language pathologist who specializes in stuttering.

- Co-sponsors five-day intensive training workshops, *Diagnosis and Treatment of Children Who Stutter: Practical Strategies*.

- Co-sponsors a two-week intensive training workshop, *Stuttering Therapy: A Workshop for Specialists*, with the University of Iowa.

- Distributes information on stuttering at the conventions of the American Academy of Pediatrics, the American Academy of Family Physicians, the National Association of School Nurses, the National Association of Pediatric Nurses, and the American Speech-Language-Hearing Association, and others.

- Sends approximately 2,500 press releases several times a year to educate the public about stuttering. These releases are sent to newspapers, syndicated columnists, and editors at magazines, radio, and television stations across the country.

- Distributes videotapes, books, and brochures to 63 countries on five continents.

3

Attachment A-2

www.stutteringhelp.org

### Detail Daily Activity - Stuttering Foundation of America (Portal)
1 May 2006 00:00 AM - 31 May 2006 23:59 PM (-5)

This section shows the activity for each day of each month for the requested report period. ( example if there are 2 months which contains data, then the values shown are the sum for each specific day of each month.)
Tip Specific periods ( 1 day minimum ) can be extracted by selecting a different period in the Control panel. Values shown do not include failed requests.



| Detail Daily Activity | | | | |
|---|---|---|---|---|
| | Hits | Page Views | Client Sessions | Bandwidth Notes |
| Mon, May 1 2006 | 54609 | 20639 | 3594 | 2.02 GB |
| Tue, May 2 2006 | 58811 | 25881 | 3710 | 2.60 GB |
| Wed, May 3 2006 | 66263 | 30278 | 3614 | 1.90 GB |
| Thu, May 4 2006 | 69908 | 27178 | 4264 | 1.95 GB |
| Fri, May 5 2006 | 52569 | 25369 | 3831 | 1.84 GB |
| Sat, May 6 2006 | 36898 | 22247 | 2874 | 1.42 GB |
| Sun, May 7 2006 | 44084 | 23150 | 3073 | 1.77 GB |
| Mon, May 8 2006 | 67658 | 29497 | 3675 | 2.85 GB |
| Tue, May 9 2006 | 63525 | 30240 | 3499 | 2.33 GB |
| Wed, May 10 2006 | 64070 | 29233 | 3384 | 2.64 GB |
| Thu, May 11 2006 | 57744 | 27477 | 3111 | 2.70 GB |
| Fri, May 12 2006 | 49758 | 24915 | 3024 | 2.10 GB |
| Sat, May 13 2006 | 34418 | 21674 | 2329 | 1.30 GB |
| Sun, May 14 2006 | 38436 | 21745 | 2487 | 1.35 GB |
| Mon, May 15 2006 | 60060 | 77777 | 3305 | 2.91 GB |
| Tue, May 16 2006 | 60868 | 28818 | 3397 | 2.74 GB |
| Wed, May 17 2006 | 58736 | 25624 | 3250 | 2.03 GB |
| Thu, May 18 2006 | 53728 | 24615 | 2949 | 2.46 GB |
| Fri, May 19 2006 | 46386 | 20559 | 2718 | 2.46 GB |
| Sat, May 20 2006 | 32129 | 20056 | 2209 | 856.31 MB |
| Sun, May 21 2006 | 37324 | 21313 | 2355 | 1.15 GB |
| Mon, May 22 2006 | 54186 | 23790 | 2924 | 1.67 GB |
| Tue, May 23 2006 | 58387 | 26604 | 3175 | 2.38 GB |
| Wed, May 24 2006 | 51541 | 23473 | 2374 | 1.50 GB |

| | | | | |
|---|---|---|---|---|
| Thu, May 25 2006 | 48382 | 21590 | 2733 | 1.92 GB |
| Fri, May 26 2006 | 47053 | 25706 | 2089 | 1.52 GB |
| Sat, May 27 2006 | 33258 | 20818 | 2153 | 1.68 GB |
| Sun, May 28 2006 | 33450 | 21393 | 1768 | 898.08 MB |
| Mon, May 29 2006 | 40868 | 23968 | 2410 | 940.95 MB |
| Tue, May 30 2006 | 58187 | 27445 | 2479 | 2.76 GB |
| Wed, May 31 2006 | 41421 | 19637 | 1800 | 1.44 GB |
| Total | 1574715 | 762509 | 90557 | 60.20 GB |
| Maximum | 69908 | 30278 | 4264 | 2.91 GB |
| Minimum | 32129 | 19637 | 1768 | 856.31 MB |
| Average | 50797 | 24597 | 2921 | 1.94 GB |

1,574,715 Hits

May 2006

Attachment A-3

www. tartamudez.org

## Detail Daily Activity - Tartamudez
1 May 2005 00:00 AM - 31 May 2005 23:59 PM (-5)

This section shows the activity for each day of each month for the requested report period. ( example if there are 2 months which contains data, then the values shown are the sum for each specific day of each month.)
**Tip** Specific periods ( 1 day minimum ) can be extracted by selecting a different period in the Control panel. **Values shown do not include failed requests.**



| Detail Daily Activity | Hits | Page Views | Client Sessions | Bandwidth (MB) |
|---|---|---|---|---|
| Sun, May 1 2005 | 310 | 59 | 42 | 2.32 MB |
| Mon, May 2 2005 | 269 | 76 | 41 | 2.03 MB |
| Tue, May 3 2005 | 810 | 155 | 80 | 5.67 MB |
| Wed, May 4 2005 | 499 | 103 | 66 | 3.67 MB |
| Thu, May 5 2005 | 517 | 95 | 67 | 3.58 MB |
| Fri, May 6 2005 | 320 | 65 | 52 | 2.01 MB |
| Sat, May 7 2005 | 312 | 68 | 58 | 2.39 MB |
| Sun, May 8 2005 | 216 | 63 | 36 | 1.77 MB |
| Mon, May 9 2005 | 612 | 108 | 82 | 4.28 MB |
| Tue, May 10 2005 | 495 | 95 | 77 | 3.03 MB |
| Wed, May 11 2005 | 561 | 105 | 75 | 3.82 MB |
| Thu, May 12 2005 | 592 | 121 | 69 | 4.46 MB |
| Fri, May 13 2005 | 533 | 134 | 79 | 4.00 MB |
| Sat, May 14 2005 | 630 | 115 | 61 | 3.98 MB |
| Sun, May 15 2005 | 360 | 81 | 66 | 2.43 MB |
| Mon, May 16 2005 | 731 | 136 | 82 | 4.80 MB |
| Tue, May 17 2005 | 433 | 89 | 64 | 2.91 MB |
| Wed, May 18 2005 | 437 | 123 | 71 | 3.95 MB |
| Thu, May 19 2005 | 571 | 127 | 78 | 4.34 MB |
| Fri, May 20 2005 | 764 | 148 | 79 | 4.81 MB |
| Sat, May 21 2005 | 486 | 125 | 76 | 3.85 MB |
| Sun, May 22 2005 | 477 | 94 | 62 | 3.03 MB |
| Mon, May 23 2005 | 689 | 180 | 87 | 5.47 MB |
| Tue, May 24 2005 | 757 | 170 | 96 | 6.19 MB |

| | | | | |
|---|---|---|---|---|
| Wed, May 25 2005 | 523 | 117 | 90 | 3.80 MB |
| Thu, May 26 2005 | 632 | 110 | 116 | 3.89 MB |
| Fri, May 27 2005 | 628 | 132 | 68 | 4.51 MB |
| Sat, May 28 2005 | 341 | 107 | 65 | 2.88 MB |
| Sun, May 29 2005 | 286 | 56 | 39 | 1.99 MB |
| Mon, May 30 2005 | 440 | 92 | 58 | 3.30 MB |
| Tue, May 31 2005 | 521 | 110 | 64 | 4.00 MB |
| Total | 15752 | 3359 | 2146 | 113.21 MB |
| Maximum | 810 | 180 | 116 | 6.19 MB |
| Minimum | 216 | 56 | 36 | 1.77 MB |
| Average | 508 | 108 | 69 | 3.65 MB |

15,752 hits
May 2006

Attachment A-4
Stuttering Foundation of America
Conference of School-Based Speech Patholgists
Chicago, IL  June 9-10, 2006

9/04/06                         Donmait Code Report                         Page   1
                                Code: CHIC06

| Name | Address | City, State Zip COUNTRY |
| --- | --- | --- |
| Strong, Andrea | 3759 E. Sabastian Lane | Gilbert, AZ 85297 |
| Salenko, Susie | 1235 Parker Place, Unit 1A | San Diego, CA 92109 |
| Valenzuela, Tawny | 21157 Lycoming Street | Diamond Bar, CA 91789 |
| Scott, Lorrie | 95 Acorn Lane | Boulder, CO 80304 |
| Black, Linda L. | 3760 W Street, N.W. | Washington, DC 20007 |
| Carlsson, Linda M.A. | 985 Moon Lake Drive | Naples, FL 34104 |
| Rountree, Julia Ed.D., CCC-SLP | 475 Ivy Rountree Road | Swainsboro, GA 30401 |
| Barnes, Pamela M.S., CCC-SLP | 3141 Norman Drive | Sioux City, IA 51104 |
| Sokolowski, Molly | 3031 Nebraska | Sioux City, IA 51104 |
| Beale, Carolyn | 28W720 Wagner Road | Warrenville, IL 60555 |
| Beilke, Tara | 3434 Orchard Terrace | Crete, IL 60417 |
| Bennett, Barbara | 4419 Gayle | Woodstock, IL 60098 |
| Bergen, Erin | 1612 Lonsdale Avenue, #306 | Naperville, IL 60540 |
| Burns, Marietta A. | 2840 N. Springfield | Chicago, IL 60618 |
| Bute, Alison | 1900 N. 3051st Road | Ottawa, IL 61350-9718 |
| Carpenter, Margaret M. | 1135 N. East Avenue | Oak Park, IL 60302 |
| Chipala, Julianne M.S., CFY-SLP | 10548 S. Central Park Avenue | Chicago, IL 60655 |
| Culp, Karen M.A. | 8336 W. Chestnut Court | Frankfort, IL 60423 |
| Dugan, Constance L. M.A., CCC-SLP | 4305 North Lincoln Avenue | Chicago, IL 60618-1711 |
| Farrimond, Donald J. | 1000 Butterfield Road | Aurora, IL 60502 |
| Farrimond, Glenda | 1420 Stonebridge Trail 2-2 | Wheaton, IL 60187 |
| Grissom, Susan SLP | 1009 E. Buckingham Drive | Naperville, IL 60563 |
| Haro, Sari | 7320 Dixon, #703 | Forest Park, IL 60130 |
| Hucker, Patricia | 15N470 Settlers Grove Rd. | Hampshire, IL 60140 |
| Kelley, Susan M.A., CCC-SLP | 108 Patricia | Prospect Heights, IL 60070 |
| Krizizke, Cindy | 799 W. Kensington | Mt. Prospect, IL 60056 |
| Hadigan, Katie | 526 E. Sangamon Avenue | Rantoul, IL 61866 |
| Matthews, Sheresa | 2546 W. 117th Street | Chicago, IL 60655 |
| McFalls, Jodi | 207 N. Division Avenue | Polo, IL 61064 |
| Pessis, Michelle | 370 Carriage Way | Deerfield, IL 60015 |
| Pomplun, Beverlee M.A., CCC-SLP | 319 Balmoral Drive | Bartlett, IL 60103 |
| Rau, Elaine M. M.S., CCC-SLP | 1007 N. Ridge Ave. | Arlington Heights, IL 60004 |
| Raymond, John M.A., CCC-SLP | 451 Lloyd Street | Cary, IL 60013 |
| Rohr, Linda | 304 Banbury Road | W Aurora, IL 60542-1240 |
| Rollins, Kara | 2732 Peterson Court | Geneva, IL 60134 |
| Sandberg, Taylor | 301 Kemah Lane | Schaumburg, IL 60193-1471 |
| Scott, Kathryn J. Ph.D., CCC-SLP | 408 Indian Hills | Rantoul, IL 61866 |
| Voland, Katherine A. | 5017 N. Wolcott Ave, Apt 106 | Chicago, IL 60640-2643 |
| Zalnis, Laura D. M.A., CCC-SLP | 618 W. Judd Street | Woodstock, IL 60098 |
| Webster, Ann M.A., CCC-SLP | 52227 Evard Drive | Granger, IN 46530-8236 |
| Wilcox, Paulette | 11366 Birchway Drive | Osceola, IN 46561 |
| Reilly, Mary Pat M.S., CCC-SLP | 3756 Stanton Boulevard | Louisville, KY 40220-1963 |
| , | Director|Associates III Hrg,Spch, Lrng Ctr | Baton Rouge, LA 70815 |
| Beauchamp, MaryAnne L. | Speech Dept-Romeo Schools|39111 Quinn Drive | Sterling Heights, MI 48310-244 |
| Leonard, Sara | 2981 Jamesway Avenue | Holland, MI 49424 |
| Merritt, Brian | 252 Sycamore Lane | Auburn, MI 48611 |
| Farr-Petterson, Abby L. Ph.D., CCC- | 908 East River Terrace | Minneapolis, MN 55414-3629 |
| Lee-Sheridan, Sharon | 1736 Ashland Avenue | St. Paul, MN 55104 |
| Beffa, Deborah A. | 17207 Windsor Crest Blvd. | Wildwood, MO 63038 |
| Graves, Dawn P. | 822 Lily Bud Court | Ballwin, MO 63011 |
| Myers, J. Sarah M.S., CCC-SLP | 8810 Tomlin Hill Rd. | Columbia, MO 65201 |
| Hanrahan, Joan C. M.S., CCC-SLP | 57 Auburn Avenue | Staten Island, NY 10314 |
| Ishman, Carmen M.A., CCC-SLP | 757 Hawthorne Place | Webster, NY 14580 |

"|" is used to separate lines in the address

9/04/06                          Donmail Code Report                              Page    2
                                    Code: CHIC06

Name                          Address                          City, State Zip COUNTRY
----------------------------- -------------------------------- -----------------------------

Metzger, Marcie               907 W. Jefferson Street          Delphos, OH 45833
Rieck, Eva Marie M.A., CCC-SLP 1675 Laurel Creek Drive         Troy, OH 45373
Rife, Marcia                  6650 Weston Circle West          Dublin, OH 43016-7901
Weckel, Julianne              2853 La Cresta Drive             Beavercreek, OH 45431

Thomas, Barbara               7020 S. Yale, Suite 264          Tulsa, OK 74136
Townsend, Constance D.        1715 E. Woodrow Street           Tulsa, OK 74110

Jedlicka, Mike CFY-SLP        5477 Amy Street                  West Linn, OR 97068

Maier, II, Kevin M.S., CCC-SLP 432 Gregg Street                Shillington, PA 19607

Benell, Jennifer              179 Woodland Avenue              Cranston, RI 02920
Cordy, Nancy P.               114 Butternut Drive              N. Kingstown, RI 02852

Cantrell, Todd                2209 Bowman Road                 Franklin, TN 37064
Magee, Becky M.S., CCC-SLP    822 Belle Grove Road             Knoxville, TN 37934

Trivedi, Falguni M.A., CCC-SLP 13222 Ensley Wood Drive         Houston, TX 77082

Villada, Luz G.               240 S. Reynolds Street, #304     Alexandria, VA 22304

Bohlman, Patricia M.S., CCC-SLP 5666 S. 27th Street            Milwaukee, WI 53221-4108
Bomberger, Victoria E. M.A.   222 Hollow Creek Road            Racine, WI 53402-2636
Gregory, Carolyn              S. 7642 High Point Drive         Merrimac, WI 53561
Hays, John M. MMS, CCC-SLP    222 Hollow Creek Road            Racine, WI 53402
Johnson, Laura                3536 Tallyho Lane                Madison, WI 53705
Lee, Kristen Powell           644 County Road N.               Stoughton, WI 53589
Ostman, Deborah S. M.A., CCC-SLP c/o Roberts School|270 Candy Lane Fond du Lac, WI 54935
Powell, Celia                 2975 North River Birch Dr., #G   Brookfield, WI 53045-3491


==================
Total Number:    75
==================


"|" is used to separate lines in the address

Attachment A-4
Stuttering Foundation of America
Conference of School-Based Speech Pathologists
Minneapolis, MN  June 17-18, 2005

8/09/05                          Dormail Code Report                          Page   1
                                 Code: MINN05

| Name | Address | City, State Zip COUNTRY |
|------|---------|-------------------------|
| Whitted, Kathleen S. | 730 John Drive | Prescott, AZ 86303 |
| Bass, Ruth M.S., CCC-SLP | 120 Newport Center Dr., Suite 200 | Newport Beach, CA 92660 |
| Gallenberg-Zieve, Felice R. | 18401 Burbank Blvd. Suite 106 | Tarzana, CA 91356-6601 |
| Schindler, Andrea | 3525 Lebon Drive, #210 | San Diego, CA 92122 |
| Haj-Tas, Maisa A. | University of Florida, Dauer Hall\|P.O. Box | Gainesville, FL 32611-7420 |
| Livingstone, Rebecca | 26805 S.W. 152 Court | Homestead, FL 33032 |
| Baker, Kathy | 307 Sheri Street | LeGrand, IA 50142 |
| Scherber, Connie J. M.S. | 3512 N. Shore Drive | Clear Lake, IA 50428-1019 |
| Smith, Dennis | 413 1st Avenue | Audubon, IA 50025-1356 |
| Johnson, Carol | 406 E. Michigan Ave | Nampa, ID 83686 |
| Nelson, Lori | NNU Speech and Hearing Clinic\|1513 West Sci | Marquette, MI 49855 |
| Belle, Carolyn | 167 Bedford Street, SE | Minneapolis, MN 55414 |
| Bissonette, Linda M.A., CCC-SLP | Children's Hospitals & Clinics\|5950 Clearwa | Minnetonka, MN 55343 |
| Block, Joanne M.S. | 2679 Hauer Trail | Shakopu, MN 55379 |
| Borja, Sarah | 2617 Louisa Avenue | Mounds View, MN 55112 |
| Breitenfeldt, Merrie | 22437 Cty 36 | Long Prairie, MN 56347 |
| Connelly, Jennifer | 15051 Bridgewater Drive | Savage, MN 55378 |
| Cummings, Linda | 2243 Northridge Circle N. | W. Lakeland Township, MN 55082 |
| Domino, Julie | 9367 Stonehouse Lane | Nisswa, MN 56468 |
| Evans, Jeffrey M.S. | 502 Riverside Drive NE | St. Cloud, MN 56304-0134 |
| Fleck, Roxanne | 8706 Thomas Avenue S. | Bloomington, MN 55431 |
| Gelderman, Judith C. | 1651 4th Street | White Bearlake, MN 55110-3159 |
| Goiffon, JoAnn | 5265 E. Lake Beach Court | Shoreview, MN 55126 |
| Gronhovd, K. Dale Ph.D., CCC-SLP | 1117 S. Fourth Street | Moorhead, MN 56560 |
| Hanson, Bruce R. M.S., CCC-SLP | 3614 Westmoor Drive South | Moorhead, MN 56560 |
| Hessler, Teresa A. | 4121 19th Avenue South | Minneapolis, MN 55407 |
| Kamrath, Gail | 190 Lost Lake Road | Mahtomedi, MN 55115 |
| Kaphingst, Angela M.S., CCC-SLP | 6718 4th Avenue South | Richfield, MN 55423 |
| Kreuger, Barbara A. | 2716 Oak Ridge Trail | Woodbury, MN 55125 |
| Lauze, Julie | 2468 Brenner Avenue East | Maplewood, MN 55109 |
| Leferink, Jerene | 8293 Marsh Creek Road | Minneapolis, MN 55125 |
| Lofton, Cindy | St. Cloud University\|Dept. of Communication | St.Cloud, MN 56301-4498 |
| Nawrocki, Michael | Ace Speech and Language, LLC\|1133 Rankin St | St. Paul, MN 55116 |
| Niederjohn, Cindy | 3024 Rhode Island Avenue South | St.Louis Park, MN 55426 |
| Paradis, Jodi | 10421 Bluff Circle | Chaska, MN 55318-9534 |
| Peterson, Patricia | 3313 Edward Street N.E. | St. Anthony Village, MN 55418 |
| Porte, Lisa Knudsen | 4945 Abbott Avenue South | Minneapolis, MN 55410-1708 |
| Schwarzrock, Lorraine M.A., CCC-SLP | P.O. Box 16367 | St. Paul, MN 55116 |
| Seiberlich, Angie | 160 Wedgewood Drive | Mahtomedi, MN 55115 |
| Strom, Mary T. | 1957 Hearn Ave. North | Oakdale, MN 55128 |
| Wallis, Kay M.S., CCC-SLP | 3311 Oxford Alcove | Woodbury, MN 55125 |
| Willis, Jane | 1449 Lakeview Avenue | Minneapolis, MN 55416-3612 |
| Zandstra, Julie | 3031 Ewing Avenue South, #382 | Minneapolis, MN 55416 |
| Zuelow, Linda | 4832 Kentucky Avenue No. | Crystal, MN 55428 |
| Green, Margaret M.A. | 323 E. Central | Missoula, MT 59801 |
| Feland, Gina | 1122 Walnut Street | Grand Forks, ND 58201 |
| Jahner, Tanya | 4020 Overland Road | Bismarck, ND 58503 |
| Kyllo, Jody | PO Box 236 | Larimore, ND 58251-0236 |
| Golka, Tiffany M.A. | 6726 N. 110th St. | Omaha, NE 68164-1258 |
| Wragge, Marcia A. M.S., CCC-SLP | 2833 South 87th Avenue | Omaha, NE 68124 |
| Lang, Roxanne M. M.A., CCC-SLP | 176 Buena Court | Henderson, NV 89074 |
| Boie, Mary | 5125 Burrell Drive | Sheffield Village, OH 44054 |
| Garrett, Jill | 5678 Highland Terrace Drive | Milford, OH 45150 |
| Broadus, Sheila | 6450 Jackson Street | Pittsburgh, PA 15206 |
| Hunley, Harriett B. M.S., CCC-SLP | 304 South Aiken Avenue | Pittsburgh, PA 15232-1002 |

"|" is used to separate lines in the address

8/09/05                          Donmail Code Report                              Page   2
                                   Code: MINN05

| Name | Address | City, State Zip COUNTRY |
| --- | --- | --- |
| | | Sioux Falls, SD 57106 |
| Kelley, Kris M.A., CCC-SLP | 1502 S. Raymond Circle | Pollock, SD 57437 |
| Oster, Debra | Pollock School\|F Street | Sioux Falls, SD 57108 |
| Walsh, Rebecca M.S., CCC-SLP | 6201 S. Connie Avenue, #312 | |
| | | Lexington, TX 78947 |
| Catching, Melinda R. M.S., CCC-SLP | 2016 CR 412 | |
| | | Falls Church, VA 22041 |
| Dennis, Diedre A. M.A., CCC-SLP | 5501 Seminary Road, #106 South | Alexandria, VA 22314 |
| Maxwell, Katherine G. | 204 Skyhill Road, Apt. 9 | |
| | | New Richmond, WI 54017 |
| Eral, Michelle | 1232 Island View Drive | Pewaukee, WI 53072 |
| Gangnon, Patrick M.S., CFY-SLP | N24W240708 Saddle Brook Drive | Elkhorn, WI 53121 |
| Granger, Christine | W4540 Country Road A | Brookfield, WI 53045-6032 |
| King-McIver, Joyce M. | 19540 Timberline Drive | Janesville, WI 53548 |
| MacPherson, Meghan | 310 W. Terrace Street | Kenosha, WI 53142 |
| Santelli, Anna | 5931 82nd Place | |
| | | Lake Hattie, WY 82070 |
| Clark, Bobbie | 130 Lake Hattie Road | |
| | | Orillia, ON L3V 4V8 CANADA |
| Caryl, Marlene | 269 Matchedash Street North | Thunder Bay, Ontario P7B 4G5 C |
| Mason, Jane | 153 Marlborough Street | |

=====================
Total Number:    70
=====================

"|" is used to separate lines in the address

Attachment A-4
Stuttering Foundation of America
Conference of School-Based Speech Pathologists
Cincinnati, Ohio   June 11-12, 2004

| 7/18/04 | Dormail Code Report | Page   1 |
| | Code: CIN04 | |

| Name | Address | City, State Zip COUNTRY |
| --- | --- | --- |
| Byrd, Carolyn W. M.S., CCC-SLP | USA Speech & Hearing Center|2000 UCOM | Mobile, AL 36688-0002 |
| Ross, Judith | 10406 West Glasgow Avenue| | Littleton, CO 80127 |
| Bacsa, Elaine S. | 7727 SW 86th St., Unive A1-305 | Miami, FL 33143 |
| Hall, Mardy | 1016 48th Terrace | Vero Beach, FL 32966 |
| Notter, Carol | 1871 Palm City Road, G401 | Stuart, FL 34994 |
| Enz, Laura M.S., CCC-SLP | Univ. Hospital-Speech/Hearing Ctr.|1350 Wal | Augusta, GA 30901 |
| Howald, Gayle | 3548 Daventry Lane | Kennesaw, GA 30144 |
| Chapell, Melissa | 21020 E. 500 Rd. | Paris, IL 61944 |
| Hencinski, Donna | 707 Wenonah | Oak Park, IL 60304 |
| Lepp, Daniel Steven M.A., CCC-SP | 904 Scottswood Road | Rockford, IL 61107 |
| Riordan, Peg | 1516 East Bailey Road | Naperville, IL 60565 |
| Sayers, Patricia M.A., CCC-SLP | Theracom Comm. Specialists, #509|6443 Clare | Willowbrook, IL 60527 |
| Semanico, Gay E. M.S., CCC-SLP | 917 E. Chestnut | Bloomington, IL 61701 |
| Stevens, Brenda | 15375 E. 250th Road | Paris, IL 61944 |
| Batta, Janet SLP | 112 Pineview Lane | Lafayette, IN 47905 |
| Biddle, Sherry | 15672 Elizabeth Drive | Lawrenceburg, IN 47025 |
| Collins, Kari M.A., CCC-SLP | 3440 E. Warren | Vincennes, IN 47591 |
| Huffman, Dawn | 230 J Oxmoor Way | Avon, IN 46123 |
| O'Donnell, Allie M.A. | 851 Northview Avenue | Indianapolis, IN 46220 |
| Osburn, Rita M.S. | 10553 N. Albrecht Rd. | Bickwell, IN 47512 |
| Pesut, Deborah M. M.A., CCC-SLP | 9136 Iris Lane | Zionsville, IN 46077 |
| Scherrer, Alexis | 2210 W. Woodmont | Muncie, IN 47304 |
| Carpenter, Susan | 6921 Fallen Leaf Circle | Louisville, KY 40241 |
| Felker, Isabell M. M.S. | 558 Lincoln Drive | Elizabethtown, KY 42701 |
| Hertel, Michelle | 4208 Brookhaven Ave. | Louisville, KY 40220 |
| Johnson, Heather | P. O. Box 975 | Campton, KY 41301 |
| Maddox, Staci M.A., CCC-SLP | 2712 Coachlight Lane | Burlington, KY 41005 |
| Nagle, Brittany | 11004 Fairway Pointe Drive | Louisville, KY 40241 |
| Payne, Linda | 1832 Forest Run Drive | Independence, KY 41051 |
| Perdue, Susan W. | 1678 Old Highway 11 | Beattyville, KY 41311 |
| Ruble, Jennifer | 3142 Bridlerun Drive | Independence, KY 41051 |
| Spedding, Brenda M.S., CCC-SLP | 7806 Briarwood Drive | Crestwood, KY 40014 |
| Creek, Gwyn M.A. | 529 Brentwood Boulevard | Lafayette, LA 70563 |
| Brennan-Leonard, Sara | 2981 Jamesway Avenue | Holland, MI 49424 |
| Rose, Molly M. M.A. | 465 East Main Street | Dundee, MI 48131 |
| Superson, Tamara | 17195 Redford Avenue | Detroit, MI 48219 |
| Turk, Pamela | 12511 Via Catherine Court | Grand Blanc, MI 48439 |
| Danahy, Kerry M.A. | 1260 West CR E | Arden Hills, MN 55112 |
| Gillin, Mary Lynn | 717 Evergreen Knoll| | Mendota Heights, MN 55118 |
| Boutwell, Jennifer M.A. | 204 East Naomi Street | Randleman, NC 27317 |
| Warren, Diana M.A., CCC-SLP | 2 East Avenue, #206 | Larchmont, NY 10538 |
| Alt, Beth M.A. | Children's Hospital|3333 Burnet Avenue. PAV | Cincinnati, OH 45229 |
| Ash, Susan | 5960 Millshire Drive, Apt. 2C | Kettering, OH 45540 |
| Ayala, Vicky M.A. | 390 Fair St. | Berea, OH 44017 |
| Barnes, Melinda C. M.S. | 6254 Windham Court | Liberty Turnpike, OH 45044 |
| Belokonny, Jenifer | 7310 Forest Brook Boulevard | Centerville, OH 45459 |
| Breen, Phyllis M.A., CCC-SLP | CAHS-Comm.Sci/Disorders/Clinic Dir|3250 Har | Cincinnati, OH 45208 |
| Buente, Jeanne | 12440 Kiousville-Palestine Rd. | Mt. Sterling, OH 43143 |
| Byrne, Julie M.A., CCC-SLP | 2938 Feltz Avenue | Cincinnati, OH 45211 |
| Carlisle, Kathryn A. | 2744 Fairmont Avenue | Dayton, OH 45419 |
| Chaifetz, Lynn | 3409 Aston Ct. | Cincinnati, OH 45209 |
| Chapman, Carie B. M.S. | 4501 Clearview Avenue | Cincinnati, OH 45205 |
| De Bruin, Kristen | 254 Moran Drive | Xenia, OH 45385 |

7/18/04                          Donmail Code Report                                    Page    2
                                 Code: CIN04

| Name | Address | City, State Zip COUNTRY |
|------|---------|------------------------|
| Fireovid, Amy M.S. | 3720 Carlton Avenue | Cincinnati, OH 45227 |
| Games, Diane C. M.A., CCC-SLP | 6793 Ross Lane | Mason, OH 45040-4658 |
| Gregory, Bonnie M.S., CCC-SP | 1420 Clear Brook Drive | Dayton, OH 45440 |
| Hargrave, Jean M.S. | 200 Winter Creek Court | Englewood, OH 45322 |
| Helinski, Heather SLP | Children's Hospital\|3333 Burnet Ave., PAV-4 | Cincinnati, OH 45229 |
| Hensley, Heather M.S. | 2405 Royal Ridge Drive | Miamisburg, OH 45342 |
| Hockensmith, Megan | 434 Garfield Avenue | McDonald, OH 44437 |
| Hosking, Kathleen | 7049 Jeannie Ave. | Cincinnati, OH 45230-4030 |
| Kempe-Biley, Kate M.A., CCC-SLP | 19790 Tanbark Ln. | Strongsville, OH 44149 |
| Klohe, Colleen | 900 St. Nicholas Avenue | Dayton, OH 45410 |
| Lyons, Amy M.A., CCC-SLP | Speech Pathology, MLC 4011\|3333 Burnet Ave. | Cincinnati, OH 45229 |
| Marshall, Lauren M.S. | 2208 S. Belvoir Blvd | University Heights, OH 44118 |
| McConnell-Stephen, Patricia | 6244 Fay Court | Loveland, OH 45140-8119 |
| Padgett, Karen L. M.A., CCC-SLP | 4713 Duneden Avenue | Cincinnati, OH 45236 |
| Prine, Lori J. M.A., CCC-SLP | 10713 Drake Road | Hamersville, OH 45130 |
| Rizzo, Karen J. M.A., CCC-SLP | 9728 Barnswood Lane | Loveland, OH 45140-5669 |
| Robbins, Janice S. | 1425 Bean Oller Road | Delaware, OH 43015 |
| Slone, Ann | 9624 Leebrook Drive | Cincinnati, OH 45231 |
| Weigle, Melissa | 3651 Nantucket Drive, Apt. F | Loveland, OH 45140 |
| Wissel, Carla | 1806 Linneman Road | Cincinnati, OH 45238 |
| Wollman, Irving M.A., CCC-SLP | Chld's Hosp Med Ctr Outpatient E.\|796 Cinci | Cincinnati, OH 45245 |
| Zeit, Katrina M.S. | 3769 Meadowlark Lane | Cincinnati, OH 45227 |
| | | |
| Atchison-Taylor, Lisa M. | 401 Chestnut St. | Columbia, PA 17512 |
| Evanoski, Tricia | 335 Forrest Road | New Castle, PA 16105 |
| Mayberry, Mary A. | 105 Huntingwood Drive | Lancaster, PA 17602-1390 |
| Powell, Krista L. M.S. | 223 Bentley Avenue | Sharon, PA 16146 |
| | | |
| Priddy, Lisa M.A., CCC-SLP | Super Duper Publications\|P. O. Box 24997 | Greenville, SC 29616 |
| | | |
| Hopping, Jane M.S., CCC-SLP | 106 Briarwood Road | Clinton, TN 37716-2102 |
| | | |
| MacPherson, Mary | 1611 North Pontiac Drive | Janesville, WI 53545 |
| | | |
| Corra, Nora | 3320 Broad Street | Parkersburg, WV 26104 |

```
===================
Total Number:   85
===================
```

"|" is used to separate lines in the address

Attachment A-5
STUTTERING FOUNDATION OF AMERICA
Florida State /MidAtlantic Workshop for Specialits
Philadelphia, PA June 18-24, 2006

9/04/06                          Donmail Code Report                          Page   1
                                   Code: MDA06

| Name | Address | City, State Zip COUNTRY |
| --- | --- | --- |
| Baines, Kris M.A.CCC-SLP | 1210 Elmwood Drive | Walnut Creek, CA 94597-2120 |
| Mauricio, Lori-Ann Acenas M.A., CCC | 14090 Deepwater Bend Road | Corona, CA 92880 |
| Eichstadt, Kate M.S., CCC-SLP | 344 Graceland Avenue, Unit 2 South | Eds Plaines, IL 60016 |
| Harris, Lonnie G. Ph.D., CCC-SLP | 132 Pleasant Ridge | Lexington, KY 40475 |
| Cordero, Astrid M.A., CCC-SLP | 234 Algonquin Trail | Ashland, MA 01721 |
| Kluetz, Brett Alice M.S., CCC-SLP | 1417 Anchor Street | Baltimore, MD 21230-4331 |
| Wagener, Ann Marie M.A., CCC-SLP | 116 Old Line Drive | Centreville, MD 21617 |
| Belle, Carolyn Ph.D., CCC-SLP | 167 Bedford Street, SE | Minneapolis, MN 55414 |
| Fleck, Roxanne M.S., CCC-SLP | 8706 Thomas Avenue S. | Bloomington, MN 55431 |
| Griffin, Lori M.A., CCC-SLP | 1137 5th Street W. | Sartell, MN 56377 |
| Hessler, Teresa A. M.S., CCC-SLP | 4121 19th Avenue South | Minneapolis, MN 55407 |
| Summer, Joanne H. M.A., CCC-SLP | 70 Alexandria Road | Morristown, NJ 07960-3645 |
| Schopick, Steffi M.A., CCC-SLP | 548 Dawson Lane | Jericho, NY 11753 |
| Simpson, Stacey R. M.S., CCC-SLP | P.O. Box 550 | Kingston, OK 73439 |
| Kleinow, Jennifer Ph.D., CCC-SLP | 239 Arden Road | Conshohocken, PA 19428-2503 |
| Mancinelli, James M.S., CCC-SLP | 1115 Marlborough Street | Philadelphia, PA 19125 |
| Ellis, Carol M.A., CCC-SLP | 5587 Elk Creek Road | Piedmont, SD 57769 |
| Kelley, Kris M.A., CCC-SLP | 1502 S. Raymond Circle | Sioux Falls, SD 57106 |
| Dennis, Diedre A. M.A., CCC-SLP | 4551 Strutfield Lane, Apt. 4307 | Alexandria, VA 22311-4987 |
| Brown, Maya M.S., CCC-SLP | 2150 Harvard Street | Halifax, NS B3L 2S7 CANADA |
| Lilian, Dina M.A. | 11 Cheltondale Rd-Cheltondale 2192 | Johannesburg SOUTH AFRICA |

```
====================
Total Number:    21
====================
```

"|" is used to separate lines in the address

Attachment A-5
STUTTERING FOUNDATION OF AMERICA
New England Workshop for Specialists
At Boston University, June 20-25, 2005

`8/09/05                          Donmail Code Report                                    Page   1
                                 Code: EA05

| Name | Address | City, State Zip COUNTRY |
| --- | --- | --- |
| Colyar, Terry C. M.A., CCC-SLP | 7622 N. 48th Drive | Glendale, AZ 85301 |
| Quin, Paul M.S., CCC-SLP | 50 Chapman Place, #215 | East Hartford, CT 06108-2175 |
| Turken, Tara J. M.S., CCC-SLP | 69 Anvil Drive | Avon, CT 06001 |
| Halley, Laura M.S., CCC-SLP | 2014 Sheldon Drive | Newark, DE 19711 |
| Goodman, Elise S. M.A., CCC-SLP | 26 Jyra Lane | North Easton, MA 02356-2738 |
| LaFleur, Christine M.S., CCC-SLP | 1150 Broadway, Apt. 4 | Somerville, MA 02144-1741 |
| Selle, Helen M.S., CCC-SLP | 15 President Road | Roslindale, MA 02130 |
| Dohn, Karen L. M.A.CCC-SLP | 20123 Northville Pl Dr, Apt 2824 | Northville, MI 48167-2956 |
| Ryan, Jo Ellen M.S., CCC-SLP | 1703 Chestnut Drive | High Point, NC 27262-4529 |
| Wohlgemuth, Joseph J. M.A., CCC-SLP | 209 Rock Ridge Road | Boonton, NJ 07005 |
| Carnavale, Susan C. M.S., CCC-SLP | 6055 Bethlehem Lane | Cicero, NY 13039-8523 |
| Delaney, Laura R. M.S., CCC-SLP | 12 North Street | Bedford Hills, NY 10507 |
| Swartz, Nancy M.S., CCC-SLP | 925 West End Avenue, #6F | New York, NY 10025 |
| Pietrzyk, Rose Marie M.S., CCC-SLP | 47 Gambier Circle | Cincinnati, OH 45218 |
| Taylor, Amanda M.S., CCC-SLP | 1324 Damron Drive | Midwest City, OK 73110-1404 |
| Sheets, Vanessa M.A., CCC-SLP | 7914 Ardleigh Street | Philadelphia, PA 19118 |
| Robinson, Debra Hamamoto M.S., CCC- | 15105 North Columbus Street | Spokane, WA 99208-9536 |
| Tabri, Dollen | American Univ. of Beirut Med. Ctr.|E.N.T. D | Beirut LEBANON |
| Jithavech, Ponjit M.A. | Otolaryngology Dept., Mahidol Univ|Ramathib | Bangkok 10400 THAILAND |
| Ardeman, Burcu M.S., CCC-SLP | Tuccarbasi Gokay Sok|Karacabey, Apartment # | Erenkoy Istanbul TURKEY |

=====================
Total Number:   20
=====================

╶╴|╵╴ is used to separate lines in the address

Attachment A-5
STUTTERING FOUNDATION OF AMERICA
Stuttering Therapy: Workshop for Specialists
University of Iowa, Iowa City, IA    June 19 - July 1, 2005

Page  1

8/09/05                    Donmail Code Report
                           Code: IA05

| Name | Address | City, State Zip COUNTRY |
|------|---------|-------------------------|
| Keck, Calista M.S., CCC-SLP | 15555 N. Frank Lloyd Wright #3002 | Scottsdale, AZ 85260 |
| Arismendi, Cheryl M.A.CCC-SLP | 34 Old Wood Road | Pomona, CA 91766 |
| Jones, Michelle A. M.A., CCC-SLP | 2516 W. Gunnison, #1 | Chicago, IL 60625 |
| King, Amie M.A., CCC-SLP | 16820 East Country Club Road | Mt. Vernon, IL 62864 |
| Sylvester, Suzanne V. M.S., CCC-SLP | Suzanne V. Sylvester Speech Path.|75 Pearl | Portland, ME 04101-4101 |
| Peacock, Jennifer M.A., CCC-SLP | 19791 Old Homestead Rd. | Harper Woods, MI 48225 |
| Jackson, Ashley M.A., CCC-SLP | 5236 Cherry Street | Kansas City, MO 64110-2428 |
| Scott, Kathleen Scaler M.S., CCC-SL | 231 Spruce Court | Flemington, NJ 08822-3103 |
| Conrad, Nina F. | 360 Grandview Blvd. | Yonkers, NY 10710 |
| Reitzes, Peter M.A., CCC-SLP | 338 14 Street, Apt. 12 | Brooklyn, NY 11215 |
| Schmidt, Margaret M.A., CCC-SLP | 700 Farmington Ave., #55 | Pottstown, PA 19464 |
| Gurrister, Maria M.S., CCC-SLP | Wasatch Speech and Language Ctr|2120 E. 390 | Holladay, UT 84124 |
| Marchieri, Massimiliano M.S. | Via dell'Esperanto 9 | Villafronca di Verona 37069 IT |
| Yasuda, Nao M.S., CCC-SLP | 1-11-15 Tsujidohigashikaigan | Fujisawacity Kanagawa 251-0045 |
| Snead, Michelle M.A., CCC-SLP | 40a Tutanekai Street | Paraparaumu 6010 NEW ZEALAND |
| Filatova, Yulia O. Ph.D., SLT | Assoc. Prof./Comm. Disorders Dept.|Moscow S | Moscow 119602 RUSSIA |
| Tseng, Jennifer | Dept. Rehab. of Shin Kong Wu Ho-Su| Memor | Taipei TAIWAN R.O.C. |
| Jeeraumporn, Jeamjai M.A. | Speech Clinic, Ramathibodi Hospita|Rama VI | Bangkok 10400 THAILAND |
| Belgin, Erol | Melis Sitesi B Blok D:34 Umitkoy | Ankara 06500 TURKEY |
| Kayikci, Mavis Emel Kulak | Yasamkent Mah. 47 Cad. 997 Sok.|Atasehir Si | Coyyolu Ankara 06810 TURKEY |

=========================
Total Number:    20
=========================

nlu is used to separate lines in the address

Attachment A-5
STUTTERING FOUNDATION OF AMERICA
Southern Workshop for Specialists
Florida State University, Tallahassee, FL    June 21-26, 2004

| Name | Address | City, State Zip COUNTRY |
|------|---------|------------------------|
| Clark, Terry Lee M.Ed., CCC-SLP | 1540 NE 60th Street | Fort Lauderdale, FL 33334 |
| Hudson, Delores Y. M.S., CCC-SLP | 3102 Crump Rd. | Tallahassee, FL 32309 |
| Matias, Felix A. M.S., CCC-SLP | 3750 Gunn Highway, Suite 1-A | Tampa, FL 33618 |
| Silver, Valeria Bonnette M.A., CCC- | 4937 Spanish Oaks Circle | Fernandina Beach, FL 32034 |
| Chamier, Mary W. M.Ed. | 457 Windsor Farms Drive | Lawrenceville, GA 30045-6082 |
| King, Amie M.A., CCC-SLP | 16820 East Country Club Road | Mt. Vernon, IL 62864 |
| Rau, Elaine M. M.S., CCC-SLP | 1007 N. Ridge Ave. | Arlington Heights, IL 60004 |
| Bersuch, Heather M.S., CCC-SLP | 313 SE Gingerbread Lane | Blue Springs, MO 64014-3612 |
| Jackson, Ashley M.A., CCC-SLP | 5236 Cherry Street | Kansas City, MO 64110-2428 |
| Kahre, Vina M.A., CCC-SLP | Rt. 1 Box 78AA | Lockwood, MO 65682 |
| Jones, Edie E. M.A., CCC-SLP | 402 Bowling St. | Raleigh, MS 39153 |
| Brown, Nadia M.S., CCC-SLP | 98 Archdale Drive | Jacksonville, NC 28546 |
| Houghton, Janaye Matteson M.S., CCC | 36 Teal Lane | Sylva, NC 28779 |
| Thompson, Stacia M.A., CCC-SLP | 38 Peapack Road | Far Hills, NJ 07931 |
| Davila, Itza N. M.S. | Urb. Montecario calle 3 #1255 | San Juan, PR 00924 |
| Burroughs, Rob M.S., CCC-SLP | ACT]1200 Mt. Creek Road, Suite 260 | Chattanooga, TN 37405 |
| Ferguson, Sandra M.Ed., CCC-SLP | 1451 Horseshoe Lake Road | Iowa Park, TX 76367-7344 |
| Germain, Ellen M.S., CCC-SLP | 707 Westover | Richardson, TX 75080 |
| Hewitt, Hazel M.A., CCC-SLP | 15907 Hickory Cove Drive | Houston, TX 77095 |
| Sprague, Wendy M.Ed., CCC-SLP | 1004 Mockingbird Drive | Saganaw, TX 76131 |
| Chew, Heidi M.S., CCC-SLP | Scottish Rite Language Center]4202 Hermitag | Richmond, VA 23227-3755 |

=====================
Total Number:    21
=====================

Attachment A-S
STUTTERING FOUNDATION OF AMERICA
Western Workshop for Specialists
University of Washington, Seattle, WA    June 21-26, 2004

Page   1

7/18/04                Donmail Code Report
                          Code: WE04

| Name | Address | City, State Zip COUNTRY |
|---|---|---|
| Milligan, Devra M.A., CCC-SLP | P. O. Box 972 | Delta Junction, AK 99737 |
| | | |
| Epperson, Candi D. M.S., CCC-SLP | P.O. Box 15 | Loma Linda, CA 92354 |
| Garvey-Will, Lorraine M.S., CCC-SLP | 1085 Lotas Place | Porterville, CA 93257-7001 |
| Koutala, Ashleigh M.A., CCC-SLP | 1023 Century Drive | Napa, CA 94558 |
| Lambe, Marie M.S., CCC-SLP | 6687 N. Channing Way | Fresno, CA 93711 |
| Lomonaco, Beatrice M.A., CCC-SLP | 33810 Jason Rd. | Action, CA 93510-1643 |
| Roth, Carole Ph.D., CCC-SLP | Hennepin County Medical Center\|3830 Valley | San Diego, CA 92130-3307 |
| Schulman, Linda S. M.A., CCC-SLP | 4924 Balboa Boulevard, #492 | Encino, CA 91316 |
| | | |
| Lautenschlager, James M.A., CCC-SLP | 7805 Julynn Rd. | Colorado Springs, CO 80919 |
| | | |
| Boyd, Patricia A. M.N.S.,CCC-SLP | 141 West 90th Court | St. John, IN 46373 |
| | | |
| Stiefel, Julia M.A., CCC-SLP | 104 Sharon Dr. | Lawrence, (KA) 66049 |
| | | |
| Farr-Petterson, Abby L. Ph.D., CCC- | 908 East River Terrace | Minneapolis, MN 55414-3629 |
| Tilstra, Janet M.A., CCC-SLP | 914 Morningstar Court | Sartell, MN 56377 |
| | | |
| Fleming, Karin M.S., CCC-SLP | 16 Stonecliff | Fenton, MO 63026 |
| | | |
| Lang, Roxanne M. M.A., CCC-SLP | 176 Buena Court | Henderson, NV 89074 |
| | | |
| Graves, Treva L. M.A., CCC-SLP | 9 W Domar Circle | Sioux Falls, SD 57108-3801 |
| Huff, Elisa Ph.D., CCC-SLP | 121 South Crawford Road | Vermillion, SD 57069 |
| | | |
| Goudie, Kathryn M.S., CCC-SLP | 2442 Dolphin Way | Salt Lake City, UT 84121 |
| | | |
| Gibson, Shana M.A., CCC-SLP | 1606 South Vercler Road | Spokane, WA 99216 |
| | | |
| Evans, Rebecca W. M.S., CCC-SLP | 2837 Deming Boulevard | Cheyenne, WY 82001 |

```
==========================
Total Number:    20
==========================
```

ADDENDUM #1 TO ATTACHMENT A
STUTTERING FOUNDATION OF AMERICA
SCHLORSHIPS - LIST  BY STATE AND COUNTRY TRY  2004-05-06

| STATE | IOWA UNIVERSITY | BOSTON UNIVERSITY | FL STATE UNIVERSITY | WASHINGTON UNIVERSITY | SCHOOLS CONFERENCE | TOTAL BY STATE |
|---|---|---|---|---|---|---|
| AZ | 1284.51 | 839.71 | | | 300 | 2424.22 |
| AL | | | | | 440 | 440 |
| ID | | | | | 300 | 300 |
| AK | | | | | | |
| CO | | | | 763.24 | | 763.24 |
| CT | | | | 763.24 | 210 | 973.24 |
| CA | | 1679.41 | | | 460 | 2139.41 |
| IL | 1284.51 | | 1351.88 | 5342.68 | 1360 | 9339.07 |
| FL | 2569.01 | | 1793.54 | | 1700 | 6062.55 |
| GA | | | 2235.21 | | 1920 | 4155.21 |
| LA | | | 558.81 | | 420 | 978.81 |
| IA | | | | | 210 | 210 |
| MS | | | | | 900 | 900 |
| IN | | | 558.81 | | | 558.81 |
| KS | | | | 763.24 | 1680 | 2443.24 |
| KY | | | | 763.24 | | 763.24 |
| ME | | | 675.94 | | 2100 | 2775.94 |
| MA | 1284.51 | | | | | 1284.51 |
| MO | | 2519.01 | 675.94 | | 660 | 3854.95 |
| MN | 1284.51 | | 1676.41 | 763.24 | | 3724.16 |
| WV | | | 2703.76 | 1526.48 | 10320 | 14550.24 |
| NV | | | | | 440 | 440 |
| NEB | | | | 763.24 | 300 | 1063.24 |
| NJ | | | | | 600 | 600 |
| NY | 1284.51 | 839.71 | 1234.71 | | 3450 | 6808.93 |
| OH | 2569.02 | 2519.11 | 675.94 | | 1820 | 7584.07 |
| OR | | 839.69 | | | 9080 | 9919.69 |
| WI | | | | | | 0 |
| NC | | | | | 2010 | 2010 |
| PA | | 839.69 | 1117.61 | | 210 | 2167.3 |
| SC | 1284.51 | 839.71 | 1351.88 | | 7420 | 10896.1 |
| NM | | | | | 210 | 210 |
| RI | | | | | 230 | 230 |
| SD | | | 1351.88 | 1526.48 | 900 | 3778.36 |

| | | | | | | |
|---|---|---|---|---|---|---|
| TX | | | 2235.21 | | 300 | 2535.21 |
| TN | | | 558.81 | | 210 | 768.81 |
| UT | 1284.51 | | | 763.24 | | 2047.75 |
| VT | | | | | 230 | 230 |
| VA | | | 1234.71 | | 2440 | 3674.71 |
| WA | | 839.69 | | 763.24 | | 1602.93 |
| WY | | | | 763.24 | 300 | 1063.24 |
| HI | | | | | | 0 |
| MI | 1284.51 | 839.71 | | | 1140 | 3264.22 |
| MT | | | | | 300 | 300 |
| MD | | | 1351.88 | | 690 | 2041.88 |
| DE | | 839.69 | | | 2070 | 2909.69 |
| OK | | 839.71 | 675.94 | | | 1515.65 |
| DC | | | | | 230 | 230 |
| ND | | | | | 900 | 900 |
| TOTAL ALL STATES | | | | | 58260 | 127232.62 |
| CANADA | | | 675.94 | | 600 | 1275.94 |
| LEBANON | | 839.69 | | | | 839.69 |
| THAILAND | 1284.51 | 839.71 | | | | 2124.22 |
| CROATIA | | | | | | 0 |
| NEW ZLND | 1284.51 | | | | | 1284.51 |
| SO AFRICA | | | 675.94 | | | 675.94 |
| FINLAND | | | | | | 0 |
| P.R. | | | 558.79 | | | 558.79 |
| BELGIUM | | | | | | 0 |
| TAIWAN | 1284.51 | | | | | 1284.51 |
| ISRAEL | | | | | | 0 |
| JAPAN | 1284.51 | | | | | 1284.51 |
| ITALY | 1284.51 | | | | | 1284.51 |
| RUSSIA | 1284.51 | | | | | 1284.51 |
| TURKEY | 2569.01 | 839.71 | | | | 3408.72 |
| TOTAL BY COUNTRY | 10276.07 | 2519.11 | 1910.67 | 0 | 600 | 15305.85 |
| TOTAL BY | 25890.18 | 16793.95 | 25929.54 | 15264.8 | 58860 | 142538.47 |

ADDENDUM #2 TO ATTACHMENT A - STUTTERING FOUNDATION OF AMERICA
DISTRIBUTION  BY STATE    2003-04-05

| STATE | 2003 | 2004 | 2005 | TOTAL BY | STATE |
|-------|------|------|------|----------|-------|
| AK | 855 | 591 | 506 | 1952 | |
| AL | 1915 | 3112 | 2823 | 7850 | |
| AR | 779 | 1525 | 1381 | 3685 | |
| AZ | 4284 | 3077 | 2745 | 10106 | |
| CA | 28075 | 28386 | 25577 | 82038 | |
| CO | 2885 | 3231 | 2758 | 8874 | |
| CT | 1645 | 1871 | 1523 | 5039 | |
| DC | 146 | 1106 | 1069 | 2321 | |
| DE | 303 | 187 | 145 | 635 | |
| FL | 7101 | 9016 | 8047 | 24164 | |
| GA | 4807 | 5117 | 4758 | 14682 | |
| HI | 1450 | 848 | 772 | 3070 | |
| IA | 2696 | 1141 | 917 | 4754 | |
| ID | 528 | 1719 | 1593 | 3840 | |
| IL | 17734 | 8947 | 7901 | 34582 | |
| IN | 2533 | 1782 | 1481 | 5796 | |
| KS | 1472 | 993 | 776 | 3241 | |
| KY | 2183 | 2200 | 1814 | 6197 | |
| LA | 1526 | 1931 | 1691 | 5148 | |
| MA | 3615 | 3481 | 2783 | 9879 | |
| MD | 3366 | 3814 | 3277 | 10457 | |
| ME | 716 | 664 | 516 | 1896 | |
| MI | 5947 | 3873 | 3343 | 13163 | |
| MN | 3984 | 2585 | 2116 | 8685 | |
| MO | 2889 | 2516 | 2185 | 7590 | |
| MS | 3069 | 1055 | 910 | 5034 | |
| MT | 721 | 395 | 296 | 1412 | |
| NC | 1955 | 2883 | 2521 | 7359 | |
| ND | 668 | 296 | 246 | 1210 | |
| NE | 1151 | 1282 | 1078 | 3511 | |
| NH | 1188 | 379 | 288 | 1855 | |
| NJ | 5917 | 8921 | 8063 | 22901 | |
| NM | 527 | 751 | 622 | 1900 | |
| NV | 749 | 489 | 444 | 1682 | |
| NY | 9806 | 9144 | 7461 | 26411 | |
| OH | 3359 | 4702 | 4117 | 12178 | |
| OK | 875 | 2269 | 1989 | 5133 | |
| OR | 1548 | 1227 | 956 | 3731 | |
| PA | 6396 | 11149 | 10444 | 27989 | |
| RI | 461 | 543 | 381 | 1385 | |
| SC | 5154 | 1368 | 1145 | 7667 | |
| SD | 290 | 526 | 482 | 1298 | |
| TN | 3134 | 3070 | 2674 | 8878 | |
| TX | 24752 | 22675 | 20975 | 68402 | |
| UT | 591 | 808 | 633 | 2032 | |
| VA | 3347 | 3811 | 3341 | 10499 | |
| VT | 715 | 687 | 571 | 1973 | |
| WA | 4930 | 8291 | 7667 | 20888 | |
| WI | 3872 | 6476 | 5761 | 16109 | |
| WV | 524 | 349 | 242 | 1115 | |
| WY | 48 | 88 | 63 | 199 | |
| TOTALS | 189181 | 187347 | 165867 | 542395 | |

ATTACHMENT 2005 STUTTERING FOUNDATION OF AMERICA
FROM 990          I. D. 62-6047678

GRANTS
Part ||Line 小之之 (cont'd)

| Name | City, State Zip COUNTRY |
|---|---|
| Ardeman, Burcu M.S., CCC-SLP | Erenkoy Istanbul TURKEY |
| Carnavale, Susan C. M.S., CCC-SLP | Cicero, NY 13039-8523 |
| Colyar, Terry C. M.A., CCC-SLP | Glendale, AZ 85301 |
| Delaney, Laura R. M.S., CCC-SLP | Bedford Hills, NY 10507-2306 |
| Dohn, Karen L. M.A.CCC-SLP | Northville, MI 48167-2956 |
| Goodman, Elise S. M.A., CCC-SLP | North Easton, MA 02356-2738 |
| Halley, Laura M.S., CCC-SLP | Newark, DE 19711 |
| Jithavech, Ponjit M.A. | Bangkok 10400 THAILAND |
| LaFleur, Christine M.S., CCC-SLP | Somerville, MA 02144-1741 |
| Paddock, Vanessa Sheets M.A., CCC-S | Philadelphia, PA 19118 |
| Pietrzyk, Rose Marie M.S., CCC-SLP | Greenhills, OH 45218-1426 |
| Quin, Paul M.S., CCC-SLP | East Hartford, CT 06108-2175 |
| Robinson, Debra Hamamoto M.S., CCC- | Spokane, WA 99208-9536 |
| Ryan, Jo Ellen M.S., CCC-SLP | High Point, NC 27262-4529 |
| Selle, Helen K. M.S., CCC-SLP | Roslindale, MA 02131 |
| Swartz, Nancy M.S., CCC-SLP | New York, NY 10025 |
| Tabri, Dollen | Beirut LEBANON |
| Taylor, Amanda M.S., CCC-SLP | Midwest City, OK 73110-1404 |
| Turken, Tara J. M.S., CCC-SLP | Avon, CT 06001 |
| Wohlgemuth, Joseph J. M.A., CCC-SLP | Boonton, NJ 07005 |

=====================
Total Number:    20
=====================

Everyone on this page was paid $100.00
   Total of this page was$2,000.00

ATTACHMENT 2005 STUTTERING FOUNDATION OF AMERICA

FORM 990     I. D. 62-6047678

GRANTS
Part II Line 22 (cont'd)

| Name | City, State Zip COUNTRY |
|---|---|
| Arismendi, Cheryl M.A.CCC-SLP | Pomona, CA 91766 |
| Belgin, Erol | Ankara 06500 TURKEY |
| Conrad, Nina M.S. | Yonkers, NY 10710-1915 |
| Filatova, Yulia O. Ph.D., SLT | Moscow 119602 RUSSIA |
| Gurrister, Maria M.S., CCC-SLP | Holladay, UT 84124 |
| Jackson, Ashley M.A., CCC-SLP | Kansas City, MO 64110-2428 |
| Jeeraumporn, Jeamjai M.A. | Bangkok 10400 THAILAND |
| Jones, Michelle A. M.A., CCC-SLP | Chicago, IL 60625 |
| Kayikci, Mavis Emel Kulak | Cayyolu Ankara 06810 TURKEY |
| Keck, Calista M.S., CCC-SLP | Scottsdale, AZ 85260 |
| King, Amie M. M.A., CCC-SLP | Mt. Vernon, IL 62864-9886 |
| Marchiori, Massimiliano M.S. | Villafranca of Verona 37069 IT |
| Peacock, Jennifer M.A., CCC-SLP | Harper Woods, MI 48225 |
| Reitzes, Peter M.A., CCC-SLP | Brooklyn, NY 11215 |
| Schmidt, Margaret M.A., CCC-SLP | Pottstown, PA 19464-4583 |
| Scott, Kathleen Scaler M.S., CCC-SL | Lafayette, LA 70506 |
| Snead, Michelle M.A., CCC-SLP | Hataitai, Wellington 6003 NEW |
| Sylvester, Suzanne V. M.S., CCC-SLP | Portland, ME 04101-4101 |
| Tseng, Jennifer | Taipei TAIWAN R.O.C. |
| Yasuda, Nao M.S., CCC-SLP | Fujisawacity Kanagawa 251-0045 |

```
======================
Total Number:    20
======================
```

Everyone on this page was paid $220.00.

Total of this page $4,400.00

Department of The Treasury

Internal Revenue Service
EO Group 7404
Suite 1109
401 West Peachtree St.
Atlanta, GA 30365

Person To Contact:
Terry Williams
Telephone Number:
(404)331-3793
Refer Reply To:
EO:7404:AH
EIN:
62-6047678
Date:  December 09, 1991

Stuttering Foundation
of America, Inc.
PO Box 11749
Memphis, TN 38111-0749

Dear Sir or Madam:

We have received the information that you submitted in regards
to your organization's change of name, from 'Speech Foundation
of America, Inc.' to 'Stuttering Foundation of America, Inc.'
This information has been made a part of your file.

Your organization shall continue to be recognized as exempt
under Section 501(C)(03) Internal Revenue Code, effective as
of January 1950. You may rely on this exemption until it is
modified, terminated or revoked by the Internal Revenue
Service.

Please continue to let us know of any changes in the purpose,
character, method of operation, name or address of your
organization. This is a requirement for retaining your exempt
status.

A copy of this letter should remain in your permanent records,
as it may help resolve any questions about your exempt status.

Thank you for your cooperation.

Sincerely,

Coordinator
Exempt Organizations

Internal Revenue Service

Department of the Treasury
C-1130
Atlanta, GA  30301

District
Director

Speech Foundation of America
P.O. Box 11749
Memphis, TN  38111

EIN: 62-6047678
Person to Contact:
Floyd Jones
Telephone Number:
(404)331-1516
Date: SEP 29 1988

Dear Sir or Madam:

We have considered your request for advance approval of your grant-making procedures under section 4945(g) of the Internal Revenue Code. Your request is considered to have been properly submitted on February 25, 1988, for purposes of section 53.4945-4(d)(3) of the Income Tax Regulations.

Our records indicate that you are a private foundation recognized as exempt under section 501(c)(3) of the Code and are classified as a private operating foundation ad defined in section 4942(j)(3).

The information submitted indicates that you will, in most cases co-sponsor training programs for therapists who are actively involved in the treatment of stutterers. The grants will fund all or part of the cost to participants of travel to and from the location of the program, lodging and meals while attending the program, and instructional cost including, in some cases a payment of tuition to a co-sponsoring educational institution.

Your grant program selection of grantees will be made jointly by the Foundation and the co-sponsoring organization. You have stated that no person will be related who is either a disqualified person to the Foundation or who is a relative or known to be an employee of a disqualified person within the meaning of section 4946(a)(1) of the Code.

-2-

Speech Foundation of America

Grant recipients will be selected on the demonstrated interest in treatment of stuttering. Judgment of the individual will be on the fact that the person is actively involved in treatment of stutterers. Grantees will be required to have at least a masters degree in speech pathology. An additional criterion, but not a requirement, will be a clinical certification by the American Speech Language Hearing Association. A few grants may be awarded to foreign national who are active in the treatment of stuttering. In the event there are more applicants than may be accepted in a particular program, some priority will be given to speech pathologists who are working in a public school environment.

The Foundation will be paying most of the expenses directly or reimbursing the grantee only for documented expenses. To cover expenses of meals, a reasonable per diem allowance may be paid to individuals.

Although the Foundation will pay direct instructional costs, the reimbursement for travel and per diem will not be paid to a trainee who does not complete the course. The Foundation will, following all training programs, solicit comments and suggestions from the participants for improving future programs. You will take appropriate steps to recover unused grant funds. You will retain records regarding all grants you will award.

Sections 4945(a) and (b) of the Code impose certain excise taxes on expenditures defined as taxable expenditures by section 4945(d). Section 4945(d)(3) includes in the definition of taxable expenditures any amount paid or incurred by a private foundation as a grant to an individual for travel, study, or similar purposes by such individual, unless such grant satisfies the requirements of section 4945(g).

Section 4945(g) of the Code provides that section 4945(d)(3) shall not apply to individual grants awarded on an objective and nondiscriminatory basis pursuant to a procedure approved in advance if it is demonstrated that:

   1. The grant constitutes a scholarship or fellowship which is subject to the provisions of section 117(a) and is to be used for study at an educational organization described in section 170(b)(1)(A)(ii);

   2. The grant constitutes a prize or award which is subject to the provision of section 74(b), if the recipient of such prize or award is selected from the general public; or

-3-

Speech Foundation of America

3. The purpose of the grant is to achieve a specific objective, produce a report or similar product, or improve or enhance a literary, artistic, musical, scientific, teaching, or other similar capacity, skill or talent of the grantee.

Section 53.4945-4(c)(1) of the Foundation Excise Tax Regulations provides that to secure approval of a grant-making procedure a private foundation must demonstrate that:

a. The grant procedure includes an objective and non-discriminatory selection process;

b. The procedure is designed to result in the performance of the activities intended to be financed; and,

c. The foundation will obtain reports to determine whether the grant funds are properly used.

Your grant-making procedures, as described satisfy the requirements of section 53.4945(c)(1) of regulations. Your selection committee will not be in a position to derive a private benefit, directly or indirectly, if certain potential grantees are selected over others. The group from which you will select grantees is sufficiently large to constitute a charitable class, and your criteria for selection are reasonably related to the purpose of your grants. Foundation officials and/or those of the co-sponsoring organization will be present at all times during the grant period; therefore, supervision over the grantee will be continual during the grant period.

Therefore, assuming that your scholarship program will be conducted as proposed, with a view to providing objectivity and nondiscrimination in the awarding of grants, we have determined that your procedures in the awarding of grants comply with the requirements of section 4945(g)(1) of the Code, ant that scholarships granted in accordance with such procedures will not constitute 'taxable expenditures' within the meaning of section 4945(d)(3). In addition, we have determined that grants made under your procedures are excludable from the gross income of recipients to the extent permitted by section 117 of the Code.

This determination is conditioned in the understanding that there will be no material change in the facts upon which it is based. It is further conditioned on the premise that no grants will be awarded to the trust's creators, trustees, or members of the selection committee, or or for a purpose that is inconsistent with the purposes described in section 170(c)(2)(B) of the Code.

-4-

Speech Foundation of America

The approval of your grant-making procedures herein constitutes a one-time approval of your system of standards and procedures designed to result in grants which meet the requirements of section 4945(g)(1) of the Code. Thus, approval shall apply to subsequent grant programs only as long as the standards and procedures under which they are conducted do not differ materially from those described in your request.

Any funds you distribute to individuals must be made on a true charitable basis in furtherance of the purposes for which you are organized. Therefore, you should maintain adequate records and case histories so that any or all grant distributions can be substantiated upon request by the Internal Revenue Service.

This determination is directed only to the organization that requested it. Section 6110(j)(3) of the Internal Revenue Code provides that it may not be used or cited as precedent.

You must report any future changes in your grant-making procedures. Please keep a copy of this letter in your permanent records.

Sincerely,

Paul Williams
District Director



ANON & COMPANY

**STUTTERING FOUNDATION OF AMERICA**

**FINANCIAL STATEMENTS AND**
**OTHER FINANCIAL INFORMATION**

**YEARS ENDED**
**DECEMBER 31, 2005 AND 2004**



NNON & COMPANY

**CONTENTS**

|  | Page |
|---|---|
| **FINANCIAL STATEMENTS** |  |
|     Independent Auditor's Report | 1 |
|     Statements of Financial Position | 2 |
|     Statements of Activities and Changes in Net Assets | 3 |
|     Statements of Cash Flows | 4 |
|     Notes to Financial Statements | 5-7 |
| **OTHER FINANCIAL INFORMATION** |  |
|     Schedule of Expenses | 8-9 |



# CANNON & COMPANY
CERTIFIED PUBLIC ACCOUNTANTS

Board of Directors
Stuttering Foundation of America
Memphis, Tennessee

### Independent Auditor's Report

We have audited the accompanying statement of financial position of *Stuttering Foundation of America* as of December 31, 2005, and the related statements of activities and changes in net assets, cash flows, and the supplementary information on pages 8 and 9 for the year then ended. These financial statements are the responsibility of the Foundation's management. Our responsibility is to express an opinion on these financial statements based on our audits. The financial statements and supplementary information of Stuttering Foundation of America as of December 31, 2004, were audited by other auditors whose report dated March 6, 2005, expressed an unqualified opinion on those statements.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Stuttering Foundation of America as of December 31, 2005, and the results of its operations and changes in net assets for the years then ended in conformity with accounting principles generally accepted in the United States of America.

*Cannon & Company*

Certified Public Accountants

Memphis, Tennessee
March 24, 2006



\NNON & COMPANY

## STUTTERING FOUNDATION OF AMERICA
## STATEMENTS OF FINANCIAL POSITION
## DECEMBER 31, 2005 AND 2004

### ASSETS

|  | 2005 | 2004 |
|---|---|---|
| Cash and Cash Equivalents | $ 2,628,001 $ | 2,536,606 |
| Investments - at Fair Value | 17,646,025 | 17,599,316 |
| Accrued Interest | 4,341 | 2,004 |
| Other Assets | 4,881 | 8,414 |
| Total Assets | $ 20,283,248 $ | 20,146,340 |

### LIABILITIES AND NET ASSETS

|  | 2005 | 2004 |
|---|---|---|
| Accounts Payable | $ 6,423 $ | 12,403 |
| Deferred Federal Excise Tax on Investments | 134,757 | 132,302 |
| Total Liabilities | 141,180 | 144,705 |
| Net Assets - Unrestricted | | |
| Commitment (Note 5) | 20,142,068 | 20,001,635 |
| Total Liabilities and Net Assets | $ 20,283,248 $ | 20,146,340 |

The accompanying notes form an integral part of these financial statements.

2



VNON & COMPANY

**STUTTERING FOUNDATION OF AMERICA**
**STATEMENTS OF ACTIVITIES AND CHANGES IN NET ASSETS**
**YEARS ENDED DECEMBER 31, 2005 AND 2004**

|  | 2005 | 2004 |
|---|---|---|
| **SUPPORT AND REVENUES** |  |  |
| Contributions | $ 291,411 | $ 287,078 |
| Publication, DVD, and Video Sales | 284,246 | 286,008 |
| Dividend Income | 465,552 | 456,492 |
| Interest Income | 77,674 | 27,552 |
| Realized Gains on Sales of Investments | (13,302) | 4,122 |
| Total Support and Revenues | 1,105,581 | 1,061,252 |
| **EXPENSES** |  |  |
| Program Services | 1,144,251 | 1,117,415 |
| Supporting Activities | 45,524 | 45,380 |
| Fund Raising | 7,627 | 6,979 |
| Total Expenses | 1,197,402 | 1,169,774 |
| Deficiency of Support and Revenues Over Expenses Before Net Appreciation on Investments and Provision for Federal Excise Tax | (91,821) | (108,522) |
| Net Unrealized Appreciation on Investments | 245,545 | 3,472,444 |
| Provision for Federal Excise Tax | (13,291) | (142,025) |
| Increase in Net Assets | 140,433 | 3,221,897 |
| **NET ASSETS AT BEGINNING OF YEAR** | 20,001,635 | 16,779,738 |
| **NET ASSETS AT END OF YEAR** | $ 20,142,068 | $ 20,001,635 |

The accompanying notes form an integral part of these financial statements.

3


NNON & COMPANY

# STUTTERING FOUNDATION OF AMERICA
## STATEMENTS OF CASH FLOWS
### YEARS ENDED DECEMBER 31, 2005 AND 2004

|  | 2005 | 2004 |
|---|---|---|
| **CASH FLOWS FROM OPERATING ACTIVITIES** |  |  |
| Change in Net Assets | $        140,433 | $    3,221,897 |
| **Adjustments to Reconcile Change in Net Assets** |  |  |
| **to Net Cash Used in Operating Activities** |  |  |
| Net Realized and Unrealized Appreciation |  |  |
| on Investments | (232,243) | (3,476,566) |
| Noncash Contributions of Investments | (107,010) | (109,430) |
| **Changes in Operating Assets and Liabilities** |  |  |
| Accrued Interest and Other Assets | 1,196 | (5,682) |
| Excise Tax on Investments | (3,525) | 96,608 |
| Net Cash Used in Operating Activities | (201,149) | (273,173) |
| **CASH FLOWS FROM INVESTING ACTIVITIES** |  |  |
| Purchase of Investments | (42,497) | (414,708) |
| Sale of Investments | 335,041 | 177,950 |
| Net Cash Provided by (Used in) Investing Activities | 292,544 | (236,758) |
| **NET INCREASE (DECREASE) IN CASH AND CASH EQUIVALENTS** | 91,395 | (509,931) |
| **CASH AND CASH EQUIVALENTS AT BEGINNING OF YEAR** | 2,536,606 | 3,046,537 |
| **CASH AND CASH EQUIVALENTS AT END OF YEAR** | $    2,628,001 | $    2,536,606 |
| Supplemental Information - Taxes Paid | $        12,067 | $        13,360 |

The accompanying notes form an integral part of these financial statements.

4



\NNON & COMPANY

**STUTTERING FOUNDATION OF AMERICA**
**NOTES TO FINANCIAL STATEMENTS**
**YEARS ENDED DECEMBER 31, 2005 AND 2004**

## NOTE 1 – SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

### *Description of Business*

The Stuttering Foundation of America (the Foundation) was formed for the purpose of supporting direct charitable activities concerning the prevention and improved treatment of stuttering.

### *Basis of Accounting*

The accompanying financial statements have been prepared on the accrual basis of accounting in accordance with generally accepted accounting principles.

The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities, and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

Net assets and revenues and expenses are classified based on the existence or absence of donor-imposed restrictions. Accordingly, net assets of the Foundation and changes herein are classified as unrestricted net assets, which are net assets that are not subject to donor-imposed stipulations. Unrestricted net assets may be designated for specific purposes by action of the board of directors.

### *Cash and Cash Equivalents*

The Foundation considers all highly liquid investments with a maturity of three months or less when purchased to be cash equivalents. Cash equivalents consist of money market accounts.

### *Concentrations of Risk*

Financial instruments that potentially subject the Foundation to concentrations of risk consist primarily of investments in marketable securities and cash and cash equivalents. The Foundation's investments are in high-quality securities and cash placed with financial institutions. Management attempts to reduce risk through diversification of the investment portfolio among instruments and issuers. The Foundation maintains cash and cash equivalents with financial institutions that exceed the FDIC limits. The Foundation limits the amount of credit exposure with any one financial institution and believes that no significant concentration of credit risk exists with respect to cash and cash equivalents.

### *Investment Securities*

Investment securities are valued at fair value, with realized and unrealized gains and losses included in the statements of activities. Investment securities donated are recorded at fair value on the date of donation. Fair value is based upon quoted market prices, and realized gains or losses are recorded using the specific identification method.

### *Support and Revenues*

Contributions received are recognized as revenues in the period received. Sales on videos and publications are recognized at the time customer orders are received, product is shipped and title has transferred.

### *Donated Materials and Services*

Donated marketable securities and other noncash donations are recorded as contributions at their estimated fair values at the date of donation. In 2005 and 2004, contributions of stock were $107,010 and $109,430, respectively.

### *Allocation of Expenses*

Common expenses are allocated to functions based on payroll hours and other expenses are based on specific identification.



\NON & COMPANY

**STUTTERING FOUNDATION OF AMERICA**
**NOTES TO FINANCIAL STATEMENTS - CONTINUED**
**YEARS ENDED DECEMBER 31, 2005 AND 2004**

**NOTE 2 - TAXES**

The Foundation is exempt from federal and state income tax under Section 501(a) of the Internal Revenue Code (the Code) as an organization described in Section 501 (c) (3) of the Code. Accordingly, the Foundation is not subject to federal income tax except to the extent that it has unrelated business income from activities not substantially related to its exempt purposes. The Foundation has no material amounts of unrelated business income in 2005 or 2004, so no provision for unrelated business income is included in the financial statements.

The Foundation is classified as a private foundation under Section 509(a) and, as such, is subject to a federal excise tax of 2% on net investment income unless certain conditions are met, in which case the federal excise tax is reduced to 1%. In 2005 and 2004, the Foundation was subject to an excise tax on net investment income of 2%. Deferred excise taxes are provided for on the unrealized increase in the fair market value of the Foundation's assets at a 1% rate, the rate the Foundation would expect to pay if and when significant portions of the unrealized gains are recognized.

|  | | 2005 | | 2004 |
|---|---|---|---|---|
| Current Excise Tax Expense | $ | 10,836 | $ | 9,700 |
| Deferred Excise Tax Expense | | 134,757 | | 132,302 |
| Deferred Federal Excise Tax Liability | | 134,757 | | 132,302 |

**NOTE 3 – CASH AND CASH EQUIVALENTS**

Cash and cash equivalents consist of the following:

|  | | 2005 | | 2004 |
|---|---|---|---|---|
| Money Market Funds | $ | 2,533,367 | $ | 2,466,887 |
| Checking Accounts | | 94,634 | | 69,719 |
|  | $ | 2,628,001 | $ | 2,536,606 |

**NOTE 4 -- INVESTMENT SECURITIES**

A summary of investment securities at December 31 follows:

|  |  | 2005 | | |
|---|---|---|---|---|
|  |  | Original Cost | Gross Unrealized Gains | Fair Value |
| **EQUITY SECURITIES** | | | | |
| Genuine Parts Company | $ | 2,810,560 | $ 9,729,435 | $ 12,539,995 |
| Other | | 1,359,764 | 3,746,266 | 5,106,030 |
|  | $ | 4,170,324 | $ 13,475,701 | $ 17,646,025 |

6



**STUTTERING FOUNDATION OF AMERICA**
**NOTES TO FINANCIAL STATEMENTS - CONTINUED**
**YEARS ENDED DECEMBER 31, 2005 AND 2004**

NON & COMPANY

**NOTE 4 – INVESTMENTS - CONTINUED**

|  |  | Original Cost |  | 2004 Gross Unrealized Gains |  |  | Fair Value |
|---|---|---|---|---|---|---|---|
| **EQUITY SECURITIES** |  |  |  |  |  |  |  |
| Genuine Parts Company | $ | 2,684,949 | $ | 9,802,492 | $ | $ | 12,487,441 |
| Other |  | 1,684,210 |  | 3,427,665 |  |  | 5,111,875 |
|  | $ | 4,369,159 | $ | 13,230,157 | $ | $ | 17,599,316 |

**NOTE 5 - LEASES**

The Foundation has a noncancelable operating lease for office space that expires in February 2007. Future minimum total lease payments due under the lease through February 2007 are approximately $32,340. Lease expense under the lease for the years ended December 31, 2005 and 2004 totaled $28,740 and $28,602, respectively.

7


NNON & COMPANY

## STUTTERING FOUNDATION OF AMERICA
## SUPPLEMENTARY INFORMATION - SCHEDULE OF EXPENSES
## YEARS ENDED DECEMBER 31, 2005 AND 2004

|  | 2005 | 2004 |
|---|---|---|
| **Program Service Expenses:** | | |
| Officers' Salaries | $ 63,012 | $ 63,012 |
| Other Salaries | 143,810 | 132,332 |
| Benefits and Payroll Taxes | 36,366 | 31,432 |
| Advertising in Professional Journals | 84,409 | 86,872 |
| Public Information and Education | 131,428 | 66,053 |
| Printing of Publications | 122,099 | 222,349 |
| DVD's and Video Tapes Purchased for Distribution | 67,769 | 39,664 |
| Postage/Freight for Publications/Videos | 131,683 | 138,534 |
| Professional Fees for Program Services | 950 | 803 |
| Computer Services and Equipment Expenses | 59,437 | 82,760 |
| Telephone | 17,279 | 14,096 |
| Stationery and Supplies | 16,310 | 22,118 |
| Rent for Publication Office | 28,740 | 28,602 |
| Program Service Travel - General | 7,072 | 8,750 |
| Other | 274 | 870 |
|  | 910,638 | 938,247 |
| **Educational Symposia:** | | |
| Workshop for Specialists | 39,821 | |
| Symposia for School Clinicians | 28,125 | 23,053 |
| New England/Southeastern Workshop | 18,352 | 12,337 |
| Western Workshop | | 17,080 |
| Other Symposia | 2,769 | 4,744 |
|  | 89,067 | 57,214 |
| **Educational Booths at Professional Conventions:** | | |
| American Academy of Pediatrics | 6,713 | |
| American Speech-Language-Hearing Association | 14,953 | 16,097 |
| ASHA Schools Conference | 3,887 | 3,550 |
| Educational Exhibits at State Conferences | 25,679 | 9,661 |
| Friends Convention | | 2,389 |
|  | 51,232 | 31,697 |

See accompanying Independent Auditor's Report.

8



NNON & COMPANY

**STUTTERING FOUNDATION OF AMERICA**
**SUPPLEMENTARY INFORMATION - SCHEDULE OF EXPENSES - CONTINUED**
**YEARS ENDED DECEMBER 31, 2005 AND 2004**

|  | 2005 | 2004 |
|---|---|---|
| **Special Program Projects:** | | |
| Continuing Education Project | $ 8,334 | $ 5,171 |
| Specialty Recognition Project | 5,214 | |
| School Age Children Video | | 15,906 |
| Malcolm Fraser Award | 2,217 | |
| Alan Rabinowitz DVD | 1,571 | |
| DVD's to Libraries/Videos to Pediatricians | 19,499 | 19,350 |
| DVD/Videotape Therapy Demo | 53,740 | 10,811 |
| Rewrite/Translation of Publications | | 4,898 |
| DVD/Videotape Intervention Strategies/Preschool | | 10,491 |
| Research on Causes of Stuttering | 2,739 | 1,130 |
| DVD/Videotape School Conference | | 22,500 |
| | 93,314 | 90,257 |
| Total Program Service Expenses | 1,144,251 | 1,117,415 |
| | | |
| **Support Activities Expenses:** | | |
| Salaries | 17,850 | 17,850 |
| Benefits and Payroll Taxes | 4,901 | 4,509 |
| Insurance | 5,736 | 5,531 |
| Professional Fees - Legal and Audit | 13,389 | 13,306 |
| Travel - Administrative | 1,612 | 990 |
| Investment Fees | 1,451 | 1,493 |
| Other Administrative Expenses | 585 | 1,701 |
| Total Supporting Activities Expenses | 45,524 | 45,380 |
| | | |
| **Fundraising Expenses:** | | |
| Salaries | 2,528 | 2,488 |
| Benefits and Payroll Taxes | 274 | 248 |
| Postage and Supplies | 4,515 | 3,920 |
| Other | 310 | 323 |
| Total Fundraising Expenses | 7,627 | 6,979 |
| | | |
| Total Expenses | $ 1,197,402 | $ 1,169,774 |

See accompanying Independent Auditor's Report.

9

| Form **990** | **Return of Organization Exempt From Income Tax** | | OMB No. 1545-0047 |
|---|---|---|---|
| | Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except black lung benefit trust or private foundation) | | **2005** |
| Department of the Treasury Internal Revenue Service | ▶ The organization may have to use a copy of this return to satisfy state reporting requirements. | | Open to Public Inspection |

**A** For the 2005 calendar year, or tax year beginning _____ , 2005, and ending _____ , 20_____

| **B** Check if applicable: | Please use IRS label or print or type. See Specific Instructions. | **C** Name of organization | **D** Employer Identification number |
|---|---|---|---|
| ☐ Address change | | Stuttering Foundation of America | 62-6047678 |
| ☐ Name change | | Number and street (or P.O. box if mail is not delivered to street address)   Room/suite | **E** Telephone number |
| ☐ Initial return | | P.O. Box 11749 3100 Walnut GroveRoad,   603 | 901-452-7343 |
| ☐ Final return | | City or town, state or country, and ZIP + 4 | **F** Accounting method: ☐ Cash ☒ Accrual |
| ☐ Amended return | | Memphis, TN 38111-0749 | ☐ Other (specify) ▶ |
| ☐ Application pending | | | |

• Section 501(c)(3) organizations and 4947(a)(1) nonexempt charitable trusts must attach a completed Schedule A (Form 990 or 990-EZ).

**G** Website: ▶

**J** Organization type (check only one) ▶ ☒ 501(c) ( 3 ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**K** Check here ▶ ☐ if the organization's gross receipts are normally not more than $25,000. The organization need not file a return with the IRS; but if the organization chooses to file a return, be sure to file a complete return. Some states require a complete return.

**H** and **I** are not applicable to section 527 organizations.
**H(a)** Is this a group return for affiliates? ☐ Yes ☒ No
**H(b)** If "Yes," enter number of affiliates ▶ n/a
**H(c)** Are all affiliates included? ☐ Yes ☐ No
(If "No," attach a list. See instructions.)
**H(d)** Is this a separate return filed by an organization covered by a group ruling? ☐ Yes ☒ No
**I** Group Exemption Number ▶   n/a
**M** Check ▶ ☐ if the organization is not required to attach Sch. B (Form 990, 990-EZ, or 990-PF).

**L** Gross receipts: Add lines 6b, 8b, 9b, and 10b to line 12 ▶   1,453,924.

### Part I   Revenue, Expenses, and Changes in Net Assets or Fund Balances *(See the instructions.)*

| | | | | |
|---|---|---|---|---|
| 1 | Contributions, gifts, grants, and similar amounts received: | | | |
| a | Direct public support | 1a | 252,943. | |
| b | Indirect public support | 1b | 38,468. | |
| c | Government contributions (grants) | 1c | 0. | |
| d | Total (add lines 1a through 1c) (cash $ 187,173. noncash $ 104,238.) | 1d | | 291,411.00 |
| 2 | Program service revenue including government fees and contracts (from Part VII, line 93) | 2 | | 284,246.00 |
| 3 | Membership dues and assessments | 3 | | |
| 4 | Interest on savings and temporary cash investments | 4 | | 77,674.00 |
| 5 | Dividends and interest from securities | 5 | | 465,552.00 |
| 6a | Gross rents | 6a | | |
| b | Less: rental expenses | 6b | | |
| c | Net rental income or (loss) (subtract line 6b from line 6a) | 6c | | 0.00 |
| 7 | Other investment income (describe ▶ ) | 7 | | |
| 8a | Gross amount from sales of assets other than inventory | (A) Securities 335,041. | (B) Other | |
| | | 8a | | |
| b | Less: cost or other basis and sales expenses | 348,343. | 8b | |
| c | Gain or (loss) (attach schedule) | (13,302.00) | 8c   0.00 | |
| d | Net gain or (loss) (combine line 8c, columns (A) and (B)) | 8d | | (13,302.00) |
| 9 | Special events and activities (attach schedule). If any amount is from gaming, check here ▶ ☐ | | | |
| a | Gross revenue (not including $ _____ of contributions reported on line 1a) | 9a | | |
| b | Less: direct expenses other than fundraising expenses | 9b | | |
| c | Net income or (loss) from special events (subtract line 9b from line 9a) | 9c | | 0.00 |
| 10a | Gross sales of inventory, less returns and allowances | 10a | | |
| b | Less: cost of goods sold | 10b | | |
| c | Gross profit or (loss) from sales of inventory (attach schedule) (subtract line 10b from line 10a) | 10c | | 0.00 |
| 11 | Other revenue (from Part VII, line 103) | 11 | | 0.00 |
| 12 | Total revenue (add lines 1d, 2, 3, 4, 5, 6c, 7, 8d, 9c, 10c, and 11) | 12 | | 1,105,581.00 |
| 13 | Program services (from line 44, column (B)) | 13 | | 1,144,251.00 |
| 14 | Management and general (from line 44, column (C)) | 14 | | 45,524.00 |
| 15 | Fundraising (from line 44, column (D)) | 15 | | 7,627.00 |
| 16 | Payments to affiliates (attach schedule) | 16 | | |
| 17 | Total expenses (add lines 16 and 44, column (A)) | 17 | | 1,197,402.00 |
| 18 | Excess or (deficit) for the year (subtract line 17 from line 12) | 18 | | (91,821.00) |
| 19 | Net assets or fund balances at beginning of year (from line 73, column (A)) | 19 | | 20,001,635.00 |
| 20 | Other changes in net assets or fund balances (attach explanation) | 20 | | 232,254.00 |
| 21 | Net assets or fund balances at end of year (combine lines 18, 19, and 20) | 21 | | 20,142,068.00 |

For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.
JSA
STF FED1623F.1
Form **990** (2005)

ATTACHMENT 2005 STUTTERING FOUNDATION OF AMERICA
FORM 990        I. D. #62-6047678

PART I, line 8c - Gain or (loss) from sales of assets other than inventory

| (a) list of property | (b) how acquired | (c) date acquired | (d) date sold |
|---|---|---|---|
| | P-purchased<br>D-donation | (mo., day, yr.) | (mo., day, yr.) |
| 1. 28,326 Shares Vanguard S/T Corp | P | 03/09/04 | 03/29/05 |
| 2. 500 Shares Shares Conagra Foods | P | 10/09/03 | 05/31/05 |
| 3. 500 Shares In 6 Groep Inc | P | 01/06/05 | 11/22/05 |
| 4. 400 Shares NY Comm Bank | P | 01/21/04 | 11/22/05 |

| (e) gross sales price<br>minus expense of sale | (g) cost or other basis* | (h) gain or <loss><br>(e) plus <f> minus <g> |
|---|---|---|
| 1. 299,577. | 310,118. | <10,541.> |
| 2. 13,379. | 11,230. | 2,149. |
| 3. 15,265. | 14,920. | 345.* |
| 4. 6,820. | 12,075. | 5,255. |
| TOTALS 335,041. | 348,343. | <13,302.> |

Part I, Line 20 - Other changes in net assets or fund balances

Net unrealized appreciation on investments      $245,545

Less deferred federal excise tax on unrealized gains    ( 13,291)
                                                   ----------

Other changes in net assets or fund balances      $232,254

Form 990 (2005)

Page **2**

## Part II — Statement of Functional Expenses

All organizations must complete column (A). Columns (B), (C), and (D) are required for section 501(c)(3) and (4) organizations and section 4947(a)(1) nonexempt charitable trusts but optional for others. *(See the instructions.)*

| Do not include amounts reported on line 6b, 8b, 9b, 10b, or 16 of Part I. | | (A) Total | (B) Program services | (C) Management and general | (D) Fundraising |
|---|---|---|---|---|---|
| 22 Grants and allocations (attach schedule) . . . (cash $ 6,400. noncash $ 0.) If this amount includes foreign grants, check here ▶ ☐ | 22 | 6,400. | 6,400. | | |
| 23 Specific assistance to individuals (attach schedule) . . . . . . . . . . . . . . . . . . . . . . . . . | 23 | | | | |
| 24 Benefits paid to or for members (attach schedule) . . . . . . . . . . . . . . . . . . . . . . . . . | 24 | | | | |
| 25 Compensation of officers, directors, etc. . . . | 25 | 82,350. | 63,012. | 17,850. | 1,488. |
| 26 Other salaries and wages . . . . . . . . . . . . . | 26 | 144,850. | 143,810. | | 1,040. |
| 27 Pension plan contributions . . . . . . . . . . . . | 27 | 3,662. | 3,127. | 535. | |
| 28 Other employee benefits . . . . . . . . . . | 28 | 20,595. | 17,537. | 3,000. | 58. |
| 29 Payroll taxes . . . . . . . . . . . . . . . . . . . . | 29 | 17,284. | 15,702. | 1,366. | 216. |
| 30 Professional fundraising fees . . . . . . . . . . | 30 | | | | |
| 31 Accounting fees . . . . . . . . . . . . . . . . . | 31 | 11,743. | | 11,743. | |
| 32 Legal fees . . . . . . . . . . . . . . . . . . . . . | 32 | 1,646. | | 1,646. | |
| 33 Supplies . . . . . . . . . . . . . . . . . . . . . | 33 | 18,977. | 16,310. | | 2,667. |
| 34 Telephone . . . . . . . . . . . . . . . . . . . . . | 34 | 17,279. | 17,279. | | |
| 35 Postage and shipping . . . . . . . . . . . . . . | 35 | 133,531. | 131,683. | | 1,848. |
| 36 Occupancy . . . . . . . . . . . . . . . . . . . . | 36 | 28,740. | 28,740. | | |
| 37 Equipment rental and maintenance . . . . . . . | 37 | 59,437. | 59,437. | | |
| 38 Printing and publications . . . . . . . . . . . . | 38 | 122,099. | 122,099. | | |
| 39 Travel . . . . . . . . . . . . . . . . . . . . . . . | 39 | 8,684. | 7,072. | 1,612. | |
| 40 Conferences, conventions, and meetings . . . | 40 | 110,437. | 110,437. | | |
| 41 Interest . . . . . . . . . . . . . . . . . . . . . . . | 41 | | | | |
| 42 Depreciation, depletion, etc. (attach schedule) | 42 | | | | |
| 43 Other expenses not covered above (itemize): | | | | | |
| a Insurance & other | 43a | 7,855. | 1,224. | 6,321. | 310. |
| b Advertising professional journals | 43b | 84,409. | 84,409. | | |
| c Public information & education | 43c | 131,428. | 131,428. | | |
| d Educational exhibits state confer. | 43d | 25,679. | 25,679. | | |
| e DVD/Video purchase and production | 43e | 125,819. | 125,819. | | |
| f Continuing education projects | 43f | 33,047. | 33,047. | | |
| g Investment fees | 43g | 1,451. | | 1,451. | |
| 44 **Total functional expenses.** Add lines 22 through 43. (Organizations completing columns (B)-(D), carry these totals to lines 13–15) . . . . . . . . . . . . . . . . . . . . . . | 44 | 1,197,402.00 | 1,144,251.00 | 45,524.00 | 7,627.00 |

**Joint Costs.** Check ▶ ☐ if you are following SOP 98-2.

Are any joint costs from a combined educational campaign and fundraising solicitation reported in **(B)** Program services? ▶ ☐ Yes ☒ No

If "Yes," enter **(i)** the aggregate amount of these joint costs $ _n/a_ ; **(ii)** the amount allocated to Program services $ _n/a_ ; **(iii)** the amount allocated to Management and general $ _n/a_ ; and **(iv)** the amount allocated to Fundraising $ _n/a_

Form **990** (2005)

Stuttering Foundation of America     I.D.#62-6047678
Form 990 - 2005

Part II, line 22 - Grants and allocations

In order to improve the treatment of stuttering, the Stuttering Foundation of America organizes specialty training programs and seminars for professional speech pathologists.  In 2005, two of those programs involved payment of travel and per diem expenses of individuals who attended the training sessions.

The individuals on the attached lists attended one of the training programs and were reimbursed travel costs and/or per diem expenses while attending the program.  SFA paid dormitory room costs for participants and guest speakers and the other instructional costs directly to the participating University.  That cost (dormitory rooms and other instructional cost) was charged to the cost of the special training program and is included in the amount shown on line 40, Part II.  The amount of grants paid is included in line 22, Part II.

The procedures for selecting the speech clinicians who attended the program are specified in the ruling letter received by SFA dated September 29, 1988, a copy of which is attached.

The purpose for the grants was payment of travel and per diem expenses to attend the class in specialty training in treatment of stuttering as described above.

The name and address of the grantees are included on the schedule attached, which schedule also shows the total amount paid to each individual for travel and/or per diem costs.

None of the grantees was related to any disqualified person by blood, marriage, adoption or employment.

All of the grantees were individuals who are speech clinicians.  All of the grantees attended and completed their respective training course.

ATTACHMENT 2005 STUTTERING FOUNDATION OF AMERICA
FROM 990     I. D. 62-6047678

GRANTS
Part 11 Line 22 (cont'd)

| Name | City, State Zip COUNTRY |
|------|------------------------|
| Ardaman, Burcu M.S., CCC-SLP | Erenkoy Istanbul TURKEY |
| Carnavale, Susan C. M.S., CCC-SLP | Cicero, NY 13039-8523 |
| Colyar, Terry C. M.A., CCC-SLP | Glendale, AZ 85301 |
| Delaney, Laura R. M.S., CCC-SLP | Bedford Hills, NY 10507-2306 |
| Dohn, Karen L. M.A.CCC-SLP | Northville, MI 48167-2956 |
| Goodman, Elise S. M.A., CCC-SLP | North Easton, MA 02356-2738 |
| Halley, Laura M.S., CCC-SLP | Newark, DE 19711 |
| Jithavech, Ponjit M.A. | Bangkok 10400 THAILAND |
| Lafleur, Christine M.S., CCC-SLP | Somerville, MA 02144-1741 |
| Paddock, Vanessa Sheets M.A., CCC-S | Philadelphia, PA 19118 |
| Pietrzyk, Rose Marie M.S., CCC-SLP | Greenhills, OH 45218-1426 |
| Quin, Paul M.S., CCC-SLP | East Hartford, CT 06108-2175 |
| Robinson, Debra Hammoto M.S., CCC- | Spokane, WA 99208-9536 |
| Ryan, Jo Ellen M.S., CCC-SLP | High Point, NC 27262-4529 |
| Selle, Helen K. M.S., CCC-SLP | Roslindale, MA 02131 |
| Swartz, Nancy M.S., CCC-SLP | New York, NY 10025 |
| Tabri, Dolien | Beirut LEBANON |
| Taylor, Amanda M.S., CCC-SLP | Midwest City, OK 73110-1404 |
| Turken, Tara J. M.S., CCC-SLP | Avon, CT 06001 |
| Wohlgemuth, Joseph J. M.A., CCC-SLP | Boonton, NJ 07005 |

```
====================
Total Number:   20
====================
```

Everyone on this page was paid $100.00
Total of this page was $2,000.00

ATTACHMENT 2005 STUTTERING FOUNDATION OF AMERICA

FORM 990 ☎    I. D. 62-6047678

GRANTS
Part 1 Line 2022 (cont'd)

| Name | City, State Zip COUNTRY |
|------|------------------------|
| Arismendi, Cheryl M.A.CCC-SLP | Pomona, CA 91766 |
| Belgin, Erol | Ankara 06500 TURKEY |
| Conrad, Nina M.S. | Yonkers, NY 10710-1915 |
| Filatova, Yulia O. Ph.D., SLT | Moscow 119602 RUSSIA |
| Gurrister, Maria M.S., CCC-SLP | Holladay, UT 84124 |
| Jackson, Ashley M.A., CCC-SLP | Kansas City, MO 64110-2428 |
| Jeeraumporn, Jeamjai M.A. | Bangkok 10400 THAILAND |
| Jones, Michelle A. M.A., CCC-SLP | Chicago, IL 60625 |
| Kayikci, Navis Emel Kulak | Cayyolu Ankara 06810 TURKEY |
| Keck, Calista M.S., CCC-SLP | Scottsdale, AZ 85260 |
| King, Amie M. M.A., CCC-SLP | Mt. Vernon, IL 62864-9886 |
| Marchiori, Massimiliano M.S. | Villafranca of Verona 37069 IT |
| Peacock, Jennifer M.A., CCC-SLP | Harper Woods, MI 48225 |
| Reitzes, Peter M.A., CCC-SLP | Brooklyn, NY 11215 |
| Schmidt, Margaret M.A., CCC-SLP | Pottstown, PA 19464-4583 |
| Scott, Kathleen Scaler M.S., CCC-SL | Lafayette, LA 70506 |
| Snead, Michelle M.A., CCC-SLP | Hataitai, Wellington 6003 NEW |
| Sylvester, Suzanne V. M.S., CCC-SLP | Portland, ME 04101-4101 |
| Tseng, Jennifer | Taipei TAIWAN R.O.C. |
| Yasuda, Nao M.S., CCC-SLP | Fujisawacity Kanagawa 251-0045 |

```
========================
Total Number:    20
========================
```

Everyone on this page was paid $220.00.

  Total of this page $4,400.00

Form 990 (2005)                                                                        Page **3**

**Part III**  **Statement of Program Service Accomplishments** *(See the instructions.)*

Form 990 is available for public inspection and, for some people, serves as the primary or sole source of information about a particular organization. How the public perceives an organization in such cases may be determined by the information presented on its return. Therefore, please make sure the return is complete and accurate and fully describes, in Part III, the organization's programs and accomplishments.

| | Program Service Expenses (Required for 501(c)(3) and (4) orgs., and 4947(a)(1) trusts; but optional for others.) |
|---|---|
| What is the organization's primary exempt purpose? ▶ <u>Prevention and treatment of stuttering</u> <br> All organizations must describe their exempt purpose achievements in a clear and concise manner. State the number of clients served, publications issued, etc. Discuss achievements that are not measurable. (Section 501(c)(3) and (4) organizations and 4947(a)(1) nonexempt charitable trusts must also enter the amount of grants and allocations to others.) | |
| **a** <u>Printing, production and distribution of educational materials</u> <br> <u>(see attached statement)</u> <br><br><br> (Grants and allocations $ ) If this amount includes foreign grants, check here ▶ ☐ | 554,564. |
| **b** <u>Public information and education</u> <br> <u>(see attached statement)</u> <br><br><br> (Grants and allocations $ ) If this amount includes foreign grants, check here ▶ ☐ | 312,247. |
| **c** <u>Educational symposia and exhibits and conferences for professionals</u> <br> <u>(see attached statment)</u> <br><br><br> (Grants and allocations $ 6,400.00) If this amount includes foreign grants, check here ▶ ☐ | 201,355. |
| **d** <u>Maintain WEB site and toll-free hotline for stuttering and provide information packets</u> <br> <u>(see attached statement)</u> <br><br><br> (Grants and allocations $ ) If this amount includes foreign grants, check here ▶ ☐ | 76,085. |
| **e** Other program services (attach schedule) <br> (Grants and allocations $ ) If this amount includes foreign grants, check here ▶ ☐ | |
| **f** **Total of Program Service Expenses** (should equal line 44, column (B), Program services) ........ ▶ | 1,144,251.00 |

Form **990** (2005)

STF FED1023F.3

Internal Revenue Service

District
Director

Department of the Treasury
C-1130
Atlanta, GA  30301

Speech Foundation of America
P.O. Box 11749
Memphis, TN  38111

EIN: 62-6047678
Person to Contact:
Floyd Jones
Telephone Number:
(404)331-4516
Date: SEP 29 1988

Dear Sir or Madam:

We have considered your request for advance approval of your grant-making procedures under section 4945(g) of the Internal Revenue Code. Your request is considered to have been properly submitted on February 25, 1988, for purposes of section 53.4945-4(d)(3) of the Income Tax Regulations.

Our records indicate that you are a private foundation recognized as exempt under section 501(c)(3) of the Code and are classified as a private operating foundation as defined in section 4942(j)(3).

The information submitted indicates that you will, in most cases co-sponsor training programs for therapists who are actively involved in the treatment of stutterers. The grants will fund all or part of the cost to participants of travel to and from the location of the program, lodging and meals while attending the program, and instructional cost including, in some cases a payment of tuition to a co-sponsoring educational institution.

Your grant program selection of grantees will be made jointly by the Foundation and the co-sponsoring organization. You have stated that no person will be related who is either a disqualified person to the Foundation or who is a relative or known to be an employee of a disqualified person within the meaning of section 4946(a)(1) of the Code.

Speech Foundation of America

Grant recipients will be selected on the demonstrated interest in treatment of stuttering. Judgment of the individual will be on the fact that the person is actively inolved in treatment of stutterers. Grantees will be required to have at least a masters degree in speech pathology. An additional criterion, but not a requirement, will be a clinical certification by the American Speech Language Hearing Association. A few grants may be awarded to foreign national who are active in the treatment of stuttering. In the event there are more applicants than may be accepted in a particular program, some priority will be given to speech pathologists who are working in a public school enviroment.

The Foundation will be paying most of the expenses directly or reimbursing the grantee only for documented expenses. To cover expenses of meals, a reasonable per diem allowance may be paid to individuals.

Although the Foundation will pay direct instructional costs, the reimbursement for travel and per diem will not be paid to a trainee who does not complete the course. The Foundation will, following all training programs, solicit comments and suggestions from the participants for improving future programs. You will take appropriate steps to recover unused grant funds. You will retain records regarding all grants you will award.

Sections 4945(a) and (b) of the Code impose certain excise taxes on expenditures defined as taxable expenditures by section 4945(d). Section 4945(d)(3) includes in the definition of taxable expenditures any amount paid or incurred by a private foundation as a grant to an individual for travel, study, or similar purposes by such individual, unless such grant satisfies the requirements of section 4945(g).

Section 4945(g) of the Code provides that section 4945(d)(3) shall not apply to individual grants awarded on an objective and nondiscriminatory basis pursuant to a procedure approved in advance if it is demonstrated that:

1. The grant constitutes a scholarship or fellowship which is subject to the provisions of section 117(a) and is to be used for study at an educational organization described in section 170(b)(1)(A)(ii);

2. The grant condtitutes a prize or award which is subject to the provision of section 74(b), if the recipient of such prize or award is selected from the general public; or

-3-

Speech Foundation of America

3. The purpose of the grant is to achieve a specific objective, produce a report or similar product, or improve or enhance a literary, artistic, musical, scientific, teaching, or other similar capacity, skill or talent of the grantee.

Section 53.4945-4(c)(1) of the Foundation Excise Tax Regulations provides that to secure approval of a grant-making procedure a private foundation must demonstrate that:

a. The grant procedure includes an objective and non-discriminatory selection process;

b. The procedure is designed to result in the performance of the activities intended to be financed; and,

c. The foundation will obtain reports to determine whether the grant funds are properly used.

Your grant-making procedures, as described satisfy the requirements of section 53.4945(c)(1) of regulations. Your selection committee will not be in a position to derive a private benefit, directly or indirectly, if certain potential grantees are selected over others. The group from which you will select grantees is sufficiently large to constitute a charitable class, and your criteria for selection are reasonably related to the purpose of your grants. Foundation officials and/or those of the co-sponsoring organization will be present at all times during the grant period; therefore, supervision over the grantee will be continual during the grant period.

Therefore, assuming that your scholarship program will be conducted as proposed, with a view to providing objectivity and nondiscrimination in the awarding of grants, we have determined that your procedures in the awarding of grants comply with the requirements of section 4945(g)(1) of the Code; and that scholarships granted in accordance with such procedures will not constitute 'taxable expenditures' within the meaning of section 4945(d)(3). In addition, we have determined that grants made under your procedures are excludable from the gross income of recipients to the extent permitted by section 117 of the Code.

This determination is conditioned in the understanding that there will be no material change in the facts upon which it is based. It is further conditioned on the premise that no grants will be awarded to the trust's creators, trustees, or members of the selection committee, or or for a purpose that is inconsistent with the purposes described in section 170(c)(2)(B) of the Code.

-4-

Speech Foundation of America

The approval of your grant-making procedures herein constitutes a one-time approval of your system of standards and procedures designed to result in grants which meet the requirements of section 4945(g)(1) of the Code. Thus, approval shall apply to subsequent grant programs only as long as the standards and procedures under which they are conducted do not differ materially from those described in your request.

Any funds you distribute to individuals must be made on a true charitable basis in furtherance of the purposes for which you are organized. Therefore, you should maintain adequate records and case histories so that any or all grant distributions can be substantiated upon request by the Internal Revenue Service.

This determination is directed only to the organization that requested it. Section 6110(j)(3) of the Internal Revenue Code provides that it may not be used or cited as precedent.

You must report any future changes in your grant-making procedures. Please keep a copy of this letter in your permanent records.

Sincerely,

Paul Williams
District Director

Form 990 - 2005
Stuttering Foundation of America  I.D. #62-604-7678

Part III - Statement regarding direct charitable activities:

Stuttering, a complex disorder affecting more than 3,000,000 Americans, has long been surrounded by myths and misconceptions. All of the expenditures of the Stuttering Foundation of America are related to its primary charitable activity of prevention and improved treatment of stuttering and educating professionals and the public regarding the disorder.

Expenditures are not generally divided by particular programs, but are categorized by type of expense - e.g., "salaries and wages," "printing of publications," "public information and education," etc. and are allocated to "program services" or "support services." To respond to the information requested for Part III, the expenses have been reallocated to various "programs" as follows:

(1) Creation, production, printing and distribution of educational materials  -                $554,564.

Stuttering Foundation has published and is currently distributing 28 books, including twelve for professional speech pathologists, four for physicians, and twelve for the general public. Six of these books have been translated into Spanish. Forty videotapes/DVDs are also available for all ages, and in 2005, a copy of the exciting new videotape entitled *Stuttering: For Kids By Kids* was sent free to 6,500 public libraries. *Stuttering: Straight Talk for Teachers,* addressing the concerns of teachers and parents of school-aged children, was also widely distributed in 2005. In addition in 2005, many copies of the new DVD, *Stuttering and Your Child: Help for Parents* were sent free of charge to several thousand public libraries.

*Practical Ideas for the School Clinician* New DVD Series

This series of DVDs, *Practical Ideas for the School Clinician,* features live presentations from the annual Stuttering Foundation conference for school clinicians. They were taped during the Cincinnati conference in 2004 and edited by Carroll Guitar and Jane Fraser. In November 2005, these DVDs were introduced at the convention of the American Speech-Language-Hearing Association and since then have been in great demand.
The DVDs are:
(1) *The School Clinician: Ways To Be More Effective* with Peter Ramig, Ph.D., University of Colorado - Boulder
(2) Stuttering 101 with Barry Guitar, Ph.D., University of Vermont
(3) *The School-Age Child Who Stutters: Working Effectively With Attitudes and Emotions* with Kristin Chmela, M.A.
(4) *The School-Age Child Who Stutters: Dealing Effectively With Guilt and Shame* with Bill Murphy, M.A., Purdue University.
(5) *The Decision Making Process,* with Dr. Charles Healey of University of Nebraska.
(6) Working With Adolescents *Who Stutter,* with Patricia Zebrowski, Ph.D. of University of Iowa.

The information and practical ideas in these DVDs ensure that they will be a lasting source of help to school clinicians, parents, teachers, and health care professionals. Accompanying handouts make them perfect for in-service presentations.

Another new DVD for professionals, *A Demonstration of Therapy Techniques,* has been three years in developing and should be available by fall 2006. It will be an excellent tool for speech-language pathologists looking to improve their skills.

SFA also distributes 19 free informational brochures of which five have been translated into Spanish. The new brochure produced in 2005 was *ADHD and Stuttering.* All of the books, videos and brochures have been written, produced and edited by outstanding authorities in the field of prevention and treatment of stuttering, and many are used as instructional material in the training of students in leading universities.

During 2005, more than 50,000 books and approximately 500,000 brochures were distributed. Even more were downloaded directly from the Internet where they are freely available. Also, 20,297 DVDs and videotapes were distributed; and they have been praised by parents, teens, adults who stutter, and speech language pathologists.

Worldwide recognition has been given to Stuttering Foundation books and brochures, with distribution to 101 foreign countries, up from 69, and some been translated into as many as 15 foreign languages.

(2)Public information and education                            - $312,247.

Because of the misconceptions about stuttering held by the public, as well as, unfortunately, some professionals, SFA conducts an active public information and education program to help dispel these myths. Much of the public information program is centered on letting the public and the professionals know of the availability of publications and videotapes noted in (1) above.

- In addition, SFA in 2005 sponsored and staffed information booths at professional conventions of the American Speech Language Hearing Association, California Speech Language Association, the Texas Speech Language Association, and the ASHA School-based SLPs Convention, New Jersey Speech-Language-Hearing Convention, Louisiana Speech-Language-Hearing Convention, ASHA Schools Conference, Kansas Speech-Language-Hearing Convention, Washington State Speech-Language-Hearing Convention, Montana Speech-Language-Hearing Convention, In-service for Drs. G. and J. Riley in California, Illinois Speech-Language-Hearing Convention, and the American Academy of Pediatrics Convention.

During 2005, SFA produced and distributed news releases regarding stuttering to over 1600 daily newspapers nationwide and 1045 syndicated columnists and magazine editors, and public service advertisements to approximately 1800 national and local magazines. Public service spots were aired on national broadcasting networks, and 2,000 radio public service announcements were sent out, resulting in widespread usage of PSAs on stuttering across the country.

(3)Educational symposia for professionals and research                - $201,355.

In order to improve the treatment of stuttering, as well as to help improve prevention techniques, SFA

organizes and conducts specialty training programs and seminars for professional speech pathologists. During 2005, three such programs were conducted -

(i)A seminar was conducted entitled "Stuttering Therapy: Practical Ideas for the School Clinician." This conference was held in Minneapolis and was attended by over 100 public school clinicians from nineteen states and Canada. Attendees received credit for continuing professional education.

(ii) One intensive five-day Workshops attended by twenty speech-language pathologists in Boston, co-sponsored with the Boston University. These 20 SLPs then return to their school and clinic settings to provide better therapy for children. Attendees came from 12 states and 3 foreign countries.

(iii) One intensive two week Workshop for Specialists held at the University of Iowa in Iowa City, Iowa, and co-sponsored by the University of Iowa. This advanced training program was attended by 20 speech language pathologists from ten states in the United States and seven foreign countries: Italy, Japan, New Zealand, Russia, Taiwan, Thailand, and Turkey.

In addition to these professional symposia, during 2005 SFA supported research activities in conjunction with research projects funded by the National Institute of Deafness and Communicative Disorders. One such project is looking for the gene or genes involved in stuttering. A breakthrough in this area would open up the way towards finding a drug to impact stuttering.

(4) Maintain web site and toll-free hotline on stuttering and
        provide information packets                           - $ 76,085.

The SFA Web site is now a portal, which makes it far easier to update daily, now receives some 1,400,000 hits monthly, an increase from 650,000 hits per month. It offers information quickly and accurately to both the public and professionals worldwide. The new Spanish language website, www.tartamundez.org , averages some 15,000 hits a month.

The SFA toll-free hotline on stuttering is featured in its public information releases, public service ads and television spots and provides a unique service to all those concerned with the problem of stuttering. Those who call (as well as those who write) are furnished with information packets and free brochures as well as referral lists for support groups and speech pathologists who specialize in the treatment of stuttering.

During 2005, approximately 20,000 calls were received on the hotline, and approximately 20,000 other inquiries were received by mail and email. (Note - cost of the information sent following the inquiries is included in (1) above.)

Form 990 (2005)

| Part IV | Balance Sheets *(See the instructions.)* | | | Page **4** |
|---------|---------|---------|---------|---------|

| | Note: | *Where required, attached schedules and amounts within the description column should be for end-of-year amounts only.* | | **(A)** Beginning of year | | **(B)** End of year |
|---|---|---|---|---|---|---|
| **Assets** | 45 | Cash—non-interest-bearing . . . . . . . . . . . . . . . . . . | | 69,719. | 45 | 94,634. |
| | 46 | Savings and temporary cash investments . . . . . . . . . . . . | | 2,466,887. | 46 | 2,533,367. |
| | 47a | Accounts receivable . . . . . . . . . . . . . . | 47a | | | |
| | b | Less: allowance for doubtful accounts . . | 47b | | 47c | 0.00 |
| | 48a | Pledges receivable . . . . . . . . . . . . . . . | 48a | | | |
| | b | Less: allowance for doubtful accounts . . | 48b | | 48c | 0.00 |
| | 49 | Grants receivable . . . . . . . . . . . . . . . . . . . . | | | 49 | |
| | 50 | Receivables from officers, directors, trustees, and key employees (attach schedule) . . . . . . . . . . . . . . . . . | | | 50 | |
| | 51a | Other notes and loans receivable (attach schedule) . . . . . . . . . . . . . . . . . . . . . | 51a | | | |
| | b | Less: allowance for doubtful accounts . . | 51b | | 51c | 0.00 |
| | 52 | Inventories for sale or use . . . . . . . . . . . . . . . . . . | | | 52 | |
| | 53 | Prepaid expenses and deferred charges . . . . . . . . . . . . . . . | | 8,414. | 53 | 4,881. |
| | 54 | Investments—securities (attach schedule) . . . ▶ ☐ Cost ☒ FMV | | 17,599,316. | 54 | 17,646,025. |
| | 55a | Investments—land, buildings, and equipment: basis . . . . . . . . . . . . . . . . | 55a | | | |
| | b | Less: accumulated depreciation (attach schedule) . . . . . . . . . . . . . . . . . | 55b | | 55c | 0.00 |
| | 56 | Investments—other (attach schedule) . . . . . . . . . . . . . . | | | 56 | |
| | 57a | Land, buildings, and equipment: basis . . | 57a | | | |
| | b | Less: accumulated depreciation (attach schedule) . . . . . . . . . . . . . . . . . | 57b | | 57c | 0.00 |
| | 58 | Other assets (describe ▶ accrued interest ) | | 2,004. | 58 | 4,341. |
| | 59 | **Total assets** (must equal line 74). Add lines 45 through 58. . . . . | | 20,146,340.00 | 59 | 20,283,248.00 |
| **Liabilities** | 60 | Accounts payable and accrued expenses . . . . . . . . . . . . . . . . . . | | 12,403. | 60 | 6,423. |
| | 61 | Grants payable . . . . . . . . . . . . . . . . . . . . . . . | | | 61 | |
| | 62 | Deferred revenue . . . . . . . . . . . . . . . . . . . . . | | | 62 | |
| | 63 | Loans from officers, directors, trustees, and key employees (attach schedule) . . . . . . . . . . . . . . . . . . . . . | | | 63 | |
| | 64a | Tax-exempt bond liabilities (attach schedule) . . . . . . . . | | | 64a | |
| | b | Mortgages and other notes payable (attach schedule) . . . . . . . . . | | | 64b | |
| | 65 | Other liabilities (describe ▶ Deferred federal excise tax ) | | 132,302. | 65 | 134,757. |
| | 66 | **Total liabilities.** Add lines 60 through 65 . . . . . . . . . . . . . . . . . | | 144,705.00 | 66 | 141,180.00 |
| **Net Assets or Fund Balances** | | **Organizations that follow SFAS 117, check here ▶** ☐ **and complete lines 67 through 69 and lines 73 and 74.** | | | | |
| | 67 | Unrestricted . . . . . . . . . . . . . . . . . . . . . . . . . | | | 67 | |
| | 68 | Temporarily restricted . . . . . . . . . . . . . . . . . . . . . . | | | 68 | |
| | 69 | Permanently restricted . . . . . . . . . . . . . . . . . . . . . | | | 69 | |
| | | **Organizations that do not follow SFAS 117, check here ▶** ☐ **and complete lines 70 through 74.** | | | | |
| | 70 | Capital stock, trust principal, or current funds . . . . . . . . . . . | | | 70 | |
| | 71 | Paid-in or capital surplus, or land, building, and equipment fund . . | | | 71 | |
| | 72 | Retained earnings, endowment, accumulated income, or other funds | | 20,001,635. | 72 | 20,142,068. |
| | 73 | **Total net assets or fund balances** (add lines 67 through 69 **or** lines 70 through 72; column (A) **must** equal line 19; column (B) **must** equal line 21) . . . | | 20,001,635.00 | 73 | 20,142,068.00 |
| | 74 | **Total liabilities and net assets/fund balances.** Add lines 66 and 73. | | 20,146,340.00 | 74 | 20,283,248.00 |

Form **990** (2005)

ATTACHMENT 2005 STUTTERING FOUNDATION OF AMERICA
FORM 990          I.D. #62-6047678

Part IV BALANCE SHEET
Line 54 INVESTMENTS-CORPORATE STOCK

| CORPORATE SECURITY | NO. SHARES 12/31/05* | BOOK VALUE | MARKET VALUE 12/31/05 |
|---|---|---|---|
| CATRPLAR | 300 | 14,711. | 17,331. |
| WYETH | 800 | 12,086. | 36,856. |
| ABBOTS LABS | 1,000 | 13,031. | 39,430. |
| ALLSTATE | 1,000 | 22,308. | 54,070. |
| ANHEYSER BUSH | 20 | 451. | 859. |
| AXA UAP | 600 | 11,311. | 19,398. |
| BANK OF NY CO. INC. | 800 | 7,917. | 25,480. |
| BARRICK GOLD CORP. | 5,000 | 70,437. | 139,350. |
| BECTON DICKINSON CO | 200 | 6,128. | 12,016. |
| CADBRY SCHWPPS | 400 | 7,691. | 15,316. |
| CISCO SYSTEMS | 2,700 | 17,296. | 46,224. |
| COCA COLA | 8,200 | 123,376. | 330,542. |
| EXXON MOBIL CORP | 11,484 | 44,352. | 645,056. |
| GENERAL ELECTRIC | 29,500 | 55,012. | 1,033,975. |
| GENUINE PARTS CO | 285,519 | 2,810,560. | 12,539,995. |
| HEWLETT PKRD. | 400 | 11,401. | 11,452. |
| IMPERIAL OIL LTD. | 2,000 | 36,372. | 199,200. |
| INTEL CORP. | 1,600 | 11,677. | 39,936. |
| INTL. FLAVORS & FRAGNC. | 900 | 33,549. | 30,150. |
| J. P. MORGAN & CO., INC. | 2,220 | 38,403. | 88,112. |
| KELLOGG CO | 1200 | 19,081. | 51,864. |
| KONINKL PHIL | 713 | 10,307. | 22,174. |
| MEDTRONIC INC. | 4,500 | 53,860. | 259,065. |
| MELLON BANK CORP. | 400 | 5,811. | 13,700. |
| MERCK & CO INC | 1,020 | 20,665. | 32,446. |
| MICROSOFT CORP. WASH. | 3,200 | 12,492. | 83,680. |
| PEPSICO INC | 8,000 | 64,939. | 472,640. |
| PFIZER INC | 2,400 | 14,841. | 55,968. |
| PROCTOR GAMBLE | 7,000 | 53,009. | 405,160. |
| RYL DTCH PETE NY 5 GUILDR | 3,600 | 83,165 | 196,768. |
| SCHERING PLOUGH CORP | 1,600 | 12,591. | 33,360. |
| TELECOM C. NZ. | 1,200 | 31,800. | 39,216. |
| YUN BRANDS... | 1,600 | 5,136. | 75,008. |
| WESPAC BANKING | 100 | 3,415. | 8,358. |
| MERRILL LYNCH | 65 | 2,827. | 4,402. |
| MERRILL LYNCH FEDERAL SECURITIES | 9,747 | 100,004. | 98,152. |
| CONOCO PHLIPS | 1,400 | 38,039. | 81,452. |
| ANGILENT | 100 | 4,526. | 3,329. |
| GLAXO SMITH & KLINE | 569 | 33,721. | 28,723. |
| CITI GROUP | 1,246 | 53,842. | 60,468. |
| J M SMUCKERS | 64 | 212. | 2,816. |
| BURLINGTON RES. | 600 | 14,655. | 51,720. |
| BP PLC ADR | 500 | 21,530. | 32,110. |
| FLORIDA ROCK | 675 | 16,860. | 33,116. |
| KINDER MRGN ENG | 500 | 21,030. | 23,910. |
| MARATHON OIL | 500 | 14,080. | 30,485. |
| NY COMM BANK | 400 | 12,075. | 6,608. |
| STANLEY WORKS | 400 | 15,130. | 19,216. |
| EASTMAN CHEMAL | 500 | 29,475. | 25,795. |
| WORTHINGTON | 1,000 | 20,770. | 19,210. |
| BIOGEN | 35 | 2,307. | 1,585. |
| BOEING CO. | 140 | 10,043. | 9,834. |
| EMC CORP MASS | 200 | 2,772. | 2,724. |
| VANGUARD ENR | 525 | 25,879. | 29,407. |
| MEDCO | 122 | 1,168. | 6,808. |
| TOTALS | 410,464 | 4,170,325. | 17,646,025. |

*Cost or value at date of donation

Form 990 (2005)

Page **5**

## Part IV-A  Reconciliation of Revenue per Audited Financial Statements With Revenue per Return *(See the instructions.)*

| | | | |
|---|---|---|---|
| a | Total revenue, gains, and other support per audited financial statements . . . . . . . . . . . . . . . | a | 1,105,581.00 |
| b | Amounts included on line **a** but not on Part I, line 12: | | |
| 1 | Net unrealized gains on investments . . . . . . . . . . . . . . . . . . . . b1 | | |
| 2 | Donated services and use of facilities . . . . . . . . . . . . . . . . . . b2 | | |
| 3 | Recoveries of prior year grants . . . . . . . . . . . . . . . . . . . . . . . b3 | | |
| 4 | Other (specify): _____ b4 | | |
| | Add lines **b1** through **b4** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | b | 0.00 |
| c | Subtract line **b** from line **a** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | c | 1,105,581.00 |
| d | Amounts included on Part I, line 12, but not on line **a**: . . . . . . . . . . . | | |
| 1 | Investment expenses not included on Part I, line 6b . . . . . . . . . . . . d1 | | |
| 2 | Other (specify): _____ d2 | | |
| | Add lines **d1** and **d2** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | d | 0.00 |
| e | **Total revenue** (Part I, line 12). Add lines **c** and **d** . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | e | 1,105,581.00 |

## Part IV-B  Reconciliation of Expenses per Audited Financial Statements With Expenses per Return

| | | | |
|---|---|---|---|
| a | Total expenses and losses per audited financial statements . . . . . . . . . . . . . . . . . . . . . . | a | 1,197,402.00 |
| b | Amounts included on line **a** but not on Part I, line 17: | | |
| 1 | Donated services and use of facilities . . . . . . . . . . . . . . . . . . b1 | | |
| 2 | Prior year adjustments reported on Part I, line 20 . . . . . . . . . . . . b2 | | |
| 3 | Losses reported on Part I, line 20 . . . . . . . . . . . . . . . . . . . b3 | | |
| 4 | Other (specify): _____ b4 | | |
| | Add lines **b1** through **b4** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | b | 0.00 |
| c | Subtract line **b** from line **a** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | c | 1,197,402.00 |
| d | Amounts included on Part I, line 17, but not on line **a**: | | |
| 1 | Investment expenses not included on Part I, line 6b . . . . . . . . . . . . d1 | | |
| 2 | Other (specify): _____ d2 | | |
| | Add lines **d1** and **d2** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | d | 0.00 |
| e | **Total expenses** (Part I, line 17). Add lines **c** and **d** . . . . . . . . . . . . . . . . . . . . . . . ▶ | e | 1,197,402.00 |

## Part V-A  Current Officers, Directors, Trustees, and Key Employees (List each person who was an officer, director, trustee, or key employee at any time during the year even if they were not compensated.) *(See the instructions.)*

| (A) Name and address: ✱ | (B) Title and average hours per week devoted to position | (C) Compensation (if not paid, enter -0-.) | (D) Contributions to employee benefit plans & deferred compensation plans | (E) Expense account and other allowances ✱ |
|---|---|---|---|---|
| Jane Fraser, 3100 Walnut Grove Rd. Suite 603, Memphis, TN 38111 | President   50 | 64,500. | 3,000. | 0.00 |
| Donald Edwards, 1912 Peabody Mempis, TN 38104 | Treasurer   20 ✱✱ | 17,850. | 3,536. | 0.00 |
| Joe R.G. Fulcher, 235 W. Monteano Sea Island, GA 31561 | Vice Pres   20 | 0.00 | 0.00 | 0.00 |
| Joseph Walker, Esq., 80 Monroe Suite 700, Memphis, TN 38103 | Secretary   2 | 0.00 | 0.00 | 0.00 |
| James Garrison, Memphis, TN | Director   0 | 0.00 | 0.00 | 0.00 |
| Donald Lineback, 110 Round Hill Rd. Greenville, SC 29609 | Director   0 | 0.00 | 0.00 | 0.00 |
| Katherine P. Klyce, 280 Livingston New Haven, CT 06511 | Director   0 | 0.00 | 0.00 | 0.00 |
| Jean F. Gruss, Sanibel, FL | Director   0 | 0.00 | 0.00 | 0.00 |
| George Cooley, 4650 Shady Grove Ln. Memphis, TN 38120 | Director   0 | 0.00 | 0.00 | 0.00 |
| Robert M. Kurtz, Jr. 400 Reed St. Clearfield, PA 16830 | Director   0 | 0.00 | 0.00 | 0.00 |

✱  ✱✱  SEE ATTACHED NOTES

Form **990** (2005)

STF FED1923F.5

Attachment to form 990 - 2005
Stuttering Foundation of America    I.D.#62-6047678

Part V - List of Officers, Directors, Trustees and Key Employees

Additional Directors not listed on prior page:

| Name and Address | Title/hrs per week | Compensation | Contributions | Expenses |
|---|---|---|---|---|
| Alan Rabinowitz<br>185th St. & South Ave.<br>Bronx, NY 10468 | Director 0 | 0.00 | 0.00 | 0.00 |
| Dennis T. Drayna, Ph.D.<br>NIDCD-NIH<br>Bethesda, Md. 20852 | Director 0 | 0.00 | 0.00 | 0.00 |

Additional information regarding compensation and benefits:


* No amounts reported for expenses.  Stuttering Foundation of America
   reimbursed Officers and Directors only for documented expenses, no part
   of which is reportable as taxable income to them.

**Also, $24,719. was paid to Anne Edwards, Donald Edwards' wife, for clerical
   services; and $3,000 was paid to her under the Foundation's Medical
   Reimbursement Plan, and $741.57 was contributed to her SIMPLE IRA plan.
   The $3,536. of benefit cost for Donald Edwards was $3,000 for medical
   reimbursement and $536. for contribution to his SIMPLE IRA plan.

The $3,000 for benefit cost for Jane Fraser was for medical reimbursement.  No
   amount was paid to any retirement account for her.


Information regarding item 75b, relationships between officers and directors:


   Jane Fraser, President, and Joe R.G. Fulcher, Vice-President are husband
   and wife.

Form 990 (2005)    Page **6**

| Part V-A | Current Officers, Directors, Trustees, and Key Employees *(continued)* | | Yes | No |
|---|---|---|---|---|

75a Enter the total number of officers, directors, and trustees permitted to vote on organization business at board meetings ............................................................▶ twelve (12)

**b** Are any officers, directors, trustees, or key employees listed in Form 990, Part V-A, or highest compensated employees listed in Schedule A, Part I, or highest compensated professional and other independent contractors listed in Schedule A, Part II-A or II-B, related to each other through family or business relationships? If "Yes," attach a statement that identifies the individuals and explains the relationship(s) .... | **75b** | X | |

**c** Do any officers, directors, trustees, or key employees listed in Form 990, Part V-A, or highest compensated employees listed in Schedule A, Part I, or highest compensated professional and other independent contractors listed in Schedule A, Part II-A or II-B, receive compensation from any other organizations, whether tax exempt or taxable, that are related to this organization through common supervision or common control? **Note.** Related organizations include section 509(a)(3) supporting organizations. | **75c** | | X |

If "Yes," attach a statement that identifies the individuals, explains the relationship between this organization and the other organization(s), and describes the compensation arrangements, including amounts paid to each individual by each related organization.

**d** Does the organization have a written conflict of interest policy? ........................................ | **75d** | X | |

| Part V-B | Former Officers, Directors, Trustees, and Key Employees That Received Compensation or Other Benefits (If any former officer, director, trustee, or key employee received compensation or other benefits (described below) during the year, list that person below and enter the amount of compensation or other benefits in the appropriate column. See the instructions.) |

| (A) Name and address | (B) Loans and Advances | (C) Compensation | (D) Contributions to employee benefit plans & deferred compensation plans | (E) Expense account and other allowances |
|---|---|---|---|---|
| None | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| Part VI | Other Information *(See the instructions.)* | | Yes | No |
|---|---|---|---|---|

76 Did the organization engage in any activity not previously reported to the IRS? If "Yes," attach a detailed description of each activity ............................................................ | **76** | | X |

77 Were any changes made in the organizing or governing documents but not reported to the IRS? ....... | **77** | | X |
If "Yes," attach a conformed copy of the changes.

78a Did the organization have unrelated business gross income of $1,000 or more during the year covered by this return? ............................................................ | **78a** | | X |

**b** If "Yes," has it filed a tax return on **Form 990-T** for this year? ..................................... | **78b** | | n/a |

79 Was there a liquidation, dissolution, termination, or substantial contraction during the year? If "Yes," attach a statement ............................................................ | **79** | | X |

80a Is the organization related (other than by association with a statewide or nationwide organization) through common membership, governing bodies, trustees, officers, etc., to any other exempt or nonexempt organization? ............................................................ | **80a** | | X |

**b** If "Yes," enter the name of the organization ▶ n/a
_____ and check whether it is ☐ exempt **or** ☐ nonexempt

81a Enter direct and indirect political expenditures. (See line 81 instructions.) .... | **81a** | 0.00 | |
**b** Did the organization file **Form 1120-POL** for this year? ........................................ | **81b** | | X |

STF FED1923F.6

Form **990** (2005)

Form 990 (2005) Page **7**

| **Part VI** | **Other Information** *(continued)* | | **Yes** | **No** |
|---|---|---|---|---|
| 82a | Did the organization receive donated services or the use of materials, equipment, or facilities at no charge or at substantially less than fair rental value? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **82a** | | | X |
| b | If "Yes," you may indicate the value of these items here. Do not include this amount as revenue in Part I or as an expense in Part II. (See instructions in Part III.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **82b**  n/a | | | |
| 83a | Did the organization comply with the public inspection requirements for returns and exemption applications? **83a** | | X | |
| b | Did the organization comply with the disclosure requirements relating to quid pro quo contributions? . . . . . **83b** | | X | |
| 84a | Did the organization solicit any contributions or gifts that were not tax deductible? . . . . . . . . . . . . . . . . . . **84a** | | | X |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **84b**  n/a | | | |
| 85 | *501(c)(4), (5), or (6) organizations.* a Were substantially all dues nondeductible by members? . . . . . . . . . . **85a** | | | n/a |
| b | Did the organization make only in-house lobbying expenditures of $2,000 or less? . . . . . . . . . . . . . . . . . **85b** | | | n/a |
| | If "Yes" was answered to either 85a or 85b, **do not** complete 85c through 85h below unless the organization received a waiver for proxy tax owed for the prior year. | | | |
| c | Dues, assessments, and similar amounts from members . . . . . . . . . . . . . . . **85c**  n/a | | | |
| d | Section 162(e) lobbying and political expenditures . . . . . . . . . . . . . . . . . . . . **85d**  n/a | | | |
| e | Aggregate nondeductible amount of section 6033(e)(1)(A) dues notices . . . . . . **85e**  n/a | | | |
| f | Taxable amount of lobbying and political expenditures (line 85d less 85e) . . . . . **85f**  0.00 | | | |
| g | Does the organization elect to pay the section 6033(e) tax on the amount on line 85f? . . . . . . . . . . . . . **85g** | | | n/a |
| h | If section 6033(e)(1)(A) dues notices were sent, does the organization agree to add the amount on line 85f to its reasonable estimate of dues allocable to nondeductible lobbying and political expenditures for the following tax year? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **85h** | | | n/a |
| 86 | *501(c)(7) orgs.* Enter: **a** Initiation fees and capital contributions included on line 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **86a**  n/a | | | |
| b | Gross receipts, included on line 12, for public use of club facilities . . . . . . . . . **86b**  n/a | | | |
| 87 | *501(c)(12) orgs.* Enter: **a** Gross income from members or shareholders . . . . . . **87a**  n/a | | | |
| b | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) . . . . . . . . . . . . . . . **87b**  n/a | | | |
| 88 | At any time during the year, did the organization own a 50% or greater interest in a taxable corporation or partnership, or an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? If "Yes," complete Part IX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **88** | | | X |
| 89a | *501(c)(3) organizations.* Enter: Amount of tax imposed on the organization during the year under: section 4911 ▶ ____0.00 ; section 4912 ▶ ____0.00 ; section 4955 ▶ ____0.00 | | | |
| b | *501(c)(3) and 501(c)(4) orgs.* Did the organization engage in any section 4958 excess benefit transaction during the year or did it become aware of an excess benefit transaction from a prior year? If "Yes," attach a statement explaining each transaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **89b** | | | X |
| c | Enter: Amount of tax imposed on the organization managers or disqualified persons during the year under sections 4912, 4955, and 4958 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ____0.00 | | | |
| d | Enter: Amount of tax on line 89c, above, reimbursed by the organization . . . . . . . . . . . . . . . ▶ ____0.00 | | | |
| 90a | List the states with which a copy of this return is filed ▶ Tennessee and Georgia | | | |
| b | Number of employees employed in the pay period that includes March 12, 2005 (See instructions.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **90b** Eight (8) | | | |
| 91a | The books are in care of ▶ Don Edwards, Treasurer ____ Telephone no. ▶ 901-278-5158 Located at ▶ 1912 Peabody, Memphis, TN ____ ZIP + 4 ▶ 38104-4054 | | | |
| b | At any time during the calendar year, did the organization have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **91b** | | | X |
| | If "Yes," enter the name of the foreign country ▶ n/a See the instructions for exceptions and filing requirements for **Form TD F 90-22.1,** Report of Foreign Bank and Financial Accounts. | | | |
| c | At any time during the calendar year, did the organization maintain an office outside of the United States? **91c** | | | X |
| | If "Yes," enter the name of the foreign country ▶ n/a | | | |
| 92 | *Section 4947(a)(1) nonexempt charitable trusts filing Form 990 in lieu of* **Form 1041**— Check here . . . . . . . . . . . . . . . ▶ ☐ and enter the amount of tax-exempt interest received or accrued during the tax year . . . . . ▶ **92**  n/a | | | |

Form **990** (2005)

Form 990 (2005)    Page **8**

## Part VII   Analysis of Income-Producing Activities *(See the instructions.)*

**Note:** *Enter gross amounts unless otherwise indicated.*

| | | Unrelated business income | | Excluded by section 512, 513, or 514 | | (E) Related or exempt function income |
|---|---|---|---|---|---|---|
| | | (A) Business code | (B) Amount | (C) Exclusion code | (D) Amount | |
| 93 | Program service revenue: | | | | | |
| a | Receipts from distribution | | | | | |
| b | of educational material | | | | | 284,246. |
| c | | | | | | |
| d | | | | | | |
| e | | | | | | |
| f | Medicare/Medicaid payments . . . . . . . . . . | | | | | |
| g | Fees and contracts from government agencies | | | | | |
| 94 | Membership dues and assessments . . . . . | | | | | |
| 95 | Interest on savings and temporary cash investments | | | 14 | 77,674. | |
| 96 | Dividends and interest from securities . . . . | | | 14 | 465,552. | |
| 97 | Net rental income or (loss) from real estate: | | | | | |
| a | debt-financed property. . . . . . . . . . . . . . . | | | | | |
| b | not debt-financed property . . . . . . . . . . . | | | | | |
| 98 | Net rental income or (loss) from personal property | | | | | |
| 99 | Other investment income . . . . . . . . . . . . | | | | | |
| 100 | Gain or (loss) from sales of assets other than inventory | | | 18 | (13,302. | |
| 101 | Net income or (loss) from special events . . | | | | | |
| 102 | Gross profit or (loss) from sales of inventory | | | | | |
| 103 | Other revenue: a | | | | | |
| b | | | | | | |
| c | | | | | | |
| d | | | | | | |
| e | | | | | | |
| 104 | Subtotal (add columns (B), (D), and (E)) . . . | | 0.00 | | 529,924.00 | 284,246.00 |
| 105 | Total (add line 104, columns (B), (D), and (E)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ | | | | | 814,170.00 |

**Note:** *Line 105 plus line 1d, Part I, should equal the amount on line 12, Part I.*

## Part VIII   Relationship of Activities to the Accomplishment of Exempt Purposes *(See the instructions.)*

| Line No. ▶ | Explain how each activity for which income is reported in column (E) of Part VII contributed importantly to the accomplishment of the organization's exempt purposes (other than by providing funds for such purposes). |
|---|---|
| 93(b) | See attached statement |
| | |
| | |
| | |

## Part IX   Information Regarding Taxable Subsidiaries and Disregarded Entities *(See the instructions.)*

| (A) Name, address, and EIN of corporation, partnership, or disregarded entity | (B) Percentage of ownership interest | (C) Nature of activities | (D) Total income | (E) End-of-year assets |
|---|---|---|---|---|
| None | % | | | |
| | % | | | |
| | % | | | |
| | % | | | |

## Part X   Information Regarding Transfers Associated with Personal Benefit Contracts *(See the instructions.)*

(a)  Did the organization, during the year, receive any funds, directly or indirectly, to pay premiums on a personal benefit contract?. . . .    ☐ Yes  ☒ No

(b)  Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract?    ☐ Yes  ☒ No

**Note:** *If "Yes" to (b), file Form 8870 and Form 4720 (see instructions).*

**Please Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

Signature of officer    *Jane Fraser, President*    | Date *Sept. 12, 2006*

Type or print name and title.

| **Paid Preparer's Use Only** | Preparer's signature ▶ | | Date | Check if self-employed ▶ ☐ | Preparer's SSN or PTIN (See Gen. Inst. W) |
|---|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP + 4 ▶ | | | EIN ▶ | |
| | | | | Phone no. ▶ | |

Form **990** (2005)

STF FED1923F.8

Form 990-~~PF~~ - 2005
Stuttering Foundation of America     I.D. #62-6047678

**VIII**

Part ~~VIII~~-B -Relationship of Activities to the Accomplishment of Exempt Purposes

~~Line 1 (a)~~:
**93(b)**

The receipts shown are from the distribution of books, videos and other educational materials regarding the treatment and prevention of stuttering, which is a primary exempt function of the Stuttering Foundation of America.

The Foundation has published and is currently distributing 28 books, including twelve for the professional speech pathologist, four for physicians, and twelve for the general public. Six of the books have been translated into Spanish. A series of 40 DVDS and videotapes are available with seven for the general public covering preschool stuttering as well as stuttering in the school-age child, teenagers, and adults. These seven tapes are also for professionals in addition to the series of DVDs, *Practical Ideas for the School Clinician*, which feature live presentations from the annual SFA conference for school clinicians.

SFA also distributes nineteen free informational brochures to those requesting them by letter or by calling the toll-free stuttering information hotline or by downloading from its Web site. Five of these brochures have been translated into Spanish. The cost of these brochures is included on line 22, Part I.

SFA's public information program is centered on letting the public and the professional know of the availability of this educational material.

The amounts collected for these materials are much less than the cost of production, printing and mailing, and a charge is made only to avoid the idea that the publications are "give away-throw away" materials. All of the books, videos/DVDs and brochures have been written and produced by outstanding experts in the field of stuttering, and many are used as instructional material in the training of students in leading universities.

**SCHEDULE A**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

**Organization Exempt Under Section 501(c)(3)**
(Except Private Foundation) and Section 501(e), 501(f), 501(k), 501(n),
or 4947(a)(1) Nonexempt Charitable Trust
**Supplementary Information—(See separate instructions.)**
▶ **MUST be completed by the above organizations and attached to their Form 990 or 990-EZ**

OMB No. 1545-0047

**2005**

| Name of the organization | Employer identification number |
|---|---|
| Stuttering Foundation of America | 62-6047678 |

**Part I**   **Compensation of the Five Highest Paid Employees Other Than Officers, Directors, and Trustees**
(See page 1 of the instructions. List each one. If there are none, enter "None.")

| (a) Name and address of each employee paid more than $50,000 | (b) Title and average hours per week devoted to position | (c) Compensation | (d) Contributions to employee benefit plans & deferred compensation | (e) Expense account and other allowances |
|---|---|---|---|---|
| None | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Total number of other employees paid over $50,000 .... ▶ | | 0 | | |

**Part II-A**   **Compensation of the Five Highest Paid Independent Contractors for Professional Services**
(See page 2 of the instructions. List each one (whether individuals or firms). If there are none, enter "None.")

| (a) Name and address of each independent contractor paid more than $50,000 | (b) Type of service | (c) Compensation |
|---|---|---|
| None | | |
| | | |
| | | |
| | | |
| | | |

Total number of others receiving over $50,000 for
professional services . . . . . . . . . . . . . . . . . . . . . ▶ | 0 |

**Part II-B**   **Compensation of the Five Highest Paid Independent Contractors for Other Services**
(List each contractor who performed services other than professional services, whether individuals or
firms. If there are none, enter "None." See page 2 of the instructions.)

| (a) Name and address of each independent contractor paid more than $50,000 | (b) Type of service | (c) Compensation |
|---|---|---|
| None | | |
| | | |
| | | |
| | | |
| | | |

Total number of other contractors receiving over
$50,000 for other services . . . . . . . . . . . . . . . . . . ▶ | 0 |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 and Form 990-EZ.

Schedule A (Form 990 or 990-EZ) 2005

Schedule A (Form 990 or 990-EZ) 2005                                                                    Page **2**

| **Part III** | Statements About Activities (See page 2 of the instructions.) | | Yes | No |
|---|---|---|---|---|

**1** During the year, has the organization attempted to influence national, state, or local legislation, including any attempt to influence public opinion on a legislative matter or referendum? If "Yes," enter the total expenses paid or incurred in connection with the lobbying activities ▶ $ _____0.00_____ (Must equal amounts on line 38, Part VI-A, or line i of Part VI-B.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1** | | X

Organizations that made an election under section 501(h) by filing Form 5768 must complete Part VI-A. Other organizations checking "Yes" must complete Part VI-B AND attach a statement giving a detailed description of the lobbying activities.

**2** During the year, has the organization, either directly or indirectly, engaged in any of the following acts with any substantial contributors, trustees, directors, officers, creators, key employees, or members of their families, or with any taxable organization with which any such person is affiliated as an officer, director, trustee, majority owner, or principal beneficiary? *(If the answer to any question is "Yes," attach a detailed statement explaining the transactions.)*

| | | | | |
|---|---|---|---|---|
| **a** Sale, exchange, or leasing of property? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **2a** | | | X |
| **b** Lending of money or other extension of credit? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **2b** | | | X |
| **c** Furnishing of goods, services, or facilities? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **2c** | | | X |
| **d** Payment of compensation (or payment or reimbursement of expenses if more than $1,000)? . . . . . . . . . . . . . . | **2d** | X | | |
| **e** Transfer of any part of its income or assets? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **2e** | | | X |
| **3a** Do you make grants for scholarships, fellowships, student loans, etc.? (If "Yes," attach an explanation of how you determine that recipients qualify to receive payments.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3a** | X | | |
| **b** Do you have a section 403(b) annuity plan for your employees? . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **3b** | | | X |
| **c** During the year, did the organization receive a contribution of qualified real property interest under section 170(h)? | **3c** | | | X |
| **4a** Did you maintain any separate account for participating donors where donors have the right to provide advice on the use or distribution of funds? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **4a** | | | X |
| **b** Do you provide credit counseling, debt management, credit repair, or debt negotiation services? . . . . . . . . . . . . | **4b** | | | X |

| **Part IV** | Reason for Non-Private Foundation Status (See pages 3 through 6 of the instructions.) |
|---|---|

The organization is not a private foundation because it is: (Please check only ONE applicable box.)

*N/A*

*OPERATING FOUNDATION*

**5** ☐ A church, convention of churches, or association of churches. Section 170(b)(1)(A)(i).

**6** ☐ A school. Section 170(b)(1)(A)(ii). (Also complete Part V.)

**7** ☐ A hospital or a cooperative hospital service organization. Section 170(b)(1)(A)(iii).

**8** ☐ A Federal, state, or local government or governmental unit. Section 170(b)(1)(A)(v).

**9** ☐ A medical research organization operated in conjunction with a hospital. Section 170(b)(1)(A)(iii). Enter the hospital's name, city, and state ▶ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**10** ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit. Section 170(b)(1)(A)(iv). (Also complete the **Support Schedule** in Part IV-A.)

**11a** ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public. Section 170(b)(1)(A)(vi). (Also complete the Support Schedule in Part IV-A.)

**11b** ☐ A community trust. Section 170(b)(1)(A)(vi). (Also complete the Support Schedule in Part IV-A.)

**12** ☐ An organization that normally receives: (1) more than 33⅓% of its support from contributions, membership fees, and gross receipts from activities related to its charitable, etc., functions—subject to certain exceptions, and (2) no more than 33⅓% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See section 509(a)(2). (Also complete the Support Schedule in Part IV-A.)

**13** ☐ An organization that is not controlled by any disqualified persons (other than foundation managers) and supports organizations described in: (1) lines 5 through 12 above; or (2) sections 501(c)(4), (5), or (6), if they meet the test of section 509(a)(2). Check the box that describes the type of supporting organization: ▶ ☐ Type 1   ☐ Type 2   ☐ Type 3

| Provide the following information about the supported organizations. (See page 6 of the instructions.) | |
|---|---|
| **(a)** Name(s) of supported organization(s) | **(b)** Line number from above |
| | |
| | |
| | |

**14** ☐ An organization organized and operated to test for public safety. Section 509(a)(4). (See page 6 of the instructions.)

Schedule A (Form 990 or 990-EZ) 2005

STF FED1955F.2

Schedule A (Form 990 or 990-EZ) 2005

Page **3**

**Part IV-A** **Support Schedule** (Complete only if you checked a box on line 10, 11, or 12.) *Use cash method of accounting.*

Note: *You may use the worksheet in the instructions for converting from the accrual to the cash method of accounting.*    N/A

| Calendar year (or fiscal year beginning in)  ▶ | (a) 2004 | (b) 2003 | (c) 2002 | (d) 2001 | (e) Total |
|---|---|---|---|---|---|
| 15 Gifts, grants, and contributions received. (Do not include unusual grants. See line 28.) ... | | | | | |
| 16 Membership fees received ............... | | | | | |
| 17 Gross receipts from admissions, merchandise sold or services performed, or furnishing of facilities in any activity that is related to the organization's charitable, etc., purpose ....... | | | | | |
| 18 Gross income from interest, dividends, amounts received from payments on securities loans (section 512(a)(5)), rents, royalties, and unrelated business taxable income (less section 511 taxes) from businesses acquired by the organization after June 30, 1975 ...... | | | | | |
| 19 Net income from unrelated business activities not included in line 18 .......... | | | | | |
| 20 Tax revenues levied for the organization's benefit and either paid to it or expended on its behalf ............................... | | | | | |
| 21 The value of services or facilities furnished to the organization by a governmental unit without charge. Do not include the value of services or facilities generally furnished to the public without charge .................. | | | | | |
| 22 Other income. Attach a schedule. Do not include gain or (loss) from sale of capital assets | | | | | |
| 23 Total of lines 15 through 22 .............. | | | | | |
| 24 Line 23 minus line 17 ................... | | | | | |
| 25 Enter 1% of line 23 ..................... | | | | | |

26 **Organizations described on lines 10 or 11:** a Enter 2% of amount in column (e), line 24 ........ ▶ | **26a**

b Prepare a list for your records to show the name of and amount contributed by each person (other than a governmental unit or publicly supported organization) whose total gifts for 2001 through 2004 exceeded the amount shown in line 26a. **Do not file this list with your return.** Enter the total of all these excess amounts ▶ | **26b**

c Total support for section 509(a)(1) test: Enter line 24, column (e) ............................... ▶ | **26c**

d Add: Amounts from column (e) for lines: 18 _____ 19 _____
22 _____ 26b _____ ............ ▶ | **26d**

e Public support (line 26c minus line 26d total) ....................................................... ▶ | **26e**

f **Public support percentage (line 26e (numerator) divided by line 26c (denominator))** ............. ▶ | **26f** | %

27 **Organizations described on line 12:** a For amounts included in lines 15, 16, and 17 that were received from a "disqualified person," prepare a list for your records to show the name of, and total amounts received in each year from, each "disqualified person." **Do not file this list with your return.** Enter the sum of such amounts for each year:

(2004) _____ (2003) _____ (2002) _____ (2001) _____

b For any amount included in line 17 that was received from each person (other than "disqualified persons"), prepare a list for your records to show the name of, and amount received for each year, that was more than the **larger of (1)** the amount on line 25 for the year or **(2)** $5,000. (Include in the list organizations described in lines 5 through 11b, as well as individuals.) **Do not file this list with your return.** After computing the difference between the amount received and the larger amount described in **(1)** or **(2)**, enter the sum of these differences (the excess amounts) for each year:

(2004) _____ (2003) _____ (2002) _____ (2001) _____

c Add: Amounts from column (e) for lines: 15 _____ 16 _____
17 _____ 20 _____ 21 _____ ............ ▶ | **27c**

d Add: Line 27a total _____ and line 27b total _____ ............ ▶ | **27d**

e Public support (line 27c total minus line 27d total) ................................................. ▶ | **27e**

f Total support for section 509(a)(2) test: Enter amount from line 23, column (e) ..... ▶ | 27f |

g **Public support percentage (line 27e (numerator) divided by line 27f (denominator))** ............. ▶ | **27g** | %

h **Investment income percentage (line 18, column (e) (numerator) divided by line 27f (denominator))** ▶ | **27h** | %

28 **Unusual Grants:** For an organization described in line 10, 11, or 12 that received any unusual grants during 2001 through 2004, prepare a list for your records to show, for each year, the name of the contributor, the date and amount of the grant, and a brief description of the nature of the grant. **Do not file this list with your return.** Do not include these grants in line 15.

Schedule A (Form 990 or 990-EZ) 2005

STF FED1955F.3

Schedule A (Form 990 or 990-EZ) 2005

**Part V**   **Private School Questionnaire** (See page 7 of the instructions.)
(To be completed ONLY by schools that checked the box on line 6 in Part IV)   *N/A*

| | | | Yes | No |
|---|---|---|---|---|
| 29 | Does the organization have a racially nondiscriminatory policy toward students by statement in its charter, bylaws, other governing instrument, or in a resolution of its governing body? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 29 | | |
| 30 | Does the organization include a statement of its racially nondiscriminatory policy toward students in all its brochures, catalogues, and other written communications with the public dealing with student admissions, programs, and scholarships? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 30 | | |
| 31 | Has the organization publicized its racially nondiscriminatory policy through newspaper or broadcast media during the period of solicitation for students, or during the registration period if it has no solicitation program, in a way that makes the policy known to all parts of the general community it serves? . . . . . . . . . . . . . . . . . . . . . . . . . . | 31 | | |

If "Yes," please describe; if "No," please explain. (If you need more space, attach a separate statement.)

_____

_____

_____

| | | | | |
|---|---|---|---|---|
| 32 | Does the organization maintain the following: | | | |
| a | Records indicating the racial composition of the student body, faculty, and administrative staff? . . . . . . . . . . . | 32a | | |
| b | Records documenting that scholarships and other financial assistance are awarded on a racially nondiscriminatory basis? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32b | | |
| c | Copies of all catalogues, brochures, announcements, and other written communications to the public dealing with student admissions, programs, and scholarships? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 32c | | |
| d | Copies of all material used by the organization or on its behalf to solicit contributions? . . . . . . . . . . . . . . . . . . | 32d | | |

If you answered "No" to any of the above, please explain. (If you need more space, attach a separate statement.)

_____

_____

| | | | | |
|---|---|---|---|---|
| 33 | Does the organization discriminate by race in any way with respect to: | | | |
| a | Students' rights or privileges? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 33a | | |
| b | Admissions policies? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 33b | | |
| c | Employment of faculty or administrative staff? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 33c | | |
| d | Scholarships or other financial assistance? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 33d | | |
| e | Educational policies? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 33e | | |
| f | Use of facilities? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 33f | | |
| g | Athletic programs? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 33g | | |
| h | Other extracurricular activities? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 33h | | |

If you answered "Yes" to any of the above, please explain. (If you need more space, attach a separate statement.)

_____

_____

| | | | | |
|---|---|---|---|---|
| 34a | Does the organization receive any financial aid or assistance from a governmental agency? . . . . . . . . . . . . . . . . . | 34a | | |
| b | Has the organization's right to such aid ever been revoked or suspended? . . . . . . . . . . . . . . . . . . . . . . . . . . | 34b | | |

If you answered "Yes" to either 34a or b, please explain using an attached statement.

| | | | | |
|---|---|---|---|---|
| 35 | Does the organization certify that it has complied with the applicable requirements of sections 4.01 through 4.05 of Rev. Proc. 75-50, 1975-2 C.B. 587, covering racial nondiscrimination? If "No," attach an explanation . . . . . . . | 35 | | |

Schedule A (Form 990 or 990-EZ) 2005

STF FED1965F.4

Schedule A (Form 990 or 990-EZ) 2005

Page **5**

**Part VI-A** Lobbying Expenditures by Electing Public Charities (See page 9 of the instructions.)
(To be completed **ONLY** by an eligible organization that filed Form 5768)

*N/A*

Check ▶ **a** ☐ if the organization belongs to an affiliated group.    Check ▶ **b** ☐ if you checked "a" and "limited control" provisions apply.

| Limits on Lobbying Expenditures<br>(The term "expenditures" means amounts paid or incurred.) | | (a)<br>Affiliated group<br>totals | (b)<br>To be completed<br>for ALL electing<br>organizations |
|---|---|---|---|
| 36 | Total lobbying expenditures to influence public opinion (grassroots lobbying) . . . . . . . . . . | 36 | | |
| 37 | Total lobbying expenditures to influence a legislative body (direct lobbying) . . . . . . . . . . | 37 | | |
| 38 | Total lobbying expenditures (add lines 36 and 37) . . . . . . . . . . . . . . . . . . . . . . . | 38 | | |
| 39 | Other exempt purpose expenditures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 39 | | |
| 40 | Total exempt purpose expenditures (add lines 38 and 39) . . . . . . . . . . . . . . . . . . . | 40 | | |
| 41 | Lobbying nontaxable amount. Enter the amount from the following table— | | | |

| If the amount on line 40 is— | The lobbying nontaxable amount is— | | | |
|---|---|---|---|---|
| Not over $500,000 . . . . . . . . . . . . . . . | 20% of the amount on line 40 . . . . . . . . . | | | |
| Over $500,000 but not over $1,000,000 . . . | $100,000 plus 15% of the excess over $500,000 | | | |
| Over $1,000,000 but not over $1,500,000 . | $175,000 plus 10% of the excess over $1,000,000 | 41 | | |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000 | | | |
| Over $17,000,000 . . . . . . . . . . . . . . . . | $1,000,000 . . . . . . . . . . . . . . . . . . . | | | |

| 42 | Grassroots nontaxable amount (enter 25% of line 41) . . . . . . . . . . . . . . . . . . . . . . | 42 | | |
|---|---|---|---|---|
| 43 | Subtract line 42 from line 36. Enter -0- if line 42 is more than line 36 . . . . . . . . . . . . | 43 | | |
| 44 | Subtract line 41 from line 38. Enter -0- if line 41 is more than line 38 . . . . . . . . . . . . | 44 | | |

**Caution:** *If there is an amount on either line 43 or line 44, you must file Form 4720.*

**4-Year Averaging Period Under Section 501(h)**
(Some organizations that made a section 501(h) election do not have to complete all of the five columns below.
See the instructions for lines 45 through 50 on page 11 of the instructions.)

| Calendar year (or<br>fiscal year beginning in) ▶ | Lobbying Expenditures During 4-Year Averaging Period | | | | |
|---|---|---|---|---|---|
| | (a)<br>2005 | (b)<br>2004 | (c)<br>2003 | (d)<br>2002 | (e)<br>Total |
| 45  Lobbying nontaxable amount . . . . . . . . . . . | | | | | |
| 46  Lobbying ceiling amount (150% of line 45(e)) | | | | | |
| 47  Total lobbying expenditures . . . . . . . . . . . | | | | | |
| 48  Grassroots nontaxable amount . . . . . . . . . . | | | | | |
| 49  Grassroots ceiling amount (150% of line 48(e)) | | | | | |
| 50  Grassroots lobbying expenditures . . . . . . . . | | | | | |

**Part VI-B** Lobbying Activity by Nonelecting Public Charities
(For reporting only by organizations that did not complete Part VI-A) (See page 11 of the instructions.)

| During the year, did the organization attempt to influence national, state or local legislation, including any<br>attempt to influence public opinion on a legislative matter or referendum, through the use of: | Yes | No | Amount |
|---|---|---|---|
| a  Volunteers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X | |
| b  Paid staff or management (Include compensation in expenses reported on lines c through h.) . . . . . . | | X | |
| c  Media advertisements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X | 0.00 |
| d  Mailings to members, legislators, or the public . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X | 0.00 |
| e  Publications, or published or broadcast statements . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X | 0.00 |
| f  Grants to other organizations for lobbying purposes . . . . . . . . . . . . . . . . . . . . . . . . . . | | X | 0.00 |
| g  Direct contact with legislators, their staffs, government officials, or a legislative body . . . . . . . . . | | X | 0.00 |
| h  Rallies, demonstrations, seminars, conventions, speeches, lectures, or any other means . . . . . . . . . | | X | 0.00 |
| i  Total lobbying expenditures (Add lines c through h.) . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 0.00 |
| If "Yes" to any of the above, also attach a statement giving a detailed description of the lobbying activities. | | | |

Schedule A (Form 990 or 990-EZ) 2005

Schedule A (Form 990 or 990-EZ) 2005                                                                    Page **6**

**Part VII**  **Information Regarding Transfers To and Transactions and Relationships With Noncharitable Exempt Organizations** (See page 12 of the instructions.)

51  Did the reporting organization directly or indirectly engage in any of the following with any other organization described in section 501(c) of the Code (other than section 501(c)(3) organizations) or in section 527, relating to political organizations?

|   |   |   | Yes | No |
|---|---|---|---|---|
| a | Transfers from the reporting organization to a noncharitable exempt organization of: | | | |
| | (i) Cash ............................................................. | **51a(i)** | | X |
| | (ii) Other assets ...................................................... | **a(ii)** | | X |
| b | Other transactions: | | | |
| | (i) Sales or exchanges of assets with a noncharitable exempt organization ........................... | **b(i)** | | X |
| | (ii) Purchases of assets from a noncharitable exempt organization ................................. | **b(ii)** | | X |
| | (iii) Rental of facilities, equipment, or other assets ........................................... | **b(iii)** | | X |
| | (iv) Reimbursement arrangements ...................................................... | **b(iv)** | | X |
| | (v) Loans or loan guarantees ......................................................... | **b(v)** | | X |
| | (vi) Performance of services or membership or fundraising solicitations ............................ | **b(vi)** | | X |
| c | Sharing of facilities, equipment, mailing lists, other assets, or paid employees .......................... | **c** | | X |

d  If the answer to any of the above is "Yes," complete the following schedule. Column (b) should always show the fair market value of the goods, other assets, or services given by the reporting organization. If the organization received less than fair market value in any transaction or sharing arrangement, show in column (d) the value of the goods, other assets, or services received:

| (a) Line no. | (b) Amount involved | (c) Name of noncharitable exempt organization | (d) Description of transfers, transactions, and sharing arrangements |
|---|---|---|---|
| | | N/A | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

52a  Is the organization directly or indirectly affiliated with, or related to, one or more tax-exempt organizations described in section 501(c) of the Code (other than section 501(c)(3)) or in section 527? . . . . . . . . . . . ▶ ☐ Yes  ☒ No

b  If "Yes," complete the following schedule:

| (a) Name of organization | (b) Type of organization | (c) Description of relationship |
|---|---|---|
| N/A | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Schedule A (Form 990 or 990-EZ) 2005

STF FED1955F.6

Stuttering Foundation of America      I.D.#62-6047678
Form 990 - 2005

Schedule A, Part III, line 3a - Grants

In order to improve the treatment of stuttering, the Stuttering Foundation of America organizes specialty training programs and seminars for professional speech pathologists. In 2005, two of those programs involved payment of travel and per diem expenses of individuals who attended the training sessions.

The individuals on the attached lists attended one of the training programs and were reimbursed travel costs and/or per diem expenses while attending the program. SFA paid dormitory room costs for participants and guest speakers and the other instructional costs directly to the participating University. That cost (dormitory rooms and other instructional cost) was charged to the cost of the special training program and is included in the amount shown on line 40, Part II. The amount of grants paid is included in line 22, Part II.

The procedures for selecting the speech clinicians who attended the program are specified in the ruling letter received by SFA dated September 29, 1988, a copy of which is attached.

The purpose for the grants was payment of travel and per diem expenses to attend the class in specialty training in treatment of stuttering as described above.

The name and address of the grantees are included on the schedule attached, which schedule also shows the total amount paid to each individual for travel and/or per diem costs.

None of the grantees was related to any disqualified person by blood, marriage, adoption or employment.

All of the grantees were individuals who are speech clinicians. All of the grantees attended and completed their respective training course.

ATTACHMENT 2005 STUTTERING FOUNDATION OF AMERICA

FORM 990        I. D. 62-6047678

GRANTS  Schedule A, Part III, line 3a

| Name | City, State Zip COUNTRY |
|---|---|
| Arismendi, Cheryl M.A.CCC-SLP | Pomona, CA 91766 |
| Belgin, Erol | Ankara 06500 TURKEY |
| Conrad, Nina N.S. | Yonkers, NY 10710-1915 |
| Filatova, Yulia O. Ph.D., SLT | Moscow 119602 RUSSIA |
| Gurrister, Maria N.S., CCC-SLP | Holladay, UT 84124 |
| Jackson, Ashley M.A., CCC-SLP | Kansas City, NO 64110-2428 |
| Jeeraumporn, Jeamjai M.A. | Bangkok 10400 THAILAND |
| Jones, Michelle A. M.A., CCC-SLP | Chicago, IL 60625 |
| Kayikci, Mavis Emel Kulak | Cayyolu Ankara 06810 TURKEY |
| Keck, Calista H.S., CCC-SLP | Scottsdale, AZ 85260 |
| King, Amie M. M.A., CCC-SLP | Mt. Vernon, IL 62864-9886 |
| Marchiori, Nassimiliano M.S. | Villafranca of Verona 37069 IT |
| Peacock, Jennifer M.A., CCC-SLP | Harper Woods, MI 48225 |
| Reitzes, Peter M.A., CCC-SLP | Brooklyn, NY 11215 |
| Schmidt, Margaret M.A., CCC-SLP | Pottstown, PA 19464-4583 |
| Scott, Kathleen Scaler N.S., CCC-SL | Lafayette, LA 70506 |
| Snead, Nichelle M.A., CCC-SLP | Hataitai, Wellington 6003 NEW |
| Sylvester, Suzanne V. M.S., CCC-SLP | Portland, ME 04101-4101 |
| Tseng, Jennifer | Taipei TAIWAN R.O.C. |
| Yasuda, Nao M.S., CCC-SLP | Fujisawacity Kanagawa 251-0045 |

=====================
Total Number:    20
=====================

Everyone on this page was paid $220.00.

Total of this page $4,400.00

ATTACHMENT 990 FROM 990    I. D. 62-6047678

GRANTS    Schedule A, Part III, line 3a

| Name | City, State Zip COUNTRY |
|---|---|
| Ardaman, Burcu M.S., CCC-SLP | Erenkoy Istanbul TURKEY |
| Carnavale, Susan C. M.S., CCC-SLP | Cicero, NY 13039-8523 |
| Colyar, Terry C. M.A., CCC-SLP | Glendale, AZ 85301 |
| Delaney, Laura R. M.S., CCC-SLP | Bedford Hills, NY 10507-2306 |
| Dohn, Karen L. M.A.CCC-SLP | Northville, MI 48167-2956 |
| Goodman, Elise S. M.A., CCC-SLP | North Easton, MA 02356-2738 |
| Halley, Laura M.S., CCC-SLP | Newark, DE 19711 |
| Jithavech, Ponjit M.A. | Bangkok 10400 THAILAND |
| LaFleur, Christine M.S., CCC-SLP | Somerville, MA 02144-1741 |
| Paddock, Vanessa Sheets M.A., CCC-S | Philadelphia, PA 19118 |
| Pietrzyk, Rose Marie M.S., CCC-SLP | Greenhills, OH 45218-1426 |
| Quin, Paul M.S., CCC-SLP | East Hartford, CT 06108-2175 |
| Robinson, Debra Hamamoto M.S., CCC- | Spokane, WA 99208-9536 |
| Ryan, Jo Ellen M.S., CCC-SLP | High Point, NC 27262-4529 |
| Selle, Helen K. M.S., CCC-SLP | Roslindale, MA 02131 |
| Swartz, Nancy M.S., CCC-SLP | New York, NY 10025 |
| Tabri, Dollen | Beirut LEBANON |
| Taylor, Amanda M.S., CCC-SLP | Midwest City, OK 73110-1404 |
| Turken, Tara J. M.S., CCC-SLP | Avon, CT 06001 |
| Wohlgemuth, Joseph J. M.A., CCC-SLP | Boonton, NJ 07005 |

```
=====================
Total Number:    20
=====================
```

Everyone on this page was paid $100.00
     Total of this page was $2,000.00

Form 990, Schedule A  Stuttering Foundation of America   I.D.#62-6047678
Part III, line 2d - Payment of Compensation

As shown on Part V of form 990, copied below, two officers of the organization
were paid compensation in excess of $1,000 during 2005.

**Part V-A**  **Current Officers, Directors, Trustees, and Key Employees** (List each person who was an officer, director, trustee, or key employee at any time during the year even if they were not compensated.) *(See the Instructions.)*

| (A) Name and address | (B) Title and average hours per week devoted to position | (C) Compensation (If not paid, enter -0-.) | (D) Contributions to employee benefit plans & deferred compensation plans | (E) Expense account and other allowances |
|---|---|---|---|---|
| Jane Fraser, 3100 Walnut Grove Rd. Suite 603, Memphis, TN 38111 | President 50 | 64,500. | 3,000. | 0.00 |
| Donald Edwards, 1912 Peabody Mempis, TN 38104 | Treasurer 20 | 17,850. | 3,536. | 0.00 |
| Joe R.G. Fulcher, 235 W. Monteano Sea Island, GA 31561 | Vice Pres 20 | 0.00 | 0.00 | 0.00 |
| Joseph Walker, Esq., 80 Monroe Suite 700, Memphis, TN 38103 | Secretary 2 | 0.00 | 0.00 | 0.00 |
| James Garrison, Memphis, TN | Director 0 | 0.00 | 0.00 | 0.00 |
| Donald Lineback, 110 Round Hill Rd. Greenville, SC 29609 | Director 0 | 0.00 | 0.00 | 0.00 |
| Katherine P. Klyce, 280 Livingston New Haven, CT 06511 | Director 0 | 0.00 | 0.00 | 0.00 |
| Jean F. Gruss, Sanibel, FL | Director 0 | 0.00 | 0.00 | 0.00 |
| George Cooley, 4650 Shady Grove Ln. Memphis, TN 38120 | Director 0 | 0.00 | 0.00 | 0.00 |
| Robert M. Kurtz, Jr. 400 Reed St. Clearfield, PA 16830 | Director 0 | 0.00 | 0.00 | 0.00 |

Additional Directors not listed on prior page:

| Name and Address | Title/hrs per week | Compensation | Contributions | Expenses |
|---|---|---|---|---|
| Alan Rabinowitz 185th St. & South Ave. Bronx, NY 10468 | Director 0 | 0.00 | 0.00 | 0.00 |
| Dennis T. Drayna, Ph.D. NIDCD-NIH Bethesda, Md. 20852 | Director 0 | 0.00 | 0.00 | 0.00 |

Additional information regarding compensation and benefits:

* No amounts reported for expenses.  Stuttering Foundation of America
   reimbursed Officers and Directors only for documented expenses, no part
   of which is reportable as taxable income to them.

**Also, $24,719. was paid to Anne Edwards, Donald Edwards' wife, for clerical
   services; and $3,000 was paid to her under the Foundation's Medical
   Reimbursement Plan, and $741.57 was contributed to her SIMPLE IRA plan.
   The $3,536. of benefit cost for Donald Edwards was $3,000 for medical
   reimbursement and $536. for contribution to his SIMPLE IRA plan.

The $3,000 for benefit cost for Jane Fraser was for medical reimbursement.  No
   amount was paid to any retirement account for her.

**Schedule B**
(Form 990, 990-EZ,
or 990-PF)

Department of the Treasury
Internal Revenue Service

# Schedule of Contributors

Supplementary Information for
line 1 of Form 990, 990-EZ, and 990-PF (see instructions)

OMB No. 1545-0047

## 2005

**Name of organization**

Stuttering Foundation of America

**Employer Identification number**

62-6047678

**Organization type** (check one):

**Filers of:**

Form 990 or 990-EZ

Form 990-PF

**Section:**

☒ 501(c)( 3 ) (enter number) organization

☐ 4947(a)(1) nonexempt charitable trust **not** treated as a private foundation

☐ 527 political organization

☐ 501(c)(3) exempt private foundation

☐ 4947(a)(1) nonexempt charitable trust treated as a private foundation

☐ 501(c)(3) taxable private foundation

Check if your organization is covered by the **General Rule** or a **Special Rule. (Note:** Only a section 501(c)(7), (8), or (10) organization can check boxes for both the General Rule and a Special Rule—see instructions.)

**General Rule—**

☒ For organizations filing Form 990, 990-EZ, or 990-PF that received, during the year, $5,000 or more (in money or property) from any one contributor. (Complete Parts I and II.)

**Special Rules—**

☐ For a section 501(c)(3) organization filing Form 990, or Form 990-EZ, that met the 33⅓ % support test under Regulations sections 1.509(a)-3/1.170A-9(e) and received from any one contributor, during the year, a contribution of the greater of $5,000 or 2% of the amount on line 1 of these forms. (Complete Parts I and II.)

☐ For a section 501(c)(7), (8), or (10) organization filing Form 990, or Form 990-EZ, that received from any one contributor, during the year, aggregate contributions or bequests of more than $1,000 for use *exclusively* for religious, charitable, scientific, literary, or educational purposes, or the prevention of cruelty to children or animals. (Complete Parts I, II, and III.)

☐ For a section 501(c)(7), (8), or (10) organization filing Form 990, or Form 990-EZ, that received from any one contributor, during the year, some contributions for use *exclusively* for religious, charitable, etc., purposes, but these contributions did not aggregate to more than $1,000. (If this box is checked, enter here the total contributions that were received during the year for an *exclusively* religious, charitable, etc., purpose. Do not complete any of the Parts unless the **General Rule** applies to this organization because it received nonexclusively religious, charitable, etc., contributions of $5,000 or more during the year.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ $ _____

**Caution:** *Organizations that are not covered by the General Rule and/or the Special Rules do not file Schedule B (Form 990, 990-EZ, or 990-PF), but they must check the box in the heading of their Form 990, Form 990-EZ, or on line 2 of their Form 990-PF, to certify that they do not meet the filing requirements of Schedule B (Form 990, 990-EZ, or 990-PF).*

**For Paperwork Reduction Act Notice, see the Instructions for Form 990, Form 990-EZ, and Form 990-PF.**

Schedule B (Form 990, 990-EZ, or 990-PF) (2005)

ISA
STF FED1950F.1

Schedule B (Form 990, 990-EZ, or 990-PF) (2005)

Page 1 of 2 of Part I

| Name of organization | Employer identification number |
|---|---|
| Stuttering Foundation of America | 62-6047678 |

**Part I** — Contributors (See Specific Instructions.)

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Aggregate contributions | (d) Type of contribution |
|---|---|---|---|
| 1 | Jane Fraser<br>3100 Walnut Grove Rd.<br>Memphis, Tn 38111 | $ 94,195.00 | Person ☒<br>Payroll ☐<br>Noncash ☒<br>(Complete Part II if there is a noncash contribution.) |
| 2 | Doublas Lucas<br>Tarrytown, NY 15785 | $ 10,042.90 | Person ☒<br>Payroll ☐<br>Noncash ☒<br>(Complete Part II if there is a noncash contribution.) |
| 3 | Genuine Parts Co.<br>2999 Circle 75 Parkway<br>Atlanta, GA 30339 | $ 6,000.00 | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II if there is a noncash contribution.) |
| 4 | The Annenberg Foundation<br>150 Radnor Chester Rd.<br>Ft. Davids, PA 08775 | $ 17,100.00 | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II if there is a noncash contribution.) |
| 5 | Fraser Familyh Foundation<br>Box 36<br>West Falmouth, MA 02574 | $ 10,000.00 | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II if there is a noncash contribution.) |
| 6 | Fraser Parker Foundation<br>4401 Northside Parkway NW, Ste290<br>Atlanta, GA 30339 | $ 5,000.00 | Person ☒<br>Payroll ☐<br>Noncash ☐<br>(Complete Part II if there is a noncash contribution.) |

STF FED1966F.2

Schedule B (Form 990, 990-EZ, or 990-PF) (2005)

Page 2 of 2 of Part I

**Name of organization**
Stuttering Foundation of America

**Employer identification number**
62-6047678

**Part I**   **Contributors** (See Specific Instructions.)

| (a) No. | (b) Name, address, and ZIP + 4 | (c) Aggregate contributions | (d) Type of contribution |
|---|---|---|---|
| 7 | Robert J. Simmons-Wong <br><br> Medina; WA 21836 | $ 5,000.00 | Person ☒ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II if there is a noncash contribution.) |
| | | $ | Person ☐ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II if there is a noncash contribution.) |
| | | $ | Person ☐ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II if there is a noncash contribution.) |
| | | $ | Person ☐ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II if there is a noncash contribution.) |
| | | $ | Person ☐ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II if there is a noncash contribution.) |
| | | $ | Person ☐ <br> Payroll ☐ <br> Noncash ☐ <br> (Complete Part II if there is a noncash contribution.) |

Schedule B (Form 990, 990-EZ, or 990-PF) (2005)

STF FED1956F.3

Schedule B (Form 990, 990-EZ, or 990-PF) (2005)

**Name of organization**
Stuttering Foundation of America

**Employer identification number**
62-6047678

**Part II**   Noncash Property (See Specific Instructions.)

| (a) No. from Part I | (b) Description of noncash property given | (c) FMV (or estimate) (see Instructions) | (d) Date received |
|---|---|---|---|
| 1 | 1000 Sh. Genuine Parts Co. | $ 44,560.00 | 02/07/05 |
| 1 | 1000 Sh. Genuine Parts Co. | $ 45,155.00 | 08/20/05 |
| 1 | 100 Sh. Genuine Parts Co. | $ 4,480.00 | 11/03/05 |
| 2 | 140 Sh. Boeing | $ 10,042.90 | 12/28/05 |
| __ | | $ | |
| __ | | $ | |

Schedule B (Form 990, 990-EZ, or 990-PF) (2005)

STF FED1950F.5



# **H**ealth
& MEDICAL RESEARCH
CHARITIES OF AMERICA

January 26, 2007

Mr. Mark Lambert
Acting Director
Office of CFC Operations
U.S. Office of Personnel Management
1900 E Street, NW, Room 5450
Washington DC, 20415

Dear Mr. Lambert:

Stuttering Foundation of America has asked us to forward to you its application
for participation in the Fall 2007 CFC with the request that your office review it as
a national independent charity ("unaffiliated").

Reluctantly, we were unable to certify this organization because it could not
comply with the new regulatory language regarding IRS recognition as a public
charity, specifically that "the organization is classified as a public charity under 26
U.S.C. 509(a)." This organization is a private operating foundation and therefore
does not fall under 25 U.S.C. 509(a), although gifts to it remain tax deductible.
We found the organization to be otherwise CFC eligible.

As private operating foundations were not excluded under the previous
regulations, we would like to recommend that the Director consider granting a
one year waiver to this and other organizations finding themselves in this
circumstance. We note that had this organization immediately applied to the IRS
for a status change when the final rules were published there would not have
been time for the IRS to have acted on its request prior to the deadline for
submission of the 2007 CFC application.

Respectfully,

Cindy Schneible
President

Cc: Jane Fraser, Stuttering Foundation of America

# 2007 CFC Application Completeness Review
## National/International Independent Organizations and Federation Members

**Charity List Name:** _STUTTERING  FOUNDATION  OF  AMERICA_

**Legal Name (if different):** _____

**2006 CFC Number:** _2539_          **National** ☑          **International** ☐

|  | Yes | No | N/A |
|---|---|---|---|
| **Correct Application:** | ☑ | ☐ | |
| (2007 National/International Independent Application) | | | |
| **Signature on Cover Page:** | ☑ | ☐ | |
| **All certifications checked:** | ☐ | ☑ | #2 |
| **Sanctions Compliance Certification Checked  (#11):** | ☑ | ☐ | |
| **Signature on Final Certification:** | ☑ | ☐ | |
| | | | |
| **Attachment A (*schedule* of services):** | ☑ | ☐ | |
| | | | |
| **IRS Determination Letter** | ☑ | ☐ | |
| **Final Ruling Letter:** | ☑ | ☐ | ☐ |
| **Advance Ruling Expires Before 12/31/07:** | ☐ | ☐ | ☑ |
| **If yes, expiration date:** | | | |
| **DBA Documentation:** | ☑ | ☐ | ☐ |
| | | | |
| **Audited Financial Statements** | ☑ | ☐ | |
| **Fiscal period ending on or after 6/30/05:** | ☑ | ☐ | |
| | | | |
| **IRS Form 990** | | | |
| **Matches Audit Fiscal Period:** | ☑ | ☐ | |
| **AFR (calculated by OPM Staff):** | | | 4.8% |
| **Matches AFR in Certification #6:** | ☑ | ☐ | _4.8_ % |
| **Board Information in Part V (page 4):** | ☑ | ☐ | |
| **Signed by an officer on page 6:** | ☑ | ☐ | |
| **Schedule A:** | ☑ | ☐ | |

_Mark W. Lambert_
**Reviewer Name**

_2/2/07_
**Date**

---

**Date of Email Requesting Missing Information:** _2-5-07_

**Deadline for Submission of Missing Information:** _2-12-07_

**Receipt of Missing Information:** _2-6-07 CR_

_Org. confirms in_
_attached letter the_
_it is a private fundation_
_not a public charity._

_CR_

## Rumbaugh, Curtis

| | |
|---|---|
| **From:** | Internet, CFC |
| **Sent:** | Monday, February 05, 2007 9:59 AM |
| **To:** | 'jfraser@stutteringhelp.org' |
| **Subject:** | 2007 CFC Application |
| **Importance:** | High |

The Office of CFC Operations has received your application to participate in the 2007 Combined Federal Campaign (CFC) as an independent organization. An initial completeness review has indicated that your application is incomplete. Specifically:

- You have not certified Statement #2 of the application.

Any information you may decide to submit to complete your application MUST be received in our office by the close of business (5PM EST) on **February 12, 2007**.

Because there may be other deficiencies in your application that were not evident during our initial completeness review we urge you to review your copy of the application carefully and ensure that it is complete by the date specified above. Beyond that date, incomplete applications will not be reviewed for participation in the CFC.

Because OPM can experience significant delays in mail service associated with irradiating mail, organizations submitting an appeal are encouraged to use "next day" or "overnight delivery" or fax the information to (202) 606-5056.

Sincerely,
Office of CFC Operations



# THE STUTTERING FOUNDATION®

3100 Walnut Grove Road, Suite 603 • P.O. Box 11749 • Memphis, TN 38111-0749 • Phone 901-452-7343 • Fax 901-452-3931

February 5, 2007

Mr. Mark Lambert
Acting Director
Office of CFC Operations
U.S. Office of personnel Management
1900 E Street, N.W., Room 5450
Washington, D.C. 20415

Jane Fraser
President
(202) 686-4494
info@stutteringhelp.org
www.stutteringhelp.org

Dear Mr. Lambert:

We received the enclosed email this morning noting that we had not "certified Statement #2 of the application."

In her letter of January 26, 2007, accompanying our application, Cindy Schneible of Health & Medical Charities of America (enclosed), states correctly that Stuttering Foundation of America is a private operating foundation under Section 4942(j)(3) as well as being a national charity. The reason we do not qualify as a "public charity" at this time is the size of our endowment.

As an operating foundation, we have qualified for inclusion in the Combined Federal Campaign for 15 years. With overhead and fundraising costs at less than 5%, we have reached thousands of CFC participants with help during these years.

Sincerely,


Jane Fraser
President



# COPILEVITZ & CANTER, LLC

ATTORNEYS AT LAW

SUITE 215
1900 L STREET, N.W.
WASHINGTON, D.C. 20036

(202) 861-0740 • FAX (202) 331-9841
E-MAIL copcandc@aol.com
INTERNET ADDRESS www.exempttaxlaw.com

MACKENZIE CANTER, III
E-MAIL maccanter@aol.com
MEMBER OF DC, VA, MD & MO BARS

February 12, 2007

KANSAS CITY OFFICE
423 W. EIGHTH STREET, SUITE 400
KANSAS CITY, MISSOURI 64105
(816) 472-9000 • FAX (816) 472-5000
E-MAIL cckc@aol.com

VIA FAX AND MAIL
Mr. Mark Lambert
Acting Director
Office of CFC Operations
Combined Federal Campaign
U.S. Office of Personnel Management
1900 E St., NW, Room 5450
Washington, DC 20415

Dear Mr. Lambert:

We have been retained by the Stuttering Foundation of America ("Foundation"), which is a private operating foundation, classified by the Internal Revenue Service as a tax-exempt charitable organization described in Internal Revenue Code ("IRC") sections 501(c)(3) and 4942(j)(3).

### Description of Foundation

The Stuttering Foundation of America is located at 3100 Walnut Grove Road, Suite 603, Memphis, TN 38111-0749.

In 1947, Malcolm Fraser, a young man in Memphis, Tennessee, decided to do what he could to help others who stutter. He knew about this disability from personal, often painful experience. He met with one of the foremost authorities of the day, Dr. Charles Van Riper, to discuss founding a nonprofit charitable organization to help those who stutter.

The organization Fraser founded became today's Stuttering Foundation of America. Its goal was to provide the best and most up-to-date information and help available for the prevention of stuttering in young children and the most effective treatment available for teenagers and adults.

Sixty years later, the Foundation continues to pursue these same goals, although the tools to accomplish them are more varied and widespread. As it did when Malcolm Fraser turned his dream into reality, the Foundation dedicates itself to the contemporary

# COPILEVITZ & CANTER, LLC

Mr. Mark Lambert
February 12, 2007
Page 2 of 4

concerns of those who stutter. The Foundation has helped hundreds of thousands of
persons and is recognized as the world's leading organization in providing help to those
who stutter.

The Foundation, through its agent, Health and Medical Research Charities of
America, applied on January 26, 2007 to the CFC for participation as an unaffiliated,
national independent charity.

Since 1992, the Foundation has participated in the CFC National List. If the
Foundation is denied inclusion in the 2007 CFC, it will be a severe blow financially to
the Foundation. More importantly, it will deny federal employees the opportunity to learn
that help is available.

## *Issue Presented*

This letter expresses the concern of the Foundation in regard to the following
requirement announced in CFC Memorandum 2006-21,[1] the effect of which is to exclude
private operating foundations from eligibility for the CFC.

I refer specifically to the following requirement: "Every CFC applicant must
demonstrate that it is recognized by the Internal Revenue Service (IRS) as tax-exempt
under 26 U.S.C. §501(c)(3) to which contributions are tax–deductible pursuant to 26
U.S.C. §170(c)(2) and that the organization is classified as a public charity under 26
U.S.C. §509(a). *Private foundations and units of government are not eligible to
participate in the CFC.*" (Emphasis in original.) See, page 4 of CFC Memorandum 2006-
21.

Private operating foundations ("POFs") actively engage in providing services that
further IRC §501(c)(3) purposes in the same manner as publicly supported IRC
§501(c)(3) organizations.

In contrast, non-operating private foundations ("PFs") normally restrict their
activities to making grants to other IRC §501(c)(3) organizations. For example, a POF
that is an art museum fulfills its charitable purposes by operating the museum directly to
educate the public. A PF, in contrast, would not operate a museum directly but, rather,
would make a grant to the museum or other IRC §501(c)(3) organization to enable it to
engage in charitable/educational activities.

---

[1] See, "Guidance on 2007 CFC National/International Applications Resulting From Changes to the CFC
Regulations" (effective November 20, 2006).

# COPILEVITZ & CANTER, LLC

Mr. Mark Lambert
February 12, 2007
Page 3 of 4

POFs, unlike PFs, are not subject to the IRC §4942 minimum distribution requirement which requires PFs to distribute generally 5% of the fair market value of their assets not used directly in charitable activities annually.

Gifts to POFs, unlike PFs, are subject to the more favorable tax deductions available for contributions to publicly supported charities. IRC §170(b)(1)(A) (vii) provides that gifts of cash or ordinary income property to POFs are deductible generally up to 50% of the donor's adjusted gross income ("AGI") in the year of the gift while gifts of long term capital gain property such as stock or real estate are deductible generally up to 30% of the donor's AGI. Unused portions of the charitable contribution which remain as a result of these percentage limitations may be carried forward and used in as many as five additional years.

In contrast, gifts of cash or ordinary income property to PFs are limited to 30% of AGI while gifts of long term capital gain property are limited to 20% of the donor's AGI. Additionally, donors who make contributions of long term capital gain property to POFs generally may take charitable contribution deductions equal to the fair market value of the gift while the value of the charitable contribution deduction for similar gifts to PFs generally will be limited to the donor's cost basis in the property.

We believe the exclusion of POFs from the 2007 CFC is directly in conflict with the clear mandate of the 1987 Hoyer-Hatfield Act, Pub. L. 100-202, Sect. 101(m) (title VI, Sec. 618), December 22, 1987, 101 Stat. 1329-390, 1329-423 ("Hoyer-Hatfield").

Not only does the exclusion of POFs from the CFC violate Hoyer-Hatfield for the reason explained below, this exclusion also, in our view, deviates from sound public policy. POFs provide charitable services in the same manner as do publicly supported charities to which they are substantially similar in material respects.

### Non-Compliance with Hoyer-Hatfield

Hoyer-Hatfield forbids OPM to use any federal funds in "in this or any fiscal year hereafter…in preparing, promulgating, or implementing any regulation related to the Combined Federal Campaign if such regulations are not in conformance with subsection (b)…" Part (2)(A) of subsection (b) states, in pertinent part: "…[an organization shall] be considered to have national eligibility if such agency or group….demonstrates that it provided services, benefits, or assistance or otherwise conducted program activities in (I) 15 or more states or one foreign country over the 3-year period immediately preceding the start of the year involved…"[2] The Foundation easily meets this requirement, as its 2007 application makes clear.

---

[2] As documented in Attachment A to its application, the Foundation has provided specialist training in the 3-year period to public school-based speech therapists from 46 states and 11 foreign countries.  With this

# COPILEVITZ & CANTER, LLC

Mr. Mark Lambert
February 12, 2007
Page 4 of 4

Hoyer-Hatfield also provides: "(a) None of the funds appropriated by this Act, or any other Act in this or any fiscal year hereafter, may be used in preparing, promulgating, or implementing any regulations relating to the Combined Federal Campaign if such regulations are not in conformance with subsection (b)... (B) Any requirements for eligibility to receive contributions through the Combined Federal Campaign shall, to the extent that such requirements relate to any subject matter other than one referred to in subparagraph (A), remain the same as the criteria in the 1984 regulations, except as otherwise provided in this section."

Private operating foundations were permitted by the 1984 regulations to participate in the CFC. This is entirely consistent with their IRC §501(c)(3) status and, as noted, their comparability to publicly supported charities.

In conclusion, we believe that the exclusion of private operating foundations from the 2007 CFC is in direct conflict with Hoyer-Hatfield. We respectfully submit this exclusion should be rescinded.

We believe that if the Foundation is denied inclusion on the 2007 CFC National List by reason of the change excluding private operating foundations, the Foundation has statutory grounds to challenge judicially such exclusion.

Yours truly,

MacKenzie Canter, III

c: Stuttering Foundation of America

specialty training, these speech therapists directly benefit stutterers in those states and countries. In addition, as noted on page 6 of Attachment A, during 2006 the Foundation also provided therapy treatment for children in the United Kingdom through specialists at the Michael Palin Centre in London.

## 2007 CFC APPLICATION REVIEW
## NATIONAL/INTERNATIONAL INDEPENDENT ORGANIZATIONS
## AND FEDERATION MEMBERS

*Applicant:*    **Stuttering Foundation of America Inc.**
*Legal Name (if different from above):*
2006 *CFC Number:*    2539    *EIN:* 62-6047678    *AFR:* 4.8%

REVIEWER RECOMMENDATION:    ☒ ADMIT    ☒ DENY
Comments: The organization did not certify Statement #2 of the application. It is a private foundation. A cover letter from its former Federation, Health & Medical Research Charities of America, recommends that OPM grant a one year waiver since the organization would not have been able to change its status from the date the final regulations were published until the application deadline.
Reviewer Name:    Curtis Rumbaugh    Date:  2/28/07

OCFCO DIRECTOR DECISION:    ☐ ADMIT    ☒ DENY
Comments:

Initials: *Mark L.*    Date:  2/27/06

Completeness Review: ☒ **No findings**
☐ **Missing information submitted**
☐ **Did not provide the following information requested by OCFCO (list):**

☐ **Advanced ruling period expires prior to 12/31/07**

**Mission:**  Support direct charitable activities concerning the prevention and improved treatment of stuttering.

**Attachment A: At least 15 States or 1 Foreign Country in 2004-2006:    Yes ☐    No ☐**

*Check the 15 States where a real service, benefit, assistance, or program activity was provided in 2004-2006. If applicant does not have at least 15 eligible states, describe the deficiency in services for the States listed in Attachment A (i.e. 'de minimis', 'phone service', 'pre-2004').*

| | | | | |
|---|---|---|---|---|
| ☐ *Alabama* | ____ | | ☒ *Iowa* | ____ |
| ☐ *Alaska* | ____ | | ☐ *Kansas* | ____ |
| ☒ *Arizona* | ____ | | ☒ *Kentucky* | ____ |
| ☐ *Arkansas* | ____ | | ☐ *Louisiana* | ____ |
| ☒ *California* | ____ | | ☐ *Maine* | ____ |
| ☐ *Colorado* | ____ | | ☐ *Maryland* | ____ |
| ☒ *Connecticut* | ____ | | ☒ *Massachusetts* | ____ |
| ☐ *Delaware* | ____ | | ☐ *Michigan* | ____ |
| ☐ *D.C* | ____ | | ☒ *Minnesota* | ____ |
| ☒ *Florida* | ____ | | ☐ *Mississippi* | ____ |
| ☐ *Georgia* | ____ | | ☒ *Missouri* | ____ |
| ☐ *Guam* | ____ | | ☐ *Montana* | ____ |
| ☐ *Hawaii* | ____ | | ☐ *Nebraska* | ____ |
| ☐ *Idaho* | ____ | | ☒ *Nevada* | ____ |
| ☒ *Illinois* | ____ | | ☐ *New Hampshire* | ____ |
| ☒ *Indiana* | ____ | | ☒ *New Jersey* | ____ |

| | |
|---|---|
| ☐ New Mexico ____ | ☐ South Dakota ____ |
| ☒ New York ____ | ☐ Tennessee ____ |
| ☐ North Carolina ____ | ☐ Texas ____ |
| ☐ North Dakota ____ | ☐ Utah ____ |
| ☒ Ohio ____ | ☐ Vermont ____ |
| ☐ Oklahoma ____ | ☐ Virgin Islands ____ |
| ☐ Oregon ____ | ☐ Virginia ____ |
| ☐ Pennsylvania ____ | ☒ Washington ____ |
| ☐ Puerto Rico ____ | ☐ West Virginia ____ |
| ☐ Rhode Island ____ | ☐ Wisconsin ____ |
| ☐ South Carolina ____ | ☐ Wyoming ____ |

**Attachment A Lists Human Health and Welfare Services In At Least One U.S. State in Calendar Year 2006:  Yes ☒   No ☐**

If applicable, list at least one foreign country where real services, benefits, assistance, or program activities were provided in 2004-2006:

**Attachment A Lists Human Health and Welfare Services in At Least One Foreign Country in Calendar Year 2006:         Yes ☒    No ☐**

If applicant seeks listing in the International Part, and does not have at least one foreign country with acceptable services, describe deficiency in services for the foreign country(ies) listed:

**IRS Determination Letter**

| | Yes | No | N/A |
|---|---|---|---|
| *Verified as a Public Charity on the IRS Master File:* | ☐ | ☒ | |
| *Group Exemption Letter:* | ☐ | ☐ | ☒ |
| *Bona-Fide Affiliate Documentation:* | ☐ | ☐ | ☒ |

**Audited Financial Statements**

| | Yes | No |
|---|---|---|
| *Name matches IRS determination letter or DBA:* | ☒ | ☐ |
| *GAAS/GAAP Audit and Financial Statements:* | ☒ | ☐ |
| *Fiscal Year ended June 30, 2005 or later:* | ☒ | ☐ |
| *Comments:* | | |

**IRS Form 990:**

*Method of Accounting:*         ☒ *Accrual*    ☐ *Cash*    ☐ *Other*

| | Yes | No |
|---|---|---|
| *Name and EIN match IRS determination letter or DBA:* | ☒ | ☐ |
| *Same fiscal period as audit:* | ☒ | ☐ |
| *Board is listed in Part V (page 4):* | ☒ | ☐ |
| *Majority of Board is not compensated:* | ☒ | ☐ |
| *Comments:* | | |



**UNITED STATES OFFICE OF PERSONNEL MANAGEMENT**
Washington, DC 20415

Office of the
General Counsel

March 16, 2007

Ms. Jane Fraser
President
Stuttering Foundation of America
3100 Walnut Grove Road, Suite 603
Memphis, TN 38111

VIA CERTIFIED MAIL

Dear Ms. Fraser:

We have reviewed your organization's application to participate in the 2007 Combined
Federal Campaign (CFC) as a National/International Independent Organization. We are
denying it because of the following deficiencies:

- You have not certified statements #2 of the application. Each participating CFC
  organization must certify that it is recognized by the Internal Revenue Service as
  tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible
  under 26 U.S.C. §170(c)(2) and that the organization is further classified as a
  public charity under 26 U.S.C. §509(a). The Internal Revenue Service has
  classified your organization as a private foundation under Section 501(c)(3) of
  the Internal Revenue Code.

If, after reviewing the application requirements for the CFC (appearing at 5 CFR Part 950), you
believe an error was made in reviewing your application, you may appeal this denial to Tricia
Hollis, Chief of Staff & Director of External Affairs of the U.S. Office of Personnel
Management. Your appeal need only respond to the deficiencies described above. Your appeal
must be in writing and must be received by OPM within 10 business days from the date you
receive this letter. Appeals should be sent to:

U.S. Office of Personnel Management
ATTN: Curtis Rumbaugh
Office of CFC Operations – Room 5450
1900 E Street, NW
Washington, DC 20415

Because OPM can experience significant delays in mail service associated with irradiating mail,
organizations submitting an appeal are encouraged to use "next day" or "overnight delivery."

The Office of CFC Operations will acknowledge receipt of your appeal. If you do not receive email confirmation that we received the appeal within one week of the date you sent the package, please contact our office at (202) 606-2564.

Thank you for your interest in the CFC.

Sincerely,

*Mark W. Lambert*

Mark W. Lambert
Acting Director
Office of CFC Operations

Cc:    Copilevitz & Canter, LLC

# COPILEVITZ & CANTER, LLC

ATTORNEYS AT LAW

SUITE 215
1900 L STREET, N.W.
WASHINGTON, D.C. 20036

(202) 861-0740 • FAX (202) 331-9841
E-MAIL copcandc@aol.com
INTERNET ADDRESS www.exempttaxlaw.com

MACKENZIE CANTER, III
E-MAIL maccanter@aol.com
MEMBER OF DC, VA, MD & MO BARS

March 22, 2007

KANSAS CITY OFFICE
423 W. EIGHTH STREET, SUITE 400
KANSAS CITY, MISSOURI 64105
(816) 472-9000 • FAX (816) 472-5000
E-MAIL cckc@aol.com

<u>VIA FEDERAL EXPRESS</u>
Ms. Tricia Hollis
Chief of Staff & Director of External Affairs
U.S. Office of Personnel Management
c/o Mr. Curtis Rumbaugh
Office of CFC Operations - Room 5450
1900 E St., NW
Washington, DC 20415

Dear Ms. Hollis:

We are attorneys for Stuttering Foundation of America, Inc. ("Foundation"). We are in receipt of the letter, dated March 16, 2007, from the United States Office of Personnel Management ("OPM") wherein Mr. Mark W. Lambert, Acting Director of CFC Operations, denied the application of the Foundation for inclusion in the 2007 Combined Federal Campaign as a National/International Independent Organization.

The stated reason for this denial is the following:

> You have not certified statements #2 of the application. Each participating CFC organization must certify that it is recognized by the Internal Revenue Service as tax exempt under 26 U.S.C 501(c)(3) to which contributions are deductible under 26 U.S.C. §170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. §509(a). The Internal revenue Service has classified your organization as a private foundation under Section 501(c)(3) of the Internal Revenue Code.

As attorneys for the Foundation and on its behalf, we hereby appeal this denial. In support of this appeal, we provide the following reasons why this decision is in error and should be reversed.

*Description of Foundation*

The Foundation is located at 3100 Walnut Grove Road, Suite 603, Memphis, TN 38111-0749. The Foundation is a private operating foundation, classified by the Internal Revenue Service as a tax-exempt charitable organization described in Internal Revenue Code ("IRC") sections 501(c)(3) and 4942(j)(3).

# COPILEVITZ & CANTER, LLC

Ms. Tricia Hollis
March 22, 2007
Page 2 of 4

In 1947, Malcolm Fraser, a young man in Memphis, Tennessee, decided to do what he could to help others who stutter. He knew about this disability from personal, often painful experience. He met with one of the foremost authorities of the day, Dr. Charles Van Riper, to discuss founding a nonprofit charitable organization to help those who stutter.

The organization Fraser founded became today's Stuttering Foundation of America. Its goal was to provide the best and most up-to-date information and help available for the prevention of stuttering in young children and the most effective treatment available for teenagers and adults.

Sixty years later, the Foundation continues to pursue these same goals, although the tools to accomplish them are more varied and widespread. As it did when Malcolm Fraser turned his dream into reality, the Foundation dedicates itself to the contemporary concerns of those who stutter. The Foundation has helped hundreds of thousands of persons and is recognized as the world's leading organization in providing help to those who stutter.

The Foundation, through its agent, Health and Medical Research Charities of America, applied on January 26, 2007 to the CFC for participation as an unaffiliated, national independent charity. This application was denied, as noted above.

Since 1992, the Foundation has participated in the CFC National List. If the Foundation is denied inclusion in the 2007 CFC, it will be a severe blow financially to the Foundation. More importantly, it will deny federal employees the opportunity to learn that help is available.

*Grounds for Appeal*

The Foundation appeals on the basis that the revised requirement, announced in CFC Memorandum 2006-21,[1] which excludes private operating foundations from eligibility for the CFC violates federal law and, hence, is null and void.

I refer specifically to the following requirement: "Every CFC applicant must demonstrate that it is recognized by the Internal Revenue Service (IRS) as tax-exempt under 26 U.S.C. §501(c)(3) to which contributions are tax-deductible pursuant to 26 U.S.C. §170(c)(2) and that the organization is classified as a public charity under 26 U.S.C. §509(a). *Private foundations and units of government are not eligible to participate in the CFC.*" (Emphasis in original.) See, page 4 of CFC Memorandum 2006-21.

Private operating foundations ("POFs"), such as the Foundation, actively engage in providing services that further IRC §501(c)(3) purposes in the same manner as publicly

---

[1] See, "Guidance on 2007 CFC National/International Applications Resulting From Changes to the CFC Regulations" (effective November 20, 2006).

# COPILEVITZ & CANTER, LLC

Ms. Tricia Hollis
March 22, 2007
Page 3 of 4

supported IRC §501(c)(3) organizations. While POFs are not classified under IRC §509(a), they provide charitable services in the same way as do the §509(a) organization.

In contrast, non-operating private foundations ("PFs") normally restrict their activities to making grants to other IRC §501(c)(3) organizations. For example, a POF that is an art museum fulfills its charitable purposes by operating the museum directly to educate the public. A PF, in contrast, would not operate a museum directly but, rather, would make a grant to the museum or other IRC §501(c)(3) organization to enable it to engage in charitable/educational activities.

POFs, unlike PFs, are not subject to the IRC §4942 minimum distribution requirement which requires PFs to distribute generally 5% of the fair market value of their assets not used directly in charitable activities annually.

Gifts to POFs, unlike PFs, are subject to the more favorable tax deductions available for contributions to publicly supported charities. IRC §170(b)(1)(A) (vii) provides that gifts of cash or ordinary income property to POFs are deductible generally up to 50% of the donor's adjusted gross income ("AGI") in the year of the gift while gifts of long term capital gain property such as stock or real estate are deductible generally up to 30% of the donor's AGI. Unused portions of the charitable contribution which remain as a result of these percentage limitations may be carried forward and used in as many as five additional years.

In contrast, gifts of cash or ordinary income property to PFs are limited to 30% of AGI while gifts of long term capital gain property are limited to 20% of the donor's AGI. Additionally, donors who make contributions of long term capital gain property to POFs generally may take charitable contribution deductions equal to the fair market value of the gift while the value of the charitable contribution deduction for similar gifts to PFs generally will be limited to the donor's cost basis in the property.

### Non-Compliance with Hoyer-Hatfield

We believe the exclusion of POFs from the 2007 CFC is directly in conflict with the clear mandate of the 1987 Hoyer-Hatfield Act, Pub. L. 100-202, Sect. 101(m) (title VI, Sec. 618), December 22, 1987, 101 Stat. 1329-390, 1329-423 ("Hoyer-Hatfield").

Not only does the exclusion of POFs from the CFC violate Hoyer-Hatfield for the reason explained below, this exclusion also, in our view, deviates from sound public policy. POFs provide charitable services in the same manner as do publicly supported charities to which they are substantially similar in material respects.

Hoyer-Hatfield forbids OPM to use any federal funds in "in this or any fiscal year hereafter...in preparing, promulgating, or implementing any regulation related to the Combined Federal Campaign if such regulations are not in conformance with subsection (b)..." Part (2)(A)

# COPILEVITZ & CANTER, LLC

Ms. Tricia Hollis
March 22, 2007
Page 4 of 4

of subsection (b) states, in pertinent part: "…[an organization shall] be considered to have national eligibility if such agency or group….demonstrates that it provided services, benefits, or assistance or otherwise conducted program activities in (I) 15 or more states or one foreign country over the 3-year period immediately preceding the start of the year involved…"[2] The Foundation easily meets this requirement, as its 2007 application makes clear.

Hoyer-Hatfield also provides: "(a) None of the funds appropriated by this Act, or any other Act in this or any fiscal year hereafter, may be used in preparing, promulgating, or implementing any regulations relating to the Combined Federal Campaign if such regulations are not in conformance with subsection (b)… (B) Any requirements for eligibility to receive contributions through the Combined Federal Campaign shall, to the extent that such requirements relate to any subject matter other than one referred to in subparagraph (A), remain the same as the criteria in the 1984 regulations, except as otherwise provided in this section."

Private operating foundations were permitted by the 1984 regulations to participate in the CFC. This is entirely consistent with their IRC §501(c)(3) status and, as noted, their comparability to publicly supported charities.

In conclusion, we believe that the exclusion of private operating foundations from the 2007 CFC is in direct conflict with Hoyer-Hatfield. We respectfully submit that the denial of the Foundation's application accordingly is in error and should be reversed.

Failure to reverse this erroneous decision would be arbitrary, unreasonable and capricious within the meaning of the Administrative Procedures Act.

Yours very truly,

MacKenzie Canter, III

c: Stuttering Foundation of America

---

[2] As documented in Attachment A to its application, the Foundation has provided specialist training in the 3-year period to public school-based speech therapists from 46 states and 11 foreign countries. With this specialty training, these speech therapists directly benefit stutterers in those states and countries. In addition, as noted on page 6 of Attachment A, during 2006 the Foundation also provided therapy treatment for children in the United Kingdom through specialists at the Michael Palin Centre in London.

# 2007 CFC NATIONAL/INTERNATIONAL
# APPEAL REVIEW

## *Applicant: Stuttering Foundatin of America*
☒ **Independent**      ☐ **Federation:**

**Reason(s) for Denial:**
1. Did not certify to statement #2 of the application that the organization is an IRS recognized 501(c)(3) tax exempt public charity. In addition, the IRS has classified the organization as a private foundation.

**Issue(s) Raised by Applicant on Appeal:**
Via its attorneys, the organization states that revised requirement announced in CFC Memo 26-21, which excludes private foundations, violates federal law and is null and void. Private operating foundations (POF) actively engage in providing services in the same manner as publicly supported organizations. Although not classified under IRC 509(a), they provide charitable services in the same way as 509(a) organizations. POFs, unlike non-operating PFs, are not subject to IRS minimum distribution requirements and are subject to more favorable tax deductions.

Believe that the exclusion of POFs is in conflict with Hoyer-Hatfield Act, which says an organization shall be considered to have national eligibility if such a group demonstrates that it provided services, benefits, or assistance or otherwise conducted program activities in 15 or more states or one foreign country over the 3-year period immediately preceding the start of the year involved. The Foundation meets this criteria.

Hoyer-Hatfield also provides any requirements for eligibility shall remain the same as criteria in the 1984 regulations.

POFs were permitted by the 1984 regulations to participate in the CFC. This is consistent with the Foundation's IRC 501(c)(3) status and, as noted, their comparability to publicly supported charities.

Failure to reverse this erroneous decision would be arbitrary, unreasonable and capricious within the meaning of the Administrative Procedures Act.

**OCFCO Analysis and Recommendation:**    ☐ ADMIT    ☑ **DENY**
  **Comments:** *Concur m/below*
  **Reviewer:** _____ **Date:** 6-19-07

**OCFCO Director Recommendation:** ☐ ADMIT    ☒ **DENY**
  **Signature:** *Mark W. Lambert* **Date:** 6-15-07

Comments:  There are several places in the 1984 regulations, accompanying Senate Appropriations Committee Report, and legislative history accompanying HR 100-202 that support our position that the 1984 regulations were meant to exclude private foundations.  The Senate Appropriation Committee adopted a report after the close of the notice and comment period for the 1984 proposed rule that included a comment "The Committee envisions that Federal workers will be allowed to write in any 501(c)(3) charitable organization that is not a private foundation..."  49 FR 32735, 32739.  In addition, In 1984, 5 CFR § 950.403(a) defined a "Type of Agency.  Only nonprofit, tax-exempt, charitable organizations supported by voluntary contributions from the general public and providing direct and substantial health and welfare services through their national organization, affiliates, or representatives are eligible for approval.  All such services must be consistent with the policies of the United States Government."  Recommend Deny.

| Appeals Panel Recommendations | | | |
|---|---|---|---|
| | ADMIT | DENY | Initials/Date |
| Ron Flom | ☐ | ☒ | JW  6/21/07 |
| Mark Lambert | ☐ | ☒ | 6/21/07 |
| Susan Whitman | ☐ | ☑ | SW 6/21/07 |
| | ADMIT | DENY | |
| Chief of Staff Decision: | ☐ | ☑ | Yh 6/25/07 |



# UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
### Washington, DC 20415

Office of the Director

JUN 2 8 2007

Ms. Jane Fraser
President
Stuttering Foundation of America
3100 Walnut Grove Road, Suite 603
Memphis, TN 38111

Dear Ms. Fraser:

Pursuant to the authority delegated by the Director of the U.S. Office of Personnel Management (OPM), Linda M. Springer, I have completed a review of the appeal of the Stuttering Foundation of America to participate in the 2007 Combined Federal Campaign (CFC). I am sustaining the decision to deny the application.

Eligibility criteria regulations for CFC national organizations are set forth at 5 CFR §950.202 and 203. These criteria require that each applicant be recognized by the Internal Revenue Service (IRS) as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. §170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. §509(a). The Stuttering Foundation of America currently is classified under 26 U.S.C. 501(c)(3) as a private foundation and, therefore, does not meet the criteria.

This decision is final for administrative purposes for the 2007 CFC. It does not, however, preclude your organization from applying to participate in future campaigns, at either the national or local levels.

Sincerely,

*Tricia Hollis*

Tricia Hollis
Chief of Staff and
  Director of External Affairs

Cc: MacKenzie Canter, III, Attorney, Copiletz & Canter, LLC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Stuttering Foundation of America )
)
)
)
Plaintiff, )
)
v. ) Case 1:07-cv-01249
)
Linda M. Springer, in her capacity as )
Director of the United States Office )
of Personal Management, )
)
Defendant. )

DECLARATION OF MARK W. LAMBERT

I, Mark W. Lambert, declare as follows:

1.      I serve as Acting Director, Office of CFC Operations, United States Office of Personnel Management (OPM). My office is located in the Theodore Roosevelt Federal Building, 1900 E Street, N.W., Washington, D.C.

2.      In my capacity as Acting Director, I am responsible for policy direction and oversight of the Combined Federal Campaign (CFC) and the day-to-day management of the Office of CFC Operations (OCFCO). I am also responsible for making the initial determination of eligibility for all national and international applicant organizations for participation in the CFC, as well as a recommendation to the Appeal Review Panel, which advises the Chief of Staff on whether to sustain the initial eligibility determinations for all local, national and international organizations that file appeals with OPM.

3.      The number of national and international organizations that applied for participation in the 2007 CFC campaign is 2,165. Of these, 1,708 applied through Federations and 457 applied as independent organizations.

4.      The CFC is comprised of approximately 264 local campaigns, each of which is responsible for producing the Charity List of CFC charitable organizations that have been accepted for participation in that local campaign in a given year. The Charity List is ultimately distributed to Federal employees at the workplace. Each Charity List is comprised of three parts. The first part lists national/international organizations and the second part lists international organizations. The first two parts, being national and/or international in scope, are the same for all local campaigns. The third part of the Charity List, which is unique to each local campaign, lists local organizations that participate in that local campaign.

5.     The 2007 CFC campaign season begins on September 1, 2007 and runs through December 15, 2007. Each campaign's Local Federal Coordinating Committee, the group of Federal executives which oversees local campaign administration, determines the actual local solicitation period, which must be within the September 1 through December 15 2007 time period.

6.     OPM annually distributes, via a CFC Memorandum delivered by email, the national and national/international parts of the Charity List. OPM also makes this information available via its website at www.opm.gov/cfc. Each local campaign supplements the first two parts of the Charity List with its local part.

7.     The local campaigns then send out the complete Charity List to be printed. Not all campaigns print at the same time, as the local appeals process for some local campaigns takes longer than others.

8.     OPM distributed the 2007 national/international and international parts of the Charity List to local campaigns via CFC Memorandum 2007-4 on June 29, 2007, but has not posted it on the OPM CFC website yet.

9.     Once printed, any change to the Charity List may only be accommodated by reprinting the Charity List, or by amending the Charity List by way of a supplement or insert page. At present, the overseas campaign is prepared to send its Charity List to print within the next week. The local campaigns are in various stages of preparedness, and will generally be ready to send their Charity Lists to print by the end of July or early August

10.     The number of copies of the Charity List printed by each of the 264 local campaigns, including the campaign that takes place overseas, and the associated cost of printing, varies with the size of the campaign and time available before the campaign begins. For 2005, which is the most recent campaign for which we have detailed information, an estimated 3.9 million Federal employees were solicited by local campaigns, including approximately 318,000 in the overseas campaign. In 2006, 5.7% of all CFC funds were pledged in the Overseas CFC ($15,501,237).

11.     At a telephonic status conference held on Monday, July 16, 2007, OPM agreed to halt the publishing of the Charity Lists for a two-week period due to the instant litigation, and forthwith instructed all local campaigns to cease printing of the Charity Lists until further notice. Any further delay in printing the Charity Lists will hamper the CFC's ability to meet real programmatic deadlines and ultimately the Charity List printing deadlines for distribution to Federal employees.

12.     The CFC program, known for its rigorous eligibility and public accountability standards, assures potential Federal donors that any contribution made through the CFC will be made only to financially responsible and accountable organizations that provide real services, and that the money they donate will be used to further the purposes for which it was intended.

13.    It is OPM's view that public charities receive a level of public scrutiny and oversight that is not present in the case of private foundations, as a result of the inherent interest and demand for accountability on the part of the public that supports public charities. The fact of having donated causes the public to be a stakeholder and generates interest in the workings of a public charity, including how it spends the funds it receives. Typically, the reason an organization receives broad based contributions from the public is that the public is interested in what the organization is doing.

14.    For a number of years, it was the belief of the OCFCO that the program originally intended for public charities and not private foundations to be participants in the campaign. The OCFCO viewed the 1984 regulation to mean that private foundations were not the type of organization originally intended to be included. During these years, OPM had not focused on the distinction between public charities and private foundation as a policy priority. Moreover, as the regulation had not been uniformly enforced pursuant to that interpretation for a number of years, the OCFCO believed a clarifying regulation would be necessary to give private foundations notice and to establish a new, uniform interpretation.

15.    In response to the GAO Report GAO-06-755T (May 25, 2006) criticizing OPM for failing to ensure that all charities admitted to the CFC were in fact 26 U.S.C. § 501(c)(3) organizations, OPM instituted a procedure for verifying an organization's current status with the Internal Revenue Service. Through this procedure, OPM was additionally able to readily determine whether an organization was a public charity or private foundation.

16.    At the same time that the GAO Report was released, OCFCO was in the process of drafting proposed rule changes, the focus of which were to modernize and streamline the CFC. OPM's intent was to bring the CFC into the modern technological era, including accessing the CFC via the internet, eliminating the paper brochure, and allowing local giving across localities. Rather than relying solely on hard copy certifications and potentially outdated paperwork submitted by the applicant to demonstrate tax exempt 26 U.S.C. § 501(c)(3) status, modern technology could more accurately allow OPM to analyze the current tax status of an organization. OPM believed that its intended regulatory change in preparation for electronic giving capabilities and future technological changes provided an appropriate opportunity to introduce the clarification regarding exclusion of private foundations that the OCFCO had sought to implement.

17.    Prior to promulgating the proposed rule, OPM analyzed the 1984 regulation to which it is bound, and concluded that not only does the 1984 regulation support the OCFCO position, but that the policy rationale behind excluding private foundations enhances the integrity of the program because it ensures that the charities included will have a high degree of public accountability and oversight.

18.    OPM believes that IRS statute, regulation and guidance support its interpretation of the 1984 regulations to allow participation only by public charities. Indeed, the IRS (http://www.irs.gov/charities/charitable/article/0,,id=96114,00.html) states, "Every organization that qualifies for tax exemption as an organization described in section 501(c)(3) is a private foundation unless it falls into one of the categories specifically excluded from the definition of

that term (referred to in section 509(a)). In addition, certain nonexempt charitable trusts are also treated as private foundations. *Organizations that fall into the excluded categories [public charities] are generally those that either have broad public support or actively function in a supporting relationship to such organizations.* Organizations that test for public safety also are excluded. (emphasis added). In fact, § 950.405 of the 1984 regulations expressly references the tax status of the organization as relevant by its use of the heading "Corporate and Tax Status." Accordingly, OPM determined that the tax status of the organization, i.e., whether it is public charity or private foundation, is properly accounted for in the 1984 regulations and that these regulations actually did limit participation to public charities and the regulation should have been enforced that way.

19.     The stability and credibility of the eligibility process serves to safeguard the other participating charitable organizations and inherently protects the long term integrity of the program. Participation in the program is frequently touted by organizations as evidence of their responsibility and good status in the charitable community.

20.     Last year, the CFC generated approximately $271.6 million through approximately 270 local campaigns across the country and overseas.

21.     The application to participate in the CFC must be completed annually, regardless of whether the organization is applying as a national organization like the plaintiff, or as a local organization. Participation in a prior year does not guarantee participation in any other year. The application contains a series of certifications and requests for evidence to support certifications to be completed by a certifying official of the organization.

22.     I made the initial eligibility determination to deny Stuttering Foundation of America participation in the 2007 campaign. By letter dated March 22, 2007, the Stuttering Foundation, through its counsel, filed an appeal of the initial eligibility determination to OPM.

23.     I recommended to the Appeal Review Panel, which agreed and recommended to the Chief of Staff of OPM, that this appeal be sustained for the reasons set forth in the initial denial. The Chief of Staff reviewed the appeal and reasons for the denial, and made the final decision to affirm the denial.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Dated at Washington, D.C., this 17th day of ___July___, 2007.

*Mark W. Lambert*
Mark W. Lambert
Acting Director
Office of CFC Operations

37003

# Proposed Rules

Federal Register

Vol. 71, No. 125

Thursday, June 29, 2006

This section of the FEDERAL REGISTER contains notices to the public of the proposed issuance of rules and regulations. The purpose of these notices is to give interested persons an opportunity to participate in the rule making prior to the adoption of the final rules.

---

## OFFICE OF PERSONNEL MANAGEMENT

### 5 CFR Part 950

**RIN 3206–AL05**

### Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to Private Voluntary Organizations—Eligibility and Public Accountability Standards

**AGENCY:** Office of Personnel Management.

**ACTION:** Proposed rule.

**SUMMARY:** The Office of Personnel Management (OPM) is issuing proposed changes in eligibility requirements and public accountability standards, and to several other parts of the regulations, for the Combined Federal Campaign (CFC). These proposed changes are intended to streamline the significant eligibility requirements and public accountability standards and other administrative areas to reduce the burden on applicant charitable organizations seeking to qualify for the CFC, simplify the administrative process of determining whether charitable organizations are eligible to participate in the CFC and facilitate modernization of the CFC program.

**DATES:** We will consider comments received by August 14, 2006.

**ADDRESSES:** You may submit comments, identified by RIN number, by any of the following methods:

• Federal eRulemaking Portal: *http://www.regulations.gov.* Follow the instructions for submitting comments.

• E-mail: *cfc@opm.gov.* Include "RIN 3206–AL05" in the subject line of the message.

• Fax: (202) 606–0902.

• Mail: Mara T. Patermaster, Director, Office of CFC Operations, U.S. Office of Personnel Management, Room 5450, 1900 E Street, NW., Washington, DC 20415.

• Hand Delivery/Courier: Director, Office of CFC Operations, U.S. Office of Personnel Management, Room 5450,

1900 E Street, NW., Washington, DC 20415.

**FOR FURTHER INFORMATION CONTACT:** Mark W. Lambert, Senior Compliance Officer for the Office of CFC Operations, by telephone on (202) 606–2564, by FAX on (202) 606–0902, or by e-mail at *cfc@opm.gov.*

**SUPPLEMENTARY INFORMATION:** The CFC regulations were last revised more than 10 years ago. OPM is issuing proposed changes to its regulations governing the solicitation of Federal civilian and uniformed services personnel at the workplace for contributions to private non-profit organizations through the CFC under the authority of Executive Order 12353 (March 23, 1982). OPM has plenary authority under 5 CFR part 950 to administer the CFC in compliance with legal standards. Public Law (Pub. L.) 100–202 § 101(m), requires OPM to maintain certain eligibility criteria for CFC participation by organizations and federations as well as public accountability standards similar to those that were in effect between 1984 and 1987. These CFC criteria were designed to offer donors assurances of the integrity of the program's participating charitable organizations. However, assuring compliance has created a burdensome application and review process for charitable organizations, locally within each campaign for Local Federal Coordinating Committees (LFCC) and within OPM. At the time when the CFC was established in the 1960s, OPM filled a regulatory void by setting standards for evaluating the fiscal accountability and governance of charitable organizations. Today, this role is better served by the industry, its oversight organizations and the Internal Revenue Service Division of Tax Exempt and Government Entities. The changes proposed will put more responsibility on the donor to perform research on charitable organizations and to utilize industry oversight groups to ensure that their donations are being used effectively and efficiently by these organizations.

There are currently 16 core standards of eligibility and public accountability and 3 core administrative requirements that a charitable organization must satisfy in order to participate in the CFC. These appear in the form of certifications in the annual application. Many require documentation, such as audited financial statements and an

annual report to demonstrate compliance. The proposed changes to these regulations remove eight of the standards, including the requirement that participating organizations' administrative and fundraising expenses not exceed 25 percent of its total revenue. As a service to donors, OPM will still require the applicant to calculate the administrative and fundraising rate (AFR) and report it to donors. Some of the remaining standards will be modified to eliminate documented proof of compliance. OPM will retain the right to request documented evidence of compliance with CFC regulations from any applicant or participating organization. Failure to provide evidence of compliance that is satisfactory to OPM may result in a denial to participate in the CFC or removal from the CFC. OPM will retain eight of the standards and three core administrative requirements for applicant organizations. The standards and administrative requirements that will be retained are as follows:

1. 5 CFR 950.202(a)—National List Eligibility Requirements—Certify that it provides or conducts real services, benefits, assistance, or program activities, in 15 or more different states or a foreign country over the 3 year period immediately preceding the start of the year involved. The regulations will be clarified to indicate that a detailed schedule is required as part of the application that describes activities in each state or foreign country in each year.

2. 5 CFR 950.202(b)—National List Eligibility Requirements—Certify that it is recognized by the Internal Revenue Service as tax-exempt under 26 U.S.C. 501(c)(3) and to which contributions are tax-deductible pursuant to 26 U.S.C. 170(c)(2). OPM proposes to clarify that these organizations must be public charities, not private foundations.

3. 5 CFR 950.203(a)(1)—Public Accountability Standards—Certify that the organization is a human health and welfare organization providing services, benefits, or assistance to, or conducting activities affecting, human health and welfare. No changes are proposed to this standard.

4. 5 CFR 950.203(a)(2)—Public Accountability Standards—Certify that it accounts for its funds in accordance with generally accepted accounting

principles (GAAP) and that an audit of the organization's fiscal operations is completed annually by an independent certified public accountant in accordance with generally accepted auditing standards (GAAS). This standard will be revised to apply only to organizations which report $250,000 or more in revenue on the organization's IRS Form 990. If an organization indicates revenue of less than $250,000 on its IRS Form 990, then it will be required to certify that it has controls in place to ensure that funds are properly accounted for and that it can provide accurate timely financial information to interested parties. OPM proposes to raise the revenue threshold amount to reduce unnecessary administrative burdens and expenses to otherwise financially accountable organizations with smaller budgets. Such applicants will no longer be required to submit a copy of a recent audit with their application. However, OPM retains the right to request a copy of the audit and to sanction or penalize the organization if it does not timely produce an acceptable copy.

5. 5 CFR 950.203(a)(3)—Public Accountability Standards—Provide a completed copy of the organization's IRS Form 990, including signature, with the application regardless of whether or not the IRS requires the organization to file this form. OPM proposes to revise this standard to make it a certification. OPM will continue to require a copy of the completed IRS Form 990 together with supplemental statements and Schedule A to be included with the application. If the organization does not file an IRS Form 990, OPM will nonetheless require submission of a pro forma IRS Form 990, page 1 only. OPM will no longer routinely check to determine whether the IRS Form 990 revenues and expenses reported reconcile with the audited financial statements. This reconciliation is required to be performed on the IRS Form 990 in Parts IV–A and IV–B by the organization. OPM strongly encourages Federal donors to utilize the variety of reports and information on participating CFC charities which is publicly available, through the Internet and other sources, to satisfy themselves regarding the financial accountability of any given organization.

6. 5 CFR 950.203(a)(4)—Public Accountability Standards—Provide a computation of the organization's percentage of total support and revenue spent on administrative and fundraising. This percentage shall be computed from information on the IRS Form 990, submitted pursuant to § 950.203(a)(3), by adding the amount

spent on "management and general" (line 14) to "fundraising" (line 15) and then dividing the sum by "total revenue" (line 12). No changes are proposed to this standard, but references to specific lines of the IRS Form 990 will be removed in anticipation of future changes to the Form.

7. 5 CFR 950.203(a)(5)—Public Accountability Standards—Certify that the organization is directed by an active and responsible governing body whose members have no material conflict of interest and a majority of which serve without compensation. No changes are proposed to this standard.

8. 5 CFR 950.203(a)(8)—Public Accountability Standards—Certify that contributions are effectively used for the announced purposes of the charitable organization. No changes are proposed to this standard.

9. 5 CFR 950.203(a)(12)—Public Accountability Standards—Provide a statement that the certifying official is authorized by the organization to certify and affirm all statements required for inclusion on the national list. No changes are proposed to this requirement.

10. 5 CFR 950.203(a)(13)—Public Accountability Standards—Provide a statement in 25 words or less describing the program activities of the charitable organization. This will be removed as a standard, but it is retained as an administrative requirement in 5 CFR 950.401(g)(2) and will be required from each charitable organization completing the CFC application.

11. 5 CFR 950.605—Sanctions Compliance Certification—Each federation, federation member and unaffiliated organization applying for participation in the CFC must, as a condition of participation, complete a certification that it is in compliance with all statutes, Executive orders, and regulations restricting or prohibiting U.S. persons from engaging in transactions and dealings with countries, entities or individuals subject to economic sanctions administered by the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC). No changes are proposed to this certification.

The eight standards that will be removed are:

1. 5 CFR 950.202(c)—National List Eligibility Requirements—Certify that the organization has no expenses connected with lobbying and attempts to influence voting or legislation at the local, State, or Federal level or alternatively, that those expenses would classify the organization as a tax-exempt organization under 26 U.S.C. 501(h).

OPM proposes to remove this standard because it is already a requirement for charitable organizations to qualify as a tax-exempt entity under section 501(c)(3) of the Internal Revenue Code and to maintain that status with the IRS. In addition, some applicant organizations have misinterpreted the standard to mean that no lobbying is permitted, when, in fact, lobbying is permissible if consistent with Internal Revenue Code requirements.

2. 5 CFR 950.203(a)(4)(i)—Public Accountability Standards—If an organization's administrative and fundraising expenses exceed 25 percent of its total support and revenue, it must certify that its actual expenses for administration and fundraising are reasonable under all the circumstances presented. It must provide an explanation with its application and also include a formal plan to reduce these expenses below 25 percent. OPM proposes to remove the 25 percent threshold for administrative and fundraising rates because Federal employees participating in the CFC should be knowledgeable donors and may consult a variety of publicly available reports and publications, many on the Internet, to learn about the administrative and fund raising status of charities they are considering for their donations. Federal donors also can and should review the annual CFC brochure itself which will continue to report the administrative and fundraising rate of all participating charities to determine whether an organization's administrative and fundraising rate is acceptable to that donor. OPM encourages Federal donors to be as knowledgeable as possible about the organizations which they support.

3. 5 CFR 950.203(a)(4)(ii)—Public Accountability Standards—The Director may reject any application from an organization with fundraising and administrative expenses in excess of 25 percent of total support and revenue, unless the organization demonstrates to the satisfaction of the Director that its actual expenses for those purposes and its plan to reduce them are reasonable under the circumstances. OPM believes that Federal employees should have an opportunity to donate to a wide range of charitable organizations and should not be limited in their choice to those charities with particular administrative and fundraising rates deemed acceptable to OPM, so long as the rate information is available to them to make an informed decision. In addition, this requirement conforms to the proposed removal of 5 CFR 950.203(a)(4)(i). As in other proposed regulatory changes, OPM encourages Federal donors to be

knowledgeable about those charities to which they choose to donate.

4. 5 CFR 950.203(a)(6)—Public Accountability Standards—Certify that the organization's fundraising practices prohibit the sale or lease of its CFC contributor lists. This standard applied only when a donor authorized the release of his or her contact information to the organization. Although this standard is being removed, the requirement for a donor to authorize his or her contact information will be retained. If a donor does not authorize this release, then his or her contact information will be kept confidential by the Principal Combined Fund Organization (PCFO) as proprietary information as required by 5 CFR 950.601(c). OPM believes that once a donor authorizes the release of his or her contact information, the use of this information, including whether it may be sold or be subject to other commercial activity, is an issue between the donor and the charitable organization and not one that OPM can track or enforce. OPM looks forward to comments on this proposed change to consider steps OPM might take to increase potential donor awareness of the possible implications of releasing donor information to a charity.

5. 5 CFR 950.203(a)(7)—Public Accountability Standards—Certify that its publicity and promotional activities are based upon its actual program and operations, are truthful and non-deceptive, and make no exaggerated or misleading claims. OPM believes this standard is redundant and is adequately safeguarded by enforcement of other public accountability standards.

6. 5 CFR 950.203(a)(9)—Public Accountability Standards—Certify under which governmental entity the charitable organization is chartered, incorporated or organized (congressionally chartered or the state in which it is registered). OPM believes this information is not required to enforce and monitor public accountability, particularly in view of appropriate presentation of IRS employer identification numbers.

7. 5 CFR 950.203(a)(10)—Public Accountability Standards—Certify that the organization has received no more than 80 percent of its total support and revenues from government sources as computed by dividing line 1c by line 12 from the IRS Form 990 submitted pursuant to § 950.203(a)(3). The IRS already requires charitable organizations to meet a public support test in order to obtain and maintain its 501(c)(3) tax-exempt status. Therefore, this standard is duplicative of 5 CFR 950.202(b).

8. 5 CFR 950.203(a)(11)—Public Accountability Standards—Certify that the organization prepares and makes available to the public upon request an annual report that includes a full description of the organization's activities and supporting services and identifies its directors and chief administrative personnel. The significant information sought in the annual report is already certified to or obtained from application of other eligibility requirements and public accountability standards contained in 5 CFR 950.202(a) and 5 CFR 950.203(a)(3). In addition, OPM will encourage donors to obtain an annual report directly from the charity, if the donor would like to seek further information on the charity.

Corresponding changes will be made to the local list eligibility requirements and national and local federation standards contained in 5 CFR 950.204, 950.301, and 950.303. However, national, international and local federations will still be required to submit evidence of compliance with the audit, financial, governance and annual report requirements. These requirements will be clarified in 5 CFR 950.301(e)(2) and 950.303(e)(2). Federations provide services to 15 or more member organizations. Services include the receipt and distribution of funds through the CFC. Because federations handle approximately 80 percent of all funds distributed through the CFC, the documented evidence of compliance for federations will continue to be required.

In addition to the changes described above, OPM is proposing 35 other administrative regulatory changes to clarify information and processes within the CFC, address areas of concern noted over the years by OPM and stakeholders, and to recognize the use of electronic technology in the administration of the CFC program. These administrative regulatory changes are:

1. OPM proposes changes throughout many sections of 5 CFR part 950 to modify references associated with the use of paper-based information and processes such that these new terms apply within an electronic CFC environment. Examples include the replacement of the term "brochure" with "charity list", "pledge card" with "pledge form" and "campaign materials" with "campaign information."

2. 5 CFR 950.102(a) limits the solicitation of donors to a six week period between September 1 and December 15. OPM proposes to eliminate the restriction on the six week period and allow local campaign

leadership to determine the length of the solicitation that may occur between September 1 and December 15.

3. 5 CFR 950.102(c) states that the Director exercises general supervision over all operations of the CFC, and takes all necessary steps to ensure the achievement of campaign objectives. OPM proposes to clarify and specifically articulate its authority to perform audits and investigations of all CFC activities and stakeholders and resolve any identified issues resulting from these audits and investigations.

4. 5 CFR 950.103(f) describes a six week period for soliciting donors similar to that described in item (2) above. Corresponding changes are proposed.

5. 5 CFR 950.103(g) defines the types of personnel that can be solicited and contribute to the CFC. The regulation states that contractor personnel, credit union employees and other persons employed on Federal premises, as well as retired Federal employees can contribute, but may not be solicited. This has led to much confusion about how to approach, but not solicit, these non-Federal employees working on Federal premises and retirees. The change proposed removes the restriction that these non-Federal employees not be solicited, but maintains that they be present on Federal premises to contribute to the CFC.

6. 5 CFR 950.103(h) states that a Federal employee may participate in a particular CFC only if that employee's official duty station is located within the geographic boundaries of that CFC. OPM proposes to allow for contributions to organizations outside of an employee's official duty station in the cases of emergencies and disasters as defined in 5 CFR 950.102(a) upon approval by OPM's Director. OPM proposes to remove geographic restrictions on giving completely upon implementation of appropriate technology. Because OPM anticipates elimination of these geographic restrictions on giving, local eligibility based on adjacency and statewide presence will no longer be necessary and are eliminated commencing with implementation of electronic technology that removes geographic restrictions on giving as announced by the Director. Also see changes proposed to § 950.204(b)(1).

7. 5 CFR 950.104(b)(6) encourages local Federal agencies to appoint loaned executives to assist in the campaign and grant administrative leave to all loaned executives appointed. OPM proposes to correct this error and clarify that Federal agencies should not place loaned executives on administrative leave since

the CFC activities are to be considered part of the official duties of the Federal employee loaned to assist in the CFC.

8. 5 CFR 950.104(c) states that the LFCC must annually solicit applications for the PCFO via public notice. OPM proposes to remove the requirement for an annual application and allow LFCC's to enter into multi-year agreements, at their discretion. OPM also proposes the removal of the requirement to solicit the PCFO applications via a public notice and provide the LFCC discretion as to how to announce the solicitation as long as it reaches the audience of prospective applicants.

9. 5 CFR 950.106(a) states the amount a PCFO may recover for campaign expenses shall not exceed 10 percent of the estimated budget. OPM proposes to correct the error in this subsection, which should refer to 110 percent of the estimated budget.

10. 5 CFR 950.109 describes certain conflicts of interest for Federal employees who serve as a LFCC member or fundraising coordinator. OPM proposes to add to the description a noted instance addressed via CFC Memorandum 2002–15.[1]

11. 5 CFR 950.201(a)(1) and (2) discuss eligibility for national organizations to be included on a national list. OPM proposes adding references for international organizations, which must also meet these criteria and clarifying the Director's ability to consider corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate, prior to determining eligibility.

12. 5 CFR 950.204(b)(1) is modified to eliminate adjacency and statewide presence eligibility requirements commencing with the implementation of electronic technology that removes geographic restrictions on giving as announced by the Director. Also see changes proposed to § 950.103(h). In addition, OPM clarifies this subsection to define an adjacent local campaign.

13. 5 CFR 950.204(b)(2)(iii) is a newly proposed regulation that may recognize financial relationships between national organizations and their bona fide local affiliates depending on how they are structured. The proposed regulation considers two types of structures for the national and local affiliated organization relationships. The first is when there is a relationship between the national organization and local affiliate based on an IRS group tax-exemption determination. The second considers a relationship between a national

organization and local affiliate when there is not an IRS group tax-exemption determination. Under both scenarios, the proposed regulation removes the requirement for the local affiliate to maintain its own audited financial statements, provided its financial activities are included in the national organization's audited financial statements. If a local affiliate is covered by an IRS group tax-exempt determination, the local affiliate may additionally rely on an IRS Form 990 group return filed by the national organization on its behalf and submit a pro forma IRS Form 990, page 1, prepared for the local affiliate with its own information. The pro forma 990 is used by OPM to calculate an administrative and fundraising rate.

14. OPM proposes adding a subsection 5 CFR 950.204(g) that clarifies the LFCC's ability to consider corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate, prior to determining eligibility of local organizations.

15. 5 CFR 950.301(a) states that the Director may recognize national and international federations that conform to eligibility and accountability standards. OPM proposes clarifying the Director's ability to consider corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate, prior to determining eligibility of national and international federations.

16. 5 CFR 950.301(c) states that an organization may apply for inclusion as a national federation to participate in the CFC if the applicant has 15 or more member charitable organizations that meet the eligibility criteria of §§ 950.202 and 950.203. A national federation must provide copies of applications for all of its members in the initial year that it applies as a federation, but only at OPM's request after the initial year. OPM proposes to add clarifying language that the federation, itself, does not count among the 15 or more members required to receive federation status. OPM proposes to instruct federations to provide OPM with applications for any former or new member organizations that were not CFC participating members of that federation in the previous year's campaign.

17. 5 CFR 950.301(d) discusses the role of national and international federations. OPM will make a terminology change to conform to a terminology change proposed in 5 CFR 950.603(a).

18. 5 CFR 950.301(e)(2) requires national and international federations to

certify that their financial activities conform to GAAP and that they are annually audited by an independent certified public accountant in accordance with GAAS. It further requires a copy of the audit and that the audit must verify that the federation is honoring designations made to each member organization. Finally, the current regulation waives the audit requirement for newly created federations operating for less than a year. OPM proposes to clarify and simplify the language such that it applies all eligibility requirements and public accountability standards, contained in 5 CFR 950.202 and 950.203 and required of independent organizations and federation members, to the national and international federations. OPM does not view this as a substantive change.

19. 5 CFR 950.301(e)(2)(iii) requires national and international federations to disclose important administrative expense information to the CFC and donors in its annual report.

20. 5 CFR 950.303(a) states that the LFCC must approve local federations that conform to eligibility and public accountability standards. OPM proposes to clarify the LFCC's ability to consider corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate, prior to determining eligibility of local federations.

21. 5 CFR 950.303(c) is the same requirement for local federations as that described in item 16 above for 5 CFR 950.301(c). The changes described for the national and international federations also are proposed for local federations.

22. 5 CFR 950.303(d) discusses the role of local federations. OPM will make a terminology change to conform to a terminology change proposed in 5 CFR 950.603(a).

23. 5 CFR 950.303(e)(2) is the same requirement for local federations as that described in item 18 above for 5 CFR 950.301(e)(2). The changes described for the national and international federations also are proposed for local federations.

24. 5 CFR 950.303(e)(2)(iii) is the same requirement for local federations as that described in item 19 above for 5 CFR 950.301(e)(2)(iii). The changes described above for national and international federations also are proposed for local federations.

25. 5 CFR 950.401(g)(3) states that each national and international federation and charitable organization will be assigned a code number by OPM and each local federation and local charitable organization will be assigned

code numbers by the LFCC. OPM proposes to modify this regulation to facilitate alternative mechanisms by which OPM may assign charity codes.

26. 5 CFR 950.601 provides a process for authorizing the release of donor names and addresses and for the transmittal of this information to charities to which the donors designated. OPM proposes changing the terms "names and address" to "information." This change enables OPM to allow other donor information to be released, such as contribution amount and home email address. Donors have indicated that they would like the option to release additional information such as the amount contributed to charities, along with their names and addresses. OPM looks forward to comments on this proposed change to assure itself that we are changing the regulation in a manner consistent with Federal donor views.

27. 5 CFR 950.604 specifies that federations, PCFO's and other participants shall retain documents pertinent to the campaign for three campaign years. OPM proposes to clarify that three campaign years is actually three completed campaign periods and is not based on calendar years.

28. 5 CFR 950.801(a)(1) specifies that during a 30 calendar day period between January and March, as determined by the Director, OPM will accept applications from organizations seeking to be listed on the national and international list. OPM proposes to modify this section to remove the defined period of a 30-calendar-day period between January and March and replace it with a period determined by the Director. OPM will create, maintain, and issue a calendar of events each year to define the applicable period. Initially, OPM will provide for a specific 60-calendar day period between December and February as the period during which OPM will accept applications.

29. 5 CFR 950.801(a)(2) states that within 35 calendar days of the closing of the receipt of applications, the Director will notify each national and international applicant of the results of the application review. OPM proposes to remove the defined 35 day requirement and will publish an anticipated date for notification on the calendar of events that OPM will maintain.

30. 5 CFR 950.801(a)(3) states that the LFCC must select the PCFO no later than March 15. OPM proposes to remove the reference to March 15 and state that the LFCC must select the PCFO no later than a date to be determined by OPM. OPM will provide

the date in its calendar of events and initially set the date as February 15 to allow campaigns to begin early planning for the upcoming campaign.

31. 5 CFR 950.801(a)(4) requires the Director to issue a national and international list of eligible organizations by June 30. OPM proposes to remove the specific date and state by a date determined by the Director.

32. 5 CFR 950.801(b) requires the Director to annually issue a timetable for accepting and processing national and international applications. OPM proposes to modify this section to specify that the Director will create, maintain and issue a calendar of events with specific dates that include the accepting and processing of national and international applications as well as other significant CFC dates.

33. 5 CFR 950.901(f)(1) requires the remittance check sent by payroll offices to the PCFO each pay period to be accompanied by a statement identifying the agency, the dates of the pay period and the total number of employee deductions. OPM proposes to add the pay period number to the information required to be on this statement. PCFOs often have trouble determining when they have received the complete number (12 or 26 pay periods) of employee deductions from payroll offices. Adding the pay period number will assist PCFOs with this determination.

34. 5 CFR 950.901(i)(1) and (i)(2) each contain dates for the PCFO to notify charitable organizations of the amount of pledged contributions (no later than February 15) and to begin its periodic distributions to charitable organizations. OPM proposes to remove the specific dates referenced in the regulation and state that these actions will occur no later than a date determined by OPM. OPM will publish the dates in its calendar of events. Initially, OPM will extend the notification date to March 15. OPM proposes to remove the requirement for monthly payments and allow all campaigns to make quarterly payments beginning no later than April 1.

35. 5 CFR 950.105(e), 950.302(c), 950.302(d), 950.304(c), 950.304(d), 950.403, and 950.603 all provide for certain penalties and sanctions for federations, unaffiliated organizations, and PCFOs. OPM proposes to clarify and combine these penalties and sanctions into 5 CFR 950.603 and remove the other references from the regulations.

In an effort to develop eligibility and public accountability standards and administrative processes that serve both the public interests and meets the needs of the stakeholder community,

including CFC charitable organization applicants and Federal donors, comments are now being solicited for consideration prior to the 2007 CFC and subsequent Campaigns.

Comments are invited on what issues, if any, are presented by the approach proposed by OPM for the 2007 and subsequent campaigns in light of the current CFC eligibility and public accountability standards in 5 CFR 950.201, 950.202, 950.203, 950.204, 950.301 and 950.303 and other current administrative terms and processes discussed throughout 5 CFR part 950. Comments on proposed regulatory changes that affect the potential use of donor information, such as that in section 950.203(a)(6), and the expansion of donor information to include home email address, such as in 950.601, especially are encouraged. OPM also seeks comments from charitable organizations participating in the Combined Federal Campaign as well as from Federal donors. It is noted that some CFC application and reporting forms may need to be revised as a result of these proposed regulatory changes. Any such changes will be publicly announced prior to an applicant charity's need to use such forms.

**Waiver of 60-Day Comment Period for Proposed Rulemaking**

Pursuant to 5 U.S.C. 553(b)(3)(B), I find that good cause exists to waive the 60-day comment period for general notice of proposed rulemaking. Limiting the comment period for the proposed regulations to 45 days will enable OPM to issue final regulations in 2006, sufficiently in advance of the 2007 CFC to enable charitable organizations and the Government to benefit from the streamlined eligibility and public accountability requirements for purposes of the 2007 CFC. A longer comment period may result in significant additional costs to the Government as well as for national and international organizations and federations, caused by potential confusion over what regulations are in effect during the earliest stage at which charities begin to put together their CFC applications. While the CFC begins in the fall of the campaign year, charities, especially those that apply through a federation, begin the application process late in the year preceding the campaign. Any confusion over which CFC regulations are in effect at the time organizations are preparing their applications for the CFC could result in frustration with the application process as well as denials of applications, appeals, potential litigation, and bad will toward the CFC itself.

**Regulatory Flexibility Act**

I certify that this regulation will not have a significant economic impact on a substantial number of small entities. Charitable organizations applying to the CFC have an existing, independent obligation to comply with the eligibility and public accountability standards contained in current CFC regulations. Streamlining these standards will be less burdensome.

**Executive Order 12866, Regulatory Review**

This rule has been reviewed by the Office of Management and Budget in accordance with Executive Order 12866.

**List of Subjects in 5 CFR part 950**

Administrative practice and procedures, Charitable contributions, Government employees, Military personnel, Nonprofit organizations and Reporting and recordkeeping requirements.

U.S. Office of Personnel Management.
Linda M. Springer,
*Director.*

Accordingly, OPM is proposing to amend 5 CFR part 950 as follows:

**PART 950—SOLICITATION OF FEDERAL CIVILIAN AND UNIFORMED SERVICE PERSONNEL FOR CONTRIBUTIONS TO PRIVATE VOLUNTARY ORGANIZATIONS**

1. The authority citation for part 950 continues to read as follows:

**Authority:** E.O. 12353 (March 23, 1982), 47 FR 12785 (March 25, 1982), 3 CFR, 1982 Comp., p. 139. E.O. 12404 (February 10, 1983), 48 FR 6685 (February 15, 1983), Pub. L. 100–202, and Pub. L. 102–393 (5 U.S.C. 1101 Note).

2. Amend part 950 as follows:
a. Remove the words "brochure" and "brochures" and add in their place "Charity List" and "Charity Lists", respectively, wherever they appear;
b. Remove the words "card" and "cards" and add in their place "form" and "forms", respectively, wherever they appear; and
c. Remove the words "materials", "pamphlet", and "pamphlets" and add in their place "information" wherever they appear.

3. In § 950.101 remove the definition of *Campaign Year* and add the definitions of *Campaign Period, Charity List,* and *Independent Organization* in alphabetical order and in the definition of *International General Designation Option* remove the word "campaign" to read as follows:

**§ 950.101  Definitions.**
*    *    *    *    *

*Campaign Period* means generally a 24 month period beginning with the selection of the Principal Combined Fund Organizations (PCFO) or renewal of the PCFO's agreement and ending with final disbursements to charitable organizations.
*    *    *    *    *

*Charity List* means the official list of charities approved by OPM for inclusion in the CFC within a given geographic solicitation area.
*    *    *    *    *

*Independent Organization* means a charitable organization that is not a member of a Federation for the purposes of the Combined Federal Campaign.
*    *    *    *    *

4. In § 950.102 amend paragraph (a) by removing the text "6 week" from the second sentence, and amend paragraph (c) by adding two sentences at the end of the paragraph to read as follows:

**§ 950.102  Scope of the Combined Federal Campaign.**
*    *    *    *    *

(c) * * * OPM has the authority to audit, investigate, and report on the administration of any campaign, the organization that administers the campaign, and any national, international and local federation, federation member or independent organization that participates in the campaign for compliance with these regulations. The Director resolves any issues reported and determines sanctions or penalties, as warranted under § 950.603.

5. In § 950.103, revise paragraphs (f), (g) and (h) to read as follows:

**§ 950.103  Establishing a local campaign.**
*    *    *    *    *

(f) Each year the LFCC must establish the time period to solicit employees. The solicitation may not begin before September 1 and in no event will it extend beyond December 15 of each year.

(g) Current Federal civilian and active duty military employees may be solicited for contributions using payroll deduction, checks, money orders, or cash, or by electronic means, including credit cards, as approved by the Director. Contractor personnel, credit union employees and other persons present on Federal premises, as well as retired Federal employees, may make single contributions to the CFC through checks, money orders, or cash, or by electronic means, including credit cards, as approved by the Director.

(h) A Federal employee whose official duty station is outside the geographic boundaries of an established CFC may not be solicited in that CFC. A Federal

employee may participate in a particular CFC only if that employee's official duty station is located within the geographic boundaries of that CFC. This restriction is discontinued upon implementation of electronic technology that removes geographic restrictions on giving as announced by the Director. At the discretion of the Director, and upon showing of extraordinary circumstances, Federal employees may contribute in support of victims in cases of emergencies and disasters defined in § 950.102(a) outside the geographic boundaries of their participating CFC. Such contributions can be check, money order, or cash or by electronic means, including credit cards, as approved by the Director, but shall not be made through payroll deduction.

6. Amend § 950.104 as follows:
a. In paragraphs (b)(4) and (b)(5), remove the word "local"; and
b. Revise paragraphs (b)(6) and (c) to read as follows:

The amendments to § 950.104 read as follows:

**§ 950.104  Local Federal Coordinating Committee responsibilities.**
*    *    *    *    *

(b) * * *
(6) Encouraging local Federal agencies to appoint loaned executives to assist in the campaign. CFC loaned executives' time should be charged to regular working hours. It is not appropriate to place a CFC loaned executive on administrative leave, leave without pay, or annual leave. Federal loaned executives are prohibited from working on non-CFC fundraising activities during duty hours.
*    *    *    *    *

(c) The LFCC must select a PCFO to act as its fiscal agent and campaign coordinator on the basis of presentations made to the local committee as described in § 950.105(c). The LFCC may, at its discretion select a PCFO for up to three campaign periods, subject to renewal each year following a review of performance as defined in § 950.105. The LFCC must consider the capacity of the organization to perform an efficient and effective campaign and its history of public accountability, use of funds, truthfulness and accuracy in solicitations, and sound governance and fiscal management practices as the primary factors in selecting a PCFO. The LFCC must solicit applications on a competitive basis for the PCFO no later than a date to be determined by OPM and, if it exercises discretion to enter into a multi-year arrangement, upon completion of the multi-year term. The LFCC shall solicit applications via outreach activities including: Public

Federal Register / Vol. 71, No. 125 / Thursday, June 29, 2006 / Proposed Rules    **37009**

notice in newspapers, postings on Web sites, advertising in trade journals, dissemination among participating CFC organizations and federations, and/or outreach through local or state nonprofit associations and training centers, among others. The PCFO application period must be open a minimum of 21 calendar days. Costs incurred for soliciting applications must be shared to the PCFO budget as an administrative cost.

§ 950.105    [Amended]

7. Amend § 950.105 as follows:

a. In paragraph (b), remove the word "printed" in the second sentence and add in its place the word "developed";

b. In paragraph (d)(3), remove the word "address" and add in its place "contact information";

c. In paragraph (d)(6), add a comma and the text "contact information and contribution amounts" after the word "names";

d. In paragraph (d)(10), remove the word "reprinting" and add in its place "reproduction and/or reissuing" and remove the number "10" and add in its place "110"; and

e. Remove paragraph (e).

§ 950.106    [Amended]

8. In § 950.106, amend paragraph (a) by removing the number "10" and adding in its place "110."

§ 950.109    [Amended]

9. In § 950.109, amend the first sentence by adding the text "serve in any official capacity in any organization that serves as the PCFO of the local CFC, or" before the word "participate".

10. Amend § 950.201 as follows:

a. Revise the section heading;

b. In paragraph (a)(1), add the text "and international" after the word "national"; and

c. Revise paragraphs (a)(2) through (b) to read as follows:

§ 950.201    National and International list eligibility.

(a) * * *

(2) Determine which organizations among those that apply qualify to be part of the national and international lists and then provide these lists of qualified organizations to all local campaigns. In order to determine whether an organization may participate in the campaign, the Director may request evidence of corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate. The Director retains the ultimate authority to decide whether the organization has demonstrated, to the Director's satisfaction, that the organization has taken appropriate corrective action.

Failure to demonstrate satisfactory corrective action or to respond to the Director's request for information within 10 calendar days of the date of the request may result in a determination that the organization will not be included in the national and international list.

(b) These lists of national and international charities will be included in all local Charity Lists in accordance with these regulations. These lists will include each organization's CFC code. These CFC codes must be faithfully reproduced in the local Charity Lists.

* * * * *

11. Revise § 950.202 to read as follows:

§ 950.202    National and international list eligibility requirements.

(a) Certify that it provides or conducts real services, benefits, assistance, or program activities, in 15 or more different states or a foreign country over the 3 year period immediately preceding the start of the year involved. This requirement cannot be met on the sole basis of services provided through an "800" telephone number or by disseminating information and publications via the U.S. Postal Service, the Internet, or a combination thereof. A schedule listing a detailed description of the services in each state (minimum 15) or foreign countries (minimum 1), including the year of service, must be included with the application. The schedule must make a clear showing of national or international presence. Broad descriptions of services and identical repetitive narratives will be disregarded at the discretion of OPM if they do not allow OPM to adequately determine that real services were provided or to accurately determine the individuals or entities who benefited. Providing listings of affiliated groups does not sufficiently demonstrate provision of real services by the applicant. Location of residence of organization members or location of residence of visitors to a facility does not substantiate provision of services in the location of residence. However, organizations that issue student scholarships or fellowships must indicate the state in which the recipient resides, not the state of the school or place of fellowship. Mere dissemination of information does not demonstrate provision of real services. While it is not expected that an organization maintain an office in each state or foreign country, a clear showing must be made of the actual services, benefits, assistance or activities provided in each state or foreign country. De minimus services, benefits, assistance, or other

program activities in any State or foreign country will not be accepted as a basis for qualification as a national or international organization.

(b) Certify that it is an organization recognized by the Internal Revenue Service as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. 170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. 509(a). A copy of the letter(s) from the Internal Revenue Service granting tax exempt and public charity status must be included in the organization's application.

12. Amend § 950.203 as follows:

a. Remove paragraphs (a)(6), (a)(7), (a)(9) through (a)(11), and (a)(13) and redesignate paragraph (a)(8) as (a)(6) and paragraph (a)(12) as (a)(7), respectively;

b. In paragraph (a), add the text "or international" after the word "national" in the first sentence;

c. In paragraph (a)(1), remove the second sentence;

d. Revise paragraphs (a)(2) through (a)(4) ;

e. In the newly redesignated paragraph (a)(7), add the text "or international" after the word "national".

The amendments to § 950.203 read as follows:

§ 950.203    Public accountability standards.

(a) * * *

(2) Certify that the organization:

(i)(A) Indicates total revenue of $250,000 or more on its most recent IRS Form 990 or pro forma IRS Form 990 submitted to the CFC, if it is not required by the IRS to file an IRS Form 990, covering a period not more than 18 months prior to the January of the campaign year to which the organization is applying;

(B) Accounts for its funds on an accrual basis (cash, modified cash, modified accrual and any other methods of accounting are not acceptable) in accordance with generally accepted accounting principles; and

(C) Has an audit of its fiscal operations completed annually by an independent certified public accountant in accordance with generally accepted auditing standards; or

(ii)(A) Reports total revenue of less than $250,000 on its most recent IRS Form 990 covering a period not more than 18 months prior to the January of the campaign year to which the organization is applying; and

(B)Has controls in place to insure funds are properly accounted for and that it can provide accurate timely financial information to interested parties.

(3) Certify that it prepares and submits to the IRS a complete copy of

the organization's IRS Form 990 or that it is not required to prepare and submit an IRS Form 990 to the IRS. Provide a completed copy of the organization's most recent IRS Form 990 submitted to the IRS, including signature, supplemental statements and Schedule A, with the application, or if not required to file an IRS Form 990, provide a pro forma IRS Form 990 page 1 only. IRS Forms 990EZ, 990PF, and comparable forms are not acceptable substitutes.

(4) Provide a computation of the organization's percentage of total support and revenue spent on administrative and fundraising. This percentage shall be computed from information on the IRS Form 990 submitted pursuant to § 950.203(a)(3).

\* \* \* \* \*

13. Amend § 950.204 as follows:

a. In paragraphs (a) and (b), remove the word "local";

b. Revise paragraph (b)(1);

c. Remove paragraph (b)(2)(ii) and redesignate paragraph (b)(2)(iii) as (b)(2)(ii);

d. Add new paragraphs (b)(2)(iii) and (b)(2)(iv);

e. In paragraph (f), remove the word "print" from the first sentence and add in its place "produce" and remove the word "campaign" from the first sentence; and

f. Add new paragraph (g).

The amendments to § 950.204 read as follows:

§ 950.204  Local list eligibility.

\* \* \* \* \*

(b) \* \* \*

(1) An organization must demonstrate to the satisfaction of the LFCC, that it has a substantial local presence in the geographical area covered by the local campaign, a substantial local presence in the geographical area covered by an adjacent local campaign, or substantial statewide presence. Eligibility to participate in an adjoining campaign on the basis of adjacency or statewide presence is discontinued upon implementation of electronic technology that removes geographic restrictions on giving as announced by the Director.

(i) Substantial local presence is defined as a staffed facility, office or portion of a residence dedicated exclusively to that organization, available to members of the public seeking its services or benefits. The facility must be open at least 15 hours a week and have a telephone dedicated exclusively to the organization. The office may be staffed by volunteers. Substantial local presence cannot be met on the basis of services provided solely through an "800" telephone

number or the U.S. Postal Service or a combination thereof.

(ii) An adjacent local campaign is defined as a local campaign whose geographic border touches the geographic border of another local campaign. Participation in a local campaign via an adjacency determination does not grant the organization a substantial local presence in the adjacent local campaign and participating via adjacency cannot be used to establish adjacency to local campaigns bordering the adjacent campaign area. In addition, an organization must first be determined eligible to participate in the local campaign area where it has a substantial local presence before it may be determined eligible to participate in an adjacent local campaign. An organization cannot otherwise qualify as an eligible organization in an adjacent local campaign.

(iii) Substantial statewide presence is defined as providing or conducting real services, benefits, assistance or program activities over the 3 year period immediately preceding the start of the application year covering 30 percent of a state's geographic boundaries or providing or conducting real services, benefits, assistance or program activities affecting 30 percent of a state's population. Substantial statewide presence cannot be met on the basis of services provided solely through an "800" telephone number or the U.S. Postal Service or a combination thereof. This subsection is eliminated upon implementation of electronic technology that removes geographic restrictions on giving as announced by the Director.

\* \* \* \* \*

(2) \* \* \*

(iii) A local charitable organization covered by a 26 U.S.C. 501(c)(3) group exemption that can demonstrate it provides services as a separately incorporated local bona fide chapter or affiliate in good standing of a national tax-exempt organization under 26 U.S.C. 501(c)(3) does not need to maintain its own independent IRS determination letter, audited financial statements and IRS Form 990 for CFC purposes. These local charitable organizations must provide a certification signed by either the Chief Executive Officer (CEO) or CEO equivalent of the national organization stating that the local charitable organization is covered under the national organization's tax-exempt status and financial accountability and reporting controls, and that the local organization's financial activities are included in the national organization's audited financial statements. The local

charitable organization must provide a copy of the national organization's IRS group tax-exemption determination, including the most recent IRS approval of subordinates covered by the group exemption, a copy of the IRS letter assigning the local charitable organization an Employer Identification Number (EIN) and a copy of its IRS Form 990 filed with the IRS. If the organization is covered by a group return on IRS Form 990 filed by the national organization, the local organization must provide a copy of the complete group return on IRS Form 990 along with a pro forma IRS Form 990 (page 1) prepared for the local charitable organization for CFC purposes only. In either case, the IRS Form 990 must cover a period ending not more than 18 months prior to the January of the campaign year to which the organization is applying. The local charitable organization must certify and demonstrate that it independently meets all other applicable local eligibility requirements and public accountability standards included in §§ 950.204(b)(1) and 950.204(b)(2).

(iv) A local charitable organization that can demonstrate it provides services as a separately incorporated local bona fide chapter or affiliate in good standing of a national tax-exempt organization under 26 U.S.C. 501(c)(3), but is not covered by a 26 U.S.C. 501(c)(3) group exemption does not need to maintain its own independent audited financial statements for CFC purposes. These local charitable organizations must provide a certification signed by either the Chief Executive Officer (CEO) or CEO equivalent of the national organization stating that the local charitable organization operates as a bona-fide chapter or affiliate in good standing of the national organization and is subject to the financial accountability and reporting controls of the national organization, and that the local organization's financial activities are included in the national organization's audited financial statements. Upon certification, the local organization must provide a copy of an IRS tax-exemption determination letter that includes appropriate taxpayer identification information obtained from the IRS and a completed copy of its Form 990 filed with the IRS. The local charitable organization must certify and demonstrate that it independently meets all other applicable local eligibility requirements and public accountability standards included in §§ 950.204(b)(1) and 950.204(b)(2).

\* \* \* \* \*

Federal Register / Vol. 71, No. 125 / Thursday, June 29, 2006 / Proposed Rules    37011

(g) In order to determine whether an organization may participate in the campaign, the LFCC may request evidence of corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate. The LFCC will decide whether the organization has demonstrated, to the LFCC's satisfaction, that the organization has taken appropriate corrective action. Failure to demonstrate satisfactory corrective action or to respond to the LFCC's request for information within 10 calendar days of the date of the request may result in a determination that the organization will not be included in the local list.

### § 950.205 [Amended]

14. In § 950.205, amend paragraph (c)(4) by removing the word "and" and adding to the end of the sentence the text "and supporting information to justify the reversal of the original decision."

15. Amend § 950.301 as follows:
a. Revise the section heading and paragraph (a);
b. Revise paragraph (c);
c. In paragraph (d), remove the word "decertification" in the last sentence and add in its place the text "withdrawal of federation status"; and
d. Revise paragraph (e)(2).
The amendments to § 950.301 read as follows:

### § 950.301 National and international federations eligibility.

(a) The Director may recognize national and international federations that conform to the requirements and are eligible to receive designations. The Director may from time to time place a moratorium on the recognition of national and international federations. In order to determine whether the Director will recognize a national or international federation, the Director may request evidence of corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate. The Director retains the ultimate authority to decide whether the federation has demonstrated, to the Director's satisfaction, that the federation has taken appropriate corrective action. Failure to demonstrate satisfactory corrective action or to respond to the Director's request for information within 10 calendar days of the date of the request may result in a determination that the federation will not be included in the national and international list.

*    *    *    *    *

(c) An organization may apply to the Director for inclusion as a national or international federation to participate in the CFC if the applicant has, as members of the proposed federation, 15 or more charitable organizations, in addition to the federation itself, that meet the eligibility criteria of §§ 950.202 and 950.203. The initial year an organization applies for federation status, it must submit the applications of all its proposed member organizations in addition to the federation application. Federations must re-establish eligibility each year, however only the applications of its new and former members that were not within their federation, as a CFC participant, in the previous year's campaign need accompany the annual federation application once an organization has obtained federation status, unless additional member applications are requested by the Director.

*    *    *    *    *

(e) * * *

(2) That it meets the eligibility requirements and public accountability standards contained in §§ 950.202 and 950.203. The federation can demonstrate that it has met the eligibility requirement in § 950.202(a) either through its own services, benefits, assistance or program activities or through its 15 members' activities.

(i) The federation must complete the certification set forth at § 950.203(a)(2) without regard to the amount of revenue reported on its IRS Form 990 and must provide a copy of its audited financial statements. The audited financial statements provided must verify that the federation is honoring designations made to each member organization by distributing a proportionate share of receipts based on donor designations to each member. The audit requirement is waived for newly created federations operating for less than a year as determined from the date of its IRS tax-exemption letter to the closing date of the CFC application period.

(ii) The federation must provide a listing of its board of directors, beginning and ending dates of each member's term of office, and the board's meeting dates and locations for the previous year.

(iii) The federation must certify that it prepares and makes available to the public, upon request, an annual report that includes a full description of the organization's activities and supporting services and identifies its directors and chief administrative personnel. The federation must provide a copy of its most recently completed annual report covering the fiscal year ending not more than 18 months prior to January of the campaign year to which the federation is applying or the preceding calendar year. The annual report must also include an accurate description of the federation's membership dues and/or service charges received by the federation from the charitable organizations participating as members. The information must clearly present the amounts raised, the sources of contributions, the cost of fundraising, and how costs are recovered from donations.

*    *    *    *    *

16. In § 950.302, revise the section heading, remove paragraphs (c) through (e), and add a new paragraph (c) to read as follows:

### § 950.302 Responsibilities of national and international federations.

*    *    *    *    *

(c) Each federation, as fiscal agent for its member organizations, must ensure that Federal employee designations are honored in that each member organization receives its proportionate share of receipts based on the results of each individual campaign. The proportionate share of receipts is determined by donor designations to the individual member as compared to total campaign designations.

17. Amend § 950.303 as follows:
a. Revise paragraph (a);
b. Revise paragraph (c);
c. In paragraph (d), remove the word "decertification" in the last sentence and add in its place the text "withdrawal of federation status"; and
d. Revise paragraph (e)(2).
The amendments to § 950.303 read as follows:

### § 950.303 Local federations' eligibility.

(a) LFCC's must approve local federations that meet the applicable requirements, except that in order to determine whether the LFCC must recognize a local federation, the LFCC may request evidence of corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate. A local federation that has been notified that it will not be included on the local list because of failure to correct a prior violation may appeal the LFCC's decision to the Director in accordance with § 950.205(b). The Director retains the ultimate authority to decide whether the local federation has demonstrated, to the Director's satisfaction, that the local federation has taken appropriate corrective action. Failure to demonstrate satisfactory corrective action or to respond to a request by the LFCC or Director for information within 10 calendar days of the date of the request

may result in a determination that the local federation will not be included in the local list.

\* \* \* \* \*

(c) An organization may apply to the LFCC for inclusion as a local federation to participate in the CFC if the applicant has as members of the proposed federation 15 or more charitable organizations, in addition to the federation itself, that meet the eligibility criteria of §§ 950.202, 950.203 and 950.204. The initial year an organization applies for federation status, it must submit to the LFCC applications of all its proposed member organizations in addition to the federation application. Federations must re-establish eligibility each year, however only the applications of its new and former members that were not within their federation, as a CFC participant, in the previous year's campaign need accompany the annual federation application once an organization has obtained federation status, unless additional member applications are requested by the LFCC.

\* \* \* \* \*

(e) \* \* \*

(2) That it meets the eligibility requirements contained in § 950.204 (including eligibility requirements and public accountability standards of §§ 950.202 and 950.203 that are incorporated by reference). The federation can demonstrate that it has met the eligibility requirement in § 950.204(b)(1) either through its own services, benefits, assistance or program activities or through its 15 members' activities.

(i) The federation must complete the certification set forth at § 950.203(a)(2) without regard to the amount of revenue reported on its IRS Form 990 and must provide a copy of its audited financial statements. The audited financial statements provided must verify that the federation is honoring designations made to each member organization by distributing a proportionate share of receipts based on donor designations to each member. The audit requirement is waived for newly created federations operating for less than a year as determined from the date of its IRS tax-exemption letter to the closing date of the CFC application period.

(ii) The federation must provide a listing of its board of directors, beginning and ending dates of each member's term of office, and the board's meeting dates and locations for the previous year.

(iii) The federation must certify that it prepares and makes available to the public, upon request, an annual report

that includes a full description of the organization's activities and supporting services and identifies its directors and chief administrative personnel. The federation must provide a copy of its most recently completed annual report covering the fiscal year ending not more than 18 months prior to January of the campaign year to which the federation is applying or the preceding calendar year. The annual report must also include an accurate description of the federation's membership dues and/or service charges received by the federation from the charitable organizations participating as members. The information must clearly present the amounts raised, the sources of contributions, the cost of fundraising, and how costs are recovered from donations.

\* \* \* \* \*

18. In § 950.304, remove paragraphs (c) through (e), and add a new paragraph (c) to read as follows:

### § 950.304    Responsibilities of local federations.

\* \* \* \* \*

(c) Each federation, as fiscal agent for its member organizations, must ensure that Federal employee designations are honored in that each member organization receives its proportionate share of receipts based on the results of each individual campaign. The proportionate share of receipts is determined by donor designations to the individual member as compared to total campaign designations.

19. Amend § 950.401 as follows:

a. In paragraph (a), remove the word "printed" in the second sentence and add in its place "developed";

b. In the first sentence of paragraph (e), add the text "source of" after the word "official", remove the word "package", and add the text "either in hard copy or electronic format" after the word "available";

c. In paragraph (f), remove the word "package" in the first and second sentences and add in its place "design";

d. Revise the introductory paragraph of (g)(1);

e. Revise paragraphs (g)(2), (g)(3), and (h); and

f. In paragraph (k), remove the word "year" and add in its place "period", and add to the end of the sentence the text "or if the campaign can demonstrate to the satisfaction of the Director that it can make the same information available electronically without disrupting donor opportunities to contribute."

The amendments to § 950.401 read as follows:

### § 950.401    Campaign and publicity materials.

(g) \* \* \*

(1) OPM will include in the annual distribution of the National and International Lists explicit instructions for the production of the Charity Lists and language to be reproduced verbatim in the introductory section. The general information provided will include:

\* \* \* \* \*

(2) Following the introductory section, the Charity List will consist of three parts—the national, the international, and the local. The order of these three parts will be annually rotated in accordance with OPM instructions. In 1996 the Local part will be first followed by the National and finally the International. The national and international lists will consist of faithful reproductions of the lists of national and international organizations, including federations, provided by OPM. The third part, the local list, is determined by the LFCC. The order of listing of the federated and independent organizations within the three separate parts will be determined by random drawing. The order of organizations within each federation will be determined by the federation. The order within the national, international and local independent groups will be alphabetical. Absent specific instructions from OPM to the contrary, each participating organization and federated group listing must include a description, not to exceed 25 words, of their services and programs, plus a telephone number for the Federal donor to request further information about the group's services, benefits, and administrative expenses. Each listing will include the organization's administration and fundraising percentage as calculated pursuant to § 950.203(a)(4). Neither the percentage of administrative and fundraising expenses, nor the telephone number count toward the 25-word statement.

(3) Each federation and charitable organization will be assigned a code in a manner determined by the Director. At the beginning of each federated group's listing will be the federation's name, code number, 25-word statement, percentage of administrative and fundraising expenses, and telephone number. The sections of the Charity Lists where the independent organizations are listed will begin with the titles National Independent Organizations, International Independent Organizations and Local Independent Organizations.

(h) Omission of an eligible charitable organization from the Charity List may

Federal Register / Vol. 71, No. 125 / Thursday, June 29, 2006 / Proposed Rules    37013

require that all Charity Lists be reproduced and reissued. Such omissions must be reported to OPM immediately upon discovery. The Director or LFCC may direct that the cost of such reproduction and reissue be borne by the PCFO or charged to CFC administrative expenses.

\* \* \* \* \*

20. Amend § 950.402 as follows:

a. In paragraph (a), remove the word "year" and add in its place "period";

b. In paragraph (c), add to the end of the second sentence a comma followed by the text "except in cases of emergencies or disasters as approved by the Director. This restriction does not apply upon implementation of electronic technology that removes the geographic restrictions on giving as announced by the Director." and

c. In paragraph (d), revise the last sentence.

The amendments to § 950.402 read as follows:

§ 950.402  Pledge card.

\* \* \* \* \*

(d) \* \* \* For example, if an employee indicates a total gift of $100 on the pledge form, but designates $50 to one organization and $25 to each of three other organizations, the PCFO must adjust the pledges proportionately by entering a pledge of $40 to the first organization and $20 to each of the three other organizations.

§ 950.403  [Removed]

21. Remove § 950.403.

22. Revise § 950.601 to read as follows:

§ 950.601  Release of contributor information.

(a) The pledge form, designed pursuant to § 950.402, must allow a contributor to indicate if the contributor does wish his or her name, contribution amount, and home contact information forwarded to the charitable organization or organizations designated. A PCFO's failure to honor a contributor's wish may result in the PCFO being sanctioned or penalized as provided for in § 950.603(a).

(b) The pledge form shall permit a contributor to specify which information, if any, he or she wishes released to organizations receiving his or her donations.

(c) It is the responsibility of the PCFO to forward the contributor information for those who have indicated that they wish this information released to the recipient organization directly, if the organization is independent, and to the organization's federation if the organization is a member of a

federation. The PCFO may not sell or make any other use of this information.

23. In § 950.602, revise paragraph (b) to read as follows:

§ 950.602  Solicitation methods.

\* \* \* \* \*

(b) Special CFC fundraising events, such as raffles, lotteries, auctions, bake sales, carnivals, athletic events, or other activities not specifically provided for in these regulations are permitted during the campaign period if approved by the appropriate agency head or government official, consistent with agency ethics regulations. CFC special fundraising events should be undertaken in the spirit of generating interest in the CFC and given without regard to whether an individual makes a contribution. Chances to win should be disassociated from amount of contributions, if any. Raffle prizes should be modest in nature and value. Examples of successful raffles have included opportunities for lunch with Agency Officials, parking spaces for a week, and holiday turkeys. Any special CFC fundraising event and prize or gift should be approved in advance by the Agency's ethics official.

\* \* \* \* \*

24. In § 950.603, revise the section heading and paragraph (a) to read as follows:

§ 950.603  Sanctions and penalties.

(a)(1) The Director may impose sanctions or penalties on a federation, charitable organization or PCFO for violating these regulations, other applicable provisions of law, or any directive or instruction from the Director. The Director will determine the appropriate sanction and/or penalty, up to and including expulsion from the CFC. In determining the appropriate sanction and/or penalty, the Director will consider previous violations, harm to Federal employee confidence in the CFC, and any other relevant factors. The Director may bar a federation or charitable organization from serving as PCFO, for a period not to exceed one campaign period, if it is determined that that the federation or charitable organization has violated any provisions of these regulations. A federation, charitable organization or PCFO will be notified in writing of the Director's intent to sanction and/or penalize and will have 10 calendar days from the date of receipt of the notice to submit a written response. The Director's final decision will be communicated in writing to the federation, charitable organization, or PCFO, with a copy to the appropriate LFCC.

(2) The Director may withdraw federation status with respect to a national, international or local federation that makes a false certification or fails to comply with any directive of the Director, or to respond in a timely fashion to a request by the Director or LFCC for information or cooperation, including with respect to an investigation or in the settlement of disbursements. The LFCC may recommend the withdrawal of federation status to a local federation. As stated in §§ 950.301(d) and 950.303(d), failure to meet minimum federation eligibility requirements shall not be deemed to be a withdrawal of federation status subject to a hearing on the record. Eligibility decisions shall follow the procedures in §§ 950.301(f) and 950.303(f). A federation will be notified in writing of the Director's intent to withdraw federation status for a period of up to one campaign period and will have 10 calendar days from the date of receipt of the notice to submit a written response. On receipt of the response, or in the absence of a timely response, the Director or representative shall set a date, time, and place for a hearing. The federation shall be notified at least 10 calendar days in advance of the hearing. A hearing shall be conducted by a hearing officer designated by the Director unless it is waived in writing by the federation. After the hearing is held, or after the Director's receipt of the federation's written waiver of the hearing, the Director shall make a final decision on the record, taking into consideration the recommendation submitted by the hearing officer. The Director's final decision will be communicated in writing to the federation, with a copy to the appropriate LFCC.

(3) A federation, charitable organization or PCFO sanctioned or penalized under any provision of these regulations must demonstrate to the satisfaction of the Director that it has taken corrective action to resolve the reason for sanction and/or penalty and has implemented reasonable and appropriate controls to ensure that the situation will not occur again prior to being allowed to participate in subsequent CFCs and/or serving as a PCFO for a campaign.

\* \* \* \* \*

25. Revise § 950.604 to read as follows:

§ 950.604  Records retention.

Federations, PCFO's and other participants in the CFC shall retain documents pertinent to the campaign for at least three completed campaign

periods. For example, documentation regarding the 2006 campaign, which would include selection of the PCFO in March of 2006 through the final distribution of contributions in approximately March 2008, must be retained through the completion of the 2007, 2008 and 2009 campaign periods (*i.e.* until approximately March 2011). Documents requested by OPM must be made available within 10 business days of the request.

26. Amend § 950.801 as follows:

a. In paragraph (a)(1), remove the text "one 30-day calendar day" and add in its place the word "a", remove the text "January and March" and add in its place the text "December and January", and add the text "and international" to the last sentence after the word "national";

b. Revise paragraph (a)(2);

c. In paragraph (a)(3), remove the date "March 15" and add in its place "a date to be determined by OPM. The date will be part of the annual timetable issued by the Director under § 950.801(b).";

d. In paragraph (a)(4), remove the text "June 30" and add in its place "a date to be determined by OPM. The date will be part of the annual timetable issued by the Director under § 950.801(b)."; and

e. In paragraph (b), add the text "and international" in the first sentence after the word "national", and add a second sentence to read as follows: "The Director will issue the timetable for a campaign period no later than October 31 of the year preceding the campaign period."

The amendments to § 950.801 read as follows:

### § 950.801  Campaign schedule.

(a) * * *

(2) The Director will determine a date after the closing of the receipt of applications by which the Director will issue notices to each national and international applicant organization of the results of the Director's review. The date will be part of the annual timetable issued by the Director under § 950.801(b).

\*      \*      \*      \*      \*

27. Amend § 950.901 as follows:

a. In paragraph (c)(1), remove the text "printed or purchased from a central source" and add in its place "reproduced", and remove the word "distributed" and add in its place "made available";

b. In paragraph (c)(2), add the word "paper" after the word "each", and add the text "or an acceptable electronic version" after the word "authorization";

c. In paragraph (f)(1), add the text "pay period number," after the word "period,"; and

d. Revise paragraphs (i)(1) and (i)(2).

The amendments to § 950.901 read as follows:

### § 950.901  Payroll allotment.

\*      \*      \*      \*      \*

(i) * * *

(1) The PCFO shall notify the federations, national and international organizations, and local organizations as soon as practicable after the completion of the campaign, but in no case later than a date to be determined by OPM, of the amounts, if any, designated to them and their member agencies and of the amounts of the undesignated funds, if any, allocated to them. The date will be part of the annual timetable issued by the Director under § 950.801(b).

(2) The PCFO is responsible for the accuracy of disbursements it transmits to recipients. It shall transmit disbursements at least quarterly, minus the approved proportionate share for administrative cost reimbursement and the PCFO fee set forth in § 950.106. It shall remit the contributions to each organization or to the federation, if any, of which the organization is a member. The PCFO will distribute all CFC receipts beginning April 1, and quarterly thereafter. At the close of each disbursement period, the PCFO's CFC account shall have a balance of zero.

\*      \*      \*      \*      \*

[FR Doc. 06–5795 Filed 6–26–06; 1:37 pm]

BILLING CODE 6325–46–P

---

## DEPARTMENT OF AGRICULTURE

### Agricultural Marketing Service

### 7 CFR Part 966

### [Docket No. FV06–966–1 PR]

### Tomatoes Grown in Florida; Partial Exemption to the Minimum Grade Requirements

**ACTION:** Proposed rule.

**SUMMARY:** This rule invites comments on a proposed partial exemption to the minimum grade requirements under the marketing order for tomatoes grown in Florida (order). The Florida Tomato Committee (Committee) locally administers the order. Under the order, Florida tomatoes must meet at least a U.S. No. 2 grade before they can be shipped and sold outside the regulated area. This rule would exempt UglyRipe™ (UglyRipe) tomatoes from the shape requirements associated with the U.S. No. 2 grade. This change would increase the volume of UglyRipe tomatoes that would meet the order requirements, and would help increase shipments and availability of these tomatoes.

**DATES:** Comments must be received by August 28, 2006.

**ADDRESSES:** Interested persons are invited to submit written comments concerning this proposal. Comments must be sent to the Docket Clerk, Marketing Order Administration Branch, Fruit and Vegetable Programs, AMS, USDA, 1400 Independence Avenue SW., STOP 0237, Washington, DC 20250–0237; Fax: (202) 720–8938; E-mail: moab.docketclerk@usda.gov; or Internet: *http://www.regulations.gov*. All comments should reference the docket number and the date and page number of this issue of the **Federal Register** and will be made available for public inspection in the Office of the Docket Clerk during regular business hours, or can be viewed at: *http://www.ams.usda.gov/fv/moab.html*.

**FOR FURTHER INFORMATION CONTACT:** William Pimental, Southeast Marketing Field Office, Marketing Order Administration Branch, Fruit and Vegetable Programs, AMS, USDA; telephone: (863) 324–3375, Fax: (863) 325–8793, or e-mail *William.pimental@usda.gov*; or Christian Nissen, Regional Manager, Southeast Marketing Field Office, Marketing Order Administration Branch, Fruit and Vegetable Programs, AMS, USDA; telephone: (863) 324–3375, Fax: (863) 325–8793, or e-mail: *Christian.nissen@usda.gov*.

Small businesses may request information on complying with this regulation by contacting Jay Guerber, Marketing Order Administration Branch, Fruit and Vegetable Programs, AMS, USDA, 1400 Independence Avenue SW., STOP 0237, Washington, DC 20250–0237; telephone: (202) 720–2491, Fax: (202) 720–8938, or E-mail: *Jay.Guerber@usda.gov*.

**SUPPLEMENTARY INFORMATION:** This proposal is issued under Marketing Agreement No. 125 and Marketing Order No. 966, both as amended (7 CFR part 966), regulating the handling of tomatoes grown in certain designated counties in Florida, hereinafter referred to as the "order." The marketing agreement and order are effective under the Agricultural Marketing Agreement Act of 1937, as amended (7 U.S.C. 601–674), hereinafter referred to as the "Act."

The Department of Agriculture (USDA) is issuing this rule in conformance with Executive Order 12866.

This proposal has been reviewed under Executive Order 12988, Civil



Summary of Public Comments on the CFC Eligibility and Public Accountability Standards Proposed Rule - 3206-AL05

| Date / Comment | Commenter Name | Type of Organization | Type of Commenter | Chapter, Attorney | Summary of Documents | Comments Executive Officer(s)/OMB Non-Agency Item Agreement, Charge/comment (Y/N) | OGFEO Agree Addresses (Y) Reference (see coding below) | OGFEO Comments and/or Changes to Proposed Rule based on Comment |
|---|---|---|---|---|---|---|---|---|

| Date | Name | Office | | Comments | | |
|---|---|---|---|---|---|---|
| 7/25/2006 | | LFCC | F | 5 CFR 950.202(b) (Incorporation Information) – we find that the IRS tax-exempt determination and copy of the Combined CFC | F | 30 |
| 8/9/2006 | Doug Bandok | PCFO | P | Pikes Peak CFC | 5 CFR 950.202(b) – Add language "Charitable organizations and federations (including on base MWR organizations) must maintain their status as a valid 501(c)(3) organization with the IRS. Should this status be revoked by the IRS, eligibility status in the CFC will also be revoked and any further payments withheld, pending a 30 day appeal opportunity by the agency in question." | N | 30 |
| 8/14/2006 | Robyn Fishman | PCFO | P | North Central Texas CFC | 5 CFR 950.202(b) – Support the change. | F | 16 |
| 8/14/2006 | | LFCC | F | North Central Texas CFC | 5 CFR 950.202(b) – Support the change. | F | 16 |
| 8/14/2006 | Janet L. Bishop | LFCC | F | Metropolitan Denver CFC | 5 CFR 950.202(b) – Support this change. | F | 16 |
| 8/7/2006 | | LFCC | F | Hawaii/Pacific Area CFC | 5 CFR 950.202(b) – Support this change. | F | 16 |
| 8/14/2006 | Julia L Kyles | LFCC | F | Metropolitan Denver CFC | 5 CFR 950.202(b) – Support this change. | F | 16 |

Total # of 5 CFR 950.202(b) - Comments        7

**Summary of Public C**

| Date of Comment | Commenter Name | Person's Organization | Type of Commentor | Campaign Affiliation |
|---|---|---|---|---|

Comments on the CFC Eligibility and Public Accountability Standards Proposed

Summary of Comments

Comments
Favorable
(F)/Opposed(O)/
Neutral (N)

# Rule - 3206-AL05

| OCFCO Agrees (A)/Disagrees (D)/ Some Agreement Some Disagreement (SASD) | Section Reference (see coding below) | OCFCO Comments and/or Changes to Proposed Rule based on Comment |
|---|---|---|

| Date | Name | Office | Code | Location |
|------|------|--------|------|----------|
| 7/25/2006 | LFCC | LFCC | L | Fresno-Madera Counties CFC |
| 8/9/2006 | Doug Bannick | PCFO | P | Pikes Peak CFC |
| 8/14/2006 | Robyn Fishman | PCFO | P | North Central Texas CFC |
| 8/14/2006 | LFCC | LFCC | L | North Central Texas CFC |
| 8/14/2006 | Janet L. Bishop | LFCC | L | Metropolitan Denver CFC |
| 8/14/2006 | LFCC | LFCC | L | Hawaii-Pacific Area CFC |
| 8/18/2006 | Julia L. Kyriss | LFCC | L | Metropolitan Denver CFC |

| 5 CFR 950.202(b) | | | |
|---|---|---|---|
| 5 CFR 950.202(b) Incorporation Information -- we find that the IRS tax-exempt determination and copy of the most recent Form 990 are sufficient for this purpose. | | | F |
| 5 CFR 950.202(b) - Add language "Charitable organizations and federations (excluding on base MWR organizations) must maintain their status as a valid 501(c)(3) organization with the IRS. Should this status be revoked by the IRS, eligibility status in the CFC will also be revoked and any further payments withheld, pending a 30 day appeal opportunity by the agency in question." | | | N |
| 5 CFR 950.202(b) -- Supports this change. | | | F |
| 5 CFR 950.202(b) -- Supports this change. | | | F |
| 5 CFR 950.202(b) -- Support this change. | | | F |
| 5 CFR 950.202(b) -- Supports this change. | | | F |
| 5 CFR 950.202(b) -- Support this change. | | | F |

**Total # of 5 CFR 950.202(b) - Comments          7**

A     16

A     16

A     16

A     16

A     16

A     16

A     16



Monday,
November 20, 2006

Part III

# Office of Personnel Management

### 5 CFR Part 950
Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to Private Voluntary Organizations—Eligibility and Public Accountability Standards; Final Rule

67276    Federal Register / Vol. 71, No. 223 / Monday, November 20, 2006 / Rules and Regulations

**OFFICE OF PERSONNEL MANAGEMENT**

**5 CFR Part 950**

**RIN 3206–AL05**

**Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to Private Voluntary Organizations—Eligibility and Public Accountability Standards**

**AGENCY:** Office of Personnel Management.

**ACTION:** Final rule.

**SUMMARY:** The Office of Personnel Management (OPM) is issuing final regulations concerning the Combined Federal Campaign (CFC). These final regulations are being issued as part of OPM's effort to modernize the CFC and to realize administrative efficiencies. They were designed to address the current and future environment of the CFC where the electronic transmission of information will be more routine. As such, these regulations update the criteria for CFC eligibility, streamline the charity application process, ease the administrative burden on the local campaigns, promote the use of electronic technology in the administration of the CFC, and expand opportunities during disasters and emergencies for Federal donors to contribute to all charities participating in the CFC regardless of location.

**FOR FURTHER INFORMATION CONTACT:** Mark W. Lambert by telephone at (202) 606–2564; by FAX at (202) 606–5056; or by e-mail at *cfc@opm.gov*.

**DATES:** These regulations are effective November 20, 2006.

**SUPPLEMENTARY INFORMATION:** Pursuant to 5 U.S.C. 553(d)(3), the Director of the Office of Personnel Management finds good cause to waive the 30 day effective date for these regulations. Many national/international organizations including federations, federation members, and independent organizations, are beginning to prepare for filling out their 2007 CFC applications for submission to OPM in January 2007. If those organizations begin that process under the current regulations, then are required to revise those applications pursuant to these revised regulations, resources may be needlessly expended, there will be confusion in revising applications, and some applicants who would be eligible under the revised regulations might not apply under the current regulations. Finally, there will be confusion and resource implications for OPM to begin the review process when applications

may need to be withdrawn or revised if the regulations were not to become effective until mid December or later.

OPM is issuing final regulations concerning eligibility provisions and administrative requirements governing the participation of organizations and the administration of the CFC. These final regulations present a balanced approach to the current and anticipated future needs of the CFC and continue the tradition of accountability in the CFC by providing Federal donors with assurances that CFC participating charities provide real services and are fiscally accountable. OPM encourages stakeholders and non-profit sector institutions with an oversight mission to collaborate to ensure that all charities are fully accountable to the public they serve. OPM will continue to emphasize the importance of providing complete, accurate, and timely financial reports to donors, regulators and the public, and will support donors by providing them with information to evaluate the charities of their choice.

On June 29, 2006 (71 FR 37003), OPM issued comprehensive proposed regulations to revise the procedures governing the solicitation of Federal civilian and uniformed services personnel at the workplace for contributions to private non-profit organizations. That workplace solicitation is known as the CFC, administered by OPM under the authority of Executive Order 12353 (March 23, 1982) as amended by Executive Order 12404 (February 10, 1983). The proposed regulations were issued to reduce the burden on applicant charitable organizations seeking to qualify for the CFC, simplify the administrative process of determining whether charitable organizations are eligible to participate in the CFC, and facilitate modernization of the CFC. The proposed regulations are available at *http://a257.g.akamaitech.net/7/257/2422/01jan20061800/edocket.access.gpo.gov/2006/pdf/06–5795.pdf*.

In this final rule, OPM addresses the comments received on the proposed rules set forth at 5 CFR part 950. The 45 day public comment period ended August 14, 2006. A total of 415 comments were received from participating CFC organizations, Principal Combined Fund Organizations, members of Local Federal Coordinating Committees, individuals and a Federal government agency.

**Eligibility Provisions and Public Accountability Standards**

Under the existing CFC regulations, there were 16 core eligibility and public accountability standards and 3 core administrative requirements that a charitable organization was required to satisfy in order to participate in the CFC. These appeared in the form of certifications in the annual CFC application. Many of the standards required specific documentation, such as audited financial statements and an annual report to demonstrate compliance. OPM had proposed removing eight of these standards, including the requirement that participating organizations' administrative and fundraising expenses not exceed 25 percent of its total revenue. OPM had proposed modifying some of the remaining standards to eliminate documented proof of compliance. The standards of eligibility and accountability being adopted by OPM in this Final Rule are summarized as follows:

1. Section 950.202(a)—National List Eligibility Requirements—Certify that the applicant organization provides or conducts real services, benefits, assistance, or program activities, in 15 or more different states or a foreign country over the 3 year period immediately preceding the start of the year involved. The proposed regulation set forth that a detailed schedule would be required as part of the application that described activities in each state or foreign country in each year. In addition, OPM clarified the types of information that it would consider acceptable to determine that real services are provided or to accurately determine the individuals or entities who benefit from the services. In addition, OPM proposed adding a statement to clarify that de minimis services, benefits, assistance, or other program activities in any state or foreign country would not be accepted as a basis for eligibility. One organization and one individual commented with a concern that OPM's attempt to clarify the eligibility requirements would still result in limited additional guidance for charities, federations, and OPM personnel. Both comments recommended that OPM amend the regulations to adopt an extensive list of factors against which OPM could evaluate whether an organization has made a clear showing of actual services, benefits, assistance or activities provided in each state or foreign country and also suggested criteria that OPM should adopt to define what constitutes substantial services. OPM

carefully considered these comments but is not accepting these recommendations and the Final Rule will adopt the proposed regulation. OPM believes that the most appropriate vehicle for any additional guidance in this area is through use of the existing CFC administrative memoranda process and through additional instructions in how to complete the annual CFC application.

2. Section 950.202(b)—National List Eligibility Requirements—Certify that the applicant organization is recognized by the Internal Revenue Service as tax-exempt under 26 U.S.C. 501(c)(3) and to which contributions are tax-deductible pursuant to 26 U.S.C. 170(c)(2) and that the organization is classified as a public charity under 26 U.S.C. 509(a). OPM proposed this revision to clarify that applicant organizations must be public charities, not private foundations, or exclusively government units or instrumentalities thereof. There were no comments on this proposal and OPM is adopting this change as proposed.

3. Section 950.203(a)(1)—Public Accountability Standards—Certify that the applicant organization is a human health and welfare organization providing services, benefits, or assistance to, or conducting activities affecting, human health and welfare. No changes were proposed to this standard and it remains the same as the existing regulation.

4. Section 950.203(a)(2)—Public Accountability Standards—Certify that the applicant organization accounts for its funds in accordance with generally accepted accounting principles and that an audit of the organization's fiscal operations is completed annually by an independent certified public accountant in accordance with generally accepted auditing standards. Under the proposed rule, applicants would no longer have been required to actually submit a copy of a recent audit with the application. OPM also proposed to require a certification that the organization had an audit only if it sought CFC participation on the national/international or international parts of the charity list and if it reported $250,000 or more in revenue on its IRS Form 990. OPM proposed to exempt from the audit requirement applicant organizations seeking to participate in the CFC at the local level that reported revenue of less than $250,000. Numerous comments were received both in support of and against this proposal. Those opposed argued that reducing the number of CFC charities that are independently audited would increase the risk of fiscal mismanagement on the part of such

charities and could increase the number of applications for inclusion in the CFC. Those in favor noted that the cost of an audit imposes a disproportionate burden on smaller, local charitable organizations.

OPM has considered these various concerns. OPM agrees that by requiring charities with revenues over $250,000 seeking to participate in a local campaign to submit audited financial statements with the application Federal donors will have additional assurances that such organization is fiscally accountable. OPM is also retaining the existing regulatory requirement that organizations seeking to participate on the national/international and international parts of the charity list, regardless of their revenues, certify that they account for funds in accordance with generally accepted accounting principles, have an audit of their financial statements conducted by an independent certified public accountant in accordance with generally accepted auditing standards, and submit a copy of their audited financial statements. In a departure from the existing regulation, organizations seeking local participation will be required to make those same certifications and submit a copy of their audited financial statements only if their revenues are over $250,000. Organizations with revenues between $100,000 and $250,000 seeking local participation will be required to certify that they account for funds in accordance with generally accepted accounting principles and have an audit of their financial statements conducted by an independent certified public accountant in accordance with generally accepted auditing standards, but will not be required to submit the audited financial statements with their application. Charities with revenues less than $100,000 seeking local participation will be required to certify that they have adequate financial controls in place, in form or substance as specified by OPM, but will not be required to submit these with their application.

5. Section 950.203(a)(3)—Public Accountability Standards—Certify that it prepares and submits to the IRS a complete copy of the organization's IRS Form 990 or that it is not required to submit an IRS Form 990, and provide a completed copy of the organization's IRS Form 990, including signature, with the CFC application regardless of whether or not the IRS requires the organization to file this form. OPM proposed to revise this standard to require a certification in addition to having the applicant submit a copy of the completed IRS Form 990 together

with supplemental statements and Schedule A with the application. OPM also proposed to no longer routinely check to determine whether the IRS Form 990 revenues and expenses reported reconcile with the audited financial statements since this reconciliation is required to be performed by the organization on the IRS Form 990 in Parts IV–A and IV–B. Comments opposing the proposed rule noted that the level of CFC accountability would be lowered if the previously required reconciliation between the IRS Form 990 and the audited financials were removed. Comments in favor of the proposed change suggested that the current reconciliation statement that organizations are required to provide on the IRS Form 990 should be sufficient to qualify for participation in the CFC. One organization pointed out that efforts by leading nonprofit infrastructure organizations to achieve greater consistency in financial reporting standards for the charitable sector are the most appropriate vehicle to promote improved reporting to the IRS and should not be used as a means to exclude charities from the CFC. OPM agrees with the comments in favor and will adopt the proposed regulation in the final rule.

6. Section 950.203(a)(4)—Public Accountability Standards—Provide a computation of the organization's percentage of total support and revenue spent on administrative and fundraising. This percentage shall be computed from information on the IRS Form 990, submitted pursuant to existing regulations at section 950.203(a)(3), by adding the amount spent on "management and general" (line 14) to "fundraising" (line 15) and then dividing the sum by "total revenue" (line 12). No substantive changes were proposed to this standard. The references to specific lines of the IRS Form 990 were removed, in anticipation of future changes to the Form by the IRS and the proposed regulation will be adopted in the final rule.

7. Section 950.203(a)(5)—Public Accountability Standards—Certify that the organization is directed by an active and responsible governing body whose members have no material conflict of interest and a majority of which serve without compensation. No changes were proposed to this standard. One commenter suggested that CFC charities be required to provide the names and terms of their governing board and dates of prior year board meetings. OPM notes that under the current CFC regulations, the Director currently has the discretion

**67278**    **Federal Register** / Vol. 71, No. 223 / Monday, November 20, 2006 / Rules and Regulations

to request this information as deemed necessary.

8. Section 950.203(a)(6)—Public Accountability Standards—Certify that the organization's fundraising practices prohibit the sale or lease of its CFC contributor lists. OPM proposed removing this standard. Due to the number of public comments that claimed this could undermine donor confidence in the CFC, OPM is withdrawing this proposed regulation and will retain the existing regulation.

9. Section 950.203(a)(7)—Public Accountability Standards—Certify that the applicant organization's publicity and promotional activities are based upon its actual program and operations, are truthful and non-deceptive, and make no exaggerated or misleading claims. OPM had proposed to remove this standard. A majority of comments favored retention of this certification as a precaution against abuse by applicant organizations and as a possible enforcement tool in cases of use of deceptive methods to mislead donors. OPM is withdrawing the proposed regulation and will retain its existing regulation.

10. Section 950.203(a)(8)—Public Accountability Standards—Certify that contributions are effectively used for the announced purposes of the charitable organization. No changes were proposed to this standard.

11. Section 950.203(a)(12)—Public Accountability Standards—Provide a statement that the certifying official is authorized by the organization to certify and affirm all statements required for inclusion on the national list. No changes were proposed to this standard.

12. Section 950.203(a)(13)—Public Accountability Standards—Provide a statement in 25 words or less describing the program activities of the charitable organization. As proposed, this provision is being removed as an eligibility standard, but is retained as an administrative requirement in section 950.401(g)(2) and will be required from each charitable organization completing the CFC application. One commenter proposed that OPM specify that the 25-word statement is not permitted to be misleading. OPM points out that section 950.203(a)(7) of the existing CFC regulation, which will be retained in the Final Rule, requires that organizations certify that their publicity and promotional activities are truthful and non-deceptive, and that section 950.203(a)(13) is more appropriate as an administrative requirement. The proposed change is therefore adopted in the final rule.

13. Section 950.605—Sanctions Compliance Certification—Each

federation, federation member and unaffiliated organization applying for participation in the CFC must, as a condition of participation, complete a certification that it is in compliance with all statutes, Executive orders, and regulations restricting or prohibiting U.S. persons from engaging in transactions and dealings with countries, entities or individuals subject to economic sanctions administered by the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC). No changes were proposed to this certification.

**Current Eligibility and Public Accountability Standards Removed in the Final Rule**

1. Section 950.202(c)—National List Eligibility Requirements—Certify that the organization has no expenses connected with lobbying and attempts to influence voting or legislation at the local, State, or Federal level or alternatively, that those expenses would classify the organization as a tax-exempt organization under 26 U.S.C. 501(h). The majority of comments broadly supported OPM's proposed removal of this standard because the existing regulatory requirement has been misconstrued by some as prohibiting permissible advocacy by charities participating in the CFC. Given the interrelatedness of items 2 and 3, and the comments received, the analysis follows after item 3—Section 950.203(a)(4)(ii).

2. Section 950.203(a)(4)(i)—Public Accountability Standards—If an organization's administrative and fundraising expenses exceed 25 percent of its total support and revenue, it must certify that its actual expenses for administration and fundraising are reasonable under all the circumstances presented. It must provide an explanation with its CFC application and also include a formal plan to reduce these expenses below 25 percent.

3. Section 950.203(a)(4)(ii)—Public Accountability Standards—The Director may reject any application from an organization with fundraising and administrative expenses in excess of 25 percent of total support and revenue, unless the organization demonstrates to the satisfaction of the Director that its actual expenses for those purposes and its plan to reduce them are reasonable under the circumstances.

A significant majority of comments on these requirements opposed OPM's proposal to remove the 25 percent administrative and fundraising rates (AFR) threshold and the explanation and reduction plan requirements as a condition of participation in the CFC.

The commenters argued that allowing a charity, regardless of its AFR ratio, to participate in the CFC would result in an expansive increase in the number of applicant organizations applying to the CFC. Commenters noted that such increase could significantly raise the costs to manage the application process and increase local campaign expenses to produce larger brochures. Many comments suggested that OPM should instead increase the acceptable AFR threshold to 35 percent, consistent with the standards commonly used by stakeholders in the charitable community. Other comments stated that the existing regulation should be retained and that OPM should not expect that donors would have the capability or resources to conduct their own research regarding an organization's AFR. One national organization commenter supported the elimination of the AFR standard as long as information about these expenses is readily made available to donors. That same organization suggested that OPM require applicant organizations with AFRs that exceed 35 percent to also include an explanation or rationale for the higher expenditures.

While OPM carefully considered this matter, OPM is adopting its proposed regulation in the final rule and is removing the 25 percent AFR ceiling as an eligibility standard. The issue of obtaining a specific AFR in order to participate, the subjective nature of OPM's determination regarding an acceptable explanation of a high AFR, and the determination of the merits of the proposed reduction plan have caused an administrative burden on OPM staff. Much of the litigation affecting the CFC in the past several years have centered on this issue, resulting in a substantial resource drain on OPM staff, including the Office of CFC Operations. OPM believes that Federal donors are capable of determining what their acceptable AFR levels should be for charities they consider supporting. In the interest of ensuring that potential Federal donors are informed of participating organizations' AFR, OPM will continue to calculate and publish the AFR of participating charities by listing the AFR in CFC information including the charity lists that are distributed to the donor. OPM will add a statement to all CFC Brochures that will note that OPM, as well as the philanthropic community at large, remains concerned about excessive AFR levels. The Brochure will inform the CFC donor that the philanthropic community generally considers an AFR in excess of 35% to

be problematic and that potential CFC donors should carefully review the circumstances applicable to the potential charities of their choice to be certain they fully understand and accept the AFR situations for such charities before donating to them.

OPM believes that Federal donors should have an opportunity to donate to a wide range of charitable organizations and should not be limited in their choices to those charities with AFRs of a specific rate, so long as the AFR information is available to them to make an informed decision. OPM encourages Federal donors to be knowledgeable about those charities to which they choose to donate. OPM already requires organizations to provide their World Wide Web address, if available, where donors can research the organization. Many local campaigns also provide donors with electronic access to information from and about participating organizations. As the CFC continues to modernize and more donors have more information available through the internet, donors can have unlimited references on most organizations. OPM is retaining the rule as it was proposed.

4. Section 950.203(a)(9)—Public Accountability Standards—Certify under which governmental entity the charitable organization is chartered, incorporated or organized (Congressionally chartered or the state in which it is registered). OPM proposed to remove this standard. There were five comments which opposed the proposed removal of this standard. The comments noted that this information was not a burden to collect and could be used to obtain additional information on the organization. OPM believes that any such additional information can be obtained from the application itself or from contacting the organization directly. OPM will adopt the proposed regulation in the final rule and will remove this eligibility standard.

5. Section 950.203(a)(10)—Public Accountability Standards—Certify that the organization has received no more than 80 percent of its total support and revenues from government sources as computed by dividing line 1c by line 12 from the IRS Form 990 submitted pursuant to section 950.203(a)(3). Many comments agreed with OPM's proposed removal of this standard. Two organizations favored retaining this certification based on the rationale that the spirit of the CFC is to make the charitable donations of Federal employees available to qualified charities, while keeping out of the CFC those organizations which already have stable funding and are, in essence,

providing government supported services. Two other organizations agreed with removing the standard, but requested that any such organizations be denoted with an asterisk in the CFC donor brochure to alert donors that they received more than 80 percent of their funding from government sources. OPM believes that the existing requirement has served to exclude legitimate organizations interested in diversifying their sources of support from participation in the CFC. OPM will remove this standard in the final rule as proposed.

6. Section 950.203(a)(11)—Public Accountability Standards—Certify that the organization prepares and makes available to the public upon request an annual report that includes a full description of the organization's activities and supporting services and identifies its directors and chief administrative personnel. OPM proposed to remove this standard because a significant portion of the information sought in the annual report is already the subject of a certification or obtained as a result of other eligibility requirements and public accountability standards contained in sections 950.202(a) and 950.203(a)(3). A number of comments were received both supporting and opposing the proposed rule change. One comment in favor argued that with an increasing number of organizations using expanded online resources to present information, the proposed rule change would encourage more organizations to present their information on-line. Comments against OPM's proposed regulation claimed that requiring an applicant to provide a copy of its annual report enhances accountability and transparency. OPM believes that the annual report is not an essential component of the application, particularly since the application requires a detailed description of services, benefits or activities which are carefully reviewed to determine eligibility. OPM agrees that donors should be encouraged to access this information online whenever possible or otherwise obtain an annual report directly from the charity. OPM adopts the proposed regulation in its final rule.

Changes corresponding to these changes in eligibility and public accountability requirements also are being made to the eligibility requirements for the local part of the charity list contained in section 950.204, and national and local federation standards set forth at sections 950.301, and 950.303. As proposed, national, international and local federations are required to submit documents to demonstrate compliance

with the audit, financial, governance and annual report requirements. These requirements are clarified in sections 950.301(e)(2) and 950.303(e)(2). Federations provide services to 15 or more member organizations. Services include the receipt and distribution of funds through the CFC. Because federations handle approximately 80 percent of all funds distributed through the CFC, the documented evidence of compliance for federations will continue to be required.

7. Section 950.204(b)(1)(ii)—OPM has decided not to proceed with the proposed change that would require statewide services to be provided over a 3 year period, and has withdrawn that change from the final rule.

## Miscellaneous Administrative Changes

In addition to changes and modifications to the eligibility standards described above, OPM proposed other CFC administrative changes to clarify CFC procedures, address areas of concern noted over the years by OPM and stakeholders, and to better recognize the use of electronic technology in the administration of the CFC. Except where noted, comments received on the following proposed regulatory changes supported such changes. Given the substantive concerns regarding two of the proposed administrative changes, involving solicitation of contractor personnel on Federal premises and the relationships between national organizations and their bona fide local affiliates, OPM is withdrawing the proposed regulation and retaining the regulations as they previously existed with minor clarifying changes. These issues are described in greater detail in the next section.

Proposed changes being adopted in the final regulations:

1. Various changes modifying references associated with the use of paper-based information and processes such that these new terms apply within an electronic CFC environment.

2. Section 950.101 includes a revised definition of "Charity List" to be consistent with section 950.401(g)(2). Throughout the CFC regulations, OPM has revised the terms "National and International Lists" to use the terms "National/International" and "International" to be consistent with the definition of "Charity List" in section 950.101 and the provisions of section 950.401(g)(2).

3. Current section 950.102(a) limits the annual solicitation of donors to a six week period between September 1 and December 15. One commenter stated that the six week period should be retained. OPM believes that eliminating

the requirement of a specific six week period is in the best interests of the campaign and will allow local campaign leadership to determine the appropriate length of the solicitation that must still occur between September 1 and December 15.

4. Current section § 950.102(c) states that the Director exercises general supervision over all operations of the CFC, and takes all necessary steps to ensure the achievement of campaign objectives. OPM will adopt as the final rule the proposed rule that clarifies and specifically articulates the Director's authority to perform audits and investigations of all CFC activities, and resolve any identified issues resulting from such audits and investigations.

5. Current section 950.103(f) describes a six week period for soliciting donors similar to that described in item (2) above. Corresponding proposed changes are adopted in the final rule.

6. Current section 950.103(h) states that a Federal employee may participate in a local CFC campaign only if that employee's official duty station is located within the geographic boundaries of that campaign. OPM proposed a modification to allow for contributions to organizations outside of an employee's official duty station in the cases of emergencies and disasters as defined in section 950.102(a), upon approval by the Director. OPM further proposed to give the Director authority to remove all geographic restrictions under any circumstances at some future date upon the implementation of appropriate technology. Because OPM anticipates such elimination of these geographic restrictions on giving at some point in the future, local eligibility based on adjacency and statewide presence will no longer be necessary and will be eliminated upon implementation of appropriate electronic technology to be announced by the Director at some future date, without the need for a new proposed regulatory proposal. Also see related changes proposed to section 950.204(b)(1). OPM retains these provisions in the proposed rule.

A number of comments expressed concern over OPM's plans to manage the flow of contributions during large scale emergencies or disasters and one organization suggested that OPM should study the impact of this provision on the structure and costs of the campaign. A disaster relief organization recommended that in the event of a major disaster, a separate campaign for disaster relief should be conducted concurrently with the regular CFC in order to distinguish better the contributions designated for disaster

relief activities. OPM will consider this suggestion but does not believe that adoption of the proposed regulation would preclude the implementation of such a separate disaster campaign since the Director currently exercises general supervision over all operations of the CFC and has the authority to take all necessary steps to ensure the achievement of campaign objectives. Therefore, there is no need to specify the handling of the campaign during times of emergency or disaster beyond the authority already available, and OPM is adopting the rule as proposed.

7. Current section 950.104(b)(6) encourages local Federal agencies to appoint loaned executives to assist in the campaign and grant administrative leave to all loaned executives appointed. OPM is adopting the proposed rule that will clarify that Federal agencies should not place loaned executives on administrative leave since the CFC activities are considered part of the official duties of the Federal employee loaned to assist in the CFC.

8. Current section 950.104(c) states that the LFCC must annually solicit applications for the PCFO via public notice. OPM proposed to remove the requirement for an annual application and allow LFCCs to enter into multi-year agreements, at their discretion. OPM also proposed the removal of the requirement to solicit the PCFO applications via a public notice and to provide the LFCC discretion as to how to announce the solicitation as long as it reaches the audience of prospective applicants. OPM will adopt these provisions in the final rule.

9. Current section 950.106(a) states the amount a PCFO may recover for campaign expenses shall not exceed 10 percent of the estimated budget. OPM adopts the proposed regulation, correcting an error in this section which would state that the recovery amount should not exceed 110 percent of the estimated budget.

10. Current section 950.109 describes certain conflicts of interest for Federal employees who serve as an LFCC member or fundraising coordinator. OPM proposed to add clarifying language regarding LFCC members not being able to serve in their official capacity on the board of directors of the non-profit organization that administers the CFC in its local area. This situation was addressed in administrative guidance at CFC Memorandum 2002–15. OPM is adopting this proposed revision in the final rule.

11. Current sections 950.201(a)(1) and (2) discuss eligibility for national organizations to be included on the

national list. OPM proposed adding references for international organizations, which must also meet these criteria, and clarifying the Director's ability to consider corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate, prior to determining eligibility. OPM is adopting these proposed revisions in the final rule.

12. Consistent with changes set forth above in paragraph 6, above, current section 950.204(b)(1) is modified to allow for the Director to provide for elimination of adjacency and statewide presence eligibility requirements commencing with the implementation of appropriate electronic technology. See related changes adopted in section 950.103(h). In addition, OPM clarifies this section to define more clearly an adjacent local campaign. A number of comments were received opposing this proposed change, noting a concern that statewide charities and adjacent charities will lose contributions if they are not included in the charity list, and donors will be affected if they lose the opportunity to contribute to charities of their choice. OPM notes that the current adjacency and statewide eligibility criteria will remain in place until appropriate technology exists to permit donors to make contributions without geographic restriction. OPM does not intend that there would be any gap period during which a potential donor would be deprived of an opportunity to donate to an eligible charity during the transition from the current rule to the elimination of geographic boundaries. OPM believes that the cost efficiencies inherent in the use of appropriate technology will only be realized by strongly encouraging the use of online electronic listings. OPM also acknowledges that some form of paper charity list may be needed to reach certain donors that may not have access to computers. In these circumstances, OPM will issue appropriate guidance to facilitate a full listing of all eligible charities within the geographic area. OPM is adopting this provision in the final rule.

13. Current section 950.204(b)(2)(iii) is being amended to add Guam, the Commonwealth of Northern Mariana Islands, and American Samoa to the list of U.S. territories whose charities may be exempt from the requirements of § 950.202(b). A number of comments pointed out that local organizations based in these territories do not generally participate in the CFC because they are not granted this exception. OPM determined that local non-profit organizations based in U.S. territories

are entitled to similar privileges as those in Puerto Rico and the Virgin Islands, provided they meet all other required eligibility requirements.

14. Current section 950.204(e) is being revised to remove the 15 day period for LFCCs to make eligibility decisions and providing instead that the decisions must be made as of a date determined by OPM and published in the annual CFC calendar.

15. OPM proposed adding a new subsection to section 950.204(g) that clarifies the LFCC's ability to consider corrective action regarding any prior violation of regulation or directive, applying an appropriate sanction or penalty, as appropriate, prior to determining eligibility of local organizations. OPM is as adopting the proposal in the final rule.

16. Current section 950.301(a) states that the Director may recognize national and international federations that conform to eligibility and accountability standards. OPM proposed clarifying the Director's ability to consider corrective action regarding any prior violation of regulation or directive applying an appropriate sanction or penalty, as appropriate, prior to determining eligibility of national and international federations. OPM is as adopting the proposal in the final rule.

17. Current section 950.301(c) states that an organization may apply for inclusion as a national CFC federation if the applicant federation has 15 or more member organizations each of which meet the eligibility criteria of sections 950.202 and 950.203. A national federation must provide copies of applications for all of its members in the initial year that it applies to participate in the CFC as a federation, but needs to submit copies of applications after the initial year only at OPM's request. OPM proposed to add clarifying language that the federation itself does not count among the 15 or more members organizations required to receive federation status. Four comments stated that the federation itself should count as one of the 15 members. OPM believes that the federation itself should not be included as one of these 15 member organizations, and is adopting the proposed clarification in the final rule.

18. Current section 950.301(d) discusses the role of national and international federations. OPM proposed a terminology change from "decertification" to "withdrawal of federation status" to conform to a terminology change proposed in section 950.603(a). Numerous commenters indicated that they opposed this change as well as the changes regarding sanctions and penalties in section

950.603(a). The commenters did not believe the proposed change provided an adequate appeal process. OPM notes that it did not change the sanctions and penalty requirements in the proposed rule. The proposed changes simply clarified and consolidated the many sections that dealt with penalties and sanctions into a single section at section 950.603(a). The requirements are those required by Federal law and OPM is adopting the proposed changes in the final rule.

19. Current section 950.301(e)(2) requires national and international federations to certify that their financial activities conform to generally accepted accounting principles (GAAP) and that they are annually audited by an independent certified public accountant in accordance with generally accepted auditing standards (GAAS). That section further requires a copy of the audited financial statements and that the audit must verify that the federation is honoring designations made to each member organization. Finally, the current regulation waives the audit requirement for newly created federations operating for less than a year. OPM proposed to clarify and simplify the regulatory language to apply to all eligibility requirements and public accountability standards, contained in sections 950.202 and 950.203 and required of independent organizations and federation members, to the national and international federations. OPM does not view this as a substantive change and is adopting the proposal in the final rule.

20. Current section 950.301(e)(2)(iii) requires national and international federations to disclose important administrative expense information to the CFC and donors in its annual report. One organization suggested that OPM should consider the differences in accounting systems used by federations and establish a standard reporting system. OPM agrees that this could be of potential value and will consider this as an area for future administrative review. OPM is retaining the provision as proposed.

21. Current section 950.303(a) states that the LFCC must approve local federations that conform to eligibility and public accountability standards. OPM proposed to clarify the LFCC's ability to consider corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate, prior to determining eligibility of local federations. OPM adopts this proposal in the final rule.

22. Current section 950.303(c) is the same requirement for local federations

as that described for section 950.301(c) regarding national federations. OPM is adopting in the final rule the clarification that the local federation itself does not count among the 15 or more members required to receive federation status.

23. Current section 950.303(d) sets forth the role of local federations. OPM will adopt in the final rule a terminology change from "decertification" to "withdrawal of federation status" to conform to a terminology change in section 950.603(a).

24. Section 950.303(e)(2) sets forth the same requirement for local federations as that described above applicable to section 950.301(e)(2). The changes adopted for national and international federations are also adopted for local federations in the final rule.

25. Section 950.303(e)(2)(iii) sets forth the same requirement for local federations as that described above in section 950.301(e)(2)(iii) for national and international federations. OPM will adopt this requirement in the final rule.

26. Current section 950.401(g)(3) states that each national and international federation and charitable organization will be assigned a code number by OPM and each local federation and local charitable organization will be assigned code numbers by the LFCC. OPM is modifying this regulation to facilitate alternative mechanisms by which OPM may assign charity codes. A number of comments expressed concerns over the manner in which OPM is planning to implement a re-coding of the charities, as part of the development of a centralized national CFC list. One comment indicated that OPM has already begun the implementation of such re-coding process by officially announcing that OPM will be assigning both national and local code numbers and requiring that LFCCs notify charities accordingly. OPM notes that while the planning for the assignment of new codes for all CFC charities has begun, the official assignment of codes will not occur before these final regulations are implemented. OPM further notes that it has had extensive consultation with stakeholders on the need for a new coding structure and the limitations that the existing regulation imposes on the structure of the campaign. OPM is adopting the proposed modification in the final rule.

27. Current sections 950.401(i) and (j) are being amended to provide that local affiliates of a national organization, not separately incorporated, still can be determined locally eligible using the national organization's IRS tax-exempt

determination letter and audited financial statements accompanied with a certification that the local affiliate operates as a bona-fide chapter or affiliate in good standing of the national organization and that the affiliate is covered by the national organization's 501(c)(3) tax exemption, IRS Form 990 and audited financial statements. The affiliate must provide a pro forma IRS Form 990, page 1 and Part V only, for CFC purposes in addition to the other documents required under section 950.204.

28. Current section 950.601 governs the release of donor names and addresses and the transmittal of this information to designated charities. OPM proposed changing the terms "names and address" to "information," to allow other donor information to be released, such as contribution amount and home email address. Numerous comments supported this change but suggested that clear "opt-in, opt-out" choices be given to donors. A number of comments opposed this change in light of the proposed change to remove the prohibition against sale or lease of contributor lists in section 950.203(a)(6). However, since OPM is retaining the current regulatory prohibition against sale or lease of contributor lists in section 950.203(a)(6), and will not adopt the proposed change, OPM does not believe there is substantial disagreement with this proposed change in section 950.601 and will adopt that change in the final rule.

29. Current section 950.604 specifies that federations, PCFOs and other participants shall retain documents pertinent to the campaign for three campaign years. OPM proposed to clarify that three campaign years is actually three completed campaign periods and is not based on calendar years. OPM is adopting this clarification in the final rule.

30. Current section 950.801(a)(1) specifies the period during which OPM will accept applications from organizations seeking to be listed on the national and international parts of the charity list. OPM proposed to modify this section to replace it with a period to be determined by the Director. OPM will create, maintain, and issue a CFC calendar of events each year to define the applicable time periods. Initially, OPM will provide for a specific 60-calendar day period between December and February as the period during which OPM will accept applications. OPM adopts this modification in the final rule.

31. Current section 950.801(a)(2) states that within 35 calendar days of the closing date for the receipt of annual

applications, the Director will notify each national and international applicant of the results of the application review. OPM proposed to remove the defined 35 day requirement and annually publish an anticipated date for notification on the calendar of events that OPM will maintain. OPM is adopting this provision in the final rule.

32. Current section 950.801(a)(3) states that the LFCC must select the PCFO no later than March 15 each year. OPM proposed to remove the reference to March 15 and state that the LFCC must select the PCFO no later than a date to be determined annually by OPM. OPM will provide the date in its annual CFC calendar of events and initially set the date as February 15 to allow campaigns to begin early planning for the campaign beginning after the effective date of these regulations. OPM is adopting this provision in the final rule.

33. Current section 950.801(a)(4) requires the Director to issue a national and international list of eligible organizations by June 30. OPM proposed to remove the specific date and state the requirement by a date annually determined by the Director. Several comments indicated that given the impact on all campaigns of the timely release by OPM of the national and international parts of the charity list, that a regulatory adjusted deadline would be preferred. One comment recommended that OPM change the date for issuance from June 30 to July 30 to be consistent with current actual practice. OPM believes that future release of the national and international parts of the charity list and the screening of charities will be expedited by improved technology and administrative improvements in these regulations and the use of a specific deadline in regulation will impose an unnecessary constraint. OPM is adopting the proposed change in the final rule.

34. Current section 950.801(b) requires the Director to annually issue a timetable for accepting and processing national and international applications. OPM proposed to modify this section to specify that the Director will create, maintain and issue annually a CFC calendar of events with specific dates that include the accepting and processing of national and international applications as well as other significant CFC dates. A majority of comments expressed concern that without regulatory deadlines, local campaigns could not plan adequately or hold OPM accountable for the release of the national and international parts of the charity list. The proposed CFC calendar

will be official CFC guidance and OPM believes it will be sufficient to allow for adequate local administration of the campaigns. In addition, OPM does not anticipate significant changes to any of the dates being removed from the regulations and will provide the annual calendar well in advance of the annual campaign and time for selection of the PCFO for any campaign. Local campaigns will have adequate time to plan for the campaign based on the issuance of the CFC calendar of dates. OPM is adopting the provision in the final rule.

35. Current 950.901(f)(1) requires the remittance checks sent by payroll offices to the PCFO each pay period to be accompanied by a statement identifying the agency, the dates of the pay period and the total number of employee deductions. OPM proposed to add the pay period number to the information required to be on this statement. OPM is adopting this provision in the final rule.

36. Current sections 950.901(i)(1) and (i)(2) each contain specific dates for the PCFO to notify charitable organizations of the amount of pledged contributions (currently no later than February 15) and to begin its periodic distributions to charitable organizations. OPM proposed to remove the specific dates referenced in the regulation and provide that these actions will occur no later than a date to be determined annually by OPM. OPM will publish the dates in its annual CFC calendar of events. Initially, OPM plans to extend the notification date to March 15. OPM proposed to remove the requirement for monthly payments and allow all campaigns to make quarterly payments beginning no later than April 1. Several comments noted that some small organizations could be adversely affected by quarterly payments. OPM notes that the PCFO will continue to have the option of retaining the monthly payments and is adopting the proposed provisions in the final rule.

37. Current sections 950.105(e), 950.302(c), 950.302(d), 950.304(c), 950.304(d), 950.403, and 950.603 all provide for certain penalties and sanctions for federations, unaffiliated organizations, and PCFOs. OPM proposed to clarify and combine these penalties and sanctions into one new section 950.603 and remove the other references from the regulations. Numerous commenters indicated that they did not agree with the changes in section 950.603(a) because they did not provide an adequate appeal process. OPM notes that it did not change the sanctions and penalty requirements in the proposed rule. The proposed changes simply clarified and

consolidated the many sections that dealt with penalties and sanctions into a single section 950.603(a). The requirements are those required by Federal law and OPM will adopt these changes in the final rule.

**Proposed Regulations Withdrawn in Favor of Existing Regulations**

1. Current section 950.103(g) prohibits solicitation of contractor personnel, credit union employees and other persons employed on Federal premises, and retired Federal employees but allows these individuals an opportunity to participate in the CFC by making single contribution. OPM's proposal to revise this rule by eliminating restrictions against the solicitation of the above personnel received extensive comments from the Office of Government Ethics (OGE). In particular, the OGE stated that the proposed rule did not specify any standards governing the circumstances under which the solicitations may occur. OPM agrees this is an issue that requires additional study and is not adopting the portion of the proposed rule that would have allowed the solicitation of non-Federal personnel. OPM will retain the existing regulation in order to have more time to re-examine this issue, while clarifying that donations offered by non-Federal personnel must be accepted. OPM adopts the portion of the proposed rule that allows for other electronic means of contributing, including credit cards, upon approval by the Director.

2. Sections 950.204(b)(2)(iii) and (b)(2)(iv) were proposed additions to the regulations intended to recognize financial relationships between national organizations and their bona fide local affiliates and to remove certain requirements depending on how those relationships were structured. OPM received numerous comments opposing the proposed changes which pointed to the emerging trends among national charitable organization structures to operate as single corporations with affiliates. OPM is not adopting the proposed regulations and will retain a slightly modified version of the existing regulatory language as its final rule. OPM has modified section 950.401(i) to clarify that local chapters/affiliate organizations must satisfy CFC eligibility criteria and must independently demonstrate services and accountability through the submission of independent documentation as required in sections 950.202, 950.203 or 950.204, except that a chapter or affiliate that is part of a single corporation or part of a group exemption may rely on the 26 U.S.C. 501(c)(3) tax-exempt determination and

the audited financial statements for the national organization, but must submit page 1 and Part V of a pro forma IRS Form 990 used to calculate the AFR.

**Regulatory Flexibility Act**

I certify that this regulation will not have a significant economic impact on a substantial number of small entities. Charitable organizations applying to the CFC have an existing, independent obligation to comply with the eligibility and public accountability standards contained in current CFC regulations. Streamlining these standards will be less burdensome.

**Executive Order 12866, Regulatory Review**

This rule has been reviewed by the Office of Management and Budget in accordance with Executive Order 12866.

**List of Subjects in 5 CFR Part 950**

Administrative practice and procedures, Charitable contributions, Government employees, Military personnel, Nonprofit organizations, and Reporting and recordkeeping requirements.

Office of Personnel Management.
**Linda M. Springer,**
*Director*

■ Accordingly, OPM amends 5 CFR part 950 as follows:

**PART 950—SOLICITATION OF FEDERAL CIVILIAN AND UNIFORMED SERVICE PERSONNEL FOR CONTRIBUTIONS TO PRIVATE VOLUNTARY ORGANIZATIONS**

■ 1. The authority citation for part 950 continues to read as follows:

**Authority:** E.O. 12353 (March 23, 1982), 47 FR 12785 (March 25, 1982), 3 CFR, 1982 Comp., p. 139. E.O. 12404 (February 10, 1983), 48 FR 6685 (February 15, 1983), Pub. L. 100–202, and Pub. L. 102–393 (5 U.S.C. 1101 Note).

■ 2. Amend part 950 as follows:
■ a. Remove the words "brochure" and "brochures" and add in their place "Charity List" and "Charity Lists", respectively, wherever they appear;
■ b. Remove the words "card" and "cards" and add in their place "form" and "forms", respectively, wherever they appear; and
■ c. Remove the words "materials", "pamphlet", and "pamphlets" and add in their place "information" wherever they appear.

■ 3. In § 950.101:
■ a. Remove the definition of *Campaign Year;*

■ b. Add the definitions of *Campaign Period, Charity List,* and *Independent Organization* in alphabetical order; and
■ c. In the definition of *International General Designation Option* remove the word "campaign".
The additions read as follows:

**§ 950.101   Definitions.**

*    *    *    *    *

*Campaign Period* means generally a 24 month period beginning with the selection of a Principal Combined Fund Organization (PCFO) or renewal of the existing PCFO's agreement with a Local Federal Coordinating Committee (LFCC) and ending with the final disbursements to charitable organizations participating in a local campaign.

*Charity List* means the official list of charities approved by OPM and the LFCC for inclusion in the CFC within a given geographic solicitation area. The Charity List will consist of three parts: the National/International part, the International part, and the Local part. Organizations that provide services, benefits, assistance, or program activities in 15 or more different states or a foreign country can choose to be listed on either the International or National/International part, except for members of a federation, which must be listed with the federation. Organizations that provide services, benefits, assistance, or program activities in 15 or more different states but no foreign countries will be listed on the National/International part. All qualifying local organizations within a CFC geographic solicitation area will be listed on the Local part associated with the campaign for that local CFC area.

*    *    *    *    *

*Independent Organization* means a charitable organization that is not a member of a federation for the purposes of the Combined Federal Campaign.

*    *    *    *    *

■ 4. In § 950.102 amend paragraph (a) by removing the text "6 week" from the second sentence, and amend paragraph (c) by adding two sentences at the end of the paragraph to read as follows:

**§ 950.102   Scope of the Combined Federal Campaign.**

*    *    *    *    *

(c) * * * OPM has the authority to audit, investigate, and report on the administration of any campaign, the organization that administers the campaign, and any national, international and local federation, federation member or independent organization that participates in the campaign for compliance with these regulations. The Director resolves any

issues reported and determines sanctions or penalities, as warranted under § 950.603.

\* \* \* \* \*

■ 5. In § 950.103, revise paragraphs (f), (g) and (h) to read as follows:

§ 950.103 Establishing a local campaign.

\* \* \* \* \*

(f) Each year the LFCC must establish the time period during which CFC solicitation may take place. The solicitation may not begin before September 1 and in no event will it extend beyond December 15 of each year.

(g) Current Federal civilian and active duty military employees may be solicited for contributions using payroll deduction, checks, money orders, or cash, or by electronic means, including credit cards, as approved by the Director. Contractor personnel, credit union employees and other persons present on Federal premises, as well as retired Federal employees, may make single contributions to the CFC through checks, money orders, or cash, or by electronic means, including credit cards, as approved by the Director. These non-Federal personnel may not be solicited, but donations offered by such persons must be accepted by the local campaigns.

(h) A Federal employee whose official duty station is outside the geographic boundaries of an established CFC may not be solicited in that CFC. A Federal employee may participate in a particular CFC only if that employee's official duty station is located within the geographic boundaries of that CFC. This restriction may be discontinued upon implementation of appropriate electronic technology that allows removal of the need for geographic restrictions on giving as determined by the Director. Upon a showing of extraordinary circumstances, as determined in the sole discretion of the Director, Federal employees may contribute in support of victims in cases of emergencies and disasters defined in § 950.102(a) outside the geographic boundaries of their participating CFC. Such contributions can be check, money order, or cash or by electronic means, including credit cards, as approved by the Director, but shall not be made through payroll deduction.

■ 6. Amend § 950.104 as follows:
■ a. In paragraphs (b)(4) and (b)(5), remove the word "local"; and
■ b. Revise paragraphs (b)(6) and (c) to read as follows:
    The revisions read as follows:

§ 950.104    Local Federal Coordinating Committee responsibilities.

\* \* \* \* \*

(b) \* \* \*

(6) Encouraging local Federal agencies to appoint loaned executives to assist in the campaign. CFC loaned executives' time should be charged to regular working hours. It is not appropriate to place a CFC loaned executive on administrative leave, leave without pay, or annual leave. Federal loaned executives are prohibited from working on non-CFC fundraising activities during duty hours.

\* \* \* \* \*

(c) The LFCC must select a PCFO to act as its fiscal agent and campaign coordinator on the basis of presentations made to the LFCC as described in § 950.105(c). The LFCC may, in its discretion, select a PCFO to serve in that role for up to three campaign periods, subject to renewal each year following a review of performance as defined in § 950.105. The LFCC must consider the capacity of the organization to manage an efficient and effective campaign, its history of public accountability, use of funds, truthfulness and accuracy in solicitations, and sound governance and fiscal management practices as the primary factors in selecting a PCFO. The LFCC must solicit applications on a competitive basis for the PCFO no later than a date to be determined by OPM and, if the LFCC exercises discretion to enter into a multi-year arrangement, upon completion of the multi-year term. The LFCC shall solicit applications via outreach activities including: Public notice in newspapers, postings on Web sites, advertising in trade journals, dissemination among participating CFC organizations and federations, and/or outreach through local or state nonprofit associations and training centers, among others. The PCFO application period must be open a minimum of 21 calendar days. Costs incurred for soliciting applications must be added to the PCFO budget as an administrative cost.

§ 950.105    [Amended]

■ 7. Amend § 950.105 as follows:
■ a. In paragraph (b), remove the word "printed" in the second sentence and add in its place the word "developed";
■ b. In paragraph (d)(3), remove the word "address" and add in its place "contact information";
■ c. In paragraph (d)(6), add the text ", contact information and contribution amounts" after the word "names";
■ d. In paragraph (d)(10), remove the word "reprinting" and add in its place "reproduction and/or reissuing" and remove the number "10" and add in its place "110"; and

■ e. Remove paragraph (e).

§ 950.106    [Amended]

■ 8. In § 950.106, amend paragraph (a) by removing the number "10" and adding in its place "110."

§ 950.109    [Amended]

■ 9. In § 950.109, amend the first sentence by adding the words "serve in any official capacity in any organization that serves as the PCFO of the local CFC, or" before the word "participate".
■ 10. Amend § 950.201 as follows:
■ a. Revise the section heading;
■ b. Revise paragraphs (a)(1) through (c)(3).
    The amendments to § 950.201 read as follows:

§ 950.201    National/international eligibility.

(a) \* \* \*

(1) Determine the timetable and other procedures regarding application for inclusion in the National/International and International parts of the Charity List.

(2) Determine which organizations among those that apply qualify to be included in the National/International and International parts of the Charity List and then provide these parts of the Charity List of qualified organizations to all local campaigns. In order to determine whether an organization may participate in the campaign, the Director may request evidence of corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate. The Director retains the ultimate authority to decide whether the organization has demonstrated, to the Director's satisfaction, that the organization has taken appropriate corrective action. Failure to demonstrate satisfactory corrective action or to respond to the Director's request for information within 10 business days of the date of the request may result in a determination that the organization will not be included in the Charity List.

(b) The National/International and International parts of the Charity List shall be included in the Charity List in accordance with these regulations. The Charity List will include each organization's CFC code and other information as determined by OPM. These CFC codes must be verbatim reproduced in the Charity List.

(c) An organization on the National/ International or International parts of the Charity List may elect to be removed from the applicable part of the Charity List and have its local affiliate or subunit listed on the Local part of the Charity List of organizations in its stead. For the local affiliate or subunit to be

listed in lieu of the organization on the National/International or International parts, the following procedures must be followed:

(1) The organization must send a letter to the local affiliate or subunit in that particular geographic CFC, waiving its listing on the National/International or International part of the Charity List so that its eligible local affiliate or subunit listed in the Local part of the Charity List in that geographic CFC will appear as that organization's sole listing in the Charity List.

(2) The local affiliate or subunit will include in its application to the LFCC a copy of the letter authorizing the removal of the organization from the National/International or International part of the Charity List, as well as all the required materials for completing a local organization application.

(3) Upon finding the local organization eligible, the waiver letter from the organization on the National/International or International part authorizes the LFCC to delete that organization from the National/International or International part of the Charity List.

■ 11. Revise § 950.202 to read as follows:

**§ 950.202  National/International eligibility requirements.**

(a) Certify that it provides or conducts real services, benefits, assistance, or program activities, in 15 or more different states or a foreign country over the 3 year period immediately preceding the start of the year involved. This requirement cannot be met on the sole basis of services provided through an "800" telephone number or by disseminating information and publications via the U.S. Postal Service, the internet, or a combination thereof. A schedule listing a detailed description of the services in each state (minimum 15) or foreign countries (minimum 1), including the year of service, must be included with the CFC application. The schedule must make a clear showing of national or international presence. Broad descriptions of services and identical repetitive narratives will not be accepted in the sole discretion of OPM if they do not allow OPM to adequately determine that real services were provided or to accurately determine the individuals or entities who benefited. Providing listings of affiliated groups does not sufficiently demonstrate provision of real services by the applicant. Location of residence of organization members or location of residence of visitors to a facility does not substantiate provision of services.

Organizations that issue student scholarships or fellowships must indicate the state in which the recipient resides, not the state of the school or place of fellowship. Mere dissemination of information does not demonstrate acceptable provision of real services. While it is not expected that an organization maintain an office in each state or foreign country, a clear showing must be made of the actual services, benefits, assistance or activities provided in each state or foreign country. De minimis services, benefits, assistance, or other program activities in any state or foreign country will not be accepted as a basis for qualification as a national or international organization.

(b) Certify that it is an organization recognized by the Internal Revenue Service as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. § 170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. § 509(a). A copy of the letter(s) from the Internal Revenue Service granting tax exempt and public charity status must be included in the organization's application.

■ 12. Amend § 950.203 as follows:
■ a. Remove paragraphs (a)(9) through (a)(11), and (a)(13) and redesignate paragraph (a)(12) as (a)(9);
■ b. In paragraph (a) introductory text, remove the words "national list" in the first sentence;
■ c. In paragraph (a)(1), remove the second sentence;
■ d. Revise paragraphs (a)(2) through (a)(4); and
■ e. In the newly redesignated paragraph (a)(9), remove the phrase "national list" and add the phrase "Charity List" in its place.

The revisions read as follows:

**§ 950.203  Public accountability standards.**

(a) * * *
(2) Certify that it accounts for its funds on an accrual basis (cash, modified cash, modified accrual and any other methods of accounting are not acceptable) in accordance with generally accepted accounting principles and that an audit of its fiscal operations is completed annually by an independent certified public accountant in accordance with generally accepted auditing standards. A copy of the organization's most recent annual audited financial statements must be included with the application. The audited financial statements must cover the fiscal period ending not more than 18 months prior to the January of the year of the campaign for which the organization is applying. For example,

the audited financial statements included in the 2007 application must cover the fiscal period ending on or after June 30, 2005.

(3) Certify that it prepares and submits to the IRS a complete copy of the organization's IRS Form 990 or that it is not required to prepare and submit an IRS Form 990 to the IRS. Provide a completed copy of the organization's IRS Form 990 submitted to the IRS covering a fiscal period ending not more than 18 months prior to the January of the year of the campaign for which the organization is applying, including signature, supplemental statements and Schedule A, with the application, or if not required to file an IRS Form 990, provide a pro forma IRS Form 990 page 1 and Part V only. IRS Forms 990EZ, 990PF, and comparable forms are not acceptable substitutes. The IRS Form 990 and audited financial statements must cover the same fiscal period.

(4) Provide a computation of the organization's percentage of total support and revenue spent on administrative and fundraising. This percentage shall be computed from information on the IRS Form 990 submitted pursuant to § 950.203(a)(3).

*    *    *    *    *

■ 13. Amend § 950.204 as follows:
■ a. Revise the section heading;
■ b. In paragraphs (a) and (b) introductory text, remove the word "local";
■ c. Revise paragraph (b)(1);
■ d. Revise paragraph (b)(2)(ii) and (b)(2)(iii);
■ e. Revise paragraph (e);
■ f. In paragraph (f), remove the word "print" from the first sentence and add in its place "produce" and remove the word "campaign" from the first sentence the first time it appears; and
■ g. Add new paragraph (g).

The revisions and addition read as follows:

**§ 950.204  Local eligibility.**

*    *    *    *    *

(b) * * *
(1) An organization must demonstrate to the satisfaction of the LFCC of the appropriate local campaign, that it has a substantial local presence in the geographical area covered by the local campaign, a substantial local presence in the geographical area covered by an adjacent local campaign, or substantial statewide presence. Eligibility to participate in an adjoining campaign on the basis of adjacency or statewide presence may be discontinued upon implementation of appropriate electronic technology that allows removal of the need for geographic

restrictions on giving as determined by the Director.

(i) Substantial local presence is defined as a staffed facility, office or portion of a residence dedicated exclusively to that organization, available to members of the public seeking its services or benefits. The facility must be open at least 15 hours a week and have a telephone dedicated exclusively to the organization. The office may be staffed by volunteers. Substantial local presence cannot be met on the basis of services provided solely through an "800" telephone number, the internet, the U.S. Postal Service or a combination thereof.

(ii) An adjacent local campaign is defined as a local campaign whose geographic border touches the geographic border of another local campaign. Participation in a local campaign via an adjacency determination does not grant the organization a substantial local presence in the adjacent local campaign and participating via adjacency cannot be used to establish adjacency to local campaigns bordering the adjacent campaign area.

(iii) Substantial statewide presence is defined as providing or conducting real services, benefits, assistance or program activities covering 30 percent of a state's geographic boundaries or providing or conducting real services, benefits, assistance or program activities affecting 30 percent of a state's population. Substantial statewide presence cannot be met on the basis of services provided solely through an "800" telephone number, the internet, the U.S. Postal Service or a combination thereof.

(2) * * *

(ii) A local charitable organization with annual revenue of less than $100,000 reported on its IRS Form 990 or pro form IRS Form 990 submitted to the CFC is not required to undergo an audit or to submit audited financial statements. Rather, the organization must certify that it has controls in place to ensure that funds are properly accounted for and that it can provide accurate and timely financial information to interested parties. A local organization with annual revenue of at least $100,000 but less than $250,000 must certify that it accounts for its funds on an accrual basis in accordance with generally accepted accounting principles and that an audit of its fiscal operations is completed annually as described in section 950.203(a)(2), but such organization does not have to submit a copy of its audited financial statements with its CFC application, unless requested to do so by the LFCC or Director.

(iii) An organization seeking local eligibility in Puerto Rico, the U.S. Virgin Islands, the Commonwealth of Northern Mariana Islands, American Samoa, or Guam is exempt from the requirements of § 950.202(b), but the organization must include with its CFC application the appropriate documentation from its governing authority demonstrating its status as a charitable organization.

* * * * *

(e) *Local eligibility determinations.* The LFCC shall communicate its eligibility decisions by a date to be determined by OPM as part of the annual timetable issued by the Director under § 950.801(b). Denial of the application by the LFCC must be sent via U.S. Postal Service certified or registered mail with a return receipt requested. Approvals may be sent via U.S. Postal Service regular first class mail. Applicants denied eligibility may appeal in accordance with § 950.205.

* * * * *

(g) In order to determine whether an organization may participate in the campaign, the LFCC may request evidence of corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate. The LFCC will decide whether the organization has demonstrated, to the LFCC's satisfaction, that the organization has taken appropriate corrective action. Failure to demonstrate satisfactory corrective action or to respond to the LFCC's request for information within 10 business days of the date of the request may result in a determination that the organization will not be included in the local part of the Charity List.

§ 950.205    [Amended]

■ 14. In § 950.205, amend paragraph (c)(4) by removing the word "and" and adding to the end of the sentence the text "and supporting information to justify the reversal of the original decision".

■ 15. Amend § 950.301 as follows:
■ a. Revise the section heading and paragraph (a);
■ b. Revise paragraph (c);
■ c. In paragraph (d), remove the word "decertification" in the last sentence and add in its place the words "withdrawal of federation status";
■ d. In paragraph (e) introductory text, add the words "or international" after the word "national";
■ e. In paragraph (e)(1), remove the word "national list" and add the words "National or International part of the Charity List" in its place; and

■ f. Revise paragraph (e)(2).
The revisions read as follows:

§ 950.301    National and international federations eligibility.

(a) The Director may recognize national and international federations that conform to the requirements and are eligible to receive designations. The Director may from time to time place a moratorium on the recognition of national and international federations. In order to determine whether the Director will recognize a national or international federation, the Director may request evidence of corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate. The Director retains the ultimate authority to decide whether the federation has demonstrated, to the Director's satisfaction, that the federation has taken appropriate corrective action. Failure to demonstrate satisfactory corrective action or to respond to the Director's request for information within 10 business days of the date of the request may result in a determination that the federation will not be included in the Charity List.

* * * * *

(c) An organization may apply to the Director for inclusion as a national or international federation to participate in the CFC if the applicant has, as members of the proposed federation, 15 or more charitable organizations, in addition to the federation itself, that meet the eligibility criteria of §§ 950.202 and 950.203. The initial year an organization applies for federation status, it must submit the applications of all its proposed member organizations in addition to the federation application. A federation must re-establish eligibility each year, however only the applications of its new and former members that were not within the federation, as a CFC participant, in the previous year's campaign need accompany the annual federation application once an organization has obtained federation status, unless additional member applications are requested by the Director.

* * * * *

(e) * * *

(2) That it meets the eligibility requirements and public accountability standards contained in §§ 950.202 and 950.203. The federation can demonstrate that it has met the eligibility requirement in § 950.202(a) either through its own services, benefits, assistance or program activities or through its 15 members' activities.

(i) The federation must complete the certification set forth at § 950.203(a)(2) without regard to the amount of revenue reported on its IRS Form 990 and must provide a copy of its audited financial statements. The audited financial statements provided must verify that the federation is honoring designations made to each member organization by distributing a proportionate share of receipts based on donor designations to each member. The audit requirement is waived for newly created federations operating for less than a year as determined from the date of its IRS tax-exemption letter to the closing date of the CFC application period.

(ii) The federation must provide a listing of its board of directors, beginning and ending dates of each member's current term of office, and the board's meeting dates and locations for the year prior to the year of the campaign for which the organization is applying.

(iii) The federation must certify that it prepares and makes available to the public, upon request, an annual report that includes a full description of the organization's activities and supporting services and identifies its directors and chief administrative personnel. The federation must provide a copy of its most recently completed annual report covering the fiscal period ending not more than 18 months prior to January of the campaign year to which the federation is applying or the preceding calendar year. The annual report must also include an accurate description of the federation's membership dues and/or service charges received by the federation from the charitable organizations participating as members. The information must clearly present the amounts raised, the sources of contributions, the cost of fundraising, and how costs are recovered from donations.

\*     \*     \*     \*     \*

■ 16. Amend § 950.302 as follows:
■ a. Revise the section heading;
■ b. In paragraph (a), add the words "and international" after the word "National";
■ c. Revise paragraph (c); and
■ d. Remove paragraphs (d) and (e).
The revision reads as follows:

§ 950.302  Responsibilities of national and international federations.

\*     \*     \*     \*     \*

(c) Each federation, as fiscal agent for its member organizations, must ensure that Federal employee designations are honored in that each member organization receives its proportionate share of receipts based on the results of

each individual campaign. The proportionate share of receipts is determined by donor designations to the individual member organization as compared to total campaign designations.

■ 17. Amend § 950.303 as follows:
■ a. Revise paragraph (a);
■ b. Revise paragraph (c);
■ c. In paragraph (d), remove the word "decertification" in the last sentence and add in its place the words "withdrawal of federation status"; and
■ d. Revise paragraph (e)(2).
The revisions read as follows:

§ 950.303  Local federations' eligibility.

(a) LFCC's must approve local federations that meet the applicable requirements, except that in order to determine whether the LFCC must recognize a local federation, the LFCC may request evidence of corrective action regarding any prior violation of regulation or directive, sanction, or penalty, as appropriate. A local federation that has been notified that it will not be included on the Local part of the Charity List because of failure to correct a prior violation may appeal the LFCC's decision to the Director in accordance with § 950.205(b). The Director retains the ultimate authority to decide whether the local federation has demonstrated, to the Director's satisfaction, that the local federation has taken appropriate corrective action. Failure to demonstrate satisfactory corrective action or to respond to a request by the LFCC or Director for information within 10 business days of the date of the request may result in a determination that the local federation will not be included in the Local part of the Charity List.

\*     \*     \*     \*     \*

(c) An organization may apply to the LFCC for inclusion as a local federation to participate in the CFC if the applicant has as members of the proposed federation 15 or more charitable organizations, in addition to the federation itself, that meet the eligibility criteria of §§ 950.202, 950.203 and 950.204. The initial year an organization applies for federation status, it must submit to the LFCC applications of all its proposed member organizations in addition to the federation application. A federation must re-establish eligibility each year, however only the applications of its new and former members that were not within the federation, as a CFC participant, in the previous year's campaign need accompany the annual federation application once an organization has obtained federation status, unless

additional member applications are requested by the LFCC.

\*     \*     \*     \*     \*

(e) \* \* \*

(2) That it meets the eligibility requirements contained in § 950.204 (including eligibility requirements and public accountability standards of §§ 950.202 and 950.203 that are incorporated by reference). The federation can demonstrate that it has met the eligibility requirement in § 950.204(b)(1) either through its own services, benefits, assistance or program activities or through its 15 members' activities.

(i) The federation must complete the certification set forth at § 950.203(a)(2) without regard to the amount of revenue reported on its IRS Form 990 and must provide a copy of its audited financial statements. The audited financial statements provided must verify that the federation is honoring designations made to each member organization by distributing a proportionate share of receipts based on donor designations to each member. The audit requirement is waived for newly created federations operating for less than a year as determined from the date of its IRS tax-exemption letter to the closing date of the CFC application period.

(ii) The federation must provide a listing of its board of directors, beginning and ending dates of each member's current term of office, and the board's meeting dates and locations for the year prior to the year of the campaign for which the organization is applying.

(iii) The federation must certify that it prepares and makes available to the public, upon request, an annual report that includes a full description of the organization's activities and supporting services and identifies its directors and chief administrative personnel. The federation must provide a copy of its most recently completed annual report covering the fiscal year ending not more than 18 months prior to January of the campaign year to which the federation is applying or the preceding calendar year. The annual report must also include an accurate description of the federation's membership dues and/or service charges received by the federation from the charitable organizations participating as members. The information must clearly present the amounts raised, the sources of contributions, the cost of fundraising, and how costs are recovered from donations.

\*     \*     \*     \*     \*

■ 18. In § 950.304, revise paragraph (c) and remove paragraphs (d) and (e) to read as follows:

### § 950.304    Responsibilities of local federations.

\*    \*    \*    \*    \*

(c) Each federation, as fiscal agent for its member organizations, must ensure that Federal employee designations are honored in that each member organization receives its proportionate share of receipts based on the results of each individual campaign. The proportionate share of receipts is determined by donor designations to the individual member organization as compared to total campaign designations.

■ 19. Amend § 950.401 as follows:
■ a. In paragraph (a), remove the word "printed" in the second sentence and add in its place "developed";
■ b. In the first sentence of paragraph (e), add the words "source of" after the word "official", remove the word "package", and add the words "either in hard copy or electronic format" after the word "available";
■ c. In paragraph (f), remove the word "package" in the first and second sentences and add in its place "design";
■ d. Revise the introductory paragraph of (g)(1);
■ e. Revise paragraphs (g)(2) through (j); and
■ f. In paragraph (k), remove the word "year" and add in its place "period", and add to the end of the sentence the text "or if the LFCC can demonstrate to the satisfaction of the Director that it can make the same information available electronically without disrupting donor opportunities to contribute."

The revisions read as follows:

### § 950.401    Campaign and publicity information.

\*    \*    \*    \*    \*

(g) \* \* \*
(1) OPM will include in the annual distribution of the National/International and International parts of the Charity List explicit instructions for the production of the Charity List and language to be reproduced verbatim in the introductory section. The general information provided will include:

\*    \*    \*    \*    \*

(2) Following the introductory section, the Charity List will consist of three parts—the National/International, the International, and the Local. The order of these three parts will be annually rotated in accordance with OPM instructions. The National/International and International parts

will consist of faithful reproductions of the parts of National/International and International organizations, including federations, provided by OPM. The third part, the Local part, is determined by the LFCC. The order of listing of the federated and independent organizations within the three separate parts will be determined by random drawing. The order of organizations within each federation will be determined by the federation. The order within the National/International, International and Local independent groups will be alphabetical. Absent specific instructions from OPM to the contrary, each participating organization and federated group listing must include a description, not to exceed 25 words, of its services and programs, plus a telephone number for the Federal donor to request further information about the group's services, benefits, and administrative expenses. Each listing will include the organization's administration and fundraising percentage as calculated pursuant to § 950.203(a)(4). Neither the percentage of administrative and fundraising expenses, nor the telephone number count toward the 25-word statement.

(3) Each federation and charitable organization will be assigned a code in a manner determined by the Director. At the beginning of each federated group's listing will be the federation's name, code number, 25-word statement, percentage of administrative and fundraising expenses, and telephone number. The sections of the Charity List where the independent organizations are listed will begin with the titles National/International Independent Organizations, International Independent Organizations and Local Independent Organizations, respectively.

(h) Omission of an eligible charitable organization from the Charity List may require that the Charity List be corrected and reissued. Such an omission must be reported to OPM immediately upon discovery. The Director or LFCC may direct that the cost of such correction and reissue be borne by the PCFO or charged to CFC administrative expenses.

(i) *Listing of National and Local Affiliate.* Listing of a national organization, as well as its local affiliate organization, is permitted. Each national or local organization must individually meet all of the eligibility criteria and submit independent documentation as required in § 950.202, § 950.203 or § 950.204 to be included in the Charity List, except that a local affiliate of a national organization that is not separately incorporated, in lieu of its own 26 U.S.C. 501(c)(3) tax exemption

letter and, to the extent required by § 950.204(b)(2)(ii), audited financial statements, may submit the national organization's 26 U.S.C. 501(c)(3) tax exemption letter and audited financial statements, but must provide its own pro forma IRS Form 990, page 1 and Part V only, for CFC purposes. The local organization must submit a certification from the Chief Executive Officer (CEO) or CEO equivalent of the national organization stating that it operates as a bonafide chapter or affiliate in good standing of the national organization and is covered by the national organization's 26 U.S.C. 501(c)(3) tax exemption, IRS Form 990 and audited financial statements. A national organization may waive its listing in the National/International or International parts of the Charity List in favor of its local affiliate by following the procedures set forth in § 950.201(c).

(j) *Multiple Listing Prohibited.* Except as provided in paragraph (i) of this section, once an organization is deemed eligible, it is entitled to only one listing in the Charity List, regardless of the number of federations to which that organization belongs.

\*    \*    \*    \*    \*

■ 20. Amend § 950.402 as follows:
■ a. In paragraph (a), remove the word "year" and add in its place "period";
■ b. In paragraph (c), add to the end of the second sentence the text ", except in cases of emergencies or disasters as approved by the Director", and add a new third sentence; and
■ c. In paragraph (d), revise the last sentence.

The addition and revision read as follows:

### § 950.402    Pledge Form.

\*    \*    \*    \*    \*

(c) \* \* \* This restriction does not apply upon implementation of electronic technology that removes the geographic restrictions on giving as announced by the Director.

(d) \* \* \* For example, if an employee indicates a total gift of $100 on the pledge form, but designates $50 to one organization and $25 to each of three other organizations, the PCFO must adjust the pledges proportionately by entering a pledge of $40 to the first organization and $20 to each of the three other organizations.

### § 950.403    [Removed]

■ 21. Remove § 950.403.

■ 22. Revise § 950.601 to read as follows:

## § 950.601  Release of contributor information.

(a) The pledge form, designed pursuant to § 950.402, must allow a contributor to indicate if the contributor does wish his or her name, contribution amount, and home contact information forwarded to the charitable organization or organizations designated. A PCFO's failure to honor a contributor's wish may result in the PCFO being sanctioned or penalized as provided for in § 950.603(a).

(b) The pledge form shall permit a contributor to specify which information, if any, he or she wishes released to organizations receiving his or her donations.

(c) It is the responsibility of the PCFO to forward the contributor information for those who have indicated that they wish this information released to the recipient organization directly, if the organization is independent, and to the organization's federation if the organization is a member of a federation. The PCFO may not sell or make any other use of this information.

■ 23. In § 950.602, revise paragraph (b) to read as follows:

## § 950.602  Solicitation methods.

*    *    *    *    *

(b) Special CFC fundraising events, such as raffles, lotteries, auctions, bake sales, carnivals, athletic events, or other activities not specifically provided for in these regulations are permitted during the campaign period if approved by the appropriate agency head or government official, consistent with agency ethics regulations. CFC special fundraising events should be undertaken in the spirit of generating interest in the CFC and be open to all individuals without regard to whether an individual participates in the CFC. Chances to win must be disassociated from amount of contributions, if any. Raffle prizes should be modest in nature and value. Examples of appropriate raffle prizes may include opportunities for lunch with Agency Officials, agency parking spaces for a specific time period, and gifts of minimal financial value. Any special CFC fundraising event and prize or gift should be approved in advance by the Agency's ethics official.

*    *    *    *    *

■ 24. In § 950.603, revise the section heading and paragraph (a) to read as follows:

## § 950.603  Sanctions and penalties.

(a)(1) The Director may impose sanctions or penalties on a federation, charitable organization or PCFO for violating these regulations, other applicable provisions of law, or any directive or instruction from the Director. The Director will determine the appropriate sanction and/or penalty, up to and including expulsion from the CFC. In determining the appropriate sanction and/or penalty, the Director will consider previous violations, harm to Federal employee confidence in the CFC, and any other relevant factors. The Director may bar a federation or charitable organization from serving as PCFO, for a period not to exceed one campaign period, if it is determined that that the federation or charitable organization has violated any provisions of these regulations. A federation, charitable organization or PCFO will be notified in writing of the Director's intent to sanction and/or penalize and will have 10 business days from the date of receipt of the notice to submit a written response. The Director's final decision will be communicated in writing to the federation, charitable organization, or PCFO, with a copy to the appropriate LFCC.

(2) The Director may withdraw federation status with respect to a national, international or local federation that makes a false certification or fails to comply with any directive of the Director, or to respond in a timely fashion to a request by the Director or LFCC for information or cooperation, including with respect to an investigation or in the settlement of disbursements. The LFCC may recommend the withdrawal of federation status with respect to a local federation. As stated in §§ 950.301(d) and 950.303(d), failure to meet minimum federation eligibility requirements shall not be deemed to be a withdrawal of federation status subject to a hearing on the record. Eligibility decisions shall follow the procedures in §§ 950.301(f) and 950.303(f). A federation will be notified in writing of the Director's intent to withdraw federation status for a period of up to one campaign period and will have 10 business days from the date of receipt of the notice to submit a written response. On receipt of the response, or in the absence of a timely response, the Director or representative shall set a date, time, and place for a hearing. The federation will be notified at least 10 business days in advance of the hearing. A hearing shall be conducted by a hearing officer designated by the Director unless it is waived in writing by the federation. After the hearing is held, or after the Director's receipt of the federation's written waiver of the hearing, the Director shall make a final decision on the record, taking into consideration the recommendation submitted by the hearing officer. The Director's final decision will be communicated in writing to the federation, with a copy to the appropriate LFCC.

(3) A federation, charitable organization or PCFO sanctioned or penalized under any provision of these regulations must demonstrate to the satisfaction of the Director that it has taken corrective action to resolve the reason for sanction and/or penalty and has implemented reasonable and appropriate controls to ensure that the situation will not occur again prior to being allowed to participate in subsequent CFCs and/or serving as a PCFO for a campaign.

*    *    *    *    *

■ 25. Revise § 950.604 to read as follows:

## § 950.604  Records retention.

Federations, PCFOs and other participants in the CFC shall retain documents pertinent to the campaign for at least three completed campaign periods. For example, documentation regarding the 2006 campaign must be retained through the completion of the 2007, 2008 and 2009 campaign periods (i.e. until early 2011). Documents requested by OPM must be made available within 10 business days of the request.

■ 26. Amend § 950.801 as follows:
■ a. Revise paragraphs (a)(1) through (4); and
■ b. In paragraph (b), add the words "and international" in the first sentence after the word "national", and add a new second sentence.

The revisions and addition read as follows:

## § 950.801  Campaign schedule.

(a) * * *

(1) During a period between December and January, as determined by the Director, OPM will accept applications from organizations seeking to be listed on the National/International and International parts of the Charity List.

(2) The Director will determine a date after the closing of the receipt of applications by which the Director will issue notices to each national and international applicant organization of the results of the Director's review. The date will be part of the annual timetable issued by the Director under § 950.801(b).

(3) Local Federal Coordinating Committees must select a PCFO no later than a date to be determined by OPM. The date will be part of the annual

**67290**    **Federal Register** / Vol. 71, No. 223 / Monday, November 20, 2006 / Rules and Regulations

timetable issued by the Director under § 950.801(b).

(4) The Director will issue the National/International and International parts of the Charity List to all local campaigns by a date to be determined by OPM. The date will be part of the annual timetable issued by the Director under § 950.801(b).

\*    \*    \*    \*    \*

(b) \* \* \* The Director will issue the timetable for a campaign period no later than October 31 of the year preceding the campaign period.

■ 27. Amend § 950.901 as follows:
■ a. In paragraph (c)(1), remove the text "printed or purchased from a central source" and add in its place "reproduced", and remove the word "distributed" and add in its place "made available";

■ b. In paragraph (c)(2), add the word "paper" after the word "each", and add the text "or an acceptable electronic version" after the word "authorization";
■ c. In paragraph (f)(1), add the text "pay period number," after the word "period,"; and
■ d. Revise paragraphs (i)(1) and (i)(2); The revisions read as follows:

### § 950.901   Payroll allotment.

\*    \*    \*    \*    \*

(i) \* \* \*

(1) The PCFO shall notify the federations, national and international organizations, and local organizations as soon as practicable after the completion of the campaign, but in no case later than a date to be determined by OPM, of the amounts, if any, designated to them and their member agencies and of the amounts of the undesignated funds,

if any, allocated to them. The date will be part of the annual timetable issued by the Director under § 950.801(b).

(2) The PCFO is responsible for the accuracy of disbursements it transmits to recipients. It shall transmit disbursements at least quarterly, minus the approved proportionate share for administrative cost reimbursement and the PCFO fee set forth in § 950.106. It shall remit the contributions to each organization or to the federation, if any, of which the organization is a member. The PCFO will distribute all CFC receipts beginning April 1, and quarterly thereafter. At the close of each disbursement period, the PCFO's CFC account shall have a balance of zero.

\*    \*    \*    \*    \*

[FR Doc. E6–19628 Filed 11–17–06; 8:45 am]
**BILLING CODE 6325–46–P**

This page can be found on the web at the following url:
http://www.opm.gov/cfc/opmmemos/2006/2006-21.asp

# U.S. Office of Personnel Management
Ensuring the Federal Government has an effective civilian workforce

 **Donors**    **Campaigns**    **Charities**

   

Combined Federal Campaign



**Search CFC:**



- Welcome
- Top of the News
- Search Options
- Campaign Contacts
- 10 Questions From Donors About Charities
- Accountability
- Regulations and Guidance
- Charity Qualifications and Materials
- Campaign Results, Trends and History
- FAQs
- Glossary
- Archives
- Email CFC

- **USA.gov**

## CFC MEMORANDUM 2006-21

November 27, 2006

**TO:**      **NATIONAL/INTERNATIONAL FEDERATIONS AND INDEPENDENT ORGANIZATIONS**

**FROM:**    **MARA T. PATERMASTER DIRECTOR OFFICE OF CFC OPERATIONS**

**SUBJECT: GUIDANCE ON 2007 CFC NATIONAL/INTERNATIONAL APPLICATIONS RESULTING FROM CHANGES TO THE CFC REGULATIONS (EFFECTIVE NOVEMBER 20, 2006)**

This memorandum provides guidance on changes to the 2007 CFC Application for National/International Organizations as a result of the revisions to the CFC regulations that went into effect on November 20, 2006. This document modifies CFC Memorandum 2004-10 and prior guidance to conform to the current regulations. Part I of this guidance applies to national/international independent organizations as well as federation members. (Note: under the new regulations the term "independent" replaced the term "unaffiliated") Part II of this guidance applies only to national/international federations.

The following changes and clarifications are in effect for the 2007 application.

- All national/international applicants must provide a schedule of real services, benefits, assistance, or program activities provided within the past three years, the state or country of service, and the year of service. The description must be sufficient for OPM to determine that the service, benefit,

assistance, or program activity was not de minimis.

- Private foundations and units of government are not eligible to participate in the CFC. OPM will verify each applicant's I.R.S. Code § 501(c)(3) tax-exempt status with the IRS.
- OPM no longer evaluates whether revenues and expenses in the audited financial statements reconcile with those contained in the IRS Form 990
- Applicants with administrative and fundraising rates that exceed 25% of total revenue are no longer required to submit an explanation and formal plan for reduction of the rate.
- Independent organizations and federation members are not required to submit an annual report or information on board of directors meeting dates or locations, or directors' terms of office. This requirement is retained for federations.
- A federation must reestablish eligibility each year. However, only the applications of its new and former members that were not within the federation, as a CFC participant, in the previous year's campaign need accompany the annual federation application once an organization has obtained federation status.

Each organization that is deemed eligible to participate in the CFC is entitled to only one listing in the CFC brochure, regardless of the number of federations to which that organization belongs, with the exception that a national organization and its local affiliate may both be listed if the requirements of 5 CFR § 950.401(i) are met. If it comes to the attention of OPM that an organization has applied more than once, OPM will contact the organization directly to request written confirmation of the one application to be considered. In the absence of a satisfactory response, all of the applications may be denied.

## PART I - Requirements for National/International Independent Organizations and Federation Members

1. **Statement of Real Services, Benefits, Assistance, or Program Activities (*Attachment A*)**

   a. In accordance with 5 CFR §950.202(a) each organization seeking national/international list eligibility must certify that it provides or conducts real services, benefits, assistance, or program activities in 15 or more different states or one foreign country over the three-year period immediately preceding the start of the year involved (i.e. for the 2007 campaign period, services within the time period 2004-2006).

In addition to the above certification, the application must attach a schedule, called **Attachment A**, which details the services in each state (minimum 15) or foreign country (minimum 1), including the year of service. The schedule must make a clear showing of national or international presence through the provision of services, benefits, assistance, or program activities. *OPM will not accept publications or other documents in lieu of a schedule detailing this information.*

"De minimis" services or benefits will not be accepted as a basis for qualification as a national or international organization. OPM, in its sole discretion, will determine whether services, benefits, assistance, or program activities are "de minimis" based on whether, under the facts and circumstances presented, they fail to constitute more than a minimal level, type or amount.

Factors that OPM will consider in determining whether an organization's services, benefits, assistance, or program activities are de minimis include, but are not limited to:

- nature and extent of the service, benefit, assistance, or activity;
- frequency, continuity, and duration;
- impact on, or benefit to, beneficiaries;
- number of beneficiaries.

Participating organizations are required to certify (Statement #3) that services, benefits, assistance, or program activities affecting human health and welfare were provided in the previous calendar year. Such services must appear in **Attachment A** of the application. Failure to list any that affect human health and welfare for the year prior to the application year will result in a denial of the application.

Suggestions for appropriate **Attachment A** formats are available at www.opm.gov/cfc and are attached to this guidance memorandum. **Suggestions for Attachment A** [67 KB], CFC Memo 2003-9, is superceded.

b. **Web-based Services**

In order to meet the requirements of 5 CFR §950.202(a), the **Attachment A** for web– based service organizations must include service logs or other records indicating the **geographic distribution of users in each state**, and

must demonstrate the **scope of services received** by users over the three-year period immediately preceding the start of the campaign year involved.

In addition to the above required information, **two of the three** following types of information **must** be included in the **Attachment A** to further demonstrate the provision of real services, benefits, assistance, or program activities:

- Evidence that recipients, including members of the general public, dues paying members or affiliate organizations, have registered for use of the website;
- Summary reports that document **customer feedback**, through service satisfaction or utilization surveys or other mechanisms;
- Documented evidence that recipients of web-based services **paid a fee** for the service.

Reports that reflect only the number of hits to a website are not sufficient, by themselves, to establish the provision of real services in **Attachment A**.

## 2. IRS Determination Letter (*Attachment B*)

### a. 501(c)(3) Status
Every CFC applicant must demonstrate that it is recognized by the Internal Revenue Service (IRS) as tax-exempt under 26 U.S.C. §501(c)(3) to which contributions are tax–deductible pursuant to 26 U.S.C. §170(c)(2) and that the organization is classified as a public charity under 26 U.S.C. §509(a). *Private foundations and units of government are not eligible to participate in the CFC.*

### b. IRS Verification
Each applicant's 501(c)(3) status will be verified with the IRS. Applicants whose current 501(c)(3) status cannot be confirmed by the IRS will be denied participation. OPM encourages organizations to request current letters from the IRS confirming their tax-exempt status. This request can be made by contacting the IRS at (877) 829-5500.

National/international organizations that are part of an IRS group exemption must provide a copy of the IRS letter granting the group exemption, as well as the list of subordinates that are covered by the group exemption. The EIN on the applicant's Form 990 must match the EIN on the IRS determination letter.

Bona–fide chapters or affiliates of a national organization that do not have an IRS determination letter for the local organization must provide a certification signed by either the Chief Executive Officer (CEO) or CEO equivalent of the national organization. Such certification must state that the local charitable organization operates as a bona–fide chapter or affiliate in good standing of the national organization and is covered by the national organization's 501(c)(3) tax–exemption, IRS Form 990 and audited financial statements, to the extent required by regulation. A copy of the national organization's 501(c)(3) letter must accompany the CEO's certification.

3. **Audited Financial Statements (*Attachment C*)**

**Reporting Requirements**
All national/international organizations are required to submit audited financial statements, regardless of total revenues. OPM no longer evaluates whether the revenues and expenses in the audited financial statements reconcile with the IRS Form 990 (although the IRS Form 990 does contain an internal reconciliation against audited financial statements at Part IV-A & B).

Organizations seeking national/international CFC eligibility are required to account for their funds in accordance with Generally Accepted Accounting Principles (GAAP), which requires an accrual based accounting system. Both the IRS Form 990 and the audited financial statements must be prepared using the accrual method. CFC eligibility will be denied to organizations using any method of accounting other than the accrual basis (such as the cash basis, modified cash basis, and modified accrual basis of accounting.)

4. **IRS Form 990 (*Attachment D*)**

a. A national/international applicant must certify, as appropriate, that it has included a copy of the IRS Form 990 that was submitted to the IRS; or, that it is not required by the IRS to file a Form 990 but has completed a pro forma copy for CFC purposes only.

An organization that is required to submit an IRS Form 990 on an annual basis is not permitted to submit a pro forma document with its application. An organization that files with the IRS must submit with its application a complete IRS Form 990, including all supplemental statements and Schedule A, if applicable, to be eligible for

the CFC regardless of whether or not the IRS requires the organization to file the Form 990. IRS Forms 990EZ, 990PF, and comparable forms will not be accepted. However, smaller organizations that file Form 990EZ may submit it with page 1 and Part V of the Form 990 attached.

b. **Officer, Director, Trustee and Key Employee Compensation Must be Set Forth in IRS Form 990**
   Part V of the IRS Form 990 requires the organization to include a "List of officers, directors, trustees, and key employees (List each one even if not compensated)." An organization's IRS Form 990 that does not include a list of the officers, Board of Directors, trustees and key employees, and their compensation, if any, is incomplete and will result in a denial. If an officer, director, trustee, or key employee is not compensated, the compensation column must reflect $0.

5. **Administrative and Fundraising Rate (AFR)**

   OPM no longer requires an explanation and formal plan to reduce administrative and fundraising expenses if an organization's AFR exceeds 25 percent. Applicants are still required to calculate and provide their AFR. If the organization is admitted, its AFR will appear next to the organization's listing.

## PART II - Requirements for National/International Federations

National/international federations must adhere to the guidance provided above, in Part I of this guidance, with the following **exceptions** and additions. This section does not pertain to independent organizations or federation members.

A new federation (one that did not participate in the prior campaign year) must submit, along with its own application, complete applications for all of its member organizations, including each organization's administrative and fundraising rate.

A federation that participated in the prior year must submit a complete application for itself as well as each member that is new to the federation. A federation member is considered to be new even if it participated in the prior year as an independent organization or as a member of another federation, or was denied participation as a member of the applicant federation in the prior year. A federation

must submit the complete application of any new member organization upon OPM's request.

6. **Statement of Real Services, Benefits, Assistance, or Program Activities (*Attachment A*)**

   Federations must provide as their ***Attachment A***, a list of all eligible member organizations, including their legal names, EINs, and administrative and fundraising rates. Each federation must have at least 15 member organizations, not including itself, that meet the eligibility criteria. Where a federation applicant has less than 15 eligible members, the federation and/or any of its applicant members that meet national/international eligibility will be considered as independent organizations and the federation will also be considered as an independent organization which must meet national/international eligibility criteria. If admitted, all funds and campaign communications will be sent, as appropriate, directly to the participating independent organization.

7. **Attachment C - Audited Financial Statements**

   Federations are required to submit audited financial statements, regardless of the amount of total revenues. OPM no longer requires that the audited financial statements reconcile with the IRS Form 990 (although the IRS Form 990 does contain an internal reconciliation against audited financial statements at Part IV-A & B).

8. **Annual Report (Attachment F)**

   a. **Contents**
      Federations are required to submit an annual report that is made available to the public. Annual reports or their substitutes (as defined in CFC regulations) must include a description of the organization's services or activities during the year covered by the report and identify the Board of Directors and chief administrative personnel. OPM will not accept an annual report that contains only a description of mission and goals or historical information about services and activities without a defined timeframe. Federation members and independent organizations are no longer required to submit an annual report as part of the application.

   b. **Disclosure of Federation Dues/Fees in Annual Report**

Each federation is required to include in its annual report a statement that sets forth details regarding member dues and/or service fee arrangements with its member organizations.

Dues or fees refers to any charge, direct or indirect, that may be deducted from donor contributions or billed for pledge processing or other services related to workplace fundraising. Federal donors should understand how much of their actual CFC contribution reaches charities. If fees are not deducted, but instead are billed, federations must state this.

The role of federations in workplace fundraising is to provide charities wider access to employee contributions and to provide marketing and other services, at a cost to charities. While these transactions are part of an agreement between the charity and the federation, Federal employees must be provided complete information regarding the actual percentage of their contribution that goes to the charitable organizations they designate.

---

CFC Main | Other CFC Memos

**U.S. Office of Personnel Management** 1900 E Street NW, Washington, DC 20415 | (202) 606-1800 | TTY (202) 606-2532 

Case 1:07-cv-01249-JDB    Document 8-19    Filed 07/18/2007    Page 1 of 3

**"(b)** No provision of this Act [see Tables for classification] shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted.

**"(c)** No suit, action, or other proceeding lawfully commenced by or against the Director of the Office of Personnel Management or the members of the Merit Systems Protection Board, or officers or employees thereof, in their official capacity or in relation to the discharge of their official duties, as in effect immediately before the effective date of this Act [see this section], shall abate by reason of the enactment of this Act [see Tables for classification]. Determinations with respect to any such suit, action, or other proceeding shall be made as if this Act had not been enacted."

**Short Title**

**1992 Amendments.** Pub.L. 102–378, § 1(a), Oct. 2, 1992, 106 Stat. 1346, provided that: "This Act [enacting sections 1105, 2304,

2204,  1209
3152,  3323,  3324,
3594,  4109,
5304,  5306,
5372,  5375,
5519,  5532,
5545,  5547,
5948,  6123,
7113,  7115,
8337,  8339,
8423,  8425,
8440a,  8461,
8905,  and

"1978 Amendments. Section 1 of Pub.L. 95–454 provided that: "This Act [see Tables for classification] may be cited as the 'Civil Service Reform Act of 1978'."

Section 3 of Pub.L. 95–454 provided that: "It is the policy of the United States

**"(1)** in order to provide the people of the United States with a competent, honest, and productive Federal work force reflective of the Nation's diversity, and to improve the quality of public service, Federal personnel management should be implemented consistent with merit system principles and free from prohibited personnel practices;

**"(2)** the merit system principles which shall govern in the competitive service and in the executive branch of the Federal Government should be expressly stated to furnish guidance to Federal agencies in carrying out their responsibilities in administering the public business, and prohibited personnel practices should be statutorily defined to enable Federal employees to avoid conduct which undermines the merit system principles and the integrity of the merit system;

**"(3)** Federal employees should receive appropriate protection through increasing the authority and powers of the Merit Systems Protection Board in processing hearings and appeals affecting Federal employees;

**"(4)** the authority and power of the Special Counsel should be increased so that the Special Counsel may investigate allegations involving prohibited personnel practices and reprisals against Federal employees for the lawful disclosure of certain information and may file complaints against agency officials and employees who engage in such conduct;

**"(5)** the function of filling positions and other personnel functions in the competitive service and in the executive branch should be delegated in appropriate cases to the agencies to expedite processing appointments and other per-

**1984 Amendments.** Pub.L. 98–224, § 1, Mar. 2, 1984, 98 Stat. 47, provided that: "This Act [amending sections 1304, 3323, 4103, 4109, 7104, and 7122 of this title] may be cited as the 'Civil Service Miscellaneous Amendments Act of 1983'."

personnel actions, with the control and oversight of this delegation being maintained by the Office of Personnel Management; and

**"(6)** a Senior Executive Service should be established to provide the flexibility needed by agencies to recruit and retain the highly competent and qualified executives needed to provide more effective management of agencies and their functions, and the more expeditious administration of the public business;

**"(7)** in appropriate instances, pay increases should be based on quality of performance rather than length of service;

**"(8)** research programs and demonstration projects should be authorized to permit Federal agencies to experiment, subject to congressional oversight, with new and different personnel management concepts in controlled situations to achieve more efficient management of the Government's human resources and greater productivity in the delivery of service to the public;

**"(9)** the training program of the Government should include retraining of employees for positions in other agencies to avoid separations during reductions in force and the loss to the Government of the knowledge and experience that these employees possess; and

**"(10)** the right of Federal employees to organize, bargain collectively, and participate through labor organizations in decisions which affect them, with full regard for the public interest and the effective conduct of public business, should be specifically recognized in statute."

**Combined Federal Campaign Brochure List and General Agencies Designation Option for International Agencies.** Pub.L. 102–393, Title V, § 632, Oct. 6, 1992, 106 Stat. 1763, provided that: "Notwithstanding any other provision of law, beginning October 1, 1992, and thereafter, no funds made available to the Office of Personnel Management may be used to prepare, promulgate, or implement any rules or regulations relating to the Combined Federal Campaign unless such rules or regulations include a Combined Federal Campaign brochure list and general designation option solely for

international agencies, which list (listed agencies) by Federation in the case of affiliated agencies) and option shall include only those international agencies that elect in their annual application to be listed under such list and option rather than under the national agencies list and option: *Provided*, That such limitation on the use of funds shall not apply to any activities related to the 1992 Combined Federal Campaign."

**Funds for Preparation, Promulgation, or Implementation of Regulations Relating to Combined Federal Campaign; Eligibility Criteria**

Pub.L. 100–202, § 101(m) [Title VI, § 618], Dec. 22, 1987, 101 Stat. 1329–390, 101 Stat. 1329–423, provided that:

**"(1)** None of the funds appropriated by this Act [Pub.L. 100–202, Dec. 22, 1987, 101 Stat. 1329] or any other Act in this or any fiscal year hereafter, may be used in preparing, promulgating, implementing, or enforcing any rules or regulations relating to the Combined Federal Campaign if such regulations are not in conformance with

**"(b)(1)(A)** Any requirements for eligibility to receive contributions through the Combined Federal Campaign shall not, to the extent that such requirements relate to litigation, public-policy advocacy, or attempting to influence legislation, be any more restrictive than any requirements established with respect to those subject matters under section 501(c)(3) or 501(h) [section 501(c)(3) or (h) of Title 26, Internal Revenue Code].

**"(B)** Any requirements for eligibility to receive contributions through the Combined Federal Campaign shall, to the extent that such requirements relate to any subject matter other than one referred to in subparagraph (A), remain the same as the criteria in the 1984 regulations, except as otherwise provided in this section.

**"(C)** Notwithstanding any requirement referred to in subparagraph (A) or (B), for purposes of any Combined Federal Campaign—

**"(i)** any voluntary agency or federated group which was a named plaintiff as of September 1, 1987, in a case brought in the United States District Court for the District of Columbia, and

designated as Civil Action No. 83-0928 or 86-1367, and

"(ii) The Federal Employee Education and Assistance Fund,

shall be considered to have national eligibility.

"(D) Public accountability standards shall remain similar to the standards which were by regulation established with respect to the 1984–1987 Combined Federal Campaigns, except that the Office of Personnel Management shall prescribe regulations under which a voluntary agency or federated group which does not exceed a certain size (as established under such regulations) may submit a copy of an appropriate Federal tax return, rather than complying with any independent auditing requirements which would otherwise apply.

"(2)(A) A voluntary agency or federated group shall, for purposes of any Combined Federal Campaign in any year, be considered to have national eligibility if such agency or group—

"(i) complies with all requirements for eligibility to receive contributions through the Combined Federal Campaign, without regard to any requirements relating to 'local presence'; and

"(ii) demonstrates that it provided services, benefits, or assistance, or otherwise conducted program activities, in—

"(I) 15 or more different States over the 3-year period immediately preceding the year in which it is involved; or

"(II) several foreign countries or several parts of a foreign country.

For purposes of this subparagraph, an agency or federated group shall be considered to have conducted program activities in the required number of States, countries, or parts of a country, over the period of years involved, if such agency or group conducted program activities in such number of States, countries, or parts either in any single year during such period or in the aggregate over the course of such period, provided that no State, country, or part of a country is counted more than once.

"(B) Notwithstanding any other provisions, eligibility requirements relating to International Services Agencies shall remain at least as inclusive as existing requirements.

300

federated group which attains national eligibility under subparagraph (A), and of the International Services Agencies, which is a member ... shall be considered to have satisfied any requirements relating to local presence.

"(3)(A) If a federated group is eligible to receive donations in a Combined Federal Campaign, whether on a national level (pursuant to certification by the Office) or a local level (pursuant to certification by the local Federal coordinating committee), each voluntary agency which is a member of such group may, upon certification by the federated group, be considered eligible to participate on such national or local level, as the case may be.

"(B) Notwithstanding any provision of subparagraph (A)—

"(i) the Office may require a voluntary agency to provide information to support any certification submitted by a federated group with respect to such agency under subparagraph (A); and

"(ii) if a determination is made, in writing after notice and opportunity to submit written comments, that the information submitted by the voluntary agency does not satisfy the applicable eligibility requirements, such agency may be barred from participating in the Combined Federal Campaign on the national or local level, as the case may be, for a period not to exceed 1 campaign year.

"(4) The Office shall exercise oversight responsibility to ensure that—

"(A) regulations are uniformly and equitably implemented in all local combined Federal campaigns;

"(B) federated groups participating in a local combined Federal campaign are allowed to compete fairly for the role of principal combined fund organization;

"(C) federated groups participating in a local combined Federal campaign are afforded—

"(i) adequate opportunity to consult with the PCFO for the area involved before any plans are made final relating to the design or conduct of such campaign (including plans pertaining to any materials to be printed as part of the campaign);

"(ii) adequate opportunity to participate in campaign events and other related activities; and

"(iii) timely access to all reports, budgets, audits, and other records in the possession of, or under the control of, the PCFO for the areas involved; and

"(D) a federated group or voluntary agency found by the Office, by a decision issued after notice and opportunity to submit written comments, to have violated the regulations may be barred from serving as a PCFO for not to exceed 1 campaign year.

"(5) The Office shall prescribe regulations to ensure that PCFOs do not make inappropriate delegations of decision-making authority.

"(6)(A) The Office shall, in consultation with federated groups, establish a formula under which any undesignated contributions received in a local combined Federal campaign shall be allocated in any year.

"(B) Under the formula for the 1990 Combined Federal Campaign, all undesignated contributions received in a local campaign shall be allocated as follows:

"(i) 82 percent shall be allocated to the United Way.

"(ii) 7 percent of the amount to the International Services Agencies.

"(iii) 7 percent shall be allocated to the National Voluntary Health Agencies.

"(iv) 4 percent shall, after fair and careful consideration of all eligible federated groups and agencies, be allocated by the local Federal coordinating committee among any or all of the following:

"(I) National federated groups (other than any identified in clauses (i), (ii), or (iii)), except that a national federated group shall not be eligible under this subclause unless there are at least 15 members of such group participating in the local campaign, unless the members of such group collectively receive at least 4 percent of the designated contributions in the local campaign, and unless such group was granted national eligibility status for the 1987, 1988, 1989 or 1990 Combined Federal Campaign.

"(II) Local federated groups.

301

"(III) Any local, non-affiliated voluntary agency which receives at least 4 percent of the designated contributions in the local campaign.

"(C) The formula for the allocation set forth in subparagraph (B)—

"(i) shall be phased in over the course of the 1988 and 1989 Combined Federal Campaigns;

"(ii) shall be fully implemented with respect to the 1990 Combined Federal Campaigns; and

"(iii) shall, with respect to any Combined Federal Campaign thereafter, be adjusted based on the experience gained in the Combined Federal Campaigns referred to in clauses (i) and (ii).

"(D) Nothing in this paragraph shall apply with respect to any campaign conducted in a foreign country.

"(E) All appropriate steps shall be taken to encourage donors to make designated contributions.

"(7) The option for a donor to write in the name of a voluntary agency or federated group not listed in the campaign brochure to receive that individual's contribution in a local campaign shall be eliminated.

"(8) The name of any individual making a designated contribution in a campaign shall, upon request of the recipient voluntary agency or federated group, be released to such agency or group, unless the contributor indicates that his or her name is not to be released. Under no circumstance may the names of contributors be sold or otherwise released by such agency or group.

"(9)(A) The name of each participating voluntary agency and federated group, together with a brief description of their respective programs, shall be published in any information leaflet distributed to employees in a local combined Federal campaign. Agencies shall be arranged by federated group, with combined Federal campaign, organization code numbers corresponding to each such agency and group.

"(B) The requirement under subparagraph (A) relating to the inclusion of program descriptions may, at the discretion of a local Federal coordinating committee, be waived for a local campaign in any year if, in the immediately preceding campaign year, contributions received

through the local campaign totaled less than $100,000.

"(10) Employee coercion is not to be tolerated in the Combined Federal Campaign, and protections against employee coercion shall be strengthened and clarified.

"(11) The Office—

"(A) may not, after the date of the enactment of this Act [Dec. 22, 1987], grant national eligibility status to any federated group unless such group has at least 15 member voluntary agencies, each of which meets the requirements for national eligibility under paragraph (2)(A); and

"(B) may withdraw federation status from any federated group for a period of not to exceed 1 campaign year if it is determined, on the record after opportunity for a hearing, that the federated group has not complied with the regulatory requirements.

"(12) The Office may bar from participation in the Combined Federal Campaign, for a period not to exceed 1 campaign year, any voluntary agency which the Office determines, in writing, upon written notice and opportunity to submit written comments, did not comply with a reasonable request by the Office to furnish it with information relating to such agency's campaign accounting and auditing practices.

"(c) For purposes of this section, a voluntary agency or federated group having 'national eligibility' is one which is eligible to participate in each local domestic combined Federal campaign."

**Powers of President Unaffected Except by Express Provisions**

Section 904 of Pub.L. 95-454 provided that: "Except as otherwise expressly provided in this Act [see Tables for classification], no provision of this Act shall be construed to—

1 As amended July 11, 1978.

"(1) limit, curtail, abolish, or terminate any function of, or authority available to, the President which the President had immediately before the effective date of this Act [see note under this section]; or

"(2) limit, curtail, or terminate the President's authority to delegate, redelegate, or terminate any delegation of functions."

**Report on Productivity of Federal Workforce; Deadline**

Pub.L. 101-509, Title V, § 535, Nov. 5, 1990, 104 Stat. 1470, directed Office of Personnel Management to review and report to Congress, not later than 24 months after Nov. 5, 1990, on the productivity of the Federal workforce, such report to include recommendations with regard to (1) how productivity within the Federal workforce can be increased, the delivery of Government services improved, and the payroll costs of Government controlled through improved organization, training, advanced technology, and modern management practices, (2) the size, structure, and composition of the Federal workforce, (3) criteria for use by departments and agencies to determine the level of personnel necessary to accomplish their functions and goals, and (4) changes in Federal law, regulations, and administrative practices to promote economy, productivity, effectiveness, and managerial accountability within the Federal workforce.

**Reorganization Plans No. 1 and 2 of 1978 Superseded by Civil Service Reform Act of 1978**

Section 905 of Pub.L. 95-454 provided that: "Any provision in either Reorganization Plan Numbered 1 [set out in Appendix 1 to this title] or 2 [set out under this section] of 1978 inconsistent with any provision in this Act [see Tables for classification] is hereby superseded."

REORGANIZATION PLANS

REORGANIZATION PLAN NO. 2 OF 1978

43 F.R. 36037, 92 Stat. 3783

Prepared by the President and transmitted to the Senate and the House of Representatives in Congress assembled May 23, 1978, pursuant to the provisions of Chapter 9 of Title 5 of the United States Code [chapter 9 of this title].

REFORM OF PERSONNEL MANAGEMENT SYSTEM

**Part I. Office of Personnel Management**

**Section 101. Establishment of the Office of Personnel Management and its Director and Other Matters**

There is hereby established as an independent establishment in the Executive Branch the Office of Personnel Management (the "Office"). The head of the Office shall be the Director of the Office of Personnel Management (the "Director"), who shall be appointed by the President, by and with the advice and consent of the Senate, and shall be compensated at the rate now or hereafter provided for level I of the Executive Schedule [5 U.S.C.A. § 5313]. The position referred to in 5 U.S.C. 5109(b) [section 5109(b) of this title] is hereby abolished.

**Section 102. Transfer of Functions**

Except as otherwise specified in this Plan, all functions vested by statute in the United States Civil Service Commission, or the Chairman of said Commission, or the Boards of Examiners established by 5 U.S.C. 1105 [section 1105 of this title] are hereby transferred to the Director of the Office of Personnel Management.

**Section 103. Deputy Director and Associate Directors**

(a) There shall be within the Office a Deputy Director who shall be appointed by the President by and with the advice and consent of the Senate and who shall be compensated at the rate now or hereafter provided for level III of the Executive Schedule [5 U.S.C. § 5314]. The Deputy Director shall perform such functions as the Director may from time to time prescribe and shall act as Director during the absence or disability of the Director or in the event of a vacancy in the Office of the Director.

(b) There shall be within the Office not more than five Associate Directors, who shall be appointed by the Director in the excepted service, shall have such titles as the Director shall from time to time determine, and shall receive compensation at the rate now or hereafter provided for level IV of the Executive Schedule [5 U.S.C.A. § 5315].

**Section 104. Functions of the Director**

The functions of the Director shall include, but not be limited to, the following:

(a) Aiding the President, as the President may request, in preparing such rules as the President prescribes, for the administration of civilian employment now within the jurisdiction of the United States Civil Service Commission;

(b) Advising the President, as the President may request, on any matters pertaining to civilian employment now within the jurisdiction of the United States Civil Service Commission;

(c) Executing, administering and enforcing the Civil Service rules and regulations of the President and the Office and the statutes governing the same, and other activities of the Office including retirement and classification activities except to the extent such functions remain vested in the Merit Systems Protection Board pursuant to Section 202 of this Plan, or are transferred to the Special Counsel pursuant to Section 204 of this Plan. The Director shall provide the public, where appropriate, a reasonable opportunity to comment and submit written views on the implementation and interpretation of such rules and regulations;

(d) Conducting or otherwise providing for studies and research for the purpose of assuring improvements in personnel management, and recommending to the President actions to promote an efficient Civil Service and a systematic application of the merit system principles, including measures relating to the selection, promotion, transfer, performance, pay, conditions of service, tenure, and separations of employees; and

(e) Performing the training responsibilities now performed by the United States Civil Service Commission as set forth in 5 U.S.C. Chapter 41 [chapter 41 of this title].

**Section 105. Authority to Delegate Functions**

The Director may delegate, from time to time, to the head of any agency any function transferred or assigned to the Director by this Plan to the performance of all or any part of those functions transferred under this Plan to the Director which relate to employees, or applicants for employment, of such agency.

## § 930.216

ceedings in accordance with sections 556 and 557 of that title. Such retired administrative law judges who are so reemployed will be known as senior administrative law judges.

Retired administrative law judges who meet the requirements of paragraph (a) of this section and who are available for temporary reemployment must notify OPM, in writing of their availability, giving their full name, address, telephone number, name of the agencies where the person served as an administrative law judge, and jurisdictions in which they are currently licensed to practice law. OPM will maintain a master list of such retired administrative law judges for use in responding to agency requests for such judges.

(2) Demonstrate that the agency is occasionally or temporarily under-staffed;

(3) Specify the tour of duty, location, period of time, or particular case(s), for the requested reemployment; and

(4) Describe any special qualifications desired in the retired administrative law judge that it wishes to employ, such as experience in a particular field, agency, or substantive area of law.

(d) OPM will approve agency requests for temporary reemployment of retired administrative law judges for a specified period or periods provided:

(1) The requesting agency fully justifies that it requires the use of an administrative law judge and that it is occasionally or temporarily under-staffed; and

(2) No other administrative law judge with the appropriate qualifications is available through OPM under § 930.213 of this subpart to perform the occasional or temporary work for which reemployment is requested.

(e) Upon approval of an agency request to reemploy a retired administrative law judge, OPM will select from its master list of retired adminis-

trative law judges, in rotation to the extent practicable, those retired judges who it determines meet agency requirements. OPM will then provide the names of such individuals to the requesting agency and the agency must then select from that list a retired administrative law judge for reemployment.

(f) Reemployment of retired administrative law judges is subject to investigation of suitability in accordance with §§ 731.201 through 731.203 of this chapter. It is also subject to conflict of interest and security investigation requirements by the appointing agency.

(g) Reemployment as senior administrative law judges will be for either (1) a specified period or periods as may be necessary to complete the hearing of one or more specified cases; or (2) such periods as may be necessary, to coincide with changing staffing requirements.

(h) An agency may assign its senior administrative law judge to either (1) hear one or more specific cases; or (2) hear, in normal rotation to the extent practicable, a number of cases on its docket and issue decisions therein.

(i) Hours of duty, administrative support services, and travel reimbursement for senior administrative law judges will be determined by the employing agency in accordance with the same rules and procedures that are generally applicable to employees.

(j) A senior administrative law judge serves subject to the same limitations on performance appraisal, and removal as any other administrative law judge employed under this subpart and section 3105 of title 5, United States Code. An agency will not rate the performance of a senior administrative law judge. Actions may not be taken against senior administrative law judges during the period of reemployment, except for good cause established and determined by the Merit Systems Protection Board after opportunity for a hearing on the record before the Board as provided in §§ 1201.181 through 1201.136 of this Title.

732

[text obscured]

[30 FR 16408, Apr. 18, 1985]

## PART 950—SOLICITATION OF FEDERAL CIVILIAN AND UNIFORMED SERVICE PERSONNEL FOR CONTRIBUTIONS TO PRIVATE VOLUNTARY ORGANIZATIONS

### Subpart A—Administration and General Provisions

Sec.
950.101  Definitions.
950.103  Summary description of the program.
950.105  Federal policy on civic activity.
950.107  Preventing coercive activity.

### Subpart B—Organization and Functional Responsibilities

950.201  Development of policy and procedures.
950.203  Program administration.
950.205  Program coordination.
950.207  Local Federal agency representative.
950.209  Local Federal agency heads.
950.211  Local Federal coordinating committees.
950.213  Avoidance of conflicts of interest.

### Subpart C—Campaign Arrangements for Voluntary Agencies

950.301  Types of voluntary agencies.
950.303  Types of fund-raising methods.
950.305  Current arrangements in making Federal arrangements.
950.307  Definition of terms used in Federal arrangements.
950.309  Federated and overseas campaigns.
950.311  Off-the-job solicitation at places of employment.

[text partially obscured]

950.401  Purpose.
950.403  General requirements.
950.405  Specific requirements for national agencies.

### Subpart D—Requirements for National Voluntary Agencies

### Subpart E—The Local Combined Federal Campaign

950.507  Local CFC plan.
950.509  Organizing the local campaign.
        The Principal Combined Fund Organization.
950.511  Basic local CFC groundrules.
950.513  Dollar totals.
950.515  Suggested giving guides and volunteers.
950.517  Central receipt and accounting for contributions.
950.519  Campaign and publicity materials.
950.521  Payroll withholding.
950.523  National coordination and reporting.
950.525  [text obscured]

AUTHORITY: E.O. No. 12353 (March 23, 1982), 47 FR 12785 (March 25, 1982); 3 CFR, 1982 Comp., p. 139; and E.O. No. 12404 (February 10, 1983), 48 FR 6685 (February 15, 1983).

SOURCE: 49 FR 32776, Aug. 16, 1984, unless otherwise noted.

### Subpart A—Administration and General Provisions

## § 950.101

§ 950.101  Definitions.

(a) The terms "voluntary agency," "voluntary health and welfare agency," and "voluntary charitable agency" mean an organization that is organized and operated for the purpose of rendering, either directly or financially supporting the rendering of, one or more of the following services of, one or more of, and for the direct benefit of, human beings:

(1) Delivery of health care to ill or infirm individuals;

(2) Education and training of personnel for the delivery of health care to ill or infirm individuals;

(3) Health research for the benefit of ill or infirm individuals;

733

**§ 950.101**

(4) Delivery of education, training, and care to physically and mentally handicapped individuals;

(5) Treatment, care, rehabilitation, and counseling of juvenile delinquents, criminals, released convicts, persons who abuse drugs or alcohol, persons who are victims of intra-family violence or abuse, persons who are otherwise in need of social adjustment or rehabilitation, and the families of such persons;

(6) Relief of victims of crime, war, casualty, famine, natural disasters, and other catastrophes and emergencies;

(7) Neighborhood and community services that directly assist needy, poor, and indigent individuals, including provision of emergency relief and shelter, recreation, transportation, the preparation and delivery of meals, educational opportunities, and job training;

(8) Legal aid services that are provided to needy, poor, and indigent individuals solely because of their inability to afford legal counsel and without cost or against the threat of cause, claim, or defense of the individuals;

(9) Protection of families that, on account of need, poverty, indigence, or emergency, are in long-term or short-term need of family, child-care, and maternity services, child and marriage counseling, foster care, and maintenance or assistance in the home and household;

(10) Relief of needy, poor, and indigent infants and children, and of orphans, including the provision of adoption services;

(11) Relief of needy, poor, and indigent adults and of the elderly;

(12) Assistance, consistent with the mission of the Department of Defense, to members of the armed forces and their families;

(13) Assistance, consistent with the mission of the Federal agency or facility involved, to members of its staff or service who, by reason of geographic isolation, emergency conditions, injury in the line of duty, or other extraordinary circumstances, have exceptional health, or welfare needs;

(14) Lessening of the burdens of government with respect to the provision of any of the foregoing services; or

(15) Any other health and welfare service rendered by a charitable health and welfare entity organization.

(1) *Director* shall mean the Director of the United States Office of Personnel Management, or his delegate.

(2) *Campaign terms.*

(3) *Employee.* Employee shall mean any person employed by the government of the United States or any branch or instrumentality thereof, including persons in the uniformed services.

"Combined Federal Campaign" or "CFC" shall mean the program established pursuant to Executive Order No. 12353, as amended by Executive Order No. 12404, and any subsidiary units such programs.

(4) "Community" shall mean a community that is defined either by generally recognized geographic bounds or by its relationship to an isolated government installation;

(5) "Direct Contributions" shall mean gifts, in cash or in donated kind material, given by individuals and/or other non-governmental sources directly to the spending health and welfare organization.

(6) "Indirect Contributions" shall mean gifts, in cash or in donated kind material, given to or spending health and welfare organizations by another Federal Campaign, or funds from affiliated organizations or government, which are not to be considered as public "contributions;"

(c) The term "Principal Combined Fund Organization" or "PCFO" means the organization in a local Combined Federal Campaign that has been selected and charged pursuant to 5 CFR 950.509 to manage and administer the local Combined Federal Campaign, subject to the direction and control of the Director. All of its Campaign duties shall be conducted under the title "Principal Combined

**§ 950.103   Summary description of the program.**

*Assigned Campaign Periods.* In the United States, Combined Federal Campaign are held when set by the Director, usually in the fall; the DOD Overseas Combined Federal Campaign are held when set by the DOD...

*Combined Federal Campaign.* At locations where there are 200 or more Federal personnel, all campaigns must be consolidated into a single, annual drive, known as the Combined Federal Campaign. The campaign is managed by the organization designated as the Principal Combined Fund Organization, in accord with 5 CFR 950.509... under the supervision of the local Federal Coordinating Committee and the Director. Such campaigns are conducted exclusively by Federal personnel and only Federal personnel...

*Decentralized Operations.* The federalism principle shall guide Campaign organization. Following designation of a Principal Combined Fund Organization, local representatives of that Organization initiate campaigns in their local community by direct contact with the heads of Federal offices and installations. Each Federal agency conducts its own solicitation among its employees, using campaign materials, supplies, and speakers furnished by or through the local Combined Fund Organization, under the direction of the local Federal Coordinating Committee and the Director.

*Solicitation Methods.* Employee solicitations are conducted during solicitations using methods that permit duty hours voluntary giving and reserve to the individual the option of disclosing any gift or keeping it confidential.

**Office of Personnel Management   § 950.107**

...fund Organization for a... local CFC" and not under the corporate title of the qualifying federation.

(e) *Off-the-Job Solicitation.* Many worthy voluntary agencies do not participate in the on-the-job program because they do not wish to join in its coordinated arrangements or because they cannot meet the requirements for eligibility. Such voluntary agencies may solicit Federal employees at their homes and by other means, through union, veteran, civic, professional, political, legal defense, or other private organizations. In addition, limited arrangements may be made for off-the-job solicitations on military installations and at entrances to Federal buildings.

**§ 950.105   Federal policy on civic activity.**

Federal personnel are encouraged to participate actively in the work of voluntary agencies—as members of policy boards or committees, heads of local campaign units, or volunteer workers—to the extent consistent with Federal agency policy and prudent use of official time. They are encouraged also to devote private time to such volunteer work.

**§ 950.107   Preventing coercive activity.**

The voluntary giving is basic to Federal fund-raising activities. Actions that do not allow free choices or even...

§ 950.201

create the appearance that employees do not have a free choice to give or not to give, or to publicize their gifts or to keep them confidential, their fund-raising activities are in accord with the intent of the Federal fund-raising policy. The following activities are in accord with the intent of Federal fund-raising policy and, in the interest of preventing coercive activities in Federal fund-raising, are not permitted in Federal fund-raising campaigns:

(b) Supervisory solicitation of employees supervised;

(c) Setting 100% participation goals;

(d) Providing and using contributor lists for purposes other than the routine collection and forwarding of contributions and installment pledges;

(d) Establishing personal dollar goals and quotas; and

(e) Developing and using lists of noncontributors.

## Subpart B—Organization and Functional Responsibilities

§ 950.201 Development of policy and procedures.

*Director, U.S. Office of Personnel Management.* Under Executive Orders No. 12353 (March 23, 1982), Charitable Fund-Raising, and No. 12404 (February 10, 1983), Charitable Fund-Raising, the Director is responsible for establishing charitable fund-raising policies and procedures in the Executive Branch. With the advice of appropriate interested persons and organizations and of the Executive departments and agencies concerned, he makes all basic policy, procedural, and eligibility decisions for the program. The Director may authorize the conduct of demonstration projects in one or more CPC locations to test alternative arrangements differing from those specified in this Part for the conduct of fund-raising activities in Federal agencies.

§ 950.203 Program administration.

(a) *Federal Agency Heads.* The head of each Federal Executive department and agency is responsible for:

(1) Seeing that voluntary fund-raising within the Federal department or agency is conducted in accordance

736

with the policies and procedures prescribed by this Part;

(2) Designating a top-level representative as Fund-Raising Program Coordinator to work with the Director's representatives with policy and procedures in the administration of the Federal fund-raising program with the Federal agency;

(3) Assuring full participation and cooperation in local fund-raising campaigns by all installations of the Federal agency;

(4) Assuring that the policy of voluntary giving and clear employee choice is upheld during the fund-raising campaign; and

(5) Providing a mechanism to look into employee complaints of undue pressure and coercion in Federal fund-raising. Federal agencies shall provide procedures and assign responsibility for the investigation of such complaints. Personnel offices shall be responsible for informing employees of the proper organization channels for pursuing such complaints.

(b) *Fund-Raising Program Coordinators.* The responsibilities of Federal agency Fund-Raising Program Coordinators are to:

(1) Cooperate with the Director, the local Federal Coordinating Committee, and the Principal Combined Fund Organization in the development and operation of the program;

(2) Maintain direct liaison with the Office of the Director in the administration of the program;

(3) Publicize program requirements throughout the Federal department or agency;

(4) Answer inquiries about the program from officials and employees and from external sources; and

(5) Investigate and arrange for any necessary corrective action on complaints that allege violation of fund-raising program requirements within the Federal agency.

§ 950.205 Program coordination.

The Director coordinates the Federal agencies' administration of the fund-raising program and maintains liaison with voluntary agencies.

5 CFR Ch. I (1-1-85 Edition)

§ 950.207 Local voluntary agency representatives.

Federated and national voluntary agencies provide their State and local representatives with policy and procedural guidance. Local representatives are responsible for furnishing educational materials, speakers, and campaign supplies as may be required and appropriate.

§ 950.209 Local Federal agency heads.

The head of the Federal department or agency provides the heads of the Federal offices and installations with copies of the Federal fund-raising regulations. The local Federal agency heads are responsible for:

(a) Cooperating with representatives of the local Federal Coordinating Committee, the Principal Combined Fund Organization, and local Federal officials in organizing the local Federal campaign;

(b) Undertaking official campaigns within their offices or installations and providing active and vigorous support with equal emphasis for each authorized campaign;

(c) Assuring that personal solicitations on the job are organized and conducted in accordance with the procedures set in these regulations;

(d) Assuring that authorized campaigns are kept within reasonable administrative limits of official time and expense.

§ 950.211 Local Federal coordinating committees.

(a) *Summary of duties and powers.* When there are a number of Federal agency offices and installations in the same local area, some interagency coordination is necessary in order to achieve effective community-wide campaigns and to improve general understanding and compliance with the fund-raising program. The Director assigns the responsibility for local coordination to existing organizations of Federal agency heads wherever possible and to special committees where needed. The local Federal Coordinating Committee is authorized to make all decisions within the provisions and policies established in this Part on all aspects of the local campaign, including eligibility and the supervision of the local community campaign and the Principal Combined Fund Organization. Such decisions may be appealed, however, to the Director.

(1) *Authorized Local Federal Coordinating Committee.* Coordinating responsibility is assigned by the Director to one of the following organizations:

(i) Federal Executive Boards. The boards exist in principal cities of the United States for the purpose of improving interagency coordination. They are composed of local Federal agency heads who have been designated as Board members by the heads of their departments and agencies under Presidential authority.

(ii) Federal Executive Associations and Federal Business Associations, self-organized associations of local Federal officials, and the Department of Defense National Policy Coordinating Committee.

(3) *Fund-Raising Program Coordinating Committee.* These committees are established in communities where there is no Federal Coordinating Committee in existence. Leadership in organizing such a committee is the responsibility of the head of the largest Federal installation and uniformed services personnel. Local Federal agency heads or their designated representatives serve on the committee and determine all organizational arrangements.

(c) *Employee union representation.* In order to ensure employee participation in the planning and conduct of the CPC, employee representatives from the principal employee unions of the local Federal installations should be invited to serve in whatever organization exercises local coordination responsibilities.

(d) *Fund-raising responsibilities.* Within the limits of the policies, procedures, and arrangements made nationally, the fund-raising responsibility of local Federal Coordinating Committee are to:

(1) Facilitate local campaign arrangements. The Federal local Coordinating Committee:

(i) Names a high-level chairman for the authorized Federal campaigns;

737

§ 950.211

(ii) Provides lists of Federal activities and their personnel strength, responsible for organizing the local Combined Federal Campaign, supervising the activities of the Principal Combined Fund Organization, and acting upon any problems relating to actual CFC's noncompliance with the policies and procedures of the local Federal Coordinating Committee.

(3) Develop understanding of campaign program policies and procedures and voluntary agency programs. The local Federal Coordinating Committee serves as the central medium for communicating programs policies and procedures of the Campaign and for understanding of the organizations employees are being asked to support and how employees can obtain services they may need from these organizations.

(e) *Principal Combined Fund Organization.* The local Federal Coordinating Committee will supervise a local Federal Combined Fund Organization. The Principal Combined Fund Organization will receive money from federal employees and administer the local campaign, under the direction of the local Federal Coordinating Committee.

(f) *Communication and resolution procedures through the Director, Office of Personnel Management.* Each local Federal agency head will receive fund-raising directions through his Federal agency channels and will raise questions that pertain to fund-raising and tivities within his Federal agency by the same means. However, the local Federal Coordinating Committee refers unresolved local fund-raising questions or problems that are common to several Federal agencies directly to the Director, the Director communicates directly with the chairman of the local Federal Coordinating Committee for information about the local fund-raising situation.

(g) *Integrity of local Federal Combined Fund Organization nating committee.* A local Federal Co-

(ii) Administer program requirements. The Coordinating Committee is to receive designations in any fashion the organized by the Internal Revenue Service...

(iv) *Universal eligibility; local review.* All health and welfare organizations organized, qualified, and recognized by the Internal Revenue Service, under 26 U.S.C. 501(c)(3) are eligible to have an opportunity, as provided in the rules of the Campaign, to set...

5 CFR Ch. I (10-1-85 Edition)

ordinating Committee may not serve as a Principal Combined Fund Organization.

...the reversal of the original decision, the local Federal Coordinating Committee believes that the decision was unjustified, or refuses to reconsider its decision, or reconsiders its decision, and unanimously affirms the denial of admission, then its decision shall be final. If at least one member of the local Federal Coordinating Committee further review, or if the local Federal Coordinating Committee have received a petition for reconsideration, is to act thereon within ten (10) days of its actual receipt thereof, then the matter may be appealed, pursuant to the provisions of 5 CFR 950.526(e), to the Director, whose decision shall

Office of Personnel Management

§ 950.301

shelter, and clothing, to persons working or residing in the local campaign community.

(2) The presence within the local campaign community, or within reasonable commuting distance thereof, of a facility at which services are rendered through which they may be obtained, such as an office, clinic, mobile unit, field agency, or direct provider, or specific demonstrable effects of research, such as local campaign area facilities engaged therein or specific local applications thereof.

(3) The availability to persons working or residing in the local campaign community of the voluntary charitable agency chartable agency, by means of home visits, transportation, or telephone calls, provided by the voluntary agency at no charge to the recipient or beneficiary of the service.

(4) Awareness within the local Federal community of the existence, activities, and services of the voluntary charitable agency.

Provided, that voluntary charitable health and welfare agencies whose services are rendered exclusively or in substantial preponderance overseas, and that meet all the criteria set forth in this Part except for the requirement of direct and substantial presence in the local campaign community, shall be eligible for inclusion in the local list in each local campaign area of the Combined Federal Campaign.

§ 950.213 Avoidance of conflicts of interest.

Any Federal employee who serves on the Eligibility Committee, a local Federal Coordinating Committee, or as a Federal agency fund-raising program coordinator, must not participate in any decision situations where, because of membership on the board or other affiliation with a voluntary agency, there could be or appear to be a conflict of interest.

Subpart C—Campaign Arrangements for Voluntary Agencies

§ 950.301 Types of voluntary agencies.

Voluntary agencies are private, non-profit, self-governing organizations financed primarily by contributions

## § 950.303

from the public. Some are national in scope, with a national organization that provides services at localities through State or local chapters or affiliates. Others are primarily local, both in form of organization and extent of services.

(c) *Number of Solicitations.* No more than one on-the-job solicitation of Federal personnel on behalf of charitable purposes will be made in any year at any location, except in case of an emergency or disaster appeal for which specific prior approval has been granted by the Director.

(d) *Responsible Conduct.* In the event a voluntary agency fails to adhere to the requirements or to the policies and procedures of this program, its privilege to receive gifts through the Combined Federal Campaign may be withdrawn by the Director at any time after due notice to the voluntary agency and opportunity for consultation.

### § 950.303 Types of fund-raising methods.

(a) The methods used by voluntary agencies in public fund-raising shall be either federated or independent. In national *federated* group shall meet the same eligibility criteria as a single agency. Local chapters or affiliates of national agencies may form local federations or be admitted as additional participating members of national federated groups.

(b) An independent campaign is one conducted by a local unit of a national voluntary agency through its own federated fund-raising program existing in a federated community recognized meets established eligibility criteria. Voluntary agencies may conduct independent campaigns or participate in a federation.

### § 950.305 Considerations in making Federal arrangements.

(a) *On-the-Job Solicitation.* In order to have only one on-the-job solicitation of Federal personnel and of Federal personnel, i.e., a Combined Federal Campaign. Individual appeals must be combined into a single joint campaign on behalf of charitable purposes in conformance with the policies and procedures prescribed in this Part.

(b) *Campaign Arrangements Established Nationally.* Basic campaign arrangements are established by the Director. Local Federal agency heads authorized and Coordinating Committees are not authorized to vary from the concept established herein. Except to the extent that local variations are expressly provided for in this Part.

### § 950.306 Federated and overseas campaigns.

(a) *Authorized Federated Groups.* (1) United Way of America and any local United Way of America and any local United Way, united fund, community chest, or other local federated group must be, in writing, available to the public, reasonable, and applied equally and uniformly to all local voluntary agencies requesting participation. To be a member in good standing of a local federated group or is recognized by, United Way, or that meets the requi...

740

---

## 5 CFR Ch. I (1-1-85 Edition)

States, the District of Columbia, and the Commonwealth of Puerto Rico.

(d) *Overseas Area.* All other points in the world where Federal employees of the uniformed services...

### § 950.307 Definition of terms used in Federal arrangements.

(a) *Domestic Area.* The 50 United States, the District of Columbia, and the Commonwealth of Puerto Rico.

(b) *Overseas Area.* All other points in the world where Federal employees of the uniformed services are stationed.

(c) *Federated Community.* A federated community is a geographical local area where a community where federated voluntary agencies members ... "supported primarily through United Ways, united funds, and community chests" shall be recognized for participation in a federated community. In all certificates of compliance with required as provided in 5 CFR 950.321(c)(2)(iv).

(d) *Local Federated Agencies.* To be eligible for participation in the Federal fund-raising program, the local federated group must be broadly representative in its board and committee membership of the community and must be making bona fide efforts to meet community needs. Requirements for participation in a local federated group must be, in writing, available to the public, reasonable, and applied equally and uniformly to all local voluntary agencies requesting participation.
[heavily redacted/obscured text]

741

---

### Office of Personnel Management

federated group for at least one review of any decision denying participation requested by a local voluntary agency. The review must be conducted by a committee or other body within the federated group that did not participate in the original decision. A written statement of the reasons for denial must be provided to the applicant voluntary agency.

(c) *"Causes."* Solicitation for a national *federated* group for a "Mental Health" or "Heart Disease," without identification of the specific voluntary agency for which the funds are sought, is prohibited. All funds collected from Federal personnel must be allocated only to specific voluntary agencies.

(d) *Designation of Federated Area.* The recognition of a local Federal Coordinating Committee by the Director designates the community served by that Committee as a recognized local campaign site. Two or more authorized local Federal Coordinating Committees are authorized to develop coordinated solicitations best suited to the needs of their localities.

(e) *Overseas Campaign.*—(1) *DOD Overseas Combined Federal Campaign.* (i) A Combined Federal Campaign is authorized for all Department of Defense activities in the overseas areas during a six-week period in the fall. Any national voluntary agency that the local Federal Coordinating Committee for the DOD Overseas CFC determines, in its discretion, most likely meets the definitions and standards set forth herein and stand-ards under this Part shall be author-ized privileges on behalf of their member voluntary agencies that also meet all requirements of this Part. The local Federal Coordinating Com-mittee for the DOD Overseas CFC shall designate the Principal Com-bined Fund Organization for the Overseas Campaign, which may be the Na-

## § 950.309

§ 750.311

paign Committee.

(ii) Contributors to the DOD Overseas Combined Federal Campaign designate their gifts to one or more agencies or the Principal Combined Fund Organization. The Principal Combined Fund Organization for the overseas campaign shall pay the amounts collected directly to the designated voluntary agencies, less "shrinkage" in the processing percentage, if any, that is approved in advance of the campaign by the Federal official in the overseas area responsible for the local campaign arrangements.

(2) Local Voluntary Agency Campaigns. The heads of overseas offices and installations may, at their discretion, permit their military and civilian personnel to solicit each other on behalf of local voluntary agencies. Such campaigns will be conducted in accordance with the basic policies and procedures of the Federal program and at times which do not conflict with the DOD overseas Combined Federal Campaign period. The standards in this Part will be used as guidelines. Federal leadership in organizing such campaigns will be assumed by that head of the overseas Federal establishment that has the largest number of Government personnel in the campaign area.

(3) Optional Participation by Certain Civilian Agencies. Federal civilian departments and agencies that have traditionally considered their overseas personnel as members of the National Capital Area for fund-raising purposes may continue this practice.

§ 950.311 Off-the-job solicitation at places of employment.

Voluntary agencies may be authorized off-the-job solicitation privileges at places of Federal employment under such reasonable conditions as may be specified by the local head of the Federal installation involved, provided that such conditions are not inconsistent with this Part. Dual solicitation conflicts with the objective of a combined campaign and is not author-

ized. Accordingly, this privilege be extended only under the follo [illegible] to the written representations [illegible] unitary agencies and federated [illegible] are that the requirements of this [illegible] are satisfied.

[illegible § ...408] General requirements.

(a) Family Quarters on Military Installations. Voluntary agencies may be permitted to solicit on [illegible] dences or at similar public quarters in unrestricted family [illegible] of military installations at the discretion [illegible] such solicitation may not be conducted by military or civilian personnel [illegible] their official capacity during duty [illegible] non-duty hours, nor may such solicitation be conducted as an official command-sponsored project. This restriction is not intended to prohibit or discourage military and civilian personnel from participating as private citizens in voluntary agency activities during their off-duty hours.

(b) Public Entrances of Federal Buildings and Installations. Voluntary agencies that engage in limited specialized methods of solicitation for example, the use of "poppies" and other similar tokens by veterans organizations—may be permitted to solicit at entrances or in concourses or lobbies of Federal buildings or installations normally open to the general public. Solicitation privileges will be governed by the rules issued by the General Services Administration pursuant to the Public Buildings Cooperative Use Act of 1976, as amended, or other applicable Government legal authority.

Subpart D—Requirements for National Voluntary Agencies

§ 950.401 Purpose.

These requirements are established to ensure that the funds contributed by Federal personnel will be used for the stated purposes of the recipient voluntary agencies. The Office of Personnel Management acknowledges that voluntary agencies are regulated as to the integrity of their operations and finances, by State and local governments, by the federated groups which they may be members, and by the discipline of the marketplace. OPM and local Federal Coordinating Committees will therefore be guided by the principle of self-certification

742

will accord a presumption of validity to the written representations of the unitary agencies and federated [groups] are that the requirements of this [section] are satisfied.

§ 950.408 General requirements.

[illegible] Type of Agency. Only nonprofit, [tax]-exempt, charitable organizations, supported by voluntary contributions, that are eligible for approval. All such services must be consistent with the general public and providing their official capacity and substantial health and welfare services through their national organization, affiliates or representatives are eligible for approval. All such services must be consistent with the policies of the United States Government.

[b] Integrity of Operations. Funds contributed to such organizations by Federal personnel must be effectively controlled for the announced purposes of the voluntary agency.

[c] National Scope. A national voluntary agency:

(1) is organized on a national scale represents its constituent parts, and exercises close supervision over the operations and fund-raising policies of its local chapters or affiliates;

(2) has earned goodwill and acceptability throughout the United States, particularly in cities or communities in which or near which are Federal offices or installations with large numbers of personnel; and

(3) has national scope, that is, has goodwill, and acceptability, which may be demonstrated as follows:

(i) By a voluntary agency's provision of a service in many (i.e., one quarter) States, or in several foreign countries;

(ii) By derivation of contributor support from many parts of the Nation;

(iii) By the extent of public support spread of contributors; and

(iv) By the national character of any public campaign, which may be derived by an applicant having at least 200 local chapters, affiliates, or representatives that promote its campaign.

(d) Type of Campaign. Approval in granted only for fund-raising campaigns in support of current oper-

ations. Capital fund campaigns are not authorized.

§ 950.405 Specific requirements for national agencies.

(a) Corporate and Tax Status. A voluntary agency must be one:

(1) That is a voluntary charitable health and welfare agency as defined in 5 CFR 950.101;

(2) That is voluntary and broadly supported by the public, meaning (i) that it is organized as a not-for-profit corporation or association under the laws of one of the United States, a State, a territory, or the District of Columbia; (ii) that it is classified as tax-exempt under 26 U.S.C. 501(c)(3), and is eligible to receive tax deductible contributions under 26 U.S.C. 170; and (iii) that, with the exception of voluntary agencies whose revenues are affected by unusual or emergency circumstances, as determined by the Director, it has received at least 50 percent of its revenues from sources other than the Federal Government or at least 20 percent of its revenues from direct and/or indirect contributions from the general public in the year in which it seeks to participate in the Combined Federal Campaign;

(3) That is directed by an active board of directors, a majority of whose members serve without compensation, that adopts and employs the Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations and is certified by an independent certified public accountant; that provides for an annual external audit by an independent certified public accountant.

(4) That can demonstrate, if its fund-raising and administrative expense is in excess of 25 percent of total support and revenue, that its actual expense for those purposes is reasonable under all the circumstances in its case;

(5) That ensures that its publicity and promotional activities are based

743

§ 950.501

upon its actual program and operations, are truthful and nondeceptive, and include all material facts.

(b) *Fund-Raising Practice.* The voluntary agency's publicity and promotional activities must assure protection against unauthorized use of the contributors lists; must permit no payment of commissions, kickbacks, finders fees, percentages, bonuses, or overrides for fund-raising; and must permit no general telephone solicitation of the public.

(c) *Reports*—(1) *Annual Report.* The voluntary agency must prepare an annual report to the general public that includes a full description of the voluntary agency's activities and accomplishments and the names of chief administrative personnel.

(2) *Combined Reports.* Voluntary agencies which represent more than one submittal must prepare a combined annual financial report to the general public in accordance with the *Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations* and certification to this effect for local chapters is not required.

(d) *Reporting by American Red Cross.* For purposes of this Part, the American Red Cross and its chapters are recognized as operating in substantial compliance with the Standards in subaccounting and financial system in accounting compliance with the *Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations,* affiliates, or satellites.

## Subpart E—The Local Combined Federal Campaign

§ 950.501 Local voluntary agencies.

(a) A local voluntary agency shall meet the same criteria as a national voluntary agency, except national scope. Each local voluntary agency shall certify to its compliance with these criteria, or shall have such certification submitted on its behalf by the federated group if any, of which it is a member, in accordance with the principles of internal integrity set forth at 5 CFR 950.401.

§ 950.506 Responsibility of local Federal coordinating committees.

Each local Federal Coordinating Committee is required to organize a local Federal Campaign. Therefore, in such local campaign area, it may not be practicable to hold a Combined Federal Campaign. The heads of local Federal agencies will request that it would be desirable from the standpoint of the local community to arrange for a Combined Federal Campaign. However, if they do have a campaign, they may contact the Director to arrange a Combined Federal Campaign regardless of the number of employees involved. Where a CFC is not conducted because of lack of sufficient Federal employees, the local united fund is authorized to solicit within the Federal establishment.

§ 950.507 Local CFC plan.

(a) *CFC as uniform fund-raising method.* The Combined Federal Campaign is the only authorized fundraising method in all areas in the United States in which 200 or more Federal employees are located. All voluntary agencies wishing to participate in fund-raising within the Federal service must do so within the framework of the local Combined Federal Campaign.

(b) *Non-participation.* In the event that any voluntary agency does not follow these regulations for participation in a local CFC, fund-raising privileges in local Federal establishments are forfeited during that fiscal year.

(c) *Red Cross participation.* In local communities where the American Red Cross is not a participating member of the local United Way, it will be permitted as a separate campaign organization in the combined campaign. American Red Cross chapters have independent authority with respect to fund-raising policy, so responsibility for deciding on participation in

744

§ 950.505 Participation in Federal campaigns by local unaffiliated agencies.

Arrangements shall be made with the Central Receipt and Accounting Point to distribute contributions to local affiliated voluntary agencies, after appropriate adjustments are made for "shrinkage" and approved administrative costs.

(b) An on-base morale, welfare, recreational activity authorized by directors. As with the other national organizations, in the event local organizations are not to be the local federal military base commander may be supported from CFC funds.

§ 950.509 Organizing the local campaign: The Principal Combined Fund Organization.

The Local Federal Coordinating Committee shall organize the local combined campaign. It will appoint a Principal Combined Fund Organization which will carry out campaign duties in conformance with the policies and procedures prescribed in this Part. From among the federated groups with national scope, the local Combined Federal Coordinating Committee shall select a Principal Combined Fund Organization to manage the campaign

§ 950.509

and to serve as fiscal agent. In doing so, the Federal Coordinating Committee shall select whichever applicant organization it finds to be the local federated group in the CFC geographic area that provides through one specific, annual public solicitation for funds the greatest support for charitable agencies that depend on public subscriptions for support; and that, in the judgment of the Federal Coordinating Committee, can most effectively provide the necessary campaign services and administrative support for the successful Campaign.

(a) In deciding whether an organization is the Principal Combined Fund Organization in the CFC geographic area, the Federal Coordinating Committee will consider:

(1) The number of local charitable voluntary agencies or affiliates in the CFC geographic area that rely on the applicant organization for financial support and that meet the prescribed eligibility criteria for participation in the CFC;

(2) The number of dollars raised by the applicant organization in the CFC geographic area during its last completed annual public solicitation for funds;

(3) The percentage of such dollars disbursed to the charitable voluntary agencies;

(4) The local capacity of the applicant organization to provide the necessary campaign services and administrative support (including operation of an impartial Central Receipt and Accounting Point) to the local Federal Coordinating Committee for a successful Federal campaign in conformance with the policies and procedures prescribed in this Part; and

(5) Whether the organization meets the requirements specified in 5 CFR 950.401, 950.403, and 950.405.

(b) An organization seeking to be designated the Principal Combined Fund Organization in a CFC area shall submit its application for such designation to the local Federal Coordinating Committee for approval. All such applicants must pledge to manage the campaign fairly and equitably; to conduct charitable operations separate from other voluntary agency operations; to consider advice from, be re-

745

§ 950.509

sponsible to reasonable requests for information from, and to consult with, other agencies, and to be subject to the decisions and supervision of the local Federal Coordinating Committee and the Director. Upon submission of a complaint by a local Federal Coordinating Committee or a federated or national voluntary agency, the Director may revoke the designation of a Principal Combined Fund Organization if in his discretion he finds these pledges are not fulfilled.

(c) Applications shall include the following:

(1) The names of the voluntary agencies in the area that rely on the applicant organization for financial support and that meet the eligibility criteria set forth in this Part;

(2) The boundaries of the area covered by the applicant organization;

(3) The number of dollars raised in the applicant organization;

(4) The percentage of such dollars disbursed to the charitable agencies;

(5) Agreement by Federal employees, as designated by Federal contributions, that the local CFC (minus only "shrinkage") is uncollectible pledges and gifts—and the approved percentage for administrative cost reimbursement;

(6) Certification that it, and its participating member organizations, are in compliance with all applicable requirements specified in this Part;

(7) Certification that if any, proposed to be charged by the applicant organization for reimbursement for administrative costs; and

(8) Statement that the applicant organization is organized to provide the necessary campaign services and support to the local Federal Coordinating Committee for a successful Federal campaign in conformance with the policies and procedures prescribed in this Part.

(d) Federated groups, member agencies of federations, and other voluntary agencies shall be eligible to receive designations.

(e) The Principal Combined Fund Organization shall provide a form for

748

the contributor to indicate the amounts he may wish to designate for affiliated and unaffiliated beneficiaries. The Principal Combined Fund Organization shall pay the amounts collected to the employee-designated beneficiary agency less "shrinkage".

§ 950.509 Action Steps by the Local Federal Coordinating Committee. The Chairman of the local Federal Coordinating Committee and the amount necessary to reimburse the Principal Combined Fund Organization for administrative expenses.

(f) The percentage, if any, charged for administrative cost reimbursement must be approved in advance by the local Federal Coordinating Committee and published in the campaign literature.

(g) All contributions not designated to specific voluntary agencies or to specific federated groups shall be deemed to have been designated to the Principal Combined Fund Organization; statement of the fact shall be clearly printed in a distinctive typeface in the campaign literature.

## Office of Personnel Management

for the campaign to the CFC Combined Federal Campaign. Certain local variations are permissible if specifically authorized in this Subpart. However, any modification of group drives by the local Coordinating Committee must be requested by the Director. Modifications will be granted only in the most exceptional circumstances.

(b) The local Federal Coordinating Committee will approve the:

(1) Campaign Name. The name will include the words "Combined Federal Campaign" the year for which contributions are solicited, and approximate identification of the locality; as for example: "1984 San Antonio Area Combined Federal Campaign."

(2) Campaign Period. The solicitation period may be any time between September 1 and November 30.

(3) Campaign Area. The exact geographical area to be covered by a local campaign will be determined by the Director, taking into account past, present, and the feasible scope for a single, coordinated campaign. The jurisdiction of the organization named as the local Federal Coordinating Committee will set the basic area of the Campaign, based upon past practice. Any changes in campaign area must be approved by the Director.

§ 950.513 Contributions.

(a) The contributor's information leaflet will clearly state that the Federal employee is encouraged to direct his gift to specific voluntary agencies. A single form of pledge card and leaflet-brochure will be produced under standards set in this Part, and approved by the Director. The leaflet will explain that when such gifts are earmarked to a specific recipient, the Principal Combined Fund Organization will remit such funds, less approved administrative costs, in accordance with the donor's wishes as those funds are collected. The leaflet will also clearly state that when the Federal employee decides not to designate, the gift will be deemed designated to the Principal Combined Fund Organization for distribution by it. The leaflet should contain no text stating or implying that any Government official

747

§ 950.515

5 CFR Ch. I (1-1-85 Edition)

will determine the distribution of any gifts deemed designated to the Principal Combined Fund Organization.

(b) Several boxes may be provided in the pledge form so that donors may indicate their choices, if any, to contribute to one or more voluntary agencies or federations. A minimum of three (3) boxes, each no less than ¼ inches in length and no less than ¼ inches in height, will be printed on the face, and on all copies of the pledge card. Separate designation slips are not authorized under any circumstances. The pledge card must be arranged so that each Federal employee receives the pertinent CPC Informa- tion and the pledge card as a single package (as examples, inserted in a slot, or a pocket in the contributor's information leaflet). In addition to the statement required by 5 CFR 950.509(c), a statement in bold and dis- tinctive type will be printed to read: "Any health and welfare charity rec- ognized as tax-exempt by the Internal Revenue Service under 26 U.S.C. 501(c)(3) may be designated in the box provided on this card."

(c) In the event that a donor at- tempts to contribute to an entity that is not a voluntary agency within the meaning of 5 CFR 950.101(a), that is not tax-exempt under 26 U.S.C. 501(c)(3), or that cannot, with minimal reasonable effort, be identified or lo- cated, then the donation shall be can- celled and the funds collected, if any, shall be promptly returned to the donor.

§ 950.515 Dollar goals.

(a) A dollar goal for the overall local combined campaign is recommended. Generally, it provides a focus for group spirit and unity of purpose that contributes materially to success. By apportioning the goal equitably among the Federal offices and installations, the Federal agency shares responsi- bility in the team effort and has a mark by which to gauge its progress.

(b) In developing the proposed goal, the local Federal Coordinating Com- mittee should take into account past giving experience in local Federal cam- paigns, the needs and reasonable ex- pectations of the voluntary agencies in the current campaign situation, and

the probability of a substantial in- crease in the level of giving due to [...] and should be informed in the organization's administrative [...] factor.

[...] The Central Receipt and Ac- [...] Fund will tabulate all contri- [...] on the pledge cards and then tab- [...] the contributions designated to [...] on the pledge cards and subse- [...] The amounts payable to the [...] Principal Combined Fund Organi- [...] after deduction of "Shrinkage" and [...] approved voluntary agencies are sub- [...] reimbursement of administrative costs [...] the Principal Combined Fund Orga- nization.

§ 950.517 Suggested giving guides and vol- untary giving.

(a) Suggested giving guides for con- tributions are authorized for local campaigns. Guides for cash giving, direct-payment pledges may be framed in terms of percent of annual income, number of hours pay, or sug- gested size of gift in relation to various income levels. Guides may be printed in the contributor's leaflet or on the pledge form. They will be accom- panied by a statement explaining that the guide is provided because employ- ees often ask for one, but that the de- cision to give and the amount is up to each employee.

(b) Federal agencies are not author- ized to furnish individual employees suggested giving guides based upon the employee's specific pay or grade, guide of this kind is comparable to in- dividual quota or assessment, which is prohibited.

(c) The contributor's leaflet or the pledge form must include the express statement that the employee has the right to make his gift confidentially. A sealed envelope which will be deliv- ered unopened to the Combined Fed- eral Campaign headquarters.

§ 950.519 Central receipt and accounting for contributions.

(a) The Principal Combined Fund Organization shall provide and admin- ister the Central Receipt and Account- ing Point or it may arrange for an ap- propriate financial institution to pro- vide such service on its behalf, under the direction of the local Federal Co- ordinating Committee. Any charges of such institution to provide the neces- sary services are the responsibility of

§ 950.521

Office of Personnel Management

Principal Combined Fund Organi- zation will be made in the [...] [...] Combined Fund Organiza- [...] of CPC funds. The [...] [...] $1,000.00 must be cer- [...] [...] $1,000.00 shall be certi- [...] [...] a certified public ac- [...] Copies of the audits must be [...] to appropriate local Federal [...] and made available for inspec- [...] [...] any voluntary agency or feder- [...] [...] participating in the local CPC.

[...] In addition to the usual method [...] cash contribution and direct pay- [...] of pledges, the use of voluntary [...] withholding is authorized for [...] of the uniformed services [...] Local voluntary agencies may [...] whether or not to provide for [...] payment of pledges; however, [...] in contributions must be permitted, [...] worker collection of installment [...] is prohibited.

§ 950.521 Campaign and publicity materi- als.

(a) Campaign and publicity materi- als will be developed in the local area [...] the direction of the local Federal [...] Committee, and will be [...] and supplied by the Principal [...] Fund Organization. All dis- [...] over materials will be resolved [...] the local Federal Coordinating [...] except that failure to re- [...] this Part or to any other di- [...] of the Director may be ap- [...] to the Director. All publicity [...] must have the approval of [...] local Federal Coordinating Com- [...] before being used.

[...] Distribution of any bona fide [...] material of the voluntary

agencies or provision of other services to employees at Federal establish- ments must be handled through Fed- eral agency personnel, or occupational health, or other appropriate units, and not the CPC coordinators. Voluntary agencies are encouraged to publicize their activities outside Federal facili- ties, to broadcast messages aimed at a public in an attempt to so- licit their contributions, through media and other outlets, and to com- municate with the Federal personnel in writing through the United States Mail, including United States Mail ad- dressed to them at their Federal work- places, as long as these do not inter- fere with Federal Government activi- ties. Federated groups participating in a local campaign are authorized and encouraged to publish and distribute material describing the names and the activities of their respective member voluntary agencies, and to send such brochures through the United States Mail to Federal per- sonnel at Federal workplaces. Local Federal Coordinating Committees are further authorized to permit the dis- tribution by voluntary agencies of bro- chures to Federal personnel in public places at or near Federal workplaces in connection with the local CPC, provid- ed that the manner of distribution ac- cords equal treatment to all voluntary agencies furnishing such brochures and that further provided that the such distribution shall utilize Federal personnel, or interfere with Federal Government activities. Nothing herein shall be construed to require a local Federal Coordinating Committee to distribute or arrange for the distribu- tion of any material other than the contributor's leaflet and pledge form re- quired by this Part.

(c) A single contributor's informa- tion leaflet, and a single, joint Pledge Form and Payroll Withholding Au- thorization (the latter preferably in a Form and Payroll Withholding Au- thorization (the latter preferably in a detachable part or otherwise placed in an insert slot or otherwise assembled in the former) are to be dis- tributed by keyworkers to each poten- tial contributor. The Pledge Form and Payroll Withholding Authorization need be one form. All CPC literature, keyworker solicitors, and materials re- leased as a part of the campaign must inform employees of, their right to

748

749

§ 950.521

make a choice. Employees will be informed that while the Federal Government encourages its employees to make a choice, it does not mandate that they choose.

(d) Campaign materials must constitute a simple and attractive package that has fund-raising appeal and essential working information. Treatment should focus on the combined campaign and homogeneous appeal without undue use of voluntary agency symbols or other distractions that compete for the contributor's attention. Extraneous instructions concerning the routing of forms, tallying of contributions, etc., which are primarily for keyworkers, must be avoided.

(e) Specific campaign and publicity materials.

(1) Contributor's Leaflet. (i) This leaflet will be the only informational material distributed to individual contributors. It will describe the CPC arrangement, explain the payroll deduction privilege, and will include the information required by 5 CFR 950.513. The leaflet should be constructed to contain a pocket or a slot to hold the CPC pledge form.

(ii) The leaflet will provide instructions about how an employee may obtain more specific information about voluntary agencies participating in the campaign, their programs, and their finances. It will also inform employees of their right to pursue complaints of undue pressure or coercion in Federal fundraising activities. The leaflet will advise civilian employees to consult with their personnel offices and military personnel with their commanding officers to identify such complaints in accordance with the organization handling such complaints in their respective Federal agency.

(iii) A Privacy Act notice must be printed on the leaflet.

(iv) Every leaflet shall also contain the following statement: "All contributions not designated to specific voluntary agencies, or specific federated groups, shall be allocated on the basis of the Principal Combined Fund Organization's tabulation of designated contributions, and shall be distributed on behalf of, any agency. Opposite the number will be provided beginning with the number 101 so that contributors desiring to indicate a choice of agency or agencies to which their gift is to be directed may list ..."

(v) The contributor information leaflet must also state that any benefit on the pledge form. Each voluntary agency that is a member of a federated group shall be entitled, at its option, to have that group's individual option, to have that group's individual option, to have noted in parentheses following the name of the federated voluntary agency. The listing of voluntary agencies shall be exclusively in strict alphabetical order, beginning with the letter by name of voluntary agency.

§ 950.521

---

...ice of Personnel Management

§ 950.521

number or numbers in the designated process. This process of self-certification comports with the principles set forth at 5 CFR 950.401.

(3) PCFO report in lieu of optional local list. In the event, and only in such event, that the local Federal Coordinating Committee elects not to provide an optional local list as permitted by 5 CFR 950.521(e)(2), the Principal Combined Fund Organization shall provide a report of all organizations that were designated by donors or by the Principal Combined Fund Organization to receive funds from the local campaign held in the preceding year. Such report shall consist of a roster of the beneficiary organizations, grouped by category of service, listed within each category in strict alphabetical order, and accompanied by a description (not to exceed 25 words and figures) of each organization's charitable programs; an organization may, at its election, note in parentheses after its name the initials of the participating federated group, if any, to which it belongs. Such report shall clearly state that it is a list of the recipients of all valid donations made in the immediately preceding campaign; that it is not an exhaustive list of organizations eligible to receive gifts through the CPC; and that the presence or absence of the name of any organization implies neither governmental approval, nor governmental disapproval of any group or program. Such report shall conform, in all respects with the requirements of fairness and press provisions of this subsection. Such report shall not inconsistent with the ex-press provisions of this subsection, with the safeguards against coercion and undue influence that are set forth in 5 CFR 950.521(e)(1). The Principal Combined Fund Organization shall endeavor to transmit a copy of such report individually to each Federal employee in the local campaign area, in the event, however, that such form of distribution would not be cost effective or timely or would be impracticable, then the Principal Combined Fund Organization shall provide such report to Federal employees in the local campaign area by, at a minimum, publishing such report at least once within the 10 days immediately preceding the commencement of the local campaign.

Organization to proceed with the pay-ment process. This process of self-cer-...

in a newspaper of general circulation within the local Federal community, making such report available to each key-worker to assist individual donees, and maintaining copies of the report available for public inspection during reasonable business hours at every office of the Principal Combined Fund Organization in the local campaign area. The Principal Combined Fund Committee shall submit the report to the local Federal Coordinating Committee for its review and approval prior to any publication or issuance thereof.

(4) *Pledge form and payroll withholding authorization.* (i) A copy of the pledge form shall be used to inform the Central Receipt and Accounting Point for the local area of the designation decisions. The format for the pledge card is prescribed by the Director and is available from the Office of Personnel Management.

(ii) One copy of this form will be used as the Payroll Withholding Authorization. When completed, this copy will go to the contributor's payroll office. Since there are some 1,400 separate payroll offices serving Federal personnel, the withholding authorization must be in a standard format and bear adequate identification of the local campaign.

(iii) The name and mailing address of the local CFC Central Receipt and Accounting Point will be printed at the top of the form. The name must be the same as that for the campaign and include the year; for example, "1984 San Antonio Area Combined Federal Campaign."

(iv) The box entitled "Identification No." will be used for the contributor's Social Security number, except in the case of Federal agencies that have a separate payroll identification numbering system. There is no requirement to use this space and it should only be used when it aids in accounting or campaign management.

(f) Other campaign materials that are authorized include:

(1) *Chairman's Guide.* For use of campaign chairmen in individual Federal installations.

'eyworker's Guide. Instructions workers about CFC arrange-

752

---

ments, solicitation methods, and forwarding procedures;

(3) *Keyworker's Report Envelope.* With tally sheets (which may be printed on the envelope) on which the keyworker will list the names of contributors or the number of confidential envelopes enclosed;

(4) *Miscellaneous Campaign Items.* Contributor's receipts, window stickers, posters, progress charts, awards, etc.;

(5) *Publicity Items.* News stories and fillers for the local press and for organs, employee letters, speeches, campaign leaders, division chairmen, films, television and radio material supporting the campaign; and

(6) *Awards.* To recognize campaign achievements by Federal agencies. Federal agency chairmen, etc. Awards should be identified as "Combined Federal Campaign" awards. The presentation of awards and plaques by individual voluntary agencies or categories of voluntary agencies for CFC accomplishments is not permitted.

(g) National materials provided and made available for use by local CFCs will be developed by an organization named by the Director. The Director will provide opportunity for comment on such materials by interested parties prior to approval. He must approve all material prior to use.

**§ 950.523 Payroll withholding.**

The following policies and procedures are authorized for payroll withholding operations in accordance with Office of Personnel Management regulations in 5 CFR Part 550, Pay Administration.

(a) *Applicability.* Voluntary payroll allotments will be authorized by Federal departments and agencies for payment of charitable contributions to local Combined Federal Campaign organizations.

(b) *Allotters.* The allotment privilege will be made available to Federal personnel as follows:

(1) Employees whose net pay regularly is sufficient to cover the allotment are eligible. An employee should be under an appointment limited to one year or less may make an allotment if a Combined Federal Campaign will

---

appropriate official of the employ-ment will be determined by the local Federal agency determines the employee will continue his employment for a period sufficient to justify an allotment. (This includes part-time and intermittent employees who are regularly employed.)

(2) Members of the Uniformed Services are eligible, excluding those on duty short-term assignment (less than three months). (The Department of Defense has modified its military pay allotment regulations to authorize allotments for CFC charitable contributions by uniformed service members.)

(c) *Authorization.* (1) Allotments will be wholly voluntary and will be based upon contributors' individual written authorizations.

(2) Authorization forms in standard format will be printed by the Principal Combined Fund Organization at each location. The forms and other campaign materials will be distributed to employees when charitable contributions are solicited.

(3) Completed payroll withholding authorization forms should be transmitted to the contributors' servicing payroll offices as promptly as possible, preferably by December 15. However, forms are received after that date they should be accepted and processed by payroll offices.

(d) *Duration.* Authorizations will be for the form of a term allotment for the one-year period, depending upon the allotter's pay schedule—starting with the first pay period, beginning in January and ending with the last pay period that begins in December. (The standardization of beginning and ending dates, except for individual discontinuances, is intended to simplify payroll operations and minimize costs.) However, the fact that an employee will not be on duty for the entire year should not preclude acceptance of his payroll allotment if he has sufficient time remaining in service to make the allotment practicable. Three months or more would be considered a reasonable period for which to accept an allotment.

(e) *Amount.* (1) Allotters will make a single allotment that is apportioned into equal amounts for deductions from pay during the year.

753

---

(2) The minimum amount for allotment will be determined by the local Federal Coordinating Committee but will be no less than $1.00 bi-weekly, with no restriction on size of increment above that minimum.

(3) No change of amount will be authorized during the term of an allotment.

(4) For the purpose of simplicity and economy in payroll operations, no deduction will be made for any period in which the allotter's net pay, after all legal and previously authorized deductions, is insufficient to cover the allotment. No adjustment will be made in subsequent periods to make up for deductions missed.

(f) *Remittance.* (1) One check will be sent by the payroll office once each pay period, in the gross amount of deductions on the basis of current authorizations, to the Central Receipt and Accounting Point at each location for counting the payroll office has received allotment authorizations.

(2) The check will be accompanied by a statement identifying the agency and the number of employee deductions. There will be no listing of allotments included or of allotter discontinuances.

(g) *Discontinuance.* (1) Allotments will be discontinued automatically:

(i) On expiration of the one-year withholding period; or

(ii) On death, retirement, or separation of allotter from the Federal service, whichever occurs earlier.

(2) The allotter may revoke his authorization at any time by requesting it in writing from the payroll office. Discontinuance will be effective the first pay period beginning after receipt of the written revocation in the payroll office.

(3) A discontinued allotment will not be reinstated.

(h) *Transfer.* (1) When an allotter moves to another organizational unit served by a different payroll office in the same CFC location, whether in the same office or a different department or agency, his allotment authorization will be transferred to the new payroll office.

(2) When there is a delay in receiving the transferred authorization in the new payroll office, or when the allotment will begin under the new payroll office, or when the al-