## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STUTTERING FOUNDATION OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-1249 (JDB) |
| | ) | |
| LINDA M. SPRINGER, | ) | |
| in her official capacity as | ) | |
| Director of the Office of Personnel | ) | |
| Management, | ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

### DEFENDANTS' CONSOLIDATED MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Linda M. Springer, in her official capacity as Director of the Office of

Personnel Management, respectfully files this consolidated motion for summary judgment and

opposition to plaintiff's motion for summary judgment. In support of this motion, defendant

respectfully refers the Court to the statement of material facts not in dispute and the

memorandum in support of this motion. A proposed Order is also attached

July 18, 2007                                    Respectfully submitted,


_____/s/_____

JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____

RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


_____/s/_____

JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-1249
(202) 514-8780 (facsimile)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STUTTERING FOUNDATION OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-1249 (JDB) |
| | ) | |
| LINDA M. SPRINGER, | ) | |
| in her official capacity as | ) | |
| Director of the Office of Personnel | ) | |
| Management, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7(h), defendant Linda M. Springer, in her official capacity as Director of the Office of Personnel Management, submits the following Statement of Material Facts for which there is no genuine dispute.

1. On June 29, 2006, OPM officially proposed "to *clarify* that [organizations participating in the CFC] must be public charities, not private foundations." Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to private Voluntary Organizations – Eligibility and Public Accountability Standards, 71 Fed. Reg. 37003 (proposed June 29, 2006) (to be codified at 5 C.F.R. Part 950). OPM specifically proposed the following clarification for 5 C.F.R. § 950.202(b): "Certify that it is an organization recognized by the Internal Revenue Service as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. 170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. 509(a). A copy of the letter(s) from the Internal Revenue Service

granting tax exempt and public charity status must be included in the organization's application."

71 Fed. Reg. 37009 (proposed June 29, 2006).

2.  Having received and considered seven responses to the notice and comment, six of

which were positive and one of which was neutral, see Exhibit 14 hereto, OPM instituted the

final rule on November 20, 2006.  See  Solicitation of Federal Civilian and Uniformed Service

Personnel for Contributions to Private Voluntary Organizations – Eligibility and Public

Accountability Standards, 71 Fed. Reg. 67276 (adopted Nov. 20, 2006 ) (codified at 5 C.F.R.

Part 950).   As adopted, the clarifying rule states that an entity applying to participate in the CFC

must:  "Certify that it is an organization recognized by the Internal Revenue Service as tax

exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. §

170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. §

509(a). A copy of the letter(s) from the Internal Revenue Service granting tax exempt and public

charity status must be included in the organization's application."  5 C.F.R. § 950.202(b) (2007).

3.  The impetus for the clarifying regulation began with a review of the 1984 CFC

regulations by the Office of CFC Operations ("OCFCO").  Declaration of Mark Lambert ¶¶ 14,

17 ("Lambert Decl.") (attached as Exhibit 12 hereto).  Based upon the review of the regulations,

together with the purpose of the CFC, OCFCO determined that the purpose of the CFC would be

best served by limiting participation in the CFC to public charities, rather than private

foundations.  Lambert Decl. ¶ 17.

4.  Notwithstanding the belief by OCFCO that the CFC should be limited to public

charities based upon these factors, prior to 2006, OPM did not focus on the distinction between

public charities and private foundations.  Lambert Decl. ¶ 14.  Based on the belief of the

2

OCFCO, and the fact that OCFCO believed that the regulations had not been properly enforced, OCFCO determined that it should issue a clarifying regulation that would limit CFC participation to public charities.  Lambert Decl. ¶ 14.

5.  Because OPM was drafting proposed rule changes to address a different issue with the CFC, see Lambert Decl. ¶¶ 15 & 16, OPM determined that it should include in the proposed regulations a regulation implementing OCFCO's belief and interpretation of the 1984 regulations by clarifying that participation in the CFC was limited to public charities.  Lambert Decl. ¶¶ 16-17.

6.  In doing so, OPM analyzed the 1984 regulations themselves, the policy rationale behind excluding private foundations, and IRS statutes and regulations.  Lambert Decl. ¶¶ 17-18.  After reviewing these sources, OPM ultimately proposed the clarification through notice and comment rule-making and adopted the clarifying regulation in November 2006.  See  Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to Private Voluntary Organizations – Eligibility and Public Accountability Standards, 71 Fed. Reg. 67276 (adopted Nov. 20, 2006 ) (codified at 5 C.F.R. Part 950).

7.  On January 26, 2006, Health and Medical Research Charities of America ("HMR") submitted to the Office of CFC Operations ("OCFCO") an application on behalf of the Stuttering Foundation of America ("SFA") for participation as a national independent charity in the 2007 CFC campaign.  See Exhibits 1 & 2 hereto.  See also Compl. ¶ 12.  In the letter accompanying SFA's application, HMR stated that it was "unable to certify this organization [as a federation member] because it could not comply with the new regulatory requirement regarding IRS recognition as a public charity, since it is a private operating foundation and therefore does not

fall under 26 U.S.C. 509(a)." Exhibit 2 hereto; Compl. ¶ 13 & Ex. A to Compl.  Accordingly,

HMR's letter requested a one-year waiver of the new requirement, noting that the organization

would not have had enough time to obtain a private charity designation if it had applied to the

IRS when the final rules were published.  Exhibit 2; Compl. ¶ 14.

8.  After receiving the application and letter submitted to OPM by HMR on plaintiff's

behalf, a review of the application was conducted.  Exhibit 3 hereto.

9.  Based upon this review, OPM determined that plaintiff failed to certify Statement 2 of

the application and sent plaintiff an email on February 5, 2007 requesting that such certification

be completed.  Exhibit 4 hereto.

10.  Plaintiff responded to the email by letter on February 5, 2007 indicating that it could

not certify that it was a public charity.  Exhibit 5 hereto.  OPM also received a letter dated

February 12, 2007 from plaintiff's counsel regarding plaintiff's application for participation in

the CFC.  Exhibit 6 hereto.

11.  On February 12, 2007, OPM conducted another review of plaintiff's application and

denied the application.  Exhibit 7 hereto.  On March 16, 2007, OPM notified plaintiff by letter

that it had denied plaintiff's application to participate in the CFC because SFA did not certify

that it was classified as a public charity pursuant to 26 U.S.C. § 509(a).  Exhibit 8 hereto; Compl.

¶ 15.  The denial letter to SFA, which was signed by the Acting Director, Office of CFC

Operations, advised plaintiff of its appeal rights.  Id.

12.  SFA appealed the denial of its CFC application on March 22, 2007.  Exhibit 9 hereto;

Compl. ¶ 16.  In its appeal, SFA acknowledged that it is a private foundation and not a public

charity pursuant to 26 U.S.C. § 509(a), but argued that it performs similar good-deeds to a public

4

charity and, therefore, should be permitted to participate in the CFC.  Id.  Plaintiff also argued that the requirement that participants be public charities was a new eligibility requirement in violation of the 1987 Hoyer-Hatfield Act.  Id.

13.  After receipt of plaintiff's appeal, OPM's Appeals Panel reviewed plaintiff's documentation and recommended that its appeal be denied.  Exhibit 10 hereto.  This recommendation was adopted by OPM Chief of Staff and Director of External Affairs Tricia Hollis who notified plaintiff of her decision by letter dated June 28, 2007.  Exhibit 11 hereto; Compl. ¶ 17.  This denial was premised on the fact that SFA is not a public charity pursuant to 26 U.S.C. § 509(a).  Id.

14.  Plaintiff filed this action seeking injunctive and declaratory relief, together with a motion for a temporary restraining order on July 11, 2007.  Based upon agreement of the parties, the Court consolidated the TRO/PI with the merits, converted plaintiff's motion for a TRO to a motion for summary judgment and set a briefing schedule.

July 18, 2007                              Respectfully submitted,


       /s/
_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


       /s/
_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


       /s/
_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-1249
(202) 514-8780 (facsimile)

6

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STUTTERING FOUNDATION OF AMERICA,　) | |
| 　　　　　　　　　　　　　　　　　) | |
| 　　　　　　Plaintiff,　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　) | |
| 　　v.　　　　　　　　　　　　　　) | No. 07-1249 (JDB) |
| 　　　　　　　　　　　　　　　　　) | |
| LINDA M. SPRINGER,　　　　　　　　) | |
| 　　in her official capacity as　　　　) | |
| 　　Director of the Office of Personnel　) | |
| 　　Management,　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　) | |
| 　　　　　　Defendant.　　　　　　　) | |
| _____) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' CONSOLIDATED**
**MOTION FOR SUMMARY JUDGMENT AND OPPOSITION**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Linda M. Springer, in her official capacity as Director of the United States

Office of Personnel Management, respectfully files this motion for summary judgment.  As

explained in detail below, plaintiff's challenge under the Administrative Procedure Act ("APA")

is without merit.  The specific regulation it challenges, 5 C.F.R. § 950.202(b), which was

clarified and adopted pursuant to notice and comment rulemaking, is an interpretation fully

supported by the 1984 regulations.  Accordingly, pursuant to the deferential standard of review

for APA challenges, this Court should uphold the regulation at issue, deny plaintiff's request for

injunctive and declaratory relied, and grant judgment in defendant's favor.

**BACKGROUND**

**I.　　THE COMBINED FEDERAL CAMPAIGN**

The CFC is the nation's largest employer-sponsored charity drive, and it oversees

hundreds of millions of dollars in charitable donations per year.  Inclusion in the CFC is highly

desirable for charitable organizations because of the reputation for accountability and

responsibility that is associated with the program and the magnitude of donations that may be

obtained through the program.

It has traditionally been Federal Government policy to cooperate with and assist voluntary

health and welfare agencies in soliciting funds for worthy causes from Federal personnel.  In

1957, a uniform program was established by Executive Order, to limit the volume of solicitations

at the workplace and to insure truly voluntary giving by Federal personnel.  The purpose of the

fund-raising program within the Federal service was to establish policies and procedures

governing the solicitation of Federal civilian and military personnel for contributions to private

charitable and other humanitarian organizations.  The program was originally monitored by the

President's Committee on Fund Raising Within the Federal Service.  When the committee was

abolished, its responsibilities were assigned to the Chairman of the U.S. Civil Service

Commission by Executive Order 10927 of March 18, 1961.

A pilot program of solicitation among four federations of charitable organizations, first

known as the Combined Federal Campaign was conducted in 1964.  The pilot was very

successful and has evolved over the years to include additional charitable organizations.  The

U.S. Office of Personnel Management succeeded the Civil Service Commission in 1978, and

took on the responsibilities under the Combined Federal Campaign.  The objectives and

eligibility criteria of the Campaign were clarified through Executive Orders 12353 and 12404,

issued by President Reagan in 1982 and 1983, and subsequent acts of Congress.

Today, the program encompasses Federations and independent organizations that

participate on an international, national or local level.  Federations comprise groups of member

2

organizations with common fund raising goals; the federations provide administrative services, assistance and direction to their member organizations in completing and submitting their applications. Organizations that apply through Federations rely upon the Federation for communications and assistance in meeting the program's application requirements. OPM relies upon Federations to ensure that their member organizations meet the eligibility criteria. OPM regularly audits samples of the applications submitted through Federations, on the basis of selective criteria, for compliance with the regulations. OPM received 2165 applications for the 2007 national campaign. Of these, 1708 applied through Federations and 45 applied as unaffiliated organizations. Declaration of Mark Lambert ¶ 4 ("Lambert Decl.").

The CFC is comprised of approximately 264 local campaigns, each of which is responsible for producing the Charity List of CFC charitable organizations that have been accepted for participation in that local campaign in a given year. The Charity List is ultimately distributed to Federal employees at the workplace. Each Charity List is comprised of three parts. The first part lists national/international organizations and the second part lists international organizations. The first two parts, being national and/or international in scope, are the same for all local campaigns. The third part of the Charity List, which is unique to each local campaign, lists local organizations that participate in that local campaign. Lambert Decl. ¶ 4.

The 2007 CFC campaign season begins on September 1, 2007 and runs through December 15, 2007. Each campaign's Local Federal Coordinating Committee, the group of Federal executives which oversees local campaign administration, determines the actual local solicitation period, which must be within the September 1 through December 15, 2007 time period. Lambert Decl. ¶ 5.

OPM annually distributes, via a CFC Memorandum delivered by email, the national and national/international parts of the Charity List.  OPM also makes this information available via its website at www.opm.gov/cfc.  Each local campaign supplements the first two parts of the Charity List with its local part.  The local campaigns then send out the complete Charity List to be printed.  Not all campaigns print at the same time, as the local appeals process for some local campaigns takes longer than others.  Lambert Decl. ¶¶ 6-7.

Once printed, any change to the Charity List may only be accommodated by reprinting the Charity List, or by amending the Charity List by way of a supplement or insert page.  At present, the overseas campaign is prepared to send its Charity List to print within the next week, but has agreed pursuant to this action, to hold sending the Charity List to the printer until Monday, July 30, 2007.  The local campaigns are in various stages of preparedness, and will generally be ready to send their Charity Lists to print by the end of July or early August, although similar to the overseas campaign, none will be sent prior to July 30, 2007.  Lambert Decl. ¶¶ 8-9 and 11.

The number of copies of the Charity List printed by each of the 264 local campaigns, including the campaign that takes place overseas, and the associated cost of printing, varies with the size of the campaign and time available before the campaign begins.  For 2005, which is the most recent campaign for which OPM has detailed information, an estimated 3.9 million Federal employees were solicited by local campaigns, including approximately 318,000 in the overseas campaign.  In 2006, 5.7% of all CFC funds were pledged in the Overseas CFC ($15,501,237).  Lambert Decl. ¶ 10.

The CFC program, known for its rigorous eligibility and public accountability standards, assures potential Federal donors that any contribution made through the CFC will be made only

4

to financially responsible and accountable organizations that provide real services, and that the money they donate will be used to further the purposes for which it was intended.  Lambert Decl. ¶ 12.

It is OPM's view that public charities receive a level of public scrutiny and oversight that is not present in the case of private foundations, as a result of the inherent interest and demand for accountability on the part of the public that supports public charities.  The fact of having donated causes the public to be a stakeholder and generates interest in the workings of a public charity, including how it spends the funds it receives. Typically, the reason an organization receives broad based contributions from the public is that the public is interested in what the organization is doing.  Lambert Decl. ¶ 13.

Among the eligibility requirements for organizations seeking to participate in the national campaign is a requirement that the organization "certify that it is an organization recognized by the Internal Revenue Service as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. § 170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. § 509(a).  A copy of the letter(s) from the Internal Revenue Service granting tax exempt and public charity status must be included in the organization's application." 5 C.F.R. § 950.202(b).

The application to participate in the CFC must be completed annually, regardless of whether the organization is applying as a national organization like the plaintiff, or as a local organization.  Participation in a prior year does not guarantee participation in any other year.  The application contains a series of certifications and requests for evidence to support certifications to be completed by the certifying official of the organization.  Lambert Decl. ¶ 21.

Guidance with regard to CFC applications is distributed to local campaigns and is widely disseminated.  CFC Memorandum 2006-21 (Nov. 27, 2006), for instance, was made publicly available to organizations, federations and the general public on OPM's Internet website (http://.opm.gov/cfc/).  CFC Memorandum 2006-21 explains that, in accordance with 5 C.F.R. § 950.202(b), private foundations and units of government are not eligible to participate in the CFC.  See CFC Memorandum 2006-21 (available at http://opm.gov/cfc/opmmemos/2006/2006-21.asp and attached hereto as Exhibit 16).

Organizations that are denied eligibility for inclusion on the national list may appeal the decision by submitting a written request for reconsideration within 10 days from the date the organization receives the denial.  See 5 C.F.R. § 950.205.  Requests for reconsideration are limited by regulation to the facts justifying the reversal of the original decision.  Requests for reconsideration may not be used to supplement applications that had missing or outdated documents, and the regulation provides that any such documents submitted with the request for reconsideration will not be considered.  See 5 C.F.R. § 950.205(a).  The Director's (or her designee's) decision is final for administrative purposes.  See 5 C.F.R. § 950.205(f).

## II.    REGULATORY AND STATUTORY SCHEME

### A.    The 2007 Clarifying Regulation

On June 29, 2006, OPM officially proposed "to *clarify* that [organizations participating in the CFC] must be public charities, not private foundations."[1]  Solicitation of Federal Civilian and

---

[1]  Although OPM used notice and comment rule-making for the regulation at issue, the regulation is actually an interpretive rule, meaning that OPM was not required to go through notice and comment rule-making.  See Chemical Waste Mgmt., Inc. v. E.P.A., 869 F.2d 1526, 1534-35 (D.C. Cir. 1989); American Hosp. Ass'n v. Bowen, 834 F.2d 1037, 1045 (D.C. Cir. 1987).  In its proposed rule, OPM acknowledged that "Public Law 100-202 § 101(m) requires

Uniformed Service Personnel for Contributions to Private Voluntary Organizations – Eligibility

and Public Accountability Standards, 71 Fed. Reg. 37003 (proposed June 29, 2006) (to be

codified at 5 C.F.R. Part 950).  OPM specifically proposed the following clarification for 5

C.F.R. § 950.202(b): "Certify that it is an organization recognized by the Internal Revenue

Service as tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26

U.S.C. 170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C.

509(a).  A copy of the letter(s) from the Internal Revenue Service granting tax exempt and public

charity status must be included in the organization's application."  71 Fed. Reg. 37009 (proposed

June 29, 2006).

In response to the notice of proposed rulemaking, OPM received a total of seven

comments relating to the clarifying regulations for 5 C.F.R. § 950.202(b); six of which were

favorable and one of which was neutral.  None of the comments received were either negative or

asserted that the change was in violation of law, and none of the comments came from plaintiff.

Having received and considered the responses relating to the clarifying regulation, OPM

instituted the final rule on November 20, 2006.  See  Solicitation of Federal Civilian and

Uniformed Service Personnel for Contributions to Private Voluntary Organizations – Eligibility

and Public Accountability Standards, 71 Fed. Reg. 67276 (adopted Nov. 20, 2006 ) (codified at 5

---

OPM to maintain certain eligibility criteria for CFC participation by organizations and federations as well as public accountability standards to those similar to those that were in effect between 1984 and 1987."  This statement is an accurate representation of Public Law 100-202 § 101(m) in that Congress did require OPM to maintain certain eligibility criteria, see Pub. L. 100-202 § 101(m)(b)(1)(B), and mandated that public accountability standards remain "similar" to those established between 1984 and 1987, see  Pub. L. 100-202 § 101(m)(b)(1)(D).  Thus, the statement in the proposed rule is not contrary to the plain language of the 1987 Hoyer-Hatfield Act.

C.F.R. Part 950).   As adopted, the clarifying rule states that an entity applying to participate in

the CFC must:  "Certify that it is an organization recognized by the Internal Revenue Service as

tax exempt under 26 U.S.C. 501(c)(3) to which contributions are deductible under 26 U.S.C. §

170(c)(2) and that the organization is further classified as a public charity under 26 U.S.C. §

509(a). A copy of the letter(s) from the Internal Revenue Service granting tax exempt and public

charity status must be included in the organization's application."  5 C.F.R. § 950.202(b) (2007).

The impetus for the clarifying regulation began with a review of the 1984 CFC

regulations by the Office of CFC Operations ("OCFCO").  Lambert Decl. ¶¶ 14, 17.  Based upon

the review of the regulations, together with the purpose of the CFC, OCFCO determined that the

purpose of the CFC would be best served by limiting participation in the CFC to public charities,

rather than private foundations.  Lambert Decl. ¶ 13.  Notwithstanding the belief by OCFCO that

the CFC should be limited to public charities based upon these factors, prior to 2006, OPM did

not focus on the distinction between public charities and private foundations.  Lambert Decl. ¶

14.  Based on the belief of the OCFCO, and the fact that OCFCO believed that the regulations

had not been properly enforced, OCFCO determined that it should issue a clarifying regulation

that would limit CFC participation to public charities.  Lambert Decl. ¶ 14.

Because OPM was drafting proposed rule changes to address a different issue with the

CFC, see Lambert Decl. ¶¶ 15 & 16, OPM determined that it should include in the proposed

regulations a regulation implementing OCFCO's belief and interpretation of the 1984 regulations

by clarifying that participation in the CFC was limited to public charities.  Lambert Decl. ¶¶ 16-

17.  In doing so, OPM analyzed the 1984 regulations themselves, the policy rationale behind

excluding private foundations,[2] and IRS statutes and regulations.  Lambert Decl. ¶¶ 17-18.  After reviewing these sources, OPM ultimately proposed the clarification through notice and comment rule-making and adopted the clarifying regulation in November 2006.  See  Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to Private Voluntary Organizations – Eligibility and Public Accountability Standards, 71 Fed. Reg. 67276 (adopted Nov. 20, 2006 ) (codified at 5 C.F.R. Part 950).

**B.    Congressional Action**

On December 22, 1987, 5 U.S.C. § 1101 was amended by Pub.L. 100-202, § 101(m) [Title VI, § 618], Dec. 22, 1987, 101 Stat. 1329- 390, 101 Stat. 1329-423.  This froze the eligibility standards at the 1984 regulatory level, and required that any public accountability standards be similar to those standards established for the 1984-1987 CFCs.[3]  See Pub.L. 100-202, §§ 101(m)(b)(1)(B) & 101(m)(b)(1)(D).  Regarding the eligibility requirements, the amendment stated:

> (B) Any requirements for eligibility to receive contributions through the Combined Federal Campaign shall, to the extent that such requirements relate to any subject matter other than one referred to in subparagraph (A), remain the same as the criteria in the 1984 regulations, except as otherwise provided in this section.

---

[2]  As explained in the Lambert Declaration, the policy rationale behind excluding private foundations is that public charities, because of the funding received from the general public, have a high degree of public oversight and accountability.  Lambert Decl. ¶¶ 13-18.  Because private foundations are not subject to the level of public oversight and accountability as public charities, private foundations are heavily regulated by the IRS.  See 26 U.S.C. §§ 4940-4948.

[3]  The "1984 regulations" are codified at 5 C.F.R. Part 950 (1985) and also located at Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to Private Voluntary Organizations, 49 Fed. Reg. 32735 (adopted Aug. 16, 1984).

9

Thus, this amendment, also known as the "1987 Hoyer-Hatfield Act," effectively froze the

eligibility requirements for participating in the CFC at the level envisioned by the regulations in

force at the close of 1984. Notably, however, notwithstanding that the Act froze the eligibility

requirements, there was no mention that the agency's interpretation of such regulations must or

should be frozen.

## II.    PLAINTIFF'S APPLICATION

On January 26, 2006, Health and Medical Research Charities of America ("HMR")

submitted to the Office of CFC Operations ("OCFCO") an application on behalf of the SFA for

participation as a national independent charity in the 2007 CFC campaign. Compl. ¶ 12. In the

application, HMR stated that it was "unable to certify this organization [as a federation member]

because it could not comply with the new regulatory requirement regarding IRS recognition as a

public charity, since it is a private operating foundation and therefore does not fall under 26

U.S.C. 509(a)." Compl. ¶ 13 & Ex. A to Compl. Accordingly, HMR's letter requested a one-

year waiver of the new requirement, noting that the organization would not have had enough time

to obtain a private charity designation if it had applied to the IRS when the final rules were

published.[4] Compl. ¶ 14.

On March 16, 2007, OPM denied plaintiff's application to participate in the CFC because

SFA did not certify that it was classified as a public charity pursuant to 26 U.S.C. § 509(a).

Compl. ¶ 15. The denial letter to SFA, which was signed by the Acting Director, Office of CFC

Operations, advised plaintiff of its appeal rights. Id.

---

[4] Although plaintiff requested a waiver to apply for public charity status, there is no indication that it could meet the standards for a public charity set by 26 U.S.C. § 509(a).

10

SFA appealed the denial of its CFC application on March 22, 2007. Compl. ¶ 16. In its appeal, SFA acknowledged that it is a private foundation and not a public charity pursuant to 26 U.S.C. § 509(a), but argued that it performs similar good-deeds to a public charity and, therefore, should be permitted to participate in the CFC. Id. Plaintiff also argued that the requirement that participants be public charities was a new eligibility requirement in violation of the 1987 Hoyer-Hatfield Act. Id.

By letter of June 28, 2007, OPM Chief of Staff and Director of External Affairs Tricia Hollis sustained the initial decision of OPM and denied plaintiff's appeal. Compl. ¶ 17. This denial was premised on the fact that SFA is not a public charity pursuant to 26 U.S.C. § 509(a). Id. Plaintiff filed this action seeking injunctive and declaratory relief, together with a motion for a temporary restraining order on July 11, 2007.

On July 16, 2007, the parties held a telephonic conference with the Court and agreed that, pursuant to Federal Rule of Civil Procedure 65(a)(2), plaintiff's motion for a temporary restraining order and preliminary injunction should be converted into a motion for summary judgment. The parties also agreed to a briefing schedule to resolve the merits of this matter.

## LEGAL STANDARDS

## I.    APA STANDARD OF REVIEW

The APA standard of review requires a court to determine if agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). It also limits review to the administrative record. 5 U.S.C. § 706. Under the APA, "[a]rbitrary and capricious review requires the court to 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment.'"

11

McDonnell Douglas Corp. v. Dep't of the Air Force, 215 F. Supp. 2d 200, 204 (D.D.C. 2002) (internal citation omitted). This review is highly deferential and presumes the validity of agency action.  See Kisser v. Cisneros, 14 F.3d 615, 618 (D.C. Cir. 1994);  American Horse Protection Ass'n, Inc. v. Yeutter, 917 F.2d 594, 596 (D.C. Cir. 1990).  The Court must determine whether the agency has articulated a "rational connection between the facts found and the choice made." Bowman Transportation v. Arkansas-Best Freight Sys., 419 U.S. 281, 285 (1974) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)).

The Court may reverse **only** if the agency's decision is not supported by substantial evidence, or the agency has made a clear error in judgment.  Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415-416 (1971); see also Motor Vehicle Mfgs. Ass'n v. State Farm Automobile Ins. Co., 463 U.S. 29, 43 (1983) (a court is not to substitute its judgment for that of the agency).  "[T]he key to the arbitrary and capricious standard is its requirement of reasoned decisionmaking: [the Court] will uphold the [agency's] decision if, but only if, [it] can discern a reasoned path from the facts and considerations before the [agency] to the decision it reached." Neighborhood TV Co. v. FCC, 742 F.2d 629, 639 (D.C. Cir.1984).

## II    OPM'S INTERPRETATION OF ITS REGULATIONS IS ENTITLED TO "SUBSTANTIAL DEFERENCE"

Not only is the agency action entitled to a highly deferential standard, but the Court must confer "substantial deference" upon "an agency's construction of its own regulations."  Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Lyng v. Payne, 476 U.S. 926, 939 (1986); see also American Train Dispatchers Assoc. v. ICC, 54 F.3d 842, 847 (D.C. Cir. 1995); Randolph-Sheppard Vendors of America v. Weinberger, 795 F.2d 90, 111 (D.C. Cir. 1986)

("The scope of the statute and the regulations promulgated thereunder should, in the first instance, be one for the agency charged with its administration."). The Court's role is not to ensure that the agency's application of its regulations to the facts is the most natural or logical, the only possible interpretation, or the one that the Court would have adopted in the first instance, but only that it is reasonable and consistent with the regulations. National Trust for Historic Preservation v. Dole, 828 F.2d 776, 782 (D.C. Cir. 1987); Belco Petroleum Corp. v. FERC, 589 F.2d 680, 685 (D.C. Cir. 1978). The agency is entitled to even greater deference in interpreting its regulations than in reading its statutory mandate. Wyoming Outdoor Council v. United States Forest Service, 165 F.3d 43, 52 (D.C. Cir. 1998); Puerto Rico Elec. Auth. v. FERC, 848 F.2d 243, 249 (D.C. Cir. 1988); see also Lyng, 476 U.S. at 939.

Notably, the fact that an agency issues a reinterpretation or clarification of its regulations does *not* render the reinterpretation arbitrary and capricious. National Cable & Telecommunications Ass'n v. Brand X Internet Serv., 545 U.S. 967, 981 (2005). Instead, provided the agency offers an explanation for the change or clarification in policy, and the change or policy is consistent with the regulations, the change or clarification should be afforded the typical deference granted to agency action. Id. As explained by the United States Supreme Court, "An initial agency interpretation is not instantly carved in stone. On the contrary, the agency . . . must consider varying interpretations and the wisdom of its policy on a continuing basis . . ., for example, in response to changed factual circumstances, or a change in administration." Id. (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 863-64 (1984); Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 59 (1983)). In fact, in Chevron, the seminal case on deference to agency

13

interpretation was itself an instance in which the Court deferred to an agency interpretation that was a reversal of agency policy. Chevron, 467 U.S. at 857-58; National Cable, 545 U.S. at 982.

In sum, OPM's interpretation and application of the 1984 regulations, including its implementation of the 2006 clarifying regulation, must be accepted "unless it is manifestly unreasonable." Liberty Maritime Corp. v. U.S., 928 F.2d 413, 419 (D.C. Cir.1991) (quoting National Wildlife Federation v. Gorsuch, 693 F.2d 156, 174 (D.C. Cir. 1982)).

## ARGUMENT

I.    **THE CLARIFYING REGULATION IS A PROPER INTERPRETATION OF THE 1984 REGULATIONS AND DOES NOT VIOLATE THE HOYER-HATFIELD ACT**

As explained above, Congress mandated in 1987 that the eligibility requirements were effectively frozen at the 1984 level. Plaintiff claims that the 2006 clarifying regulation imposed a new eligibility requirement on participation in the CFC and, therefore, that the regulation is a violation of the APA. When the clarifying regulation is viewed in the context of the 1984 regulations themselves, however, it is clear that plaintiff's claims are misplaced and the agency's interpretation of the 1984 regulations is both appropriate and proper.

The 1984 regulations make clear that "voluntary organizations" were eligible to participate in the CFC. The regulations, however, define "voluntary organizations" in several different places and, seemingly, in contradictory ways. However, when the regulations are read in harmony, it is clear that the 1984 regulations authorize only public charities to participate in the CFC. Thus, SFA, like any private foundation that did not receive its funding *primarily* from contributions from the public, and does not have "broad public support" should not have been authorized to participate in the CFC pursuant to the 1984 regulations.

14

Pursuant to 5 C.F.R. § 950.301 (1985), "Voluntary organizations are private, nonprofit, self-governing organizations financed ***primarily*** by contributions from the public." See 5 C.F.R. § 950.301 (1985). Likewise, pursuant to § 950.405, entities eligible to participate are those that are "broadly supported" by the public. 5 C.F.R. § 950.405 (1985). The plain language of the 1984 regulations contained in §§ 950.301, 950.403 and 950.405 comports with the IRS's definition of a "public charity," ***not*** a private foundation. Section 950.403 restricts participation to tax-exempt charitable organizations "supported by voluntary contributions from the general public." Use of this language infers a broad base of public support, in contrast to funding obtained by private foundations which typically are primarily supported by contributions from individuals, families, corporations or trusts. Similarly, § 950.405 of the 1984 regulations expressly references the tax status of the organization as relevant by its use of the heading "Corporate and Tax Status." 5 C.F.R. § 950.405(a) (1985).

Title 26, section 509 of the U.S. Code defines "private foundations," for tax purposes. See 26 U.S.C. § 509(a). Pursuant to § 509(a), the IRS deems charitable organizations that do not fall into certain exempted categorizes to be "private foundations."[5] See id.; Internal Revenue Service, Private Foundations (available at http://www.irs.gov/charities/charitable/article/0,,id=96114,00.html). The entities included in the exempt categories, and therefore not deemed private foundations are those that "have broad

---

[5] See also "Historical Development and Present Law of the Federal Tax Exemption for Charities and Other Tax-Exempt Organizations," at p.83 dated April 19, 2005, [Joint Committee Print]; JCX-29-05 (available at http://www.house.gov/jct/x-29-05.pdf) ("An organization that does not fit within any of the above categories is a private foundation. In general, private foundations generally are funded from a limited number of sources (e.g., an individual, a family, or a corporation).").

public support," and, therefore, are public charities.[6]  Internal Revenue Service, Private

Foundations (available at http://www.irs.gov/charities/charitable/article/0,,id=96114,00.html).

To the extent that any of this regulatory or statutory language is ambiguous, comments

from the Committee on Appropriations of the United States Senate make clear that Congress

intended the 1984 regulations to *exclude* private foundations.  Specifically, the Committee stated

that: "The Committee envisions that Federal workers will be allowed to write in any 501(c)(3)

charitable organization that is ***not a private foundation*** and that the list would simply provide to

federal workers information on the past year's CFC activities."  49 Fed. Reg. 32735, 32739.

Accordingly, Congress fully intended the CFC to be open to public charities, not private

foundations such as SFA, and understood that the 1984 regulations precluded private foundations

from participating in the CFC.

Based upon the plain language of the 1984 regulations, the Committee Notes contained in

the Federal Register, and the IRS's definition of public charities and private foundations, it is

clear that the regulations clarifying the 1984 regulations simply explained what was intended all

along, namely that the CFC was designed and understood to be limited to public charities in

1984.  Thus, the clarifying regulation was not a new eligibility requirement.  Instead, it is

properly a regulation that clarified the eligibility requirements as set forth in the 1984 regulations.

In light of the "substantial deference" owed to an agency's interpretation of its own regulations,

---

[6]  Plaintiff does not dispute that its status is that of a "private foundation" and not a
"public charity."  See Compl. ¶ 4 ("SFA is not a public charity within the meaning of Code sec.
509(a).").  Although plaintiff attempts to classify itself as a private operating foundation,
plaintiff's complaint and motion acknowledge that as a private operating foundation it is
classified under 26 U.S.C. § 509(a) as a private foundation, not a public charity.  See Pltf's
Motion at 10-11 (acknowledging that a private operating foundation is a private foundation).

and the actual language of the 1984 regulations, the Committee Notes and the IRS's definition of public charities and private foundations militate the conclusion that the clarifying regulation is both appropriate and proper.

Although plaintiff may prefer a different interpretation of the 1984 regulations, a plaintiff is not entitled to its preferred or chosen interpretation. In fact, as explained by the D.C. Circuit, an agency's interpretation does not have to be the most natural or logical interpretation, or the interpretation that the Court would have adopted in the first instance. National Trust for Historic Preservation, 828 F.2d at 782; Belco Petroleum, 589 F.2d at 685. Instead, the agency's interpretation must only be reasonable and consistent with the regulations. National Trust for Historic Preservation, 828 F.2d at 782; Belco Petroleum, 589 F.2d at 685.

## II.    THE FACT THAT PLAINTIFF PREVIOUSLY PARTICIPATED IN THE CFC DOES NOT RENDER OPM'S CLARIFICATION ARBITRARY OR CAPRICIOUS

In its complaint and motion, SFA argues that, because it had participated in the CFC since 1992, the clarifying regulation must be seen as a "change" and not a "clarification or re-interpretation" and, therefore, should be held arbitrary and capricious. Plaintiff's claim fails for several reasons.

As an initial matter, participation in the CFC in one year does ***not*** mean that the entity will be approved for participation in a subsequent year. See Lambert Decl. ¶ 21. Second, it is clear that the interpretation of the 1984 regulations under which SFA participated in the CFC as a private foundation was subsequently clarified.[7] As explained above, the fact that an agency

---

[7] Notwithstanding that plaintiff alleges that the change in the regulation was arbitrary and capricious, plaintiff should have been precluded from participating in the CFC under the 1984 regulations, had they been interpreted properly. Simply, an agency should not be penalized for

changes or clarifies its interpretation of regulations does not render the change arbitrary or capricious, provided the agency offers an explanation of the change.  National Cable, 545 U.S. at 981-82.  As explained in the declaration of Mark Lambert, see Lambert Decl. ¶¶ 13-18, OPM has done just this.  Specifically, OPM explained that OCFCO believed that the CFC was originally intended to include public charities, not private foundations.  Lambert Decl. ¶ 14.  OPM also explained its view, based in part on the distinctions between treatment of public charities and private foundations in the IRS Code, that OPM believes that public charities receive a level of public scrutiny and oversight not present for private foundations.  Lambert Decl. ¶ 13.  OPM also explained that, while proposing other regulations through notice and comment rulemaking, it reviewed the 1984 regulations, and IRS statutes, regulations and guidance, and determined it should clarify the 1984 regulations to include only private charities in the CFC.  Lambert Decl. ¶¶ 16-18.

In sum, OPM has provided exactly the sort of explanation of its clarifying regulations that National Cable held appropriate.  Accordingly, the fact that plaintiff was erroneously permitted to participate in the CFC as a private foundation does not render the OPM's interpretation of the 1984 regulations, as clarified in 2006, arbitrary and capricious.  Thus, OPM's interpretation and clarifying regulation should be upheld under the APA.

---

correcting an erroneous prior interpretation of its regulations.  See Alvarado Parkway Institute, Inc. v. Mendez, 789 F.Supp. 1190, 1201 (D.D.C. 1992) (upholding agency action and stating that "[t]his case presents an example of an administrative agency that made a mistake in interpreting and applying its own recently promulgated regulations, acknowledged its mistake, and undertook corrective measures").

III.    **BECAUSE PLAINTIFF IS NOT A PUBLIC CHARITY, IT IS NOT ELIGIBLE TO PARTICIPATE IN THE CFC**

As set forth above, the 2006 clarifying regulation is a proper interpretation of the 1984 eligibility requirements for participation in the CFC.  Thus, the only question is whether or not SFA is a public charity.  The analysis of this question is simple, as plaintiff itself acknowledges that " SFA is ***not*** a public charity within the meaning of Code sec. 509(a)."  Compl. ¶ 4 (emphasis added).  Additionally, although plaintiff attempts to classify itself as a private operating foundation, plaintiff's motion admits that as a private operating foundation it is classified under 26 U.S.C. § 509(a) as a private foundation, not a public charity.  See Pltf's Motion at 10-11 (acknowledging that a private operating foundation is a private foundation).

Notwithstanding that it is not a public charity, plaintiff spends much time in both its complaint and motion for a temporary restraining order asserting that it provides direct assistance to those who stutter and, accordingly, does many of the same things as a public charity.  Although plaintiff may do many good deeds, it cannot escape the requirement that participants in the CFC be public charities.  Therefore, because plaintiff is not a public charity, the action by OPM in enforcing its regulations is neither arbitrary nor capricious, or contrary to law.  Accordingly, this Court should uphold the denial of plaintiff's application to participate in the CFC as a proper exercise of agency authority.  See Neighborhood TV, 742 F.2d at 639 ("The key to the arbitrary and capricious standard is its requirement of reasoned decisionmaking: [the Court] will uphold the [agency's] decision if, but only if, [it] can discern a reasoned path from the facts and considerations before the [agency] to the decision it reached."); Kisser v. Cisneros,

19

14 F.3d 615, 618 (D.C. Cir. 1994) (APA review is highly deferential and presumes the validity of agency action).

## **CONCLUSION**

For the foregoing reasons, this Court should uphold the regulation contained at 5 C.F.R. § 950.202(b) as an appropriate and proper interpretation of the 1984 regulations.  Similarly, this Court should hold that OPM was neither arbitrary nor capricious in clarifying the 1984 regulations and precluding plaintiff from participation in the CFC due to its status as a private foundation, not a public charity.  In doing so, this Court should enter judgment in defendant's favor and deny plaintiff's motion.

July 18, 2007                                    Respectfully submitted,


       /s/
_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


       /s/
_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


       /s/
_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-1249
(202) 514-8780 (facsimile)

21