UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STUTTERING FOUNDATION OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LINDA M. SPRINGER, ) <br>    in her official capacity as ) <br>    Director of the Office of Personnel ) <br>    Management, ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. 07-1249 (JDB) |

### DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT

Plaintiff begins its reply by "vigorously disput[ing]" that OPM's 2006 regulation is a "clarification." Unfortunately, other than repeating this claim several times, plaintiff offers no legal analysis to support its proposition. Instead, plaintiff seeks to bootstrap the fact that it participated in previous CFCs to its flawed claims that OPM made changes and not clarifications. In contrast, however, defendant's motion for summary judgment offers both legal and factual support for the proposition that the 2006 regulation was an interpretive rule and not a substantive rule. Thus, the 2006 regulation was neither precluded by the 1987 Hoyer-Hatfield Act nor inconsistent with the 1984 regulations themselves.

Plaintiff then argues that the 2006 regulation sets forth eligibility criteria that are more restrictive than the 1984 CFC regulations and, therefore, is not entitled to the "substantial deference" owed to an agency's interpretation of its regulations. Plaintiff also argues that, in its opinion, because the 2006 regulation is inconsistent with the 1987 Hoyer-Hatfield Act, the 2006 regulation is entitled to no deference. Again, plaintiff's claims are mistaken. First, as explained in detail in defendant's motion, the 2006 regulation is a proper interpretation of, and fully

supported by, the 1984 regulations. Second, regarding the 1987 Hoyer-Hatfield Act, that Act froze the eligibility requirements for the CFC, it said nothing about the agency's interpretation of the 1984 regulations. In fact, the Committee language set forth in 49 Fed. Reg. 32735, 32739 evidences the fact that Congress itself intended the CFC to exclude private foundations.[1] Thus, it is clear that the 2006 regulation did nothing except clarify the agency's prior erroneous interpretation and implementation of the 1984 regulations.

## ARGUMENT

I.   **THE 2006 REGULATION IS CONSISTENT WITH THE 1987 HOYER HATFIELD ACT**

This matter requires the Court to determine whether or not the 2006 regulation violates the 1987 Hoyer-Hatfield Act, which mandated that "eligibility requirements" for the CFC "remain the same as the criteria in the 1984 regulations." Because the 1987 Hoyer-Hatfield Act relates to the 1984 regulations, the Court's analysis begins with both the 1987 Hoyer-Hatfield Act and the 1984 regulations.

A.   **The 1987 Hoyer-Hatfield Act is Silent Regarding OPM's Interpretation of the 1984 Regulations**

In 1984, the United States Supreme Court provided a two step analysis for reviewing an agency's interpretation of its regulations: (1) whether the statute permits or forbids an agency's interpretation, and (2) if the statute is not clear on step (1), then the court decides whether the

---

[1] As set forth in defendant's motion, the Senate Committee on Appropriations stated, "The Committee envisions that Federal workers will be allowed to write in any 501(c)(3) charitable organization that is ***not a private foundation*** and that the list would simply provide to federal workers information on the past year's CFC activities." 49 Fed. Reg. 32735, 32739.

agency's interpretation of a statute is reasonable or permissible. See Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc., 467 U.S. 837, 843 (1984).

As stated in defendant's motion for summary judgment, the 1987 Hoyer-Hatfield Act requires OPM to maintain the eligibility requirements set forth in the 1984 regulations. The parties agree on this proposition. The disagreement arises, however, on the issue of whether or not the 1987 Hoyer-Hatfield Act speaks to OPM's interpretation of the 1984 regulations. Contrary to plaintiff's claims, the Act is *silent* on this issue. Surely, plaintiff does not and cannot contend that the Act expressly mentions anything about OPM's interpretation of the 1984 regulations – it does not. Moreover, this case stands in stark contrast to Planned Parenthood of Metropolitan Washington, D.C., Inc. v. Horner, 691 F. Supp. 449 (D.D.C. 1988), cited by plaintiff for the prospect that OPM's 2006 clarifying regulation violates the 1987 Act. In Horner, the Court determined that an agency regulation which precluded "dual listings" on both the national and local lists was void because the 1984 regulations stated nothing about dual listings. In this case, however, as explained below, a reasonable interpretation of the 1984 regulations supports limiting the CFC to only public charities. Thus, Planned Parenthood, does not help plaintiff's case and, actually, supports defendant's interpretation of the 1984 regulations.

Because the 1987 Hoyer-Hatfield Act does *not* speak to either OPM's initial interpretation of the 1984 regulations or its ability to issue clarifying interpretations of the 1984 regulations, this Court's analysis should be guided by the second step of the Chevron analysis – whether the agency's interpretation of the 1984 regulations is reasonable or permissible.

**B.    The 2006 Clarifying Regulation is a Proper Interpretation of the 1984 Regulation**

It is undisputed that the 1984 regulations do not mention either public charities or private foundations. However, when read in whole, and in concert with the IRS Code relating to public charities and private charities, it is clear that OPM's interpretation of the 1984 regulations is fully supported by those regulations. Moreover, although plaintiff attempts to discount the express language of the Senate Appropriations Committee with a footnote, plaintiff cannot escape the conclusion that the Senate itself intended to preclude private foundations from participation in the CFC.

As explained in detail in defendant's motion, the language of the 1984 regulations comports with that of the IRS's definitions of public charities, not private foundations.[2] Sections 950.301, 950.403 and 950.405 of 5 C.F.R. all contain language either similar or identical to that contained in the IRS Code and regulations relating to the definition of public charities.[3]

While plaintiff would make much of the fact that it maintains a number of indiviudal contributors (regularly in excess of 1000) and that the percentage of revenues it received from donations from individuals and other non-governmental sources in 2006 exceeded twenty percent (20%), this fact is not determinative. Plaintiff's attempts to characterize requirement (iii) in section 950.405(a) as at tension with OPM's revised interpretation of its regulation should be disregarded. The 50%/20% test does not establish CFC eligibility for organizations who merely demonstrate 20% revenues received from individuals and non-governmental sources.

---

[2] In fact, based on the language of the 1984 regulations alone, defendant could limit participation in the CFC to public charities even without the 2006 clarifying regulation.

[3] 26 C.F.R. § 1.509(a)-3, which excludes "broadly, publicly supported organizations" from the definition of private foundations, also fully supports OPM's clarifying regulation.

Rather, it imposes specific criteria regarding an acceptable level of governmental contributions and contributions from organizations affiliated with the applicant organization versus contributions from the general public. The 50%/20% regulation relies on the definitions of direct contributions, meaning gifts, in cash or in donated in-kind material, given by individuals and/or other non-governmental sources directly to the spending health and welfare organization; and indirect contributions, meaning gifts, in cash or in donated in-kind material, given to the spending health and welfare organizations by another health and welfare organization, but not transfers, dues or other funds from affiliated organizations or government, which are not to be considered as public "contributions."

Thus, the 50%/20% test essentially provides that an organization may not be too largely funded by the government or by its own affiliates. Being too largely dependent on support from the government or its own affiliates would mean, in the view of OPM, that the organization is not broadly publicly supported. However, merely meeting a 20% public support test does not in itself, make an organization eligible, even if it is broadly publicly supported for the purposes of determining adequate levels of governmental/affiliate funding, because it still may not be "financed primarily by contributions from the public," pursuant to section 950.301.

For example, if an organization were funded 100% by a single individual donor, the organization would meet the test at section 950.405 that it receive at least 20% of its revenues from a direct contribution (as this is a contribution that is non-governmental and is not from an affiliated organization). However, OPM does not consider such an organization as being sufficiently broadly publicly funded within the meaning of the 1984 regulations to convey eligibility, because the regulations' various provisions have to be read together in context as a

comprehensive package, and with their purpose in mind. There can be no real dispute that OPM reasonably looks at the level of public support to demonstrate general public acceptance of the organization, or that such a policy is appropriate and proper. This policy result is properly reached by reading section 950.405 together with sections 950.301 and 950.403.

Thus, the cited provision of section 950.405, and particularly when read in the context of sections 950.403 and 950.301 (requiring organizations to be financed "primarily" by contributions from the public), supports OPM's view that even in 1984 the CFC was meant to include only public charities. Although plaintiff would prefer a different interpretation, there can be no doubt that OPM's interpretation of the 1984 regulations is proper and should be sustained from an APA challenge, particularly under the substantial deference afforded an agency's interpretation of its own regulations.

Plaintiff attempts to discount the additional reason OPM issued the clarifying regulation, explained in detail in the Lambert Declaration, as "the opinions of OPM in regard to 'public policy.'" Pltf's Reply at 9. Plaintiff's attempts notwithstanding, OPM's policy reason for the clarifying regulation is not only appropriate, but is precisely the sort of explanation necessary for the Court to sustain the regulation.[4] See National Cable & Telecommunications Ass'n v. Brand X Internet Services, 545 U.S. 967, 981 (2005) ("For if the agency adequately explains the reasons for a reversal of policy, "change is not invalidating, since the whole point of *Chevron* is

---

[4] Notably, plaintiff's attempt to discount any "public policy" analysis by the agency in interpreting its regulations is entirely devoid of legal support. The absence of support for this proposition is, quite simply, because plaintiff's proposition is legally untenable. American Federation of Government Employees, AFL-CIO v. Federal Labor Relations Authority, 741 F. Supp. 980 (D.D.C. 1990) (Upholding agency regulations "grounded in a number of arguments based on statutory interpretation, legislative history and public policy").

to leave the discretion provided by the ambiguities of a statute with the implementing agency."); Alvarado Parkway Institute, Inc. v. Mendez, 789 F.Supp. 1190, 1201 (D.D.C. 1992) ("This case presents an example of an administrative agency that made a mistake in interpreting and applying its own recently promulgated regulations, acknowledged its mistake, and undertook corrective measures").  Moreover, OPM's alleged "opinion" of public policy is, once again, entirely consistent with the IRS Regulations.  As explained by the IRS, "The one-third support test and the not-more-than-one-third support test are designed to insure that an organization which is excluded from private foundation status under section 509(a)(2) is responsive to the general public, rather than to the private interests of a limited number of donors or other persons." 26 C.F.R. § 1.509(a)-3(a)(4).[5]  Thus, not only is OPM's "opinion" on the accountability of public charities consistent with its right to interpret its regulations, it is also consistent with IRS regulations.

## II.    SFA IS NOT A PUBLIC CHARITY

Notwithstanding that plaintiff is not a public charity, it attempts to obscure the issues in asserting that it performs many of the same tasks as a public charity, and is, in part supported by the public.  However, plaintiff cannot escape the undeniable fact, even though it classifies itself as a "private operating foundation," it is not a public charity and does not indicate that it intends to become one.  Instead, under 26 U.S.C. § 509(a), SFA is a private foundation, not a public charity.  In fact, as noted in defendant's motion, there is no indication that plaintiff could qualify as a public charity with the IRS.  Because OPM's clarifying regulation is fully supported by the

---

[5] The IRS regulations were adopted in 1972 and, therefore, in effect at the time of the 1984 regulations.  See 37 Fed. Reg. 21907.

1984 regulations, and plaintiff is not a public charity, its claim that it should be permitted to participate in the CFC because it fulfills functions similar to those of the public charity must fail.

Although plaintiff's reply asserts that plaintiff is publicly supported or enjoys broad public support, its motion contradicts this claim. In its motion, plaintiff explicitly acknowledges that as a private operating foundation, it is "non-publicly supported." See Pltf.'s Mem. at 11. Thus, this Court should disregard plaintiff's new claims that it is publicly supported.[6]

## CONCLUSION

For the foregoing reasons, as well as those set forth in defendant's motion for summary judgment, this Court should dismiss plaintiff's APA challenge to OPM's clarifying regulation and uphold OPM's denial of plaintiff's CFC application.

---

[6] The ipse dixit assertion of counsel in a brief cannot substitute for evidence. E.g, Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 667 n.7 (Fed. Cir. 1986) ("Counsel's statements are not evidence."); S. A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982) ("a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda."). In addition, factual allegations "must be enough to raise a right to relief above the speculative level," and a pleader must make "a 'showing,' rather than a blanket assertion, of entitlement to relief.'" Bell Atlantic Corp. v. Twombly, --- U.S. --- , 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

July 23, 2007                                    Respectfully submitted,

                                                  /s/
                                      JEFFREY A. TAYLOR, D.C. Bar # 498610
                                      United States Attorney

                                                  /s/
                                      RUDOLPH CONTRERAS, DC BAR #434122
                                      Assistant United States Attorney

                                                  /s/
                                      JOHN F. HENAULT, D.C. Bar # 472590
                                      Assistant United States Attorney
                                      555 4th Street, N.W.
                                      Washington, DC 20530
                                      (202) 307-1249
                                      (202) 514-8780 (facsimile)

Of Counsel:

    Susan Whitman
    Debra Petcove
    Office of the General Counsel
    Office of Personnel Management