# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **STUTTERING FOUND. OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  07-1249 (JDB)** |
| **LINDA M. SPRINGER, in her capacity as Director of the U.S. Office of Personnel Management,** | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Stuttering Foundation of America ("SFA") brings this action against Linda M. Springer, in her capacity as Director of the United States Office of Personnel Management ("OPM"), challenging OPM's denial of SFA's application for inclusion in the 2007 Combined Federal Campaign ("CFC").  SFA argues that OPM's decision was arbitrary, capricious, and contrary to law and should be set aside pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 (2000).  Although this action is a challenge to a specific administrative adjudication, its resolution presents a single question of law: Does the inclusion of a "public charity" eligibility requirement in the 2006 CFC regulations violate a federal statute mandating that CFC eligibility requirements remain the same as the criteria specified in the 1984 CFC regulations?  <u>See</u> Treasury, Postal Service and General Government Appropriations Act, 1988, Pub. L. No. 100-202, § 618, 101 Stat. 1329-391, 1329-423 (1987) (codified at 5 U.S.C. § 1101 (note)).

SFA filed a motion for a temporary restraining order and preliminary injunction

concurrently with its complaint on July 11, 2007.  The motion seeks an order suspending OPM's final action that denied SFA's CFC application and instead requiring OPM to include SFA on the 2007 CFC list of national/international participating organizations.  With the parties' consent, and pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, the Court converted SFA's motion into a motion for summary judgment.  Now pending before the Court are plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment, both of which have been fully briefed and were the subject of a motions hearing held on July 26, 2007.  For the reasons explained below, the Court grants plaintiff's motion for summary judgment, denies defendant's motion for summary judgment, vacates OPM's decision sustaining the denial of SFA's 2007 CFC application, and remands for further consideration of SFA's application by the agency.  The Court further enjoins OPM from printing or distributing its national/international charitable organizations list until a final decision is made with respect to SFA's 2007 CFC application on remand.

## BACKGROUND

The CFC is "the only authorized solicitation of employees in the Federal workplace on behalf of charitable organizations."  5 C.F.R. § 950.102(a) (2007).  During the CFC campaign, which is conducted from September 1 through December 15 each year, see § 950.102(a), federal employees are provided with a list comprised of three parts -- national/international organizations, international organizations, and local organizations, see id. § 950.401(g)(2).  "Federal workers may donate to any organization listed as eligible to participate in the Campaign, and, upon request, contributions are either made directly to the Campaign or withheld from their paychecks."  Planned Parenthood of Metro. Wash., D.C., Inc. v. Horner, 691 F. Supp. 449, 450

(D.D.C. 1988). The Director of OPM "exercises general supervision over all operations of the CFC," § 950.102(c), and, as part of this supervision, has the authority to determine whether interested organizations qualify for participation in the campaign, id. § 950.201(a)(2).

The facts of this case are not in dispute. On June 29, 2006, OPM published proposed changes to the regulations governing eligibility requirements and public accountability standards for charitable organizations participating in the CFC. See Eligibility and Public Accountability Standards, 71 Fed. Reg. 37,003 (proposed June 29, 2006). One of the proposed changes involved eligibility requirements for organizations seeking inclusion in the national/international and international organizations lists; such organizations would now be required to certify that they are classified as "a public charity under 26 U.S.C. 509(a)." 71 Fed. Reg. at 37,009. Under the version of the regulations then in effect, an organization only needed to "[c]ertify that it is recognized by the Internal Revenue Service as tax-exempt under 26 U.S.C. 501(c)(3) and to which contributions are tax-deductible pursuant to 26 U.S.C. 170." 5 C.F.R. § 950.202(b) (2006).[1] At the conclusion of the notice-and-comment period, OPM adopted this change as proposed.[2] See Eligibility and Public Accountability Standards, 71 Fed. Reg. 67,276, 67,277 (Nov. 20, 2006) (codified at 5 C.F.R. § 950.202(b) (2007)) (hereinafter "2006 regulations"). OPM stated in its final rule that it had proposed the revision "to clarify that applicant

---

[1] These two requirements were retained in the proposed rule, although the proposed rule altered the latter requirement by specifying that contributions be "deductible under 26 U.S.C. 170(c)(2)." 71 Fed. Reg. at 37,009 (emphasis added). Plaintiff has not challenged this alteration.

[2] Although the final rule reported that "[t]here were no comments on this proposal," 71 Fed. Reg. at 67,277, defendant stated in its cross-motion for summary judgment (without citation to the record) that "OPM received a total of seven comments relating to the clarifying regulations for 5 C.F.R. § 950.202(b); six of which were favorable and one of which was neutral." Def.'s Cross-Mot. for Summ. J. at 7.

organizations must be public charities, not private foundations, or exclusively government units or instrumentalities thereof." Id. at 67,277.

Plaintiff Stuttering Foundation of America ("SFA") is a non-profit corporation that was established in 1947, and is incorporated in and maintains its principal office in Memphis, Tennessee. Compl. ¶¶ 4, 5; Def.'s Cross-Mot. for Summ. J. Ex. 9 (Letter from MacKenzie Canter, III, counsel for SFA, to Trica Hollis, Chief of Staff & Dir. of Internal Affairs, OPM (Mar. 22, 2007)) (hereinafter "Mar. 2007 SFA Appeal") at 1-2. As its name suggests, SFA is dedicated to providing information and assistance to children and adults who stutter. Compl. ¶¶ 5, 12; March 2007 SFA Appeal at 2. SFA is recognized by the Internal Revenue Service as a tax-exempt, charitable organization within the meaning of 26 U.S.C. § 501(c)(3) (2000). See Compl. ¶ 4; Def.'s Cross-Mot. for Summ. J. Ex. 6 (Letter from MacKenzie Canter, III, to Mark Lambert, Acting Dir., Office of CFC Operations (Feb. 12, 2007)) (hereinafter "Feb. 12, 2007, SFA Letter"). Because SFA also qualifies as a private operating foundation pursuant to 26 U.S.C. § 4942(j)(3), contributions to SFA are tax-deductible under 26 U.S.C. § 170. See Compl. ¶ 4; Def.'s Cross-Mot. for Summ. J. Ex. 2 (Letter from Cindy Schneible, President, Health & Med. Research Charities of Am., to Mark Lambert (Jan. 26, 2007)) (hereinafter "HMR Letter"); id. Ex. 5 (Letter from Jane Fraser, President, SFA, to Mark Lambert (Feb. 5, 2007)) (hereinafter "Feb. 5, 2007, SFA Letter"). SFA further qualifies as a private foundation pursuant to 26 U.S.C. § 509 (2000). See Compl. ¶ 4; HMR Letter.

SFA has participated in every CFC between the years 1992 and 2006. Compl. ¶ 8. An application for participation in the 2007 CFC was submitted on SFA's behalf on January 26, 2007, by a national federation called the Health and Medical Research Charities of America

("HMR").  Compl. ¶¶ 7, 12; HMR Letter; see also 5 C.F.R. § 950.301 (2007) (national

federation).  HMR's cover letter to OPM explained that it was unable to certify SFA's eligibility

because SFA "could not comply with the new regulatory language regarding IRS recognition as a

public charity," and thus it was forwarding SFA's application for review as an unaffiliated,

national independent charity.  HMR Letter; see also 5 C.F.R. § 950.302 (requiring national

federations to ensure that "only those member organizations that comply with all eligibility

requirements are certified for participation in the CFC").

On February 5, 2007, OPM notified SFA that its application was incomplete because SFA

had not certified "statement #2."  Def.'s Cross-Mot. for Summ. J. Ex. 4 (E-mail to Jane Fraser,

from Office of CFC Operations (Feb. 5, 2007)).  Statement #2 reads:  "I certify that the [IRS]

recognizes the organization named in this application as tax-exempt under 26 U.S.C. 501(c)(3) to

which contributions are tax deductible pursuant to 26 U.S.C. 170(c)(2) and the organization is

classified as a public charity under 26 U.S.C. 509(a)."  Def.'s Cross-Mot. for Summ. J. Ex. 1

(SFA 2007 CFC Application) at 2.  In response to OPM's communication, the president of SFA

wrote a letter confirming that it did not qualify as a "public charity" but noting that, as a private

operating foundation, it had qualified for inclusion in the CFC for the past fifteen years.  See Feb.

5, 2007, SFA Letter.  SFA followed-up with another letter to OPM, sent via counsel, explaining

its view that the "public charity" requirement in the 2006 regulations violated federal law.[3]  See

---

[3]SFA's letter to OPM referred to section 618 of the Treasury, Postal Service and General
Government Appropriations Act, 1988 as the "1987 Hoyer-Hatfield Act," as does the brief filed
by defendant in this Court.  See Feb. 12, 2007, SFA Letter; Def.'s Cross-Mot. for Summ. J. at 10.
This nomenclature may be inaccurate.  There is a similar but separate provision, found in the
Urgent Supplemental Appropriations Act of 1986, Pub. L. No. 99-349, 100 Stat. 710, that is
commonly referred to as the Hoyer-Hatfield Amendment.  See id. § 204, 100 Stat. at 748-49
(requiring 1986 CFC regulations to be repromulgation of 1984 and 1985 CFC regulations, unless

Feb. 12, 2007, SFA Letter at 4.

OPM formally denied SFA's application for inclusion in the 2007 CFC on March 16, 2007.  See Def.'s Cross-Mot. for Summ. J. Ex. 8.  As the basis for its decision, OPM stated that SFA had not certified that it was "classified as a public charity under 26 U.S.C. § 509(a)"; rather, OPM noted, the IRS "has classified your organization as a private foundation under Section 501(c)(3) of the Internal Revenue Code."  Id.  SFA filed an administrative appeal on March 22, 2007.  See Mar. 2007 SFA Appeal.  OPM issued its final decision sustaining the denial of SFA's application on June 28, 2007.  Def.'s Cross-Mot. for Summ J. Ex. 11 (Letter from Tricia Hollis, to Jane Fraser (June 28, 2007)).  OPM reasoned that SFA "currently is classified under 26 U.S.C. 501(c)(3) as a private foundation and, therefore, does not meet the criteria" expressed in the 2006 regulations.  Id.  This lawsuit followed.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In a case involving review of a final agency action under the Administrative Procedure Act, 5 U.S.C. § 706, however, the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record.  See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006).  Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record,

---

such regulations otherwise provided for continued participation of all past participating charitable organizations); see also Planned Parenthood of Metro. Wash., D.C., 691 F. Supp. at 451 (describing "Hoyer Amendment").

whereas "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." See Occidental Eng'g Co. v. INS, 753 F.2d 766, 769-70 (9th Cir. 1985); see also Northwest Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1472 (9th Cir. 1994) ("[T]his case involves review of a final agency determination under the [APA]; therefore, resolution of th[e] matter does not require fact finding on behalf of this court.  Rather, the court's review is limited to the administrative record.").  Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.  See Richard v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977), cited in Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).

Plaintiff challenges the denial of its application for inclusion in the 2007 CFC campaign as inconsistent with statutory requirements governing the CFC.  Under the APA, the Court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The "scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  A reviewing court must be satisfied that the agency has "'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'"  Alpharma, Inc. v. Leavitt, 460 F.3d 1, 6 (D.C. Cir. 2006).  The agency's decisions are entitled to a "presumption of regularity," Citizens to Preserve Overton Park, Inc. v. Volpe, 401

U.S. 402, 415 (1971), and although "inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one." Id. at 416.  That inquiry is confined to the administrative record, subject to limited exceptions not applicable here.[4]  See Camp v. Pitts, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

## ANALYSIS

The parties, and this Court, agree that this action presents a single question of law: Does the inclusion of a "public charity" requirement in the 2006 regulations violate the federal statute mandating that CFC eligibility requirements remain the same as those specified in the 1984 CFC regulations?  If so, OPM's denial of SFA's application was contrary to law and cannot withstand review under the APA; if not, OPM's decision was neither contrary to law nor arbitrary and capricious and must be sustained.  Although the legal issue in this case is simple to state, its resolution requires the Court to explain the statutory and regulatory background of the CFC in some detail.

The CFC was created by President Kennedy in 1961.  See generally Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 790-92 (1985) (describing early history of CFC). In 1983, President Reagan signed an executive order that established a policy of excluding public advocacy groups from participation in the CFC.  See Exec. Order No. 12,404, 3 C.F.R. 151 (1983).  The executive order was challenged in federal court on First Amendment grounds, see Cornelius, 473 U.S. at 795-96, and ultimately Congress passed a series of legislative acts that

---

[4]SFA submitted factual material in the course of the proceedings before this Court that was not previously submitted to or considered by OPM.  Accordingly, this Court has not considered that material.

prevented OPM from promulgating regulations to enforce the executive order, see generally S.

Rep. No. 100-315, at 142-43 (1987) (broadly describing legislation).

One of those congressional actions is at issue here.  As part of the continuing

appropriations bill for fiscal year 1988, Congress passed a provision that was intended "to

provide a permanent solution to the Combined Federal Campaign."  H.R. Rep. No. 100-498, at

1172 (1987).  That provision, which this Court will henceforth refer to as Section 618, states

initially that "None of the funds appropriated by this Act, or any other Act in this or any fiscal

year hereafter, may be used in preparing, promulgating, or implementing any regulations relating

to the Combined Federal Campaign if such regulations are not in conformance with subsection

(b)."  Treasury, Postal Service and General Government Appropriations Act, 1988, Pub. L. No.

100-202, § 618(a), 101 Stat. 1329-391, 1329-423 (1987) (codified at 5 U.S.C. § 1101 (note)).

Subsection (b) then states in relevant part that "Any requirements for eligibility to receive

contributions through the Combined Federal Campaign shall, to the extent that such requirements

relate to any subject matter other than one referred to in subparagraph (A), remain the same as the

criteria in the 1984 regulations, except as otherwise provided in this section." § 618(b)(1)(B), 100

Stat. at 1329-423.[5]  In short, Section 618 mandates that the CFC "requirements for eligibility . . .

shall . . . remain the same as the criteria in the 1984 regulations."  Id. (emphasis added).

The eligibility criteria in the 1984 regulations are found in Subpart D, which is entitled

"Requirements for National Voluntary Agencies."  See Solicitation of Federal Civilian and

Uniformed Service Personnel for Contributions to Private Voluntary Organizations, 49 Fed. Reg.

--------

[5]The eligibility requirements at issue here do not relate to the subject matter referred to in subparagraph (A), which specifically addresses eligibility restrictions on public advocacy groups. Furthermore, the parties agree that the remainder of subsection (b) is not implicated in this action.

32,735 (Aug. 16, 1984) (codified at 5 C.F.R. Part 950 (1985)) ("1984 regulations").  Both general

and specific requirements are listed.  The "General requirements" provision of Subpart D

specifies that "[o]nly nonprofit, tax-exempt, charitable organizations, supported by voluntary

contributions from the general public and providing direct and substantial health and welfare

services through their national organization, affiliates or representatives are eligible for

approval."  5 C.F.R. § 950.403(a) (1985).  The 1984 regulations also list "Specific requirements

for national agencies," including "Corporate and Tax Status" requirements.  See id. § 950.405(a).

The specific requirements relevant to this action provide that

> A voluntary agency must be one:
> . . . .
> (2) That is voluntary and broadly supported by the public, meaning (i) that it is
> organized as a not-for-profit corporation or association under the laws of the United
> States, a State, a territory, or the District of Columbia; (ii) that it is classified as tax-
> exempt under 26 U.S.C. 501(c)(3), and is eligible to receive tax deductible
> contributions under 26 U.S.C. 170; and (iii) that, with the exception of voluntary
> agencies whose revenues are affected by unusual or emergency circumstances, as
> determined by the Director, it has received at least 50 percent of its revenues from
> sources other than the Federal Government or at least 20 percent of its revenues from
> direct and/or indirect contributions in the year immediately preceding any year in
> which it seeks to participate in the Combined Federal Campaign[.]

Id. § 950.405(a)(2).

As noted above, the 2006 regulations altered the wording of the CFC eligibility

requirements.  The "National/international eligibility requirements," which are now located in

"Subpart B -- Eligibility Provisions" and combine both the general and specific requirements,

read in relevant part:

> Certify that it is an organization recognized by the Internal Revenue Service as tax
> exempt under 26 U.S.C. [§] 501(c)(3) to which contributions are deductible under 26
> U.S.C. § 170(c)(2) and that the organization is further classified as a public charity
> under 26 U.S.C. § 509(a).  A copy of the letter(s) from the Internal Revenue Service
> granting tax exempt and public charity status must be included in the organization's

application.

5 C.F.R. § 950.202(b) (2007).

Plaintiff argues that the 2006 regulations violate Section 618 because the 1984 regulations did not require that an organization be classified as a "public charity under 26 U.S.C. § 509(a)," the language that was added in 2006. Therefore the "requirements for eligibility" in the 2006 regulations are not "the same as the criteria in the 1984 regulations." § 618, 100 Stat. at 1329-423. Defendant responds that the 2006 regulations are consistent with Section 618 because they simply <u>clarified</u> the eligibility requirements set forth in the 1984 regulations. <u>See</u> Def.'s Cross-Mot. for Summ. J. at 16. Stated somewhat differently, in OPM's view, the public charity requirement is a reasonable interpretation of the 1984 regulations, and thus its inclusion in the 2006 regulations does not effect a change in the eligibility criteria.

As an initial matter, this Court must reject OPM's framing of the issue. OPM begins with the premise that it is entitled to deference with respect to whether the 2006 eligibility requirement (i.e., the public charity requirement) is a <u>reasonable</u> interpretation of the 1984 regulations, relying on a long line of cases establishing that courts should give "substantial deference to an agency's interpretation of its own regulations."[6] <u>E.g.</u> <u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504,

---

[6]OPM also argues that its interpretation of the 1984 regulations is entitled to deference under step two of the <u>Chevron</u> analysis. Def.'s Reply at 2-3; <u>see</u> <u>Chevron USA, Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984). But <u>Chevron</u> deference applies to an agency's reading of an ambiguous <u>statute</u> that is within its jurisdiction to administer. <u>Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.</u>, 545 U.S. 967, 980 (2005). OPM's reading of the 1984 <u>regulations</u> does not come within the framework of <u>Chevron</u> at all. Furthermore, the statute at issue here is not ambiguous. It plainly states that CFC eligibility requirements must "remain the same as the criteria in the 1984 regulations." § 618(b)(1)(B); <u>see also</u> <u>Planned Parenthood of Metro. Wash., D.C.</u>, 691 F. Supp. at 453 (rejecting argument that Section 618 is ambiguous). Thus, there has not been any "delegation[] of authority to the agency to fill [a] statutory gap in reasonable fashion," <u>Brand X Internet Servs.</u>, 545 U.S. at 980; if anything, Section 618

512 (1994). These cases are inapposite because the Court here is presented with a predicate question -- whether the 2006 regulations can fairly be called an interpretation or clarification of the earlier regulations.[7] If the 2006 regulations are a change rather than an interpretation or clarification, then OPM has violated the unambiguous statutory command of Section 618 to retain the eligibility criteria set forth in 1984. More closely analogous, then, are cases in which an agency seeks to avoid the notice-and-comment procedures of the APA by characterizing a rule as interpretive rather than legislative. See 5 U.S.C. § 553(b)(3)(A) (exempting "interpretative rules" from notice-and-comment requirements); see also Def.'s Cross-Mot. for Summ. J. at 6 n.1 ("Although OPM used notice and comment rule-making for the regulation at issue, the regulation is actually an interpretive rule . . . ."). In that context, the D.C. Circuit does not defer to the agency's view that its regulations are a mere "clarification of an existing rule" pursuant to the APA; instead, the court conducts its own inquiry into whether the new rules "work substantive changes in prior regulations." Sprint Corp. v. FCC, 315 F.3d 369 (D.C. Cir. 2003); see also, e.g., U.S. Telecom Ass'n v. FCC, 400 F.3d 29, 34-35 (D.C. Cir. 2005); Am. Mining Congress v. Mine Safety & Health Admin., 995 F.2d 1106, 1112 (D.C. Cir. 1993). This Court will undertake a similar inquiry here.

A comparison of the two CFC regulatory schemes at issue reveals that they are not the

---

constrained OPM's regulatory authority to implement the CFC.

[7]Even assuming arguendo that this line of precedent is applicable here, OPM's interpretation of the 1984 regulations still would not be entitled to deference because it is inconsistent with the regulations for the reasons explained below. See Wyo. Outdoor Council v. U.S. Forest Serv., 165 F.3d 43, 52 (D.C. Cir. 1999) ("The agency's construction of its own regulation is controlling 'unless it is plainly erroneous or inconsistent with the regulation.'" (quoting United States v. Larionoff, 431 U.S. 864, 872 (1977))).

same.  Under the 1984 regulations, an organization was required to demonstrate that it "received at least 50 percent of its revenues from sources other than the Federal Government or at least 20 percent of its revenues from direct and/or indirect contributions."  5 C.F.R. § 950.405(a)(2)(iii). In place of this criteria, the 2006 regulations require instead that an organization qualify as "a public charity under 26 U.S.C. § 509(a)."  5 C.F.R. § 950.202(b) (2007).  Section 509(a) does not actually contain the phrase "public charity."  Rather, § 509(a) defines "private foundation" for purposes of the tax code as an "organization described in section 501(c)(3) other than" one that falls within four particular subcategories.  5 U.S.C.A. § 509(a) (2007).  It appears, then, that a §501(c)(3) organization that <u>does</u> fall within any one of the four subcategories would be considered a public charity under the 2006 CFC regulations.

The four subcategories of public charities described in § 509(a) are as follows.  The first refers, <u>inter alia</u>, to organizations that receive at least one-third (or, in some circumstances, at least ten percent) of their support from governmental units or direct or indirect contributions from the public.  <u>See</u> § 509(a)(1) (referencing 26 U.S.C. § 170(b)(1)(A)); <u>see also</u> 26 C.F.R. § 1.170A-9(e) (2006) (defining publicly supported organizations under § 170(b)(1)(A)(vi)).  The second subcategory includes any organization that "normally receives more than one-third of its support in each taxable year from any combination of . . . gifts, grants, contributions, or membership fees" and gross receipts from certain exempt functions, <u>and</u> that "normally receives not more than one-third of its support in each taxable year" from the sum of gross investment income and a certain portion of unrelated business taxable income.  § 509(a)(2).  The third subcategory encompasses so-called supporting organizations that are operated "exclusively for the benefit of, to perform the functions of, or to carry out the purposes of" an organization

described in either the first or second subcategory.  § 509(a)(3).  The last subcategory includes

organizations "organized and operated exclusively for testing for public safety." § 509(a)(4).

Even at first glance, it is obvious that the eligibility criteria in the 2006 CFC regulations

are inconsistent with the 1984 criteria.  The fifty-percent/twenty-percent alternative test of the

1984 regulations has been replaced with a substantively different four-category test in the 2006

regulations, which, to the extent it employs a percentage test, uses a thirty-three-percent standard.

An illustration is useful.  Assume that a § 501(c)(3) organization receives twenty percent of its

revenue from direct and/or indirect public contributions (and thus satisfies 5 C.F.R.

§ 950.405(a)(2)(iii) (1985)), receives eighty percent of its revenue from investment income, is

not a supporting organization or a public-safety-testing organization, and otherwise meets all of

the 1984 CFC eligibility criteria.  That organization is eligible under the 1984 regulations but not

under the 2006 regulations because it would not meet the § 509(a) definition of public charity.[8]

It is also possible to construct an example of an organization that meets the definition of public

charity (perhaps it is a supporting organization pursuant to § 509(a)(3)) and thus qualifies for

CFC participation under the 2006 regulations even though it could not satisfy the 1984 eligibility

requirement that it receive "at least 50 percent of its revenues from sources other than the Federal

Government or at least 20 percent of its revenues from direct and/or indirect contributions."  In

short, the 2006 CFC eligibility criteria are not the same as the 1984 criteria.

Nonetheless, OPM contends that the public charity criteria is not a change from the 1984

regulations because it simply gives meaning to, or is consistent with, the "requirement" in the

---

[8]This illustration also assumes the inapplicability of the ten-percent public-support
exception for inclusion in the first subcategory of public charities, which is found in the
regulations implementing § 170(b)(1)(A).  See 26 C.F.R. § 1.170A-9(e)(3).

1984 regulations that a voluntary agency be financed primarily by contributions from the public.

In support of this argument, OPM cites three provisions from the 1984 regulations.  The first

two, found in "Subpart D -- Requirements for National Voluntary Agencies" of the 1984

regulations, are already familiar: there is a general eligibility requirement that only charitable

organizations "supported by voluntary contributions from the general public . . . are eligible for

approval," 5 C.F.R. § 950.403(a) (1985), and a specific eligibility requirement that an

organization be "voluntary and broadly supported by the public," id. § 950.405(a)(2).  OPM also

cites § 950.301 ("Types of voluntary agencies."), which is found in "Subpart C -- Campaign

Arrangements for Voluntary Agencies," and which reads: "Voluntary agencies are private, non-

profit, self-governing organizations financed primarily by contributions from the public."  5

C.F.R. § 950.301 (1985).

OPM suggests that, read together, these three provisions presume a "broad base of public

support" that is inconsistent with the structure of a private foundation.  Def.'s Cross-Mot. for

Summ. J. at 15.  The difficulty with this argument is that § 950.405(a)(2) explicitly defines

"broadly supported by the public" for purposes of specific eligibility requirements.  See

§ 950.405(a)(2) ("That is voluntary and broadly supported by the public, meaning . . . . "

(emphasis added)).  And, as explained above, that 1984 definition uses criteria altogether

different from the tax code's distinction between private foundations and public charities

embodied in § 509(a) -- criteria that, in practice, actually enabled private foundations to

participate in the CFC over the years until the 2006 regulations came into effect.

Alternatively, OPM contended at oral argument that the 1984 regulations contain

conflicting eligibility requirements, thus enabling OPM essentially to pick and choose between

the competing requirements in all future CFC regulations.  In OPM's view, a conflict exists between § 950.405(a)(2)(iii), which requires at least twenty percent revenue from direct/indirect contributions, and § 950.301, which (by use of the word "primarily") requires at least fifty percent revenue from public contributions.  But the same flaws are present in this argument as in the last.  Although OPM notes that administrative regulations should be construed as a whole, it makes little sense to read § 950.301, a provision that defines voluntary agencies in general terms and in the context of campaign arrangements, in a way that creates unnecessary conflict with a separate provision (§ 950.405) explicitly setting out eligibility requirements through a detailed definition of "broadly supported."  Second, and more importantly, the criteria used in the 2006 regulations -- that an organization be a public charity as defined in § 509(a) -- corresponds to neither a twenty percent test nor a fifty percent test.  The 2006 criteria are simply not the same as the 1984 criteria, under any interpretation of the latter.

Finally, defendant references a report of the Senate Committee on Appropriations issued prior to the final 1984 regulations, which it says "make[s] clear that Congress intended the 1984 regulations to exclude private foundations."  Def.'s Cross-Mot. for Summ. J. at 16.  It is odd to speak of congressional intent with respect to an agency-promulgated regulation.  It is also unnecessary to divine OPM's original intent behind the 1984 regulations because it is clear from the face of the regulations that the 2006 regulations effected a change in the eligibility criteria.  In any event, the senate committee report provides little insight into OPM's understanding of the 1984 criterion at issue here.  The report expressed the Committee's concern that the 1984 proposed regulations "might have a negative impact on the ability of Federal workers to make informed choices regarding the specific charities they wish to contribute to," and directed OPM

"to redraft the proposed regulations to assure that where a Local Federal Coordinating Committee elects not to publish a list of eligible organizations, the Principal Combined Fund Organization shall provide to Federal employees a list of all organizations that received or will receive funds from the preceding year's CFC." 49 Fed. Reg. at 32,738-39.  And, in fact, OPM "acknowledge[d] the weight of the concerns expressed by the Senate Committee" and redrafted the rule accordingly.  See id at 32,739.  It was in this context that the final rule promulgating the 1984 regulations reprinted the committee report's statement that the Committee "envision[ed] that Federal workers will be allowed to write in any 501(c)(3) charitable organization that is not a private foundation and that the list would simply provide to Federal workers information on the past year's CFC activities."  Id.  OPM's final rule does not contain any discussion of or response to this lone Senate Committee reference to private foundations.

Put simply, the 2006 regulations contain a new requirement -- that an organization certify that it is a "public charity under 26 U.S.C. § 509(a)," 5 C.F.R. § 950.202(b) (2007) -- that renders the 2006 eligibility criteria not "the same as the criteria in the 1984 regulations," § 618(b)(1)(B). Hence, the inclusion of the public charity requirement in the 2006 regulations violates Section 618.  As OPM acknowledges, the denial of both SFA's application and its administrative appeal "was premised on the fact that SFA is not a public charity pursuant to 26 U.S.C. § 509(a)."  Def.'s Statement of Material Facts Not in Dispute ¶ 13; see id. ¶ 11.  Because OPM sustained the denial of SFA's application on the basis of a regulatory requirement that violates federal law, OPM's action was "not in accordance with law" and must be set aside.  5 U.S.C. § 706(2)(A).  This Court will not, however, directly order SFA's inclusion in the 2007 CFC, and its listing as a national participating organization, because the statement that SFA failed to certify also encompassed

additional, legal eligibility criteria.  <u>See</u> SFA 2007 CFC Application at 2.  Instead, the better

course is for OPM to reevaluate SFA's application under the 2006 regulations, except that the

agency should apply the prior provision found at 5 C.F.R. § 950.202(b) (2006), rather than the

new provision found at 5 C.F.R. § 950.202(b) (2007), because the latter is in violation of Section

618.

<u>CONCLUSION</u>

For the foregoing reasons, the Court grants plaintiff's motion for summary judgment,

denies defendant's cross-motion for summary judgment, and orders further relief as described in

the separate order accompanying this memorandum opinion.


                                        /s/ John D. Bates
                                    JOHN D. BATES
                                United States District Judge


Dated: <u>July 30, 2007</u>